STEVEN MARK KAMP (California State Bar Number 116817)
STEVEN KAMP LAW OFFICE, 22 Petrilli Circle, Sacramento, CA 95822
Electronic Mail Address: steve.kamp@comcast.net
Telephone: (916) 501-1791 (cellular, voice/text)
Attorney for Plaintiff Ms. Parvin Olfati

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ,<br><br>Ms. PARVIN OLFATI, Plaintiff,<br><br>v.<br><br>CITY OF SACRAMENTO; CITY OF SACRAMENTO POLICE OFFICER JARED ROBINET (badge # 0520); CITY OF SACRAMENTO POLICE OFFICER MARYNA STANIONIS (badge # 0597); CITY OF SACRAMENTO POLICE OFFICER  NATHANIEL REASON (badge # 0507);  BARBARA ANDRES; STEVEN MAVIGLIO; JOHN DOE CITY DEFENDANTS  1-100; JOHN DOE CONSPIRATOR DEFENDANTS 1-100 ,<br><br>Defendants. | No.<br><br>**PLAINTIFF'S COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL** |

Plaintiff  Ms.  Parvin Olfati by her attorney, for her Complaint alleges as follows:

<u>**STATEMENT OF JURISDICTION AND VENUE**</u>

1.   This action is brought pursuant to United States Code, Title 28, Sections 1331 (federal

question jurisdiction), because Plaintiff is suing all Defendants under United States Code,

Title 42, Section 1983, and the First,  Fourth, and Fourteenth Amendments to the United

States Constitution.

2.    In addition, Plaintiff's California state law claims against all Defendants are so related to

Plaintiff's federal law claims against the Defendants, such that Plaintiff's California state

law claims are part of the same case or controversy under Article III of the United States

Constitution, thereby giving this court has supplemental jurisdiction over Plaintiff's state

law claims in this Complaint, per United States Code Title 28, Section 1367, subdivision

(a).

3.    Venue is laid within the United States District Court for the Eastern District of

California, Sacramento Division, in that:

- The Defendant City of Sacramento ("City") and its' Police Department and Fire

  Department are located in the City of Sacramento, County of Sacramento.

- Defendant City of Sacramento Police Officers Jared Robinet, Maryna Stanionis,

  and Nathaniel Reason are employed in the City of Sacramento, County of

  Sacramento.

- Defendant Barbara Andres resides in the City of Sacramento, County of

  Sacramento.

- Defendant Steven Maviglio resides in the City of Sacramento, County of

  Sacramento.

- The events giving rise to Plaintiff's claims all took place in the City of

  Sacramento, County of Sacramento.

2

**NOTICE OF CLAIM**

4.  On September 18, 2020, Plaintiff filed with the City of Sacramento (City) a victim compensation claim seeking compensation for the acts complained of herein, Sacramento, as required by and pursuant to California Government Code Section 911.2.  On October 6, 2020, the City through its Human Resources Department mailed a written rejection of Plaintiff's claim. Defendant City's claim rejection letter lists "our file no." as SCDC24422A1, and the "date of loss" as May 9, 2020.

5.  Upon information and belief, Defendant City's claim rejection is irregular and suspect because Plaintiff was injured by the Defendant City's Police Department; officers employed by Defendant City's Police Department; Defendant City's Fire Department; persons employed by Defendant City's Fire Department; and John Doe City Defendants 1 through 100. Plaintiff  was not injured by anyone from the City's Human Resources Department.

6.  Because of Plaintiff's California Government Code Section 911.2 compliance described herein, Plaintiff's state law claims (including but not limited to the claims under the California Tom Bane Civil Rights Act) against Defendant City, Defendant City Police Officer Robinet, Defendant City Police Officer Stanionis, Defendant City Police Officer Reason, and the John Doe City Defendants are timely as filed within six months of the October 6, 2020 claim rejection by Defendant City.

7.  Defendant City's claim rejection is irrelevant to Plaintiff's federal law claims.

8.  Plaintiff's federal law claims are timely filed within two years of May 9, 2020, the day Defendants City, Robinet, and Stanionis falsely arrested Plaintiff in the living room of her residence without a warrant or probable cause; used excessive force against Plaintiff;

and/or committed acts cumulating in the false arrest of Plaintiff by Defendants Robinet and Stanionis that Defendant Reason failed to intervene to prevent.

9.   In the event this court remands Plaintiff's state law claims pursuant to United States Code, Title 28, subdivision (c), the limitations period of California Government Code Section 911.2 is tolled for the pendency of this claim plus thirty calendar days after the remand, per United States Code, Title 28, Section 1367, subdivision (d), and Title 28, Section 1441, subdivisions (a) and (b), unless California law gives a longer tolling period.

**PRELIMINARY STATEMENT**

10.   This is a federal civil rights and California law action for the damages suffered by Plaintiff when on Saturday morning May 9, 2020, at about 8:00 a.m.,  *while walking into and inside her residence living room*,  Plaintiff (a 67 year old woman) was illegally assaulted, battered and falsely imprisoned in a no-warrant, inside the cartilage, inside the living room  illegal seizure that began with Defendant City Police Officer Jared Robinet following Plaintiff from behind on Plaintiff's own driveway, with no announcement to Plaintiff, and after Robinet received a hand-signal from Defendant Barbara Andres, an across-the-street natural person who was trespassing on Plaintiff's driveway. Defendant Barbara Andres did the hand-signal to inform Defendant Robinet that Plaintiff was alone and now was the time to seize Plaintiff. Defendant Robinet stalked Plaintiff up  the driveway, the north side front porch steps, and the front porch; as Plaintiff pushed open the front door and stepped into her living room, Defendant Robinet grabbed Plaintiff from behind; fractured, lacerated, and caused to bleed Plaintiff's right hand ring finger; and threw Plaintiff down to the concrete surface of Plaintiff's front porch where Defendant

4

Robinet tackled Plaintiff. Defendant Robinet was then joined by Defendant Stanionis, and both Defendant City Police Officers handcuffed Plaintiff; when Plaintiff complained to Defendant Stanionis that the handcuffs were causing pain to Plaintiff, Defendant Stanionis intentionally tightened the handcuffs some more after saying "it is not supposed to be comfortable." Defendants Robinet and Stanionis then dragged Plaintiff to the Defendant Stanionis City Police car. Before placing Plaintiff into the police car, Defendant Robinet body searched Plaintiff who was wearing only leggings and a loose top, and who had already been seized and tackled by Defendant Robinet. After throwing a handcuffed Plaintiff into the police car back seat, Defendant Robinet then went to Plaintiff's front porch, seized Plaintiff's cellphone without a warrant, and gave it to Defendant Stanionis. Defendant Stanionis then took Plaintioff's cellphone to one or more meetings with another natural person "neighbor", Defendant Steven Maviglio, as well as Defendant Barbara Andres, while Defendant Stanionis kept Plaintiff handcuffed in the rear seat of a windows-closed City Police car. Defendant Stanionis intentionally denied Plaintiff's multiple requests for water (even though Plaintiff was visibly dehydrated and bleeding), and questioned Plaintiff without giving *Miranda v. Arizona* warnings to Plaintiff.

11. Defendant City Police Officers Robinet and Stanionis committed these acts without wearing masks or face coverings, in violation of the County of Sacramento Public Health COVID-19 order.

12. Plaintiff at the end of the handcuffed interrogation was released and was charged only with California Penal Code Section 148, subdivision (a)(1) "resisting arrest" – and even this standalone charge was subsequently dismissed by the Sacramento County District Attorney for Insufficient Evidence.

13. Plaintiff was obviously in need of adequate medical care to recover from her City-caused injuries, but the Defendants did nothing until Plaintiff's handcuffed custodial interrogation ended, when Defendant Stanionis finally summoned the City Fire Department pasramedics. When Defendant City's Fire Department paramedics arrived, Defendant Stanionis told the City Fire paramedics that Plaintiff was a "mental case" or a "[California Welfare and Institutions Code Section] 5150 case". When one of the City Fire paramedics began the process of applying gauze to Plaintiff's fractured, lacerated, and bleeding right hand ring finger – the first step for adequate medical care for Plaintiff's City-caused injuries – the supervising City Fire paramedic ordered the gauze-applying City Fire paramedic to stop and instead "just put a bandage on it." No effort was even attempted to get Plaintiff to an urgent care center or other medical facility. When Plaintiff sought medical care for these great bodily injuries caused by Defendant City that Plaintiff told the medical providers were caused by "police brutality", the medical care provider Plaintiff visited told Plaintiff that "law enforcement" had provided a large amount of derogatory information about Plaintiff; Plaintiff was thereby prevented by the City from getting adequate medical care from her City-caused great bodily injuries.

14. The false arrest without a warrant made in Plaintiff's living room was made based on false information (that Plaintiff had committed a "battery" or an "altercation") intentionally or recklessly communicated to the Defendant City's Police Department by two "neighbors", Defendant Barbara Andres and Defendant Steven Maviglio, and/or one or more of the John Doe Conspirator Defendants. The communication of this false information was followed by a hand signal to Defendant Robinet from a driveway-trespassing Defendant Barbara Andres, with the Defendant Andres hand signal communicating the fact that

6

Plaintiff was alone on her driveway and therefore was easy prey to the illegal, tortious, and unconstitutional acts and great bodily injury to Plaintiff that followed.

15. These illegal, tortuous, and unconstitutional acts were accompanied by Defendant City Police Officer Jared Robinet making an unreasonable, no-warrant seizure of Plaintiff's house keys, others keys, and cellphone, followed by Defendant City Police Officer Maryna Stanionis making an unreasonable, no-warrant, and therefore illegal search of Plaintiff's cellphone and its' contents, either or both to herself, the City Police, Defendant City Police Officer Jared Robinet, Defendant Steve Maviglio, Defendant Barbara Andres, the John Doe Conspirator Defendants, or other unauthorized persons.  When Defendant City Police Officer Maryna Stanionis finally returned Plaintiff's cellphone, she did so only after Defendant Maryna Stanionis took the cellphone with her to meetings with Defendant Steven Maviglio, Defendant Barbara Andres, and/or one or more of the John Doe Conspirator Defendants.

16. When Plaintiff examined her cellphone contents after the cellphone was returned, Plaintiff found that one or more videos, photos, and other content had been deleted during the time the cellphone was in the possession of Defendant City Police Officer Robinet and Defendant City Police Officer Stanionis.  A few months later, this cell0phone? was stolen.

17.  Upon information and belief, Plaintiff alleges that Defendant City Police Officer Maryna Stanionis displayed  and shared the contents of Plaintiff's cellphone to herself, Defendant City Police Officer Jared Robinet, Defendant City Police Officer Nathaniel Reason, Defendant Steven Maviglio, Defendant Barbara Andres, and one or more of the John Doe City Defendants and/or the John Doe Conspirator Defendants.

18. While all of these events were taking place, a third Officer of Defendant City's Police Department, Officer Nathaniel Reason, was within full view of the cascading

7

constitutional carnage committed by Defendant Robinet, Defendant Stanionis, and Defendant City's Police Department, but Defendant Reason took no action to intervene.

19.   Defendant City Police Officers Maryna Stanionis and Jared Robinet, when they finally released Plaintiff from detention, handed Plaintiff a  Notice To Appear for one and only one charge: California Penal Code Section 148, subdivision (a)(1) "resisting arrest" or "interfering with a police officer". Defendants  Stanionis and Robinet, on behalf of Defendant City Police, imposed this criminal "resisting arrest" charge on Plaintiff even though Plaintiff offered no resistance and there was no probable cause for the charge.

20.   On or about July 3, 2020, Defendant City Police and Defendant Jared Robinet through the Sacramento County District Attorney filed a Sacramento County Superior Court criminal complaint against Plaintiff styled *People v. Parvin Olfati,* Case Number 20 MI 010143. On October 15, 2020, the Sacramento County District Attorney dismissed this criminal complaint against Plaintiff on its' own motion, for "Insufficient Evidence." Upon information and belief, Plaintiff submits that Defendants Barbara Andres, Steve Maviglio, and/or one or more  of the John Doe Conspirator  Defendants maliciously instigated this criminal complaint against Plaintiff and are therefore liable for malicious prosecution damages under California law, in addition to all other liabilities pled in this Complaint. Because of California Government Code Section 821.6, Plaintiff is not seeking malicious prosecution damages against Defendant City, any of the John Doe City Defendants, Defendant Robinet, or Defendant Stationis. However, Plaintiff in this Complaint is seeking malicious prosecution damages from the persons who maliciously caused Plaintiff to be prosecuted without probable cause: Defendant Andres, Defendant Maviglio, and the John Doe Conspiratior Defendants.

.

8

21. Plaintiff seeks damages relief from the violation of her rights by the Defendants. Plaintiff's rights are secured by both federal and California state law, as follows:

*Federal law*

- The Third Enforcement Act of 1871, also known as the Ku Klux Klan Act, in United States Code, Title 42, Section 1983; and the Civil Rights Attorneys Fees Awards Act of 1976, in United States Code, Title 42, Section 1988;

- The First, Fourth, and Fourteenth Amendments to the United States Constitution. Most of the federal law violations committed by Defendants were Fourth Amendment violations, but Defendants also violated Plaintiff's rights under the First Amendment, by:

- Retaliating against Plaintiff for making statements during the custodial interrogation in favor of the Black Lives Matter movement and for saying "Iranian life matters too"; and,

- Retaliating against Plaintiff for sending written police reports and California Public Records Act (CPRA) requests to Defendant City's Police Department. The filing of police reports is protected by the First Amendment right to petition the government for redress of grievances. The filing of CPRA requests for government records and information is a state-created right of access to government information that the First Amendment protects from arbitrary denial.

In addition, Plaintiff is also suing (in this Complaint) Defendant City under the Fourteenth Amendment Equal Protection Clause for treating Plaintiff as a "class of one" when it comes to City Police  protection (Plaintiff's police reports of specific illegal acts by Defendant Maviglio

9

and Defendant Andres are ignored, but false statements from Maviglio and Andres are acted upon in a nanosecond's notice, and to the point of arresting Plaintiff without a warrant in her living room).  Plaintiff is suing Defendant Andres, Defendant Maviglio, and the John Doe Conspirator Defendants under United States Code, Title 42, Section 1983 for conspiring with Defendant City's Police Department to violate Plaintiff's rights secured by federal law. The federal law claims are Fourth Amendment unreasonable search and seizure claims, and include a separate count for denial of adequate medical care.

*California Law*

- California Constitution Article I, Sections 2 (freedom to speak and write on all subjects), Section 3 (right to petition the government for redress of grievances and to have access to government records), (7) (equal protection and due process), and 13 (freedom from unreasonable searches, seizures, and excessive force)
- Tom Bane Civil Rights Act – California Civil Code Section 52.1, subdivision (c) and incorporating California Civil Code Section 52, subdivision (a).
- California Civil Code Sections 43 (freedom from bodily great bodily injury),44-45-46 (freedom from defamation), and California Penal Code sections 236 (false imprisonment), 240 (assault), 242 (battery), 602 (trespass); and the California torts of malicious prosecution and intentional infliction of emotional distress.

Plaintiff in this Complaint is:

- suing Defendant City in *respondeat superior* for the violations of Plaintiff's rights by the City's Police Department and Fire Department employees acting within the course and scope of their City employee duties.

10

- suing in their individual capacities Defendant City Police Officers Robinet and Stanionis for trespass, assault, battery, false arrest, false imprisonment, and excessive force.

- suing Defendabnt Barbara Andres for trespass, and Defendant Maviglio for conspiracy to trespass.

- suing Defendants Barbara Andres and Steven Maviglio for defamation; false light invasion of privacy; malicious prosecution; and intentional infliction of emotional distress.

22.  The City of Sacramento employee defendants named herein were all acting under color of state law when they violated Plaintiff's federal constitutional  and California law rights. The two arresting officers (Defendant Jared Robinet and Defendant Maryna Stanionis) were acting under color of state law because they were on duty, in uniform, wearing badges, armed, using (and misusing) City Police vehicles, handcuffs and other City Police equipment. Defendant City Police Officer Nathaniel Reason (the third officer identified by Defendant City as beiong involved) similarly acting under color of state law when he failed to intervene despite having a realistic opportunity to do so.

23. These claims are brought under federal law [42 U.S.C. Section 1983] against the following Defendants:

(i)      in their individual capacities, Defendant City Police Officer Jared Robinet, Defendant City Police Officer Maryna Stanionis, and Defendant City Police Officer Nathaniel

11

Reason. Robinet personally began the illegal seizure and seizure of Plaintiff; Robinet also illegally seized Plaintiff's cellphone without a warrant; Stanionis had a realistic opportunity to intevene and stop Robinet, but failed to do, and instead joined Robinet in his multiple violations of Plaintiff's rights;

(ii)   in his individual capacity, Defendant City Police Officer Nathaniel Reason, whom Plaintiff did not see or interact with on May 9, 2020, but whom Defendant City Police in a California Public Records Act (CPRA) response identified as the third officer involved in the May 9, 2020 City Police acts suffered by Plaintiff. At a minimum, Defendant Nathaniel Reason had a duty to intervene to protect Plaintiff against the acts of Defendants Robinet and Stanionis, and had a duty to train, supervise, and discipline City Police Officers Robinet and Stanionis to prevent them from violating Plaintiff's rights under federal and state constitutions and law.

(iii)   in their individual capacities, the John Doe City Defendants, who are: (a) City Fire Paramedic One, the City Fire Department paramedic who ordered City Fire Paramedic Two to stop providing medical care to Plaintiff; and (b) one or more persons in the supervisorial chain of Defendant City's Police and Fire Departments, whom Plaintiff is informed and believed may also be responsible for one or more violations of Plaintiff's rights. After discovery Plaintiff will, if necessary, seek leave to amend the Complaint to name one or more of these persons as individual capacity defendants. As for City Fire Paramedic One, Plaintiff on April 1, 2021 caused to be delivered to Defendant City's City Clerk a CPRA request for the names, identification numbers, and duty statements of any and all paramedics interacting with or providing services to Plaintiff on May 9, 2021. These John Doe City Defendants are sued for (a) intentional, reckless, deliberately indifferent, or professionally negligent creation, implementation,

12

and carrying out of customs, policies, procedures, rules, regulations, and final decisions of Defendants City, City Police, and City Fire that proximately caused or resulted in the violation of Plaintiff's rights; (b) recklessly, indifferently, or negligently failing to train, supervise, and discipline Defendant City Police Officers Robinet and Stanionis to insure that they did not violate Plaintiff's rights secured by the United States Constitution First, Fourth and Fourteenth Amendments.

(iv)   Defendant City of Sacramento for Police Department and Fire Department policies, procedures, custom  final decision making authority, training, supervision and/or discipline of Defendants Jared Robinet, Maryna Stanionis,  Nathaniel Reason, City Fire Paramedic Number One, and the John Doe City Defendants.

(v)   Defendant City of Sacramento for intentional, reckless, or deliberately indifferent training, discipline, supervision, and/or deliberately indifferent adoption or implementation of policies that resulted in federal constitutional violations that caused Defendant City Police Officer Jared Robinet, Defendant City of Sacramento Police Department Officer Maryna Stanionis, Defendant City Police Officer Nathaniel Reason, Defendant City Fire Paramedic Number One, and the John Doe City Defendants to violate Plaintiff's right secured  by the United States Constitution First, Fourth and Fourteenth Amendments.

(vi)   Defendant City of Sacramento for  intentional, reckless, or deliberately indifferent training, discipline, supervision, and/or deliberately indifferent failure to adopt or implement policies that would have prevented the violation of Plaintiff's rights

13

secured by federal and state constitutions and laws that were committed by Defendant

City Police Office Jared Robinet, Defendant City Police Officer Maryna Stanionis,

Defendant City Police Officer Nathaniel Reason, Defendant City Fire Paramedic

Number One, and the John Doe City Defendants.

(vii)    Defendant City of Sacramento for treating Plaintiff as a "class of one" subjected to

false arrests and other illegal conduct based on false communications to the City

Police from Defendant Barbara Andres, Defendant Steve Maviglio, and others

(including the John Doe City Defendants), but where Plaintiff's written police reports

will not be accepted or will be ignored by the Defendant City Police, thereby violating

Plaintiff's right to equal protection and due process under the Fourteenth Amendment

to the United State Constitution, as held by the U.S. Supreme Court decision in its'

unanimous decision in *Village  of Willowbrook v. Olech*,  528 U.S. 562 (2000), in that

Defendant City of Sacramento's unequal treatment of Plaintiff regarding police reports

(not accepted) and police calls targeting Plaintiff (accepted) are  motivated solely by a

spiteful effort to "get" Plaintiff rather than any legitimate law enforcement objective.

(viii)   Defendant Barbara Andres, Defendant Steven Maviglio, and the John Doe Conspirator

Defendants, whose acts, conduct, and conspiracy with Defendant City of Sacramento,

Defendants City of Sacramento Police Department Officers Robinet and/or Stanionis,

and/or one or more of the John Doe City Defendants  made Defendants Barbara

Andres, Steve Maviglio and the John Doe Conspirator Defendants each of these

persons state actors who acted under color of state law to deprive Plaintiff of federally

protected rights under the United States Constitution First, Fourth, and Fourteenth Amendments.

24.     Plaintiff's claims are also brought under California law against:

(a) Defendant City Police Officer Jared Robinet for assault; battery; false imprisonment; false arrest; unconstitutional arrest; illegal body seizure; illegal body search; illegal cellphone seizure; illegal cellphone search; excessive force; and other acts in violation of Plaintiff's rights under the United States Constitution First, Fourth, and Fourteenth Amendments; California Constitution, Article I, Sections 2, 3, 7 and 13; California Civil Code Section 43 ("every person has…the right of protection from bodily restraint or harm, from personal insult, from defamation, and from great bodily injury to his personal relations") and Section 51.2 (the Tom Bane Civil Rights Act) as "any person or persons, whether or not acting under color of law, interfere[d[ by threat, intimidation, or coercion, or attempt[ed] to interfere by threats, intimidation or coercion, with the exercise or enjoyment by any individual … of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state…".

(b) Defendant City Police Officer Maryna Stanionis for assault, battery, false imprisonment, false arrest, unconstitutional arrest, illegal body seizure, illegal cellphone search, excessive force, failre to intervene to stop Robinet, and other acts in violation of Plaintiff's rights under the United States Constitution First, Fourth, and Fourteenth Amendments; California Constitution, Article I, Sections 2, 3, 7 and 13; California Civil Code Section 43 ("every person has…the right of protection from bodily restraint or harm, from personal insult, from defamation, and from great bodily injury to his personal relations")  and Section 51.2 (the Tom Bane Civil Rights Act) as "any person or persons, whether or not acting under color of law, interfere[d] by threat, intimidation, or coercion,

15

or attempt[ed] to interfere by threats, intimidation or coercion, with the exercise or enjoyment by any individual … of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state…".

(c) Defendant City of Sacramento Police Department Officer Nathaniel Reason for failing to intervene to stop Robinet and/or Stanionis;

(d) Defendant City of Sacramento as a California Civil Code Section 51.2 "person" whose acts by its' employees City Police Officer Jared Robinet, City Police Officer Maryna Stanionis, City Police Officer Nathaniel Reason,  City Fire Paramedic Number One, and the John Doe City Defendants subjected Plaintiff to  assault, battery, false imprisonment, false arrest, unconstitutional arrest, illegal body seizure, illegal body search, illegal cellphone seizure, illegal cellphone search, and other acts in violation of Plaintiff's rights under the United States Constitution First, Fourth, and Fourteenth Amendments; California Constitution, Article I, Sections 2, 3, 7 and 13; California Civil Code Section 43 ("every person has…the right of protection from bodily restraint or harm, from personal insult, from defamation, and from great bodily injury to his personal relations") and Section 51.2 (the Tom Bane Civil Rights Act) as "any person or persons, whether or not acting under color of law, interfere[d[ by threat, intimidation, or coercion, or attempt[ed] to interfere by threats, intimidation or coercion, with the exercise or enjoyment by any individual … of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state…".

(e) Defendant City of Sacramento as a person whose acts by its' employees City Police Officer Jared Robinet, City Police Officer Maryna Stanionis, City Police Officer Nathaniel Reason, City Fire Paramedic One, and the John Doe City Defendants made Defendant City liable in California law *respondeat superior* for the acts of these City

employees acting in the course and scope of their official duties subjecting Plaintiff to assault, battery, false imprisonment, false arrest, unconstitutional arrest, illegal body seizure, illegal body search, illegal cellphone seizure, illegal cellphone search, and other acts in violation of Plaintiff's rights under the United States Constitution First, Fourth, and Fourteenth Amendments; California Constitution, Article I, Sections 2, 3, 7 and 13; under California Civil Code Section 43 ("every person has…the right of protection from bodily restraint or harm, from personal insult, from defamation, and from great bodily injury to his personal relations")  and Section 51.2 (the Tom Bane Civil Rights Act) as "any person or persons, whether or not acting under color of law, interfere[d[ by threat, intimidation, or coercion, or attempt[ed] to interfere by threats, intimidation or coercion, with the exercise or enjoyment by any individual … of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state…".

(f) Defendant Barbara Andres, Defendant Steven Maviglio, and the John Doe Conspirator Defendants in separate counts for defamation, false light invasion of privacy, and intentional infliction of emotiobnal distress.

(g) Against Defendant Barbara Andres for trespass and the cascade of violations of Plaintiff's rights that Andres intended to cause, and occurred, as a proximate result of the Andres trespass; in this count, Defendant Maviglio is also sued for conspiracy to trespass.

25.  Plaintiff seeks monetary damages (special, compensatory, economic, non-economic, pain and suffering,  emotional distress, civil penalties, nominal, treble, and/or punitive[1]) against each and all Defendants, as well as an award of costs and attorneys' fees, and such other

---

[1] Plaintiff requests an award of nominal damages, but only in the event she is not awarded compensatory damages.

and further relief as the Court deems just and proper, as set forth below.  Attorney's fees are sought under both the United States Code, Title 42, Section 1988, the California Tom Bane Civil Rights Act [California Civil Code Section 52.1] and/or California Code of Civil Procedure Section 1021.5.

26. Plaintiff seeks special, compensatory, non-economic, pain and suffering, emotional distress, and/or nominal damages against all Defendants under United States Code, Title 42, Section 1983.

27. Plaintiff seeks punitive damages against Defendant City Police Officer Jared Robinet, Defendant City Police Officer Maryna Stanionis, Defendant City Police Officer Nathaniel Reason, and the John Doe City Defendants, all in their individual capacities under United States Code, Title 42, Section 1983.

28. Plaintiff seeks special damages, compensatory damages, economic damages, non-economic damages, pain and suffering damages, emotional distress damages, treble damages, and punitive damages against all Defendants under the  California Tom Bane Civil Rights Act [California Civil Code Sections 52 and 52.1], except that against the City of Sacramento, punitive damages are not sought because such exemplary damages against municipal corporations are barred by California Government Code Section 818.

29. Plaintiff seeks special damages, compensatory damages, economic damages, non-economic damages, pain and suffering damages, emotional distress damages, treble damages, and/or punitive damages, against Defendants Jared Robinet, Maryna Stanionis, and any John Doe Conspirator Defendants who violated or conspired to violate Plaintiff's rights under any provision of California law pled in this Complaint.

30. Plaintiff seeks nominal damages against any Defendant only to the extent that non-exemplary damages other than nominal damages are not awarded.

1
2
3
4
5
6

**PARTIES AND PARTY-SPECIFIC FACTUAL ALLEGATIONS**

***Plaintiff***

7   31. Plaintiff Ms. Parvin Olfati is a female, a citizen of the United States, and a citizen of the

8      State of California. Plaintiff resides in the City of Sacramento, County of Sacramento,

9      State of California, at 1859 45th Street, Sacramento, California 95819. Plaintiff has resided

10     at 1859 45th Street, Sacramento, California 95819 since 2002.

11  32. Plaintiff does not own or possess any gun or weapon. Plaintiff has never been reported to

12     any law enforcement agency for owning or possessing any gun or weapon.

13
14  33. Plaintiff has no criminal record except for the following charges maliciously instituted by

15     Defendants Barbara Andres and Steven Maviglio: (i) the May 9, 2020 false arrest that is

16     the subject of this Complaint, and that despite its' dismissal by the prosecution, remains

17     on the public database of the Sacramento County Superior Court (and, per Plaintiff's

18     information and belief, other public records) even after the one charge [California Penal

19     Code Section `148, subdivision (a)(1) "resisting arrest"] was dismissed by the Sacramento

20     County District Attorney for Insufficient Evidence; and (ii) a March 7, 2021 California

21     Penal Code Section 166, subdivision (a)(4) "willful disobedience of a court order" Notice

22     to Appear (for June 7, 2021), an apparent charge maliciously instigated by Defendant

23     Steven Maviglio where Defendant Steven Maviglio intentionally and falsely accused

24     Plaintiff of violating a restraining order, even though in the March 7, 2021 incident giving

25     rise to Maviglio's accusation to Defendant City Police, Plaintiff was driving a car on a

26     public street (to which Mr. Maviglio's restraining order does not apply); and Mr. Maviglio

27
28

ran into the street, tried to open Plaintiff's car door while the car was moving, then jumped on the car hood and videotaped Plaintiff, followed by Mr. Maviglio deliberately ripping off the driver side windshield wiper, throwing the wiper blade into the street, and then unsuccessfully attempting to hide this evidence. All Plaintiff did was resist Mr. Maviglio's California Penal Code Section 594 malicious mischief: attempted assault, battery, false imprisonment, and carjacking. Plaintiff did so by locking the car door (injuring one of her fingers in the process), repeatedly honking the horn, and waiting for Mr. Maviglio to finally remove his 200-plus-pound frame from the car hood. Plaintiff videotaped the entire incident with her cellphone from the driver side of the car windshield that Mr. Maviglio was trespassing. Plaintiff has filed a Police Report with Defendant City Police, but has not received any response. An insurance claim has also been filed and accepted by the insurer of the owner of the car that Plaintiff was driving.

34. On May 9, 2020, the day Defendants City Police Officers Jared Robinet and Maryna Stanionis falsely arrested Plaintiff, Plaintiff was 67 years of age; Plaintiff is now 68 years of age. Plaintiff's height is five feet two inches. Plaintiff's body weight is approximately 115 pounds. Plaintiff is a female. Plaintiff was not under any influence of any drugs, alcohol, or other substances when she was falsely arrested, or at any other time.

35. Plaintiff's gender, height, weight, and age were known to, should have been known to, and/or were visible to Defendant City Police, Defendant City Police Officer Jared Robinet, Defendant City Police Officer Maryna Stanionis, Defendant City Police Officer Nathaniel Reason, Defendant Steven Maviglio, Defendant Barbara Andres, and/or one or more of the John Doe City Defendants and/or John Doe Conspirator Defendants, prior to and during their commission of the acts alleged in this Complaint.

### *City of Sacramento*

36. Defendant City of Sacramento ("City") is a California municipal corporation organized under the laws of the State of California. Per the City of Sacramento City Charter, day-to-day operations of all City departments are under the control of the City Manager. Defendant City operates a Police Department, referred to herein as the "City Police", and a Fire Department, referred to herein as "City Fire." At all times relevant hereto, the City, acting through the City Manager, City Police, and City Fire, was responsible for the policies, practices, customs, rules, regulations, supervision, disciple, training, implementation, and conduct of all City Police and City Fire matters and personnel, and was responsible for the appointment, training, supervision, discipline, and conduct of all City Police and City Fire personnel, including but not limited to Defendant City Police Officer Jared Robinet, Defendant City Police Officer Maryna Stanionis, Defendant City Police Officer Nathaniel Reason, City Fire Paramedic One, and the John Doe City Defendants.

37. At all times relevant hereto, Defendant City acting through the City's Police Chief, City Manager, and one or more of the Kohn Doe City Defendants, was aware that Defendant City Police Officer Jared Robinet is identified in the public record memorandum for Sacramento County District Attorney Officer Involved Shooting Case Number SPD 18-82449, and in that public record document is identified as one of the two City Police officers who fired the bullets that killed Stephon Clark on March 18, 2018, on 29th Street in the southern part of the City of Sacramento, an incident where Defendant Robinet and/or the other officer fired the fatal bullets after mistaking as a gun the cellphone held by Stephon Clark.

38. Upon information and belief, with full knowledge of Defendant City Police Officer Jared Robinet's use of force connected with the death of Stephon Clark, an incident where

Defendant Robinet and/or the other officer fired the fatal bullets after mistaking as a gun the cellphone held by Stephon Clark, Defendant City acting through its' Police Department, Chief of Police, City Manager, and one or more of the John Doe City Defendants transferred Defendant City Police Officer Jared Robinet to assignments in the "north side" of the City of Sacramento that includes Plaintiff's residence.

39. Upon information and belief, with full knowledge of Defendant City Police Officer Jared Robinet's use of force connected with the death of Stephon Clark, an incident where Defendant Robinet and/or the other officer fired the fatal bullets after mistaking as a gun the cellphone held by Stephon Clark, Defendant City through its' Police Department, Chief of Police, City Manager, and one or more of the John Doe City Defendants assigned Defendant City Police Officer Jared Robinet to City Police activity at or near Plaintiff's residence, activity that included but was not limited to the acts of May 9, 2020 giving rise to this Complaint.

40. At all times relevant hereto, Defendant City was responsible for enforcing any rules, regulations, policies, procedures, and/or custom so widespread as to be standard operating procedure, of the City's Police Department and Fire Department, and for ensuring that the City's Police Department and Fire Department personnel obey the laws and constitutions of the United States and the State of California.

41. The Charter of the City of Sacramento, in Article V, Section 61 thereof, gives the City Manager of Defendant City power to "administer and exercise control over all offices, departments, and services of the city", "to appoint heads or directors of departments of the city and all subordinate officers and employees", including employees of the City Police, including but not limited to Defendant City Police Officer Jared Robinet, Defendant City Police Officer Maryna Stanionis, Defendant City Police Officer Nathaniel Reason, and/or

22

the John Doe City Defendants involved with the supervision, discipline, and training of Robinet, Stanionis, and/or Reason.

42.  The Charter of the City of Sacramento, in Article V, Section 61 thereof, gives the City Manager power to "administer and exercise control over all offices, departments, and services of the city", "to appoint heads or directors of departments of the city and all subordinate officers and employees", including employees of the City Fire Department, including but not limited to the two City Fire Department paramedics involved with administering medical treatment to Plaintiff, including the City Fire Paramedic Number One who told City Fire Paramedic Number Two to stop applying gauze and otherwise fully treating Plaintiff's fractured right hand ring finger, and the John Doe City Defendants involved with the supervision and training of these paramedics.

### *City Police Officer Jared Robinet (badge number 0520)*

43. Defendant City Police Officer Jared Robinet was, at all times relevant hereto, a police officer of the City Police, and as such was acting in the capacity of an agent, servant, and employee of the City. Defendant City Police Officer Jared Robinet is sued in his individual capacity.  Defendant Jared Robinet's City Police badge number is 0520.

44. Defendant City Police Officer Jared Robinet is the City Police officer who, without a warrant and without probable cause, trespassed Plaintiff's driveway, stalked Plaintiff on her driveway and front porch, and as Plaintiff was opening her unlocked front door and stepping into Plaintiff's residence living room, assaulted and battered Plaintiff by grabbing Plaintiff from behind, pulling her out from her house, and slamming and closing Plaintiff's front door while Plaintiff's entire body was not out of the house, and injuring . fracturing and lacerating Plaintiff's right hand ring finger, causing Plaintiff to suffer great

23

bodily great bodily injury; threw or otherwise forced Plaintiff's body down to the concrete porch while Plaintiff was bleeding; handcuffed Plaintiff with assistance from Defendant City Police Officer Maryna Stanionis; seized Plaintiff's cellphone without a warrant and gave the cellphone to Defendant City Police Officer Maryna Stanionis; and with assistance from Defendant City Police Officer Maryna Stanionis, dragged Plaintiff to the City Police vehicle used by Defendant Maryna Stanionis. When he committed these acts, Defendant City Police Officer Jared Robinet was not wearing a mask or face covering, even though he was required to do so by the County of Sacramento COVID-19 Public Health Order.     . ***City Police Officer Marina Stanionis (badgne number 0597)***

45. Defendant City Police Officer Maryna Stanionis was, at all times relevant hereto, a police officer of the City Police, and as such was acting in the capacity of an agent, servant, and employee of the City. Defendant City Police Officer Maryna Stanionis is sued in her individual capacity.  Defendant Maryna Stanionis's City Police badge number is 0597.

46. Defendant City Police Officer Maryna Stanionis is the City Police officer who, without a warrant and without probable cause, acting in a joint venture with Defendants Jared Robinet and the City, trespassed Plaintiff's front yard and front porch, and assisted Defendant Officer Jared Robinet in handcuffing and detaining plaintiff. Defendants Robinet and Stanionis jointly dragged Plaintiff  (as she was bleeding and in pain) to a City Police car driven by Defendant Stanionis, where Plaintiff was confined handcuffed (while bleeding and in pain) and intentionally deprived of water by Officer Stanionis while Officer Stanionis took Plaintiff's cellphone to meetings with Defendant Steven Maviglio, Defendant Barbara Andres, and other residents of 45th Street (one or more of whom may be John Doe Conspirator Defendants), and upon information and belief, searched the

cellphone and either or both had the opportunity to display and share the cellphone content to these persons, or in  fact displayed the content to these persons.

47. Defendant Maryna Stanionis searched Plaintiff's cellphone without a warrant and took it with her to meetings with Defendant Maviglio, Defendant Andres, and other persons during the period in which Plaintiff was detained (handcuffed, dehydrated, bleeding and in pain) in the rear seat of the City Police car used by Defendant Maryna Stanionis.

48. Defendant Stanionis and Defendant Robinet kept Plaintiff in restraint through handcuffs during the entire time period between the living room seizure and the decision of Defendant Stanionis and Defendant Robinet to let Plaintiff go and give her a Notice to Appeal for California Penal Code Section 148, subdivision (a)(1) "resisting arrest." Both Defendant Robinet and Defendant Stanionis saw that Plaintiff's right hand finger was lacerated and was bleeding, that blood from the finger was all over Plaintiff's front porch , yet neither made any effort to call City Fire paramedics while Plaintiff was bleeding in the car.

49. When Defendant Stanionis returned the cellphone to Plaintiff, Plaintiff reviewed the cellphone contents and noted that many items of video, photos and other content had been deleted.

50. Defendant Stanionis detained Plaintiff in handcuffs and questioned Plaintiff (still handcuffed) without giving her any *Miranda v. Arizona* warnings. Plaintiff was not given *Miranda v. Arizona* warnings until the end of the detention when she was given the Notice to Appear (for a criminal complaint that the Sacramento County District Attorney dismissed for Insufficient Evidence).

51. When Plaintiff complained to Defendant Maryna Stanionis that the handcuffs were hurting Plaintiff's wrists, Defendant Maryna Stanionis responded "this is not supposed to

be comfortable" and then intentionally tightened the handcuffs some more, resulting in more excessive force being intentionally applied that squuzed and hurt Plaintiff's lacerated and fractured right hand ring finger.

52. Defendant City Police Officer Maryna Stanionis also tightened the handcuffs on Plaintiff's unfractured left hand fingers.

53. Defendant Maryna Stanionis demanded that Plaintiff "listen" to statements made by Defendant Officer Robinet, even though Defendant City Police Officer Robinet had never said anything to Plaintiff while Robinet was grabbing Plaintiff from behind, and grabbing Plaintiff and pulling Plaintiff out form Plaintiff's residence living room and slamming Plaintiff's front door behind Plaintiff before Plaintiff's entire body was pulled out of her house by Defendant Robinet.

54. Defendants Robinet and Stanionis then threw Plaintiff into the very hot City Police car driven by Stanionis, a car with doors and windows all closed in a very hot day. Plaintiff was confined in this space while handcuffed, dehydrated and bleeding; and was denied water and medical care during the entire detention period.

55. While Plaintiff was left in the City Police car, Plaintiff observed that the police car in-car or backseat camera was running and thus videotaping Plaintiff. Upon information and belief, Defendant Maviglio and other unknown persons (including but not limited to law enforcement agents) were watching a livestream of Plaintiff from the City Police car video camera.

56. While Plaintiff was left handcuffed in the City Police car, Defendant City Police Officer Stanionis went back and fotrth from the car to and from meetings with Defendant Maviglio and Defendant Andres at the 1901 45th Street house of Defendant Maviglio. When Stanionis returned to the City Police car, she would ask questions to Plaintiff that

26

Plaintiff upon information and belief alleges were given to Defendant Stanionis by

Defendant Maviglio and Defendant Andres.

57. Defendant Stanionis after her last back and forth trip to Defendant Maviglio's house

finally asked Plaintiff "do you need medical help",  Before Defendant Stanionis asked this

question to Plaintiff,  both Defendant Stanionis and Defendant Robinet for at least one

hour saw and witnessed Plaintiff's bleeding and Plaintiff's blood all over Plaintiff's

clothes, all over the back seat of the Ciy Police car, and all over the front porch of

Plaintiff's house. During this hour or more, both Defendant Stanionis and Defendant

Robinet ignored Plaintiff's sufferings.

58. Upon information and belief, Plaintiff alleges that Defendant City Police Officer

Nathaniel Reason or one or more of the John Doe City Defendants must have finally

directed Defendant Robinet and Defendant Stanionis to call City Fire paramedics, but

before doing so, ask Plaintiff if  Plaintiff needed medical help.  Upon information and

belief, Plaintiff alleges that Defebndant City's Police Department knew or should have

known that if officers see blood, they should automatically realize that the victim is

injured and that they should immediately call City Fire or first responders, but

intentionally or recklessly failed to do so.

59. At the end of the handcuffed custodial interrogation, Plaintiff told Defendant City Police

Officer Stanionis regarding the Stanionis conduct, the conduct of Defendant Officer

Robinet, and the conduct of Defendant City Police that:  "you gave me a first hand lesson

and now I understand  why African-Americans are so afraid of the police, and now I

understand the notion behind the Black Lives Matter more. And the Iranian life matters

too." Defendant City Police Officer  Stanionis responded "that was very rude."

27

60.    Defendant City Police Officer Maryna Stanionis was uniformed, badged, and armed when she committed the acts complained of herein. Defendant Maryna Stanionis was also using a City Police car and City Police handcuffs.  Defendant Maryna Stanionis was not wearing a mask or face covering, even though the Sacramento County Public Health Order required the wearing of one.

61. A reasonable police officer would have known that Defendant City Police Officer Jared Robinet had no probable cause to seize, restrain, or detain Plaintiff (and in process injure the Plaintiff).

62. A reasonable police officer would have known, that any probable cause had by Defendant City Police Officer Jared Robinet to seize, restrain, or detain Plaintiff had dissipated at the time when Defendant City Police Officer Maryna Stanionis ran across the front yard curtilage of Plaintiff's residence and joined in the handcuffing, restraining, and spilling of the blood of Plaintiff on her clothes and on Plaintiff's own front porch and in the City Police car.

63. Defendant City Police Officer Maryna Stanionis was under a duty and had the ability to stop Defendant City Police Officer Jared Robinet from using excessive force or otherwise violating Plaintiff's rights, but intentionally or with reckless indifference to Plaintiff's rights failed to exercise this duty.

***City Police Officer Nathaniel Reason (badge number 0507)***

64. Defendant City Police Officer Nathaniel Reason (badge number 0507) has been identified by Defendant City's Police Department in a California Public Records Act (CPRA) request response (to Plaintiff) as the third City Police officer involved with the acts committed against Plaintiff on May 9, 2020. Plaintiff did not see or otherwise interact with Defendant Nathaniel Reason on May 9, 2020, but upon this information provided by Defendant City Police, believes that Defendant City Police Officer Nathaniel Reason was aware of the acts against

28

Plaintiff by the Defendant City Police, Defendant Robinet, and Defendant Stanionis; aided and abetted them; and/or was under a duty to stop any use of excessive force or any illegal conduct by any of these Defendants, but failed to do so.

***John Doe City Defendants***

65. Plaintiff is informed and believes that the supervisory personnel of the Defendant City (including but not limited to the John Doe City Defendants) either: (i) ordered Defendant City Police Office Jared Robinet to commit the acts complained of herein; (ii) knew and approved of Defendant City Police Officer Jared Robinet committing the acts complained of herein; (iii) acted with reckless indifference to the acts of Defendant City Police Officer Jared Robinet complained of herein; and/or (iv) acted with professional negligence to the acts of Defendant City Police Officer Jared Robinet complained of herein, including but not limited to failing to train, discipline, and/or supervise Defendant City Police Officer Jared Robinet, including failing to train, discipline, and/or supervise Defendant City Police Jared Robinet in the observance of and respect for Plaintiff's rights under the United States Constitution, California Constitution, and federal and California law.

66. Plaintiff is informed and believes that the supervisory personnel of the Defendant City (including but not limited to the John Doe City Defendants): (i) ordered Defendant City Police Office Maryna Stanionis to commit the acts complained of herein; (ii) knew and approved of Defendant City Police Officer Maryna Stanionis committing the acts complained of herein; (iii) acted with reckless indifference to the acts of Defendant City Police Officer Maryna Stanionis complained of herein; and/or (iv) acted with professional negligence to the acts of Defendant City Police Officer Maryna Stanionis complained of herein, including but not limited to failing to train, discipline, and/or supervise Defendant City Police Officer

29

Maryna Stanionis; and including failing to train, discipline, and/or supervise Defendant City

Police Maryna Stanionis in the observance of and respect for Plaintiff's rights under the

United States Constitution, California Constitution, and federal and California law.

### City Fire Paramedic One

67. One of the John Doe City Defendants is City Fire Paramedic One. Cioty Fire Paramedic

One, in the presence of Defendant City Police Officer Robinet and Defendant City Police

Officer Stanionis, told another City Fire paramedic (City Fire Paramedic Two) not to

gauze or otherwise treat Plaintiff's fractured, lacerated, and bleeding right hand ring finger

except to "just put a bandage on it." As a result of this "City Fire Paramedic Number One"

order to "City Fire Paramedic Number Two", "City Fire Paramedic Number Two" was

intentionally prevented by Defendant City Fire Paramedic Number One, Defendant City,

and/or the John Doe City Defendants from giving Plaintiff adequate medical care.

### Steven Maviglio

68. Defendant Steven Maviglio (Maviglio) is a natural person who resides at 1901 45th Street

in the City of Sacramento, a location two houses south of Plaintiff's residence.

69. Defendant Maviglio on or about (and/or before) May 9, 2020, knowingly communicated

false and defamatory accusations of fact of and concerning Plaintiff to the Defendant

City's Police Department. Defendant Maviglio's communication of these false

accusations was intended to, and led, to Plaintiff on May 9, 2020 being falsely arrested,

assaulted, battered, falsely imprisoned, subjected to coercive questioning while

handcuffed, bleeding and denied proper medical care, deniked water while extremely

dehydrated, maliciously prosecuted, and subjected to police brutality, excessive force, and

great bodily injury.

30

70. Upon information from Plaintiff's own eyes while Plaintiff was detained handcuffed in the reae seat of the Officer Stanionis City Police car, Defendant Maviglio was visited at Defendant Maviglio's 1901 45th Street house by Defendant City Police Officer Stanionis, and Stanionis made one or more trips back and forth to Defendant Maviglio's house while Plaintiff was detained handcuffed.  During this entire period of time, Defendant Stanionis was in possession of Plaintiff's cellphone that had been seized from Plaintiff by Defendant Robinet, and had the opportunity to search the contents of the cellphone and display such content to persons other than Plaintiff including but not limited to Defendants Stanionis, Robinet, Maviglio, Andres, and/or obne or more of the John Doe Conspirator Defendants.

71. Defendant Steven Maviglio and/or Defendant Barbara Andres also instigated with malice the criminal prosecution against Plaintiff in *People v. Parvin Olfati*, Sacramento County Superior Court Case Number 20 MI 010143, that was terminated on October 15, 2020 by the Sacramento County District Attorney for Insufficient Evidence.

### ***Barbara Andres***

72. Defendant Barbara Andres (Andres) is a natural person who resides at 1870 45th Street in the City of Sacramento, a location directly across 45th Street from Plaintiff's residence.

73.  Defendant Barbara Andres on or about (and/or before) May 9, 2020, knowingly communicated false and defamatory statements of fact of and concerning Plaintiff to the Defendant City Police that was intended to, and led, to Plaintiff on May 9, 2020 being falsely arrested, assaulted, battered, falsely imprisoned, subjected to coercive questioning while handcuffed, denied proper medical care, denied water while extremely dehydrated, and subjected to police brutality, excessive force,  and great bodily injury.

74. The false statements made by Defendant Andres to Defendant City Police included, but are not limited to:

(i)    a statement that Plaintiff was a "female involved in an altercation with a male subject";

(ii)   a statement that Plaintiff was involved in a "battery."

75. Upon information from Plaintiff's home security system video, Defendant Barbara Andres on May 9, 2020 at or about 8:11 a.m. also hand-signaled Defendant City Police Officer Robinet then located on "S" Street, and did so from the sidewalk directly in front of Plaintiff's residence and from the driveway of Plaintiff's residence (where Defendant Barbara Andres was trespassing). At the time Defendant Andres was doing this hand signaling, Plaintiff was alone and was walking slowly on her driveway toward Plaintiff's front porch, front door, and living room.

76. Upon information and belief, Plaintiff reasonably believes and submits that Defendant Andres hand signaled Defendant City Police Officer Jared Robinet to drive or ride in his City Police car from a hiding spot on "S" Street to the curb of Plaintiff's 1859 45th Street driveway where Plaintiff was walking alone toward her front porch, front door, and living room, but was alone and therefore easy prey to a stalking and grabbing from behind Defendant City Police Officer Jared Robinet.

77. Defendant Andres and/or Defendant Maviglio also instigated with malice the criminal prosecution against Plaintiff in *People v. Parvin Olfati*, Sacramento County Superior Court Case Number 20 MI 010143, that was terminated on October 15, 2020 by the Sacramento County District Attorney for Insufficient Evidence.

78. Upon information and belief, one of the intentions for the actions by Defendant Steven Maviglio and by Defendant Barbara Andres was to use Defendant City Police to use force, coercion, intimidation and violence against Plaintiff to retaliate against her for her demanding that Defendant Steve Maviglio and Defendant Barbara Andres in writing

retract or provide proof of their perjury and false and defamatory statements both made in support of a California Civil Code Section 527.6 civil harassment restraining order sought by Defendant Steven Maviglio against Plaintiff in August-November of 2019, as detailed immediately below. This Complaint does not seek relief against any Defendant for Defendant Steven Maviglio's and Defendant Barbara Andres's acts in obtaining the restraining order (which Plaintiff maintains was procured through fraud), but these acts are set forth herein in order to display the hatred, spite, ill will, malice, knowing falsehood, and reckless disregard of truth or falsity of Defendant Barbara Andres and Defendant Steve Maviglio in their acts regarding Plaintiff pled in this Complaint, and Defendant City's unequal treatment of Plaintiff as a "class of one" resulting in arbitrary denial to Plaintiff of the equal protection of the laws guaranteed by the Fourteenth Amendment of the United States Constitution and Article I, Section 7 of the California Constitution.

### *Retaliation Under Color of State Law by Maviglio and Andres Against Plaintiff For Plaintiff's Certified Mail Letters Demanding Written Retractions*

79. On November 2, 2019 and April 23, 2020, Plaintiff sent to each of Defendant Steven Maviglio and Defendant Barbara Andres certified mail return receipt requested letters. Each of these letters demanded that each of Defendant Steve Maviglio and Defendant Barbara Andres provide Plaintiff with either a written retraction or written proof of the claim in Defendant Maviglio's August 2019 Sacramento County Superior Court restraining order application and in that application's November 1, 2019 hearing that Defendant Steve Maviglio had seen Plaintiff in his 1901 45th Street back yard on August 20, 2019, and the claim made by Defendant Barbara Andres at the November 1, 2019 Sacramento County Superior Court Court Commissioner hearing that Defendants Barbara

33

Andres and Steven Maviglio had seen Plaintiff climbing the Steven Maviglio driveway

fence and wandering in Defendant Steven Maviglio's back yard on October 31, 2019.

80.   When he made these accusations, Defendant Steve Maviglio knew these accusations

were false, or that in making them, he acted or had acted with reckless disregard of their

truth or falsity, thrice when he: (i) made them in his restraining order application in

August 2019; (ii) made them at the November 1, 2019 restraining order hearing; and (iii)

when he received Plaintiff's November 2, 2019 and April 23, 2020 letters. Defendant

Steve Maviglio knew that: Plaintiff in fact was not present in his backyard on the one

specific date listed in his restraining order application (August 20, 2019) because Plaintiff

was not in Sacramento that day but was verifiably driving to Los Angeles; and (ii)

Plaintiff was not in Defendant Steve Maviglio's back yard or anywhere else on Defendant

Steven Maviglio's property during any time period covered by Defendant Steve

Maviglio's restraining order application or at any other time except for times prior to the

year 2010 when Defendant Steve Maviglio invited Plaintiff into his back yard.

81.   When Defendant Barbara Andres stated at the November 1, 2019 hearing on Defendant

Steve Maviglio's restraining order application, that Defendant Barbara Andres had seen

Plaintiff on October 31, 2019 "climbing the fence" on Defendant Steven Maviglio's

driveway and had seen Plaintiff in Mr. Steven Maviglio's back yard on October 31, 2019,

Defendant Barbara Andres knew that she in fact had not seen Plaintiff climbing the

driveway fence of or in the back yard of Defendant Steven Maviglio, and that the Andres

statements that she had were either false or were made with reckless disregard of their

truth or falsity. Defendant Andres retained this knowledge of her making of these false

statements when she received Plaintiff's November 2, 2019 and April 23, 2020 certified

mail return receipt requested letters.

34

82.  Plaintiff sent these letters to each of Defendants Steven Maviglio and Barbara Andres on or about both November 2, 2019 and April 23, 2020. Both Defendant  Barbara Andres and Defendant Steven Maviglio received each letter but never responded in writing or otherwise to either of the two letters each received.

83.  Defendants Barbara Andres and Steven Maviglio both did not sign the U.S. Postal Service certified mail return receipt cards for one or both of the letters that each received.

84.  Defendant Barbara Andres on May 8, 2020, while Plaintiff was walking on the sidewalk near her residence, came across 45th Street and waived one or both of the envelopes containing Plaintiff's certified mail return receipt requested letters (as received by Andres, with the green return slip attached to the envelope) in Plaintiff's face, and yelled: "so you want me to sign this ?"   and waived at Plaintiff the envelope containing one of the two certified mail return revceipt requested letters Plaintiff sent to Defendant Andres (and Defendant Maviglio) on November 2, 2019 and April 23, 2020. The envelope as flaunted by Defendant Andres visibly contained the green certified mail return receipt. Defendant Andres yelled "so you want to talk to me" and "so you want me to sign this", even though the letter requested a written response from Andres, and certified mail procedure as understood by Plaintiff is for the recipient to sign the green return receipt before being given the letter.

85.  Plaintiff is informed and believes that Defendant Barbara Andres and Defendant Steven Maviglio also made false and defamatory statements of fact of and concerning Plaintiff to Defendants City Police Officer Jared Robinet, Defendant City Police Officer Maryna Stanionis,  Defendant City Police Officwer Nathaniel Reason, and/or one or more officials of the City of Sacramento (including one or more of the John Doe City Defendants) before, during, and after the May 9, 2020 events described herein.

35

*Maviglio,  Andres, and City Retaliation Under Color of State Law Against Plaintiff For*
*Sending Police Reports To Defendant City*

86. Upon information and belief, Plaintiff alleges that Defendant Barbara Andres and/or Defendant Steven Maviglio made these false and defamatory statements to Defendant City Police Officer Robinet, Defendant City Police Officer Stanionis, Defendant City Police Officer Reason, and/or one or more of the John Doe City Defendants in retaliation for Plaintiff's multiple written Police Reports regarding what Plaintiff stated she reasonably believed to be illegal acts by Defendant Barbara Andres, the husband of Defendant Barbara Andres (Mr. Cecil Taylor), Defendant Steve Maviglio,  Defendant Steve Maviglio's guest Mr. Joseph Lee Mastalski, and/or residents of 45th Street who committed illegal acts endangering Plaintiff. Plaintiff mailed, delivered, or caused these documents to be delivered to the Defendant City's Police Department on multiple dates prior to May 9, 2020. Upon information and belief, Plaintiff believes that one or more of the City's Police Department officers (including but not limited to Defendants Robinet, Stanionis, Reason, and/or the John Doe City Defendants) communicated these reports or their existence to Defendant Barbara Andres and/or Defendant Steven Maviglio.

87. The Police Reports sent by Plaintiff to Defendant City's Police Department included November 4, 2019 (personal delivery date) written reports expressly, separately, and specifically charging both Defendant Steve Maviglio and Defendant Barbara Andres with California Penal Code Section 118, subdivision (a) Perjury.

88. Upon information from Plaintiff's eye witnessing of 45th Street, Defendant Steven Maviglio and Defendant Barbara Andres, before, on, and after May 9, 2020, regularly met or meet with each other on a daily or near-daily basis. These meetings take place at either Defendant Barbara Andres's residence front porch; Defendant Steven Maviglio's

residence; on Defendant's 1901 45th Street driveway; on 45th Street and/or 45th Street sidewalks.

89. Upon information and belief, Defendant Barbara Andres regularly meets with Defendant Steven Maviglio and/or the John Doe Conspirator Defendants to conspire regarding actions they took or plan to take that are intended to harm Plaintiff, including but not limited to the acts alleged in this Complaint.

90. Upon information and belief, Defendant Steven Maviglio regularly meets with Defendant Barbara Andres and/or the John Doe Conspirator Defendants to conspire regarding actions they took or plan to take that are intended to harm Plaintiff, including but not limited to the acts alleged in this Complaint.

### *John Doe Conspirator Defendants*

91. The John Doe Conspirator Defendants include but are not limited to other residents of 45th Street in Sacramento, California 95819 who conspired with one or more of the other Defendants to violate Plaintiff's rights. Plaintiff is aware of the identities of many of these persons but is unaware of their specific involvement, and when the facts of such involvement are ascertained, Plaintiff will seek leave to amend this Complaint.

**FACTUAL ALLEGATIONS**

*May 9, 2020: On A Saturday Morning, Plaintiff Is Seized In Her Living Room Without A Warrant or Probable Cause By Defendant Robinet After Being Stalked On Her Driveway By Defendant Robinet At The Direction of Defendants Andres and Maviglio*

92. On Saturday, May 9, 2020, between approximately 7:00 a.m. and 8:00 a.m. in the morning, Plaintiff was walking inside the curtilage of her residence at 1859 45th Street: on her driveway, in her front yard, and/or standing on her front porch. At all times, Plaintiff was wearing leggings and a loose top, and was carrying only her keys and a cellphone.

93. Defendant Barbara Andres and Defendant Steven Maviglio from (respectively) 1870 45th Street and 1901 45th Street began yelling at Plaintiff. Upon information and belief, Plaintiff alleges that this yelling at Plaintiff by Defendant Andres and Defendant Maviglio was intended to provoke Plaintiff and to get a reaction from Plaintiff.  This yelling included (but was not limited to) the following statements by Defendant Maviglio: "Patti, Patti"

  "seek counseling" .

94. Plaintiff also observed Defendant Maviglio placing his hands on his hip in a contemptuous and condescending hostile gesture toward Plaintiff.  At all times Plaintiff was on her driveway, in her front yard, or on her front porch.

95. Plaintiff responded by telling Defendant Maviglio (from her front porch, front yard, or driveway) that "I do not want to talk to you" and "you are a perjurer." Defendant Maviglio responded by threatening to "file another restraining order."

96. Based upon information from Plaintiff's home security system video, at about 8:05 a.m. Defendant Maviglio gives a hand signal to Defendant Barbara Andres.

38

97. Defendant Andres then crossed 45th Street to the sidewalk in front of Plaintiff's residence, and demanded that Plaintiff talk to her. Plaintiff refused, telling Defendant Andres, "in any society, both of you would be in jail." Defendant Andres kept yelling at Plaintiff.

98. Upon information from Plaintiff's home security system video, at 8:09 a.m. Defendant Andres entered the driveway of Plaintiff's residence, and kept yelling at Plaintiff. Plaintiff told Defendant Andres to go away. Plaintiff then told Defendant Andres: "Listen Barbara, if I had a disease, and the only cure requires me to talk to you, I would choose to die. I don't want to talk to you. Please go away." To which Defendant Andres responded: "you're dying anyway." Plaintiff resumed walking on her driveway and back to her house.

99. Upon information from Plaintiff's home security system video, at 8:10:52 a,m. Defendant Andres entered Plaintiff's driveway and made a one hand signal in the direction of "S" Street. As soon as Defendant Andres raised her hand, the City Police car driven by Defendant Robinet emerges from "S" Street, passes by the 1841 and 1851 45th Street houses, and parks at the curb where the 1851 house meets the driveway of Plaintiff's residence.

100.    Upon information from Plaintiff's home security system video, Plaintiff tells Defendant Andres to leave Plaintiff's driveway, but Defendant Andres remains after giving the hand signal to Defendant Robinet.

101.    Upon information from Plaintiff's home security system video, at 8:11 a.m. Defendant City Police Officer Robinet  jumped out of his City Police car and crossed the curtilage of Plaintiff's residence by entering the driveway.

102.    Upon information from Plaintiff's home security system video, at approximately 7:55 a.m., a City Police vehicle drove on 45th Street past Plaintiff's residence to "S" Street.

103.     Plaintiff upon information and belief alleges that this City Police vehicle was driven or used by City Police Officer Defendant Jared Robinet and that Defendant City Police Officer Robinet was riding in or driving the City Police vehicle to a hiding place on "S" Street where he would wait for a hand signal from Defendant Barbara Andres to come and seize Plaintiff's person, based on a communication received by the City Police from Defendant Barbara Andres and/or Defendant Steven Maviglio and communicated to Defendant City Police Officer Jared Robinet.

104.     Based upon information from Plaintiff's home security system viodeo, at approximately 7:55 a.m., Defendant Barbara Andres continued her yelling at Plaintiff, and this time did so while walking on the sidewalk in front of Plaintiff's residence and on Plaintiff's driveway, meaning that Defendant Barbara Andres was trespassing.

105.     In the process of her walking in front of Plaintiff's house and trespassing  on Plaintiff's driveway (while Plaintiff was telling Defendant Barbara Andres to leave Plaintiff alone and leave Plaintiff's driveway), Defendant Barbara Andres made a hand signal wave that was intended to be seen, and was seen, by Defendant City Police Officer Robinet sitting in his City Police car on "S" Street near the "S" Street intersection with 45th Street at the end of 45th Street).

106.     At all times while Defendant Barbara Andres communicated through hand signal or otherwise with the Defendant City's Police Department and/or Defendant City Police Officer Jared Robinet, Defendant Barbara Andres had not seen or witnessed Plaintiff committing any crime or offense that merited any arrest, seizure, or search of Plaintiff by Defendant City's Police Department, Defendant City Police Officer Maryna Stanionis, or Defendant City Police Officer Jared Robinet.

107.     Upon information and belief from a Defendant City response to one of Plaintiff's CPRA requests, Defendant City communicated with Defendant Andres before, during, and after the events of May 9, 2020 giving rise to this Complaint. However, Defendant City has refused to produce the records of these communications.

108.     At approximately 8:10 a.m., Defendant City Police Officer Jared Robinet drove or rode in his City Police car to the 45th Street east side curb where 1851 45th Street intersects with the driveway of Plaintiff's residence at 1859 45th Street.

109.     Based upon information from Plaintiff's home security system video, Defendant City Police Officer Jared Robinet, wearing a City Police uniform and badge, and carrying City Police armament, then jumped out of his City Police car, ran on to Plaintiff's driveway (thereby crossing the curtilage of Plaintiff's residence), and walked behind Plaintiff while Plaintiff was walking on her own driveway to her own front porch,  front door, and living room.

110.     When he crossed the cartilage of Plaintiff's residence, Defendant City Police Officer Jared Robinet  had not seen Plaintiff commit any felony.

111.     When he crossed the cartilage of Plaintiff's residence, Defendant City Police Officer Jared Robinet had not seen Plaintiff commit any misdemeanor.

112.     When he crossed the cartilage of Plaintiff's residence, Defendant City Police Officer Jared Robinet was aware of Defendant Barbara Andres walking on Plaintiff's driveway without Plaintiff's permission, and Defendant City Police Officer Jared Robinet also heard Plaintiff asking Barbara Andres to leave Plaintiff's driveway and get away from, Plaintiff, but took no action regarding Defendant Barbara Andres walking on Plaintiff's driveway without Plaintiff's permission and harassing Plaintiff.

41

113.     Before or when he drove or rode from "S" Street to 1859 45th Street, Defendant City Police Officer Jared Robinet saw Defendant Barbara Andres make a hand wave in the direction of "S" Street and the City Police car used by Defendant City Police Officer Jared Robinet.

114.     Defendant City Police Officer Jared Robinet did not have an arrest warrant, search warrant, or any kind of warrant for the person or Parvin Olfati, the residence of Parvin Olfati, 1859 45th Street, the cellphone of Parvin Olfati, or the keys of Parvin Olfati.

115.     Defendant City Robinet was not in possession of any information or knowledge that Plaintiff was using drugs; using alcohol; using substances; that Plainbtiff's behavior weas affected by drugs, alcohol, or substances; or that Plaintiff was in any need of "community caretaking."

116.     Plaintiff was walking on her driveway at a normal pace toward her front porch and front door, and at all times was walking within the curtilage of her residence. Plaintiff was aware that a City Police car and uniformed officer was present on 45th Street near Plaintiff's house, but reasonably believed that the City Police officer was going to talk to Defendant Barbara Andres, since Defendant Barbara Andres: (i) had been visibly trespassing on Plaintiff's driveway; (ii) had been told by Plaintiff to leave; and (iii) Defendant Barbara Andres was the subject of one of the two November 4, 2019 Police Reports to Defendant City's Police Department, and these Police Reports expressly, specifically, and with facts, accused Defendant Andres of California Penal Code Section 118 Perjury.

117.     When he was walking and/or running  on Plaintiff's driveway inside the curtilage, Defendant City Police Officer Jared Robinet did not announce his presence to Plaintiff; did not command Plaintiff to do anything; and did not say anything to Plaintiff.

42

118.    While walking within the curtilage of her residence, Plaintiff did not hear any words or audible sound from Defendant City Police Officer Jared Robinet.

119.    Had Plaintiff heard an audible understandable statement or command, Plaintiff would have turned to face Defendant City Police Officer Robinet.

120.    When Defendant City Police Officer Jared Robinet was inside the curtilage of Plaintiff's residence, Plaintiff was not under any federal or California law obligation to speak to Defendant City Police Officer Jared Robinet.

121.    When Plaintiff was walking within the curtilage of her residence, Plaintiff was not carrying a weapon and did not otherwise communicate or pose any threat to Defendant City Police Officer Jared Robinet.

122.    Defendant City Police Officer Jared Robinet did not act reasonably when he acted upon accusations or other content from Defendant Barbara Andres that Plaintiff had committed a "battery" or was involved in an "altercation", since Plaintiff on November 4, 2019 sent to Defendant City Police through City Police Chief Hahn two written police reports expressly and specifically charging both Defendant Steven Maviglio and Defendant Barbara Andres with California Penal Code Section 118, subdivision (a) Perjury in their statements of and concerning Plaintiff.

123.    On May 9, 2020, before Defendant City Police Officer Jared Robinet entered the curtilage of Plaintiff's residence and seized the person of and arrested Plaintiff without a warrant, a reasonable police officer would have known that that the United States Supreme Court had ruled that the following police officer conduct was illegal and unconstitutional under the Fourth and Fourteenth Amendments:

43

(a) *Payton v. New York,* 445 U.S. 57 (1980), the U.S. Supreme Court decision holding that the Fourth and Fourteenth Amendments were violated by a "routine felony arrest" made without a warrant in the defendant's home.

(b) *Groh v. Ramirez*, 540 U.S. 551, 564 (2004), where the U.S. Supreme Court held that: "No reasonable officer could claim to be unaware of the basic rule, well established by our cases, that absent consent or exigency, a warrantless search of the home is presumptively unconstitutional."

(c) *Florida v. Jardines* , 569 U.S. 1, 6, 133 S.Ct. 1409, 185 L.Ed.2d. 495 (2013), where the Court explained that invading the front porch curtilage of the home violates the First and Fourteenth Amendments because the curtilage is part of the home: "When it comes to the Fourth Amendment, the home is first among equals";  "At the [Fourth] Amendment's 'very core' stands the right of a [wo]man to retreat into [her] own home and there be free from unreasonable government intrusion"; and  "to give full practical effect to that right, the Court considers curtilage – the area 'immediately surrounding and  associated with the home' to be 'part of the home itself for Fourth Amendment purposes." Therefore, the Court held that an arrest made based on a front porch no-warrant sniff of marijuana by a police dog was unconstitutional.

(c) *Collins v. Virginia*, 584 U.S __, 138 S. Ct. 1663, 201 L.Ed.2d 9, Case No. 16-1027, decided May 29, 2018, where the U.S. Supreme Court held that a warrantless arrest  made on the driveway of Defendant's home was unconstitutional because the police were crossing the curtilage without a warrant, and where the U.S. Supreme Court also ruled that:

(i) "When a law enforcement official physically intrudes on the curtilage to gather evidence, a search within the meaning of the Fourth Amendment has occurred [citation to

*Jardines, supra,* omitted]. Such conduct thus is presumptively unreasonable without a warrant"[*Collins, supra,* at 138 S.Ct. 1670].

(ii) "Just like the *front porch*, side garden, or area 'outside the front window'[citation to *Jardines, supra* omitted] the driveway enclosure where Officer Rhodes searched the motorcycle constitutes 'an area adjacent to the home and 'to which the activity of home life extends,'' and so is properly considered curtilage…'[*Collins, supra,* at 138 S.Ct. 1671[emphasis added].

(iii)    "[t]he Court, though, has long been clear that the curtilage is accorded constitutional protection [citation omitted[. As a result, officers regularly assess whether an area is curtilage before executing a search." [*Collins, supra,* 138 S.Ct. at 1674-1675].

124.    In addition, on May 9, 2020, a reasonable police officer working in the City of Sacramento would have known that the U.S. Court of Appeals for the Ninth Circuit on August 21, 2019 had filed its' published opinion in *Nicholson v. City of Los Angeles*, 935 F.3d 685 (Case No. 17-56648), where the court ruled as follows:

(i)"It is well-established that a person may not be arrested, or must be released from arrest, if previously established probable cause has dissipated", citing *United States v. Ortiz-Hernandez,* 427 F.3d 567, 574 (9th Cir. 2005)(per curiam).

(ii)    "A reasonable officer would have known that participation in an ongoing seizure after any probable cause had dissipated violates the Fourth Amendment."

(iii)    "…continued detention for five hours – well after any probable cause would have dissipated – and the use of handcuffs throughout the duration violated …

clearly established Fourth Amendment rights to be free from unlawful arrest and excessive force."

125.     On May 9, 2020, a reasonable police officer would have known that in 2015, the U.S. Court of Appeals for the Ninth Circuit had issued its' opinion in *Velazquez v. City of Long Beach*, 793 F.3d 1010 (9th Cir. 2015), where the court held that the Fourth Amendment was violated when a police officer seized for "detention" a person in front of the person's home, subjected the person to a "twist lock", and the seized person did not fight back, but was charged with California Penal Code Section 148 "resisting arrest",  and where the court held that:

(a)  "under California law, even an outright refusal to cooperate with police officers cannot create adequate grounds for [police] intrusion, without more. , citing *Mackinney v. Nielsen*, 69 F.3d 1002, 1006-1007 (9th Cit. 1995);

(b)  "Ninth Circuit law … clearly establishes the right verbally to challenge the police', and  'verbal protests [cannot] support an arrest under [California Penal Code Section 148]."

(c)  "[California Penal Code] Section 148 does not criminalize a person's failure to respond with alacrity to police orders."

(d)  "police [may] not interfere with the freedom of private persons unless it be for specific, legitimate reasons", quoting *Duran v. City of Douglas*, 904 F.2d 1372, 1376-77 (9th Cir. 1990)..

126.     Upon Plaintiff's personal knowledge, and upon information from Plaintiff's home security system video, as Plaintiff reached her unlocked front door and began to open the front door and enter the living room of Plaintiff's residence, Plaintiff felt the hands of what turned out to be Defendant City Police Officer Jared Robinet grabbing Plaintiff from behind.

127.     Upon Plaintiff's personal knowledge, and upon information from Plaintiff's home security system video, Defendant City Police Officer Jared Robinet physically seized and restrained Plaintiff when Defendant Robinet: grabbed Plaintiff from behind; pulled Plaintiff out of Plaintiff's house; slammed the front door behind Plaintiff before Plaintiff's entire body was out of her house and her front door; and as Plaintiff struggled to get her hand out of the door, Plaintiff's right hand ring finger was injured, lacerated and fractured, and Plaintiff's wrists were injured as well.

128.     Upon Plaintiff's personal knowledge, and upon information from Plaintiff's home security system video, Defendant City Police Officer Jared Robinet wrestled Plaintiff to the concrete floor of the front porch, and began the process of physically tackling, restraining, and detaining Plaintiff while Plaintiff was bleeding and in pain from Defendant Robinet's actions.

129.     Plaintiff offered no physical resistance to the actions of Defendant City Police Officer Jared Robinet.

130.     In the process, Defendant City Police Officer Jared Robinet through his intentional, reckless, or grossly negligent acts caused the fracture, lacerating, and bleeding of the right hand ring finger on Plaintiff's right hand, together with other great bodily injuries to Plaintiff that included damaging Plaintiff's left arm and left hand to the point that both are still difficult for Plaintiff to use in 2021.

47

131.     While Defendant City Police Officer Jared Robinet was tackling Plaintiff, Plaintiff asked Defendant City Police Officer Jared Robinet: "why are you doing this to me", or words to that effect. Defendant City Police Officer Jared Robinet told Plaintiff: "you're under arrest." Plaintiff responded: "for what." Defendant City Police Officer Jared Robinet refused to respond, so Plaintiff asked him the "under arrest for what" question multiple times. Defendant City Police Officer Jared Robinet did not answer, and did not release Plaintiff from his physical custody of her.

132.     After several instances of silence, Defendant City Police Officer Jared Robinet, while continuing to tackle and restrain Plaintiff, finally purported to answer Plaintiff's "under arrest for what" question when he said "we're conducting an investigation", or words to that effect.

133.     Plaintiff then asked Defendant City Police Officer Robinet: "investigation of what?" or words to that effect. Defendant City Police Officer Jared Robinet responded: "when we're finished we'll let you know" or words to that effect. Defendant City Police Officer Jared Robinet continued to restrain Plaintiff and to keep Plaintiff in his physical custody.

134.     While Plaintiff was being tackled and restrained, Plaintiff kept asking Defendant City Police Officer Robinet what Plaintiff was being investigated for. After several moments of silence, Defendant City Police Officer Jared Robinet said: "we're investigating a battery" or words to that effect. Plaintiff  responded: "I have not committed a battery" (or words to that effect).

135.     Plaintiff also asked Defendant City Police Officer Jared Robinet: "who did I batter?" or words to that effect. Defendant City Police Officer Jared Robinet did not respond, and continued to keep Plaintiff in his physical custody.

48

136.     Upon information from Plaintiff's home security system video, Defendant City Police Officer Jared Robinet at about 8:12:13 a.m. was then joined on Plaintiff's front porch by Defendant City Police Officer Maryna Stanionis, who had driven her City Police car to the curb of Plaintiff's residence, and as soon as Stanionis saw Robinet seizing Plaintiff, ran on to Plaintiff's front yard and up the front yard steps to reach  Plaintiff's front porch, doing so without Plaintiff's permission or knowledge.

***Defendant City Police Officer Maryna Staninis Joins In The Trespass And False Arrest To Handcuff Plaintiff And Apply More Excessive Force***

137.     Upon information from Plaintiff's home security system video, and from Plaintiff's personal knowledge, Defendant City Police Officer Maryna Stanionis and Defendant City Police Officer Jared Robinet then proceeded to handcuff Plaintiff and drag Plaintiff to the Defendant City Police Officer Stanionis City Police car. Defendants committed these acts in full view of the 45th Street residents, including but not limited to Defendant Steven Maviglio and Defendant Barbara Andres.

138.     In the process of tackling and restraining Plaintiff, Defendant City Police Officer Jared Robinet and/or Defendant City Police Officer Maryna Stanionis caused Plaintiff's blood to be spilled all over her clothes, front porch, and front yard steps.

139.     Defendant City Police Officer Maryna Stanionis further intentionally increased the pain suffered by Plaintiff from the City Police handcuffs. Defendant City Police Officer Maryna Stanionis squeezed Plaintiff's wrists; squeezed Plaintiff's bloodied, fractured, and lacerated right ring hand ring finger; and squeezed Plaintiff's unfractured left  hand and wrist.  Plaintiff after almost passing out explained to Defendant City Police Officer Maryna Stanionis that the handcuffs were causing her pain. Defendant City Police Officer Maryna Stanionis responded: "this is not supposed to be comfortable" or words to that

49

effect, and proceeded to tighten the handcuffs and thereby intentionally increased  These all happened on my front porch and before I was taken to the car  Plaintiff's injuries, pain, and  suffering, even though Plaintiff was already physically handcuffed, was not carrying a weapon,  and had no chance of escaping or harming Defendant City Police Officer Stanionis.

140.     After Plaintiff complained of pain from the handcuffs, Defendant Stanionis also intentionally tightened the handcuffs on Plaintiff's unfractured left hand and left wrist, and left hand fingers,  fingers to the point that Plaintiff lost all feeling in her left hand and left hand fingers, and Plaintiff's whole left hand was numb.

141.     On May 9, 2020, a reasonable police officer would have known that intentionally tightening the handcuffs of a person already handcuffed, when that person was already injured  and bleeding, constituted unreasonable force, excessive force, an unreasonable seizure,  or otherwise violated the United States Constitution.

142.     Plaintiff is informed and believes that the actions of handcuffing Plaintiff and dragging Plaintiff to the City Police car in full view of the 45th Street residents was done in concert with Defendant Andres, Defendant Maviglio, and/or the John Doe Conspirator Defendants.  Plaintiff is also informed and believes that this incident was also captured on multiple video cameras on 45th Street residences, including but not limited to the video camera Plaintiff has seen with her own eyes on the 1856 45th Street house of June Lamoureaux and Bill Kellerhals on the wall adjacent to the 1870 45th Street house of Defendant Barbara Andres, a camera that is s aimed directly at Plaintiff's house, front porch and front yard.

*Defendant City Police Officer Subjects A Handcuffed Plaintiff To A Body Search To*
*"Search For A Weapon" – That Robinet Knew Plaintiff Did Not Have*

143.    Defendant City Police Officer Jared Robinet knew or reasonably should have known through his own eyes that Plaintiff was wearing only leggings and a loose top, and could not have been carrying or concealing a weapon.

144.    Defendant City Police Officer Jared Robinet while in the process of touching, grabbing, injuring, and restraining Plaintiff,  learned, knew, should have learned, or should have known that Plaintiff was not carrying or concealing a weapon.

145.    Nevertheless, immediately before he flung Plaintiff into the back seat of the Defendant Officer Stanionis City Police car, Defendant City Police Officer Jared Robinet announced that he "needed to body search [Plaintiff] to see if you are carrying a weapon." Defendant City Police Officer Jared Robinet then conducted an intrusive body search of Plaintiff.  The body search of Plaintiff by Defendant City Police Officer Jared Robinet was conducted in full view of the 45th Street residents, including Defendant Steven Maviglio and Defendant Barbara Andres.

146.    On May 9, 2020, a reasonable police officer would have known that  conducting any body search of a person wearing only leggings and a loose top, and who had been seized and restrained minutes before, was an unreasonable search and/or unreasonable force or excessive force in violation of the United States Constitution Fourth Amendment.

147.     Plaintiff is informed and believes that the actions by Defendant Robinet and Defendant Stanionis of conducting an intrusive body search of Plaintiff in full view of the 45th Street residents was done in concert with Defendant Barbara Andres, Defendant Steven Maviglio, and the John Doe Conspirator Defendants, in order to: (i) demonstrate to these defendants that their plot, scheme, conspiracy, or plan with Defendant City's Police

Department to arrest and detain Plaintiff had been carried out; (ii) to provide entertainment to 45th Street residents; and/or (iii) for other purposes not related to any legitimate law enforcement objective.

148.    Plaintiff is informed and believes that the purpose of the acts of Defendant Robinet, Defendant Stanionis, Defendant City, Defendant Steve Maviglio, Defendant Barbara Andres, and the John Doe Conspirator Defendants was to intimidate Plaintiff from the exercise of federally and California law protected rights, by forcing Plaintiff to be assaulted, battered, and detained handcuffed by Defendant City's Police Officers.

149.    Upon information from Plaintiff's home security system video, after Defendant Robinet and Defendant Stanionis confined a handcuffed Plaintiff to the rear seat of the Stanionis City Police car, Defendant City Police Officer Jared Robinet, Defendant City Police Officer Maryna Stanionis, or both, returned to the front porch of Plaintiff's residence and seized Plaintiff's cellphone and Plaintiff's keys.

***Many of the Actions of Defendants Are Captured on Plaintiff's Home Security System Video, And Defendant City Has Not Released Body Worn Camera Video or Any Video***

150.    Plaintiff's home security system video captured many of the actions of Defendant Barbara Andres, Defendant Steven Maviglio, Defendant City Police Officer Jared Robinet, and Defendant City Police Officer Maryna Stanionis giving rise to this claim, beginning with Defendant Maviglio yelling at Plaintiff; Defendant Maviglio hand signaling Defendant Andres to come and yell at Plaintiff; the hand signaling of Defendant City Police Officer Jared Robinet by Defendant Barbara Andres from Plaintiff's sidewalk and driveway; including the stalking, assault, battering, and false imprisonment of Plaintiff by Defendant City Police Officer Jared Robinet; the trespassing of Plaintiff's front yard by Defendant City Police Officer Maryna Stanionis; the false imprisonment of

52

Plaintiff by Defendant City Police Officer Stanionis; the dragging of Plaintiff by Defendants City Police Officer Robinet and City Police Officer Stanionis to the Officer Stanionis City Police car where Plaintiff was unlawfully detained; the seizure of Plaintiff's keys and cellphone; the blood on the porch; and many but not all of the other actions by Defendant Robinet and Defendant Stanionis.

151.    Defendant City has not provided any Body Worn Camera (BWC) video or recordings of the May 9, 2020 seizure or other restraining of Plaintiff, even though Plaintiff has requested any and all BWC or recordings of the  May 9, 2020 events at 1859 45th Street, in two or more multiple California Public Records Act (CPRA) requests to the City Police that Plaintiff  began sending on May 11, 2020. Plaintiff, upon information and belief, submits that the BWC video and other recordings not produced by Defendant City under the CPRA would show, among many things: (i) the up close and personal illegal seizure, assault, battery, and false imprisonment committed by Defendant Robinet on Plaintiff's front porch; (ii) the up close and personal illegal seizure, assault, battery, and false imprisonment committed by or assisted by Defendant Stanionis on Plaintiff's front porch; (iii) the up close and personal handcuffed illegal detention of Plaintiff in the back seat of the Officer Stanionis City Police car; (iv) Defendant Stanionis and/or Defendant Robinet communications to, from or with Defendant Andres, Defendant Maviglio, and/or one or more 45th Street residents, including one or more of the John Doe Conspirator Defendants.

152.    Upon information and belief, Plaintiff alleges that Defendant City's Police Department ordered or allowed Defendants Robinet and Stanionis to, during the acts of May 9, 2020 alleged in this Complaint: (i) not wear Body Worn Cameras; or (ii) turn off Body Worn Cameras.

153.    Upon information and belief, Plaintiff alleges that Defendant City intentionally destroyed or discarded any BWC video of the acts of May 9, 2020 giving rise to this Complaint.

154.    Upon information and belief, Plaintiff alleges that Defendant City with reckless indifference destroyed or discarded any BWC video of the acts of May 9, 2020 giving rise to this Complaint.

***Plaintiff is Handcuffed And Questioned – Without* Miranda v. Arizona *Warnings, And Without Water Or The Accompany To Secure Here House Against Unauthorized Entries***

155.    On May 9, 2020, a reasonable police officer would have known that once a person is in police custodial interrogation, the police may not question that person without first giving the person  the *Miranda v. Arizona* warnings. *Miranda v. Arizona* , 384 U.S. 436 (1966).

156.    Plaintiff asked Defendant City Police Officer Maryna Stanionis multiple times for water. Defendant Stanionis refused Plaintiff's requests for water multiple times, even though Plaintiff was extremely dehydrated, handcuffed, bleeding, shocked, and in great pain.

157.    Further, Defendant City Police Officer Stanionis even went so far as to refuse Plaintiff's request for Defendant City Police Officer Stanionis to accompany Plaintiff to her house to obtain water, or for Defendant City Police Officer Stanionis to obtain water for Plaintiff from Defendant Barbara Andres or Defendant Steven  Maviglio.

158.    Defendant City Police Officer Maryna Stanionis intentionally denied Plaintiff's request for Officer Stanionis to accompany Plaintiff back to Plaintiff's house, a visit that would have enabled Plaintiff to lock the house doors and prevent any illegal entries.

159.     On May 9, 2020, a reasonable police officer would have known it was unreasonable and unconstitutional to intentionally refuse a person in custodial interrogation the opportunity to secure their nearby or adjacent residence from illegal entries through a short visit while in the custody of the police officer.

160.     Defendant City Police Officer Maryna Stanionis kept Plaintiff confined and handcuffed in a City Police car on May 9, 2020 where all of the police car windows were closed for all of the detention period, and the doors were closed for most of the detention period. The City Police car was locked the entire time. Defendant City Police Officer Stanionis intentionally kept Plaintiff confined in this hot car and denied water to Plaintiff even though Defendant City Police Officer Stanionis knew Plaintiff was bleeding, dehydrated, shocked, and complaining of pain.

161.     On May 9, 2020, a reasonable police officer would have known it was unreasonable and unconstitutional to intentionally refuse water to a person in custodial interrogation, when that person was already restrained, was visibly dehydrated, was bleeding, and was in extreme pain.

***Defendant City Police Officer Robinet Seizes Plaintiff's Cellphone Without A Warrant And Gives It to Stanionis Who Takes It To Meetings With Maviglio and Andres***

162.     Upon information from Plaintiff's home security system video, Defendant City Police Officer Maryna Stanionis was given Plaintiff's keys and cellphone by Defendant City Police Officer Robinet, who had seized them from the front porch of Plaintiff's residence.

163.     Upon information and belief from Plaintiff's own eyes while detained in the Stanionis Cioty Police car rear seat,  , Defendant Maryna Stanionis took Plaintiff's

cellphone with her to 1901 45th Street, the home of Defendant Steven Maviglio, where Defendant City Police Officer Maryna Stanionis met with Defendant Maviglio multiple times in back and forth runs between the Stanionis City Police car and the house of Defendant Maviglio. These meetings lasted at least one hour.

164.　　Upon information from Plaintiff's own eyes while detained handcuffed in the Stanionis City Police car rear seat, while in possession of Plaintiff's cellphone, Defendant City Police Officer Maryna Stanionis also met with Defendant Barbara Andres.

165.　　Upon information from Plaintiff's own eyes while detained handcuffed in the rear seat of the Stanionis City Police car, and from Plaintiff's home security system video, while in possession of Plaintiff's cellphone, Defendant City Police Officer Maryna Stanionis and/or Defendant City Police Officer Jared Robinet met with one or more residents of 45th Street or other persons present on 45th Street. Upon information and belief, in these conversations which Defendant Stanionis and/or Defendant Robinet discussed Plaintiff.

166.　　Upon information from Plaintiff's own eyes while Plaintiff was detained handcuffed in the rear seat of the Stanionis City Police car, and from Plaintiff's home security system video, Defendant Andres spoke to Defendant Robinet and wrote content on a piece of paper.

***Defendant City Police Officers Robinet and Stanionis Converse With Defendant Maviglio, Defendant Andres, And Other Residents of 45th Street***

167.　　Upon information from Plaintiff's own eyes while Plaintiff was detained handcuffed in the rear seat of the Stanionis City Police car, and from Plaintiff's home security system video, Defendant Robinet and/or Defendant Stanionis conversed with the male who lives with and/or visits the tenants of the 1916 45th Street house. Defendants

Robinet and/or Stanionis were shown or received from this person a video this person had taken of Plaintiff. This person drives a white car; says he goes to some sort of "police academy"; has given multiple first names including Abe and Alex; and on May 9, 2020, during and after the 45th Street events alleged in this Complaint, was seen hanging around Defendant Barbara Andres; talking with Defendant Barbara Andres; talking with Defendant City Police Officer Robinet;  and showing Defendant Robinet and/or Defendant Stanionis cellphone video footage of Plaintiff  taken by this person on May 8, 2020 (the day before the false arrest).

168.    Upon information and belief, Plaintiff alleges that in these meetings by Defendant Robinet and/or Defendant Stanionis with Defendant Maviglio, Defendant Andres, and/or other residents of 45th Street, the topic of conversation was Plaintiff or Plaintiff's residence.

169.    Based upon information from Plaintiff's own eyes while detained in the rear seat of the Defendant Stanionis City Police car, in between meetings with Defendant Maviglio and Defendant Andres, Defendant City Police Officer Maryna Stanionis kept coming back to the Stanionis City Police car, where she interrogated Plaintiff without giving Plaintiff any *Miranda v. Arizona* warnings. Defendant City Police Officer Maryna Stanionis refused to give Plaintiff any water even though Plaintiff told Defendant City Police Officer Stanionis that "until you give me some water, I will not be answering any of your questions" or words to that effect.

170.    Defendant City Police Officer Maryna Stanionis told Plaintiff while Plaintiff was detained handcuffed in the back seat of the City Police car that "when a police officer tells you something you listen". When Defendant Stanionis made this statement, Defendant Stanionis knew or reasonably should have known that Defendant Robinet had never

commanded Plaintiff to do anything before Defendant Robinet seized Plaintiff.

171.     None of the questions asked of Plaintiff by Defendant City Police Officer Maryna Stanionis in the handcuffed custodial interrogation referred to any "battery." Instead, Defendant City Police Officer Maryna Stanionis kept asking questions about a person named "Steve", and Plaintiff responded by telling her "go ask Steve Maviglio."

172.     Plaintiff is informed and believes that the questions asked of Plaintiff by Defendant City Police Officer Stanionis were suggested or created by Defendant Steven Maviglio, Defendant Barbara Andres, and/or one or more of the John Doe Conspirator Defendants.

173.     Plaintiff was detained handcuffed in the back seat of the Defendant Officer Stanionis City Police car for approximately one hour. Defendant City Police Officer Stanionis interrogated Plaintiff with questions without giving Plaintiff *Miranda v. Arizona* warnings even though Defendant City Police Officer Stanionis had Plaintiff in handcuffed custodial interrogation the entire time (while she was bleeding).

174.     Plaintiff while detained in the Defendant Stanionis City Police car observed one or more in-car or backseat cameras that appeared to be operating while Plaintiff was detained. Plaintiff beginning on May 11, 2020 sent one or more CPRA requests to Defendant City for recordings taken with these cameras, but Defendant City has not produced any recordings from any camera in the Stanionis City Police car.

*Plaintiff Was Recorded While Handcuffed On A City Police Car Video That Defendant*
*City Will Not Release*

175.    The City Police car used by Defendant City Police Officer Maryna Stanionis during the custodial interrogation of Plaintiff contained a backseat camera that was capable of either or both recording the interrogation and livestreaming the interrogation.

176.    Plaintiff observed that the backseat camera was turned on during the custodial interrogation of Plaintiff conducted by Defendant Officer Maryna Stanionis.

177.    Beginning on May 11, 2020, Plaintiff sent Defendant City Police one or more CPRA requests for any video from the City Police car backseat cameras or from Body Worn Camera video of Defendant City Police Officer Maryna Stanionis, but Defendant City Police has not produced any videos or recordings.

178.    Beginning on May 11, 2020, Plaintiff sent to the Defendant City Police one or more CPRA requests for Body Worn Camera video of Defendant City Police Officer Jared Robinet, but Defendant City Police has not provided any.

179.    Beginning on May 11, 2020, Plaintiff in one or more CPRA requests, asked for City Police Use of Force Reports regarding the May 9, 2020 acts toward Plaintiff of Defendant City Police Officer Robinet and Defendant City Police Officer Stanionis, but Defendant City Police has not provided any.

180.    Beginning on May 11, 2020, Plaintiff sent one or more CPRA requests to Defendant City Police requesting records of the physical characteristics and armament of City Police Officers Jared Robinet and Maryna Stanionis on May 9, 2020, but Defendant City Police has not produced any of these records.

181.    Beginning on May 11, 2020, Plaintiff sent one or more CPRA requests to Defendant City Police requesting records of the communications of Defendant City Police

officers Robinet and/or Stanionis with Defendant Andres, Defendant Maviglio, and other persons on May 9, 2020, but Defendant City Police has not produced any of these records.

182.     While Defendant City Police Officer Stanionis was meeting with Defendant Steve Maviglio and Defendant Barbara Andres, and while Defendant City Police Officer Stanionis was detaining Plaintiff in handcuffs, Defendant City Police Officer Jared Robinet met with: (i) Defendant Andres; (ii) Defendant Maviglio; and (iii) one or more residents of 45th Street who include one or more John Doe Conspirator Defendants. Any or all of these Defendants likely defamed Plaintiff in communications induced by Defendant City Police Officer Jared Robinet and/or Defendant City Police Officer Maryna Stanionis.

### *Defendant City Police Officer Stanionis Retaliates Against Plaintiff For Saying "The Iranian Life Matters Too"*

183.     At the end of the detention interrogation, Defendant City Police Officer Maryna Stanionis  pulled Plaintiff out of the City Police car by pulling Plaintiff's legs out feet first, which made the pain and suffering even more excruciating. Defendant City Police Officer Maryna Stanionis only released Plaintiff from the City Police handcuffs until after Plaintiff was forced to turn her body around while sitting handcuffed, resulting in more great bodily great bodily injury, pain, and suffering.

184.     After Defendant City Police Officer Maryna Stanionis released the City Police handcuffs from Plaintiff, Plaintiff told Defendant Officer Maryna Stanionis that: "you gave me a first hand lesson and now I understand  why African-Americans are so afraid of the police, and now I understand the notion behind the Black Lives Matter more. And the Iranian life matters too."  Defendant City Police Officer Maryna Stanionis responded as

60

1  follows: "that was very rude."

2  ***Defendant City Threough Robinet and Stanionis Charge Plaintiff With One***

3  ***Charge That The Sacramento County District Attorney Dismissed***

4
5  *185.*   Defendants City, City Police, Defendant City Police Officer Jared Robinet, and Defendant

6  City Police Officer Maryna Stanionis never charged Plaintiff with any offense other than

7  Penal Code Section 148(a)(1) "resisting arrest."[2] The criminal complaint for this charge[3] was

8  dismissed by the Sacramento County District Attorney for "Insufficient Evidence" on October

9  15, 2020, when the Sacramento County District Attorney went *ex parte* to the Sacramento

10  County Superior Court Department 2 Judge and asked for dismissal of its' own criminal

11  complaint that was based exclusively on Defendant City Police Officer Jared Robinet's May

12  9, 2020 "arrest" of Plaintiff and the allegation that Plaintiff "interfered" with Defendant City

13  Police Officer Robinet.

14
15  ***Defendant City Police Officer Stanionis Threatens Plaintiff With Continued Custody If***

16  ***Plaintiff Persists In Asking Why Plaintiff Was Arrested***

17  *186.*   At no point did Defendant Robinet or Defendant Stanionis tell Plaintiff who Plaintiff

18  allegedly "battered".

19
20  *187.*   At the end of the May 9, 2020 handcuffed detention and interrogation, Defendant City

21  Police Officer Stanionis and Defendant City Police Officer Robinet finally gave Plaintiff a

22  *Miranda v. Arizona* warning, but they had no more custodial questioning for Plaintiff to

23  endure.

24  [2] California Penal Code Section 148, subdivision (a)(1) states in pertinent part as follows:

25  "Every person who willfully resists, delays, or obstructs any public officer, peace officer . . . in the discharge
26  or attempt to discharge any duty of his or her office or employment, when no other punishment is
27  prescribed,  shall be punished by a fine not exceeding one thousand dollars ($1,000), or by imprisonment in
a county jail not to exceed one year, or by both that fine and imprisonment."

28  [3] Sacramento County Superior Court Case Number 20 MI 010143, *People v. Parvin Olfati.*

*188.*     Defendants City Police Officers Stanionis and Robinet did not explain to Plaintiff the outcome of any "investigation" Defendant City Police Officer Robinet had said was being conducted, or the specifics of any "battery" that Defendant City Police Officer Robinet had said "we're investigating." Instead, Defendants City Police Officers Robinet and Stanionis served Plaintiff with a Notice to Appear in Sacramento County Superior Court on July 7, 2020[4] for a standalone California Penal Code Section 148, subdivision (a)(1) charge. Plaintiff asked Defendant Officer Maryna Stanionis what the Notice to Appear was for, and the Defendant said: "for resisting the arrest", or words to that effect. Plaintiff then asked Defendant Stanionis: "why did you arrest me anyway?" Defendant Stanionis (in the presence of Defendant Robinet)  told Plaintiff: "do you want to be released?" or "do you want to go home?" or words to that effect.

*189.*     The conduct by Defendant City Police Officer Stanionis and Defendant City Police Officer Robinet described in the paragraph immediately above was a threat by Defendant City Police Officer Stanionis, Defendant City Police Officer Robinet, and Defendant City Police to further detain Plaintiff unless she refrained from asking why she had been arrested.

***Denial of Adequate Medical Care to Plaintiff***

***Defendants City, Robinet, and Stanionis See They Have Spilled Plaintiff's Blood, But Intentionally Do Not Call For Medical Help Until After They Subject Plaintiff To Handcuffed Custodial Interrogation***

190.     Defendants City, Robinet, and Stanionis knew and saw that Plaintiff's blood had been spilled, Plaintiff's right hand ring finger had been fractured, and Plaintiff's finger had been lacerated – all through the actions of these Defendants.

---

[4] This arraignment date was later changed by the Superior Court to October 20, 2020.

191.          The proper medical care for Plaintiff's injured right hand ring finger that needed eight (8) stitches was not to wait for an hour or more and merely put a bandage on the fractured, lacerated, and bleeding finger. Plaintiff's injured finger should have been handled immediately, and in such a way that there would be no infections as a result of Plaintiff being confined in the City Police car; assaulted and battered on the concrete floor of her front porch; and being physically grabbed, pulled, pushed  and person-handled by two unmasked officers of Defendant City's Police Department. Defendants City and City Fire Paramedic One should have cleaned Plaintiff's fractured, lacerated, and bleeding finger to prevent the possible infections, then do what it needed to be done to stop the bleeding, and finally wrap the finger with clean gauze. City Fire Paramedic Two had begun this process but was ordered to stop by Defendant City Fire Paramedic One, who was acting in concert with Defendant City Police Officer Maryna Stanionis to prevent City Fire Paramedic Two from so doing, Defendant City Fire Paramedic One first hearing Defendant Stanionis describe Plaintiff as a "mental case" or "5150 case" (or words to that effect), then Defendant City Fire Paramedic One ordering the gauze-applying City Fire Paramedic Two to instead "just put a bandage on it" as if all that needed medical attention was a little scratch  -- not Plaintiff's Robinet-lacerated finger.

192.      Defendants Robinet and/or Stanionis could have called Defendant City's Fire Department to summon immediate medical assistance to provide Plaintiff with adequate medical care, but intentionally failed to do so, either through individual failures to act, or pursuant to a City policy, final decision, rule, regulation, policy statement, or custom that is so widespread as to be standard operating procedure.

193.     Defendants City, Robinet, and Stanionis continued the denial of adequate medical care, excessive force, handcuffing, dragging, and custodial interrogation of Plaintiff without summoning medical care, even though Plaintiff was visibly injured and had complained to Defendant Stanionis about the pain Plaintiff was suffering from the handcuffs. Defendant Stanionis responded by telling Plaintiff "it is not supposed to be comfortable", tightening the handcuffs again, continuing to deny Plaintiff water, and later keeping Plaintiff in the back seat of the Stanionis City Police vehicle that was locked and windows-closed most of the time, while subjecting Plaintiff to handcuffed custodial interrogation without *Miranda v. Arizona* warnings using questions Plaintiff upon information and belief alleges were fed to Defendant Stanionis by Defendant Maviglio, Defendant Andres, or one or more of the John Doe Conspirator Defendants.

194.     Upon information and belief, Defendant City Police Officer Reason was present at or near 1859 45th Street when this denial of adequate care occurred; saw or was otherwise aware of the denial; had a realistic opportunity to intervene to prevent the denial; but shirked and breached his duty to intervene.

195.     Defendants City, Robinet, Stanionis, and Reason knew Plaintiff needed medical care that was adequate to fully heal her fractured, lacerated, and bleeding right hand ring finger. Defendant City Police Officer Maryna Stanionis asked Plaintiff at the end of the Stanionis custodial handcuffed interrogation of Plaintiff the following question that had an obvious answer: "do you need medical help?"  Plaintiff was scared to respond because Plaintiff thought if Plaintiff said "yes", then Defendant City Police Officer Stanionis might deny medical care to Plaintiff, since Defendant Stanionis minutes before

had said "to Plaintiff this is not supposed to be comfortable" in response to Plaintiff's complaint about the pain the handcuffs were causing – and then Defendant Staanionis tightened the handcuffs, and refused on multiple occasions to give Plaintiff water.

### *Defendant City Police Officer Maryna Stanionis Tells Defendant City Fire Paramedic One That Plaintiff Is A "Mental Case" Or A "5150 Case"*

196.      Defendant City Fire Paramedic One is the City employee who ordered another City Fire employee (City Fire Paramedic Two) to stop applying gauze and other necessary medical treatment to Plaintiff's fractured, lacerated, and bleeding right hand ring finger. Defendant City Police Officer Stanionis contributed to this denial by describing Plaintiff to City Fire Paramedic One or other City Fire employees as a "mental case" or as a "[Welfare & Institutions Code Section] 5150 case", or words to that effect.

197.      The proper medical care for Plaintiff's injuries required Defendant City Police Officer Stanionis to tell City Fire paramedics that Plaintiff had suffered a serious or great bodily injury and needed immediate attention. Instead, Defendant Stanionis told the City Fire paramedics that Plaintiff was a "mental case" or a "5150 case", words that were chosen and intentionally spoken by Defendant Stanionis in order to discourage City Fire paramedics from giving Plaintiff adequate medical care.

198.      Plaintiff suffered great bodily great bodily injury from the actions of Defendant City, Defendant Robinet, Defendant Stanionis, Defendant Reason, and/or the John Doe City Defendants, including but not limited to the fracturing, laceration, and bleeding of her right hand ring finger, which required eight (8) stitches in addition to care for fracture on the finger. In addition, Defendant City Police Officer Stanionis and/or

Defendant City Police Offidcer Robinet continued their denial of water to Plaintiff –

neither Defendant Stanionis nor Defendant Robinet said anything to any of the City Fire

paramedics about proving water to Plaintiff, even though Plaintiff was visibly dehydrated.

199.            After the custodial City Fire paramedics were called to 1859 45th Street

and when they arrived, Defendant City Police Officer Stanionis told one of the City Fire

paramedics that Plaintiff was a "mental case" or a "[California Welfare & Institutions

Code Section] 5150 case", Defendant City Police Officer Stanionis referring to California

Welfare & Institutions Code Section 5150 that authorizes involuntary civil commitment or

confinement of persons found to be "gravely disabled" or a danger to themselves or

others.

200.            Upon information and belief, Defendant City Police Officer Reason was

present at or near 1859 45th Street when this denial of adequate care occurred; saw or was

otherwise aware of the denial; had a realistic opportunity to intervene to prevent the

denial; but shirked and breached his duty to intervene.


***Defendant City Fire Paramedic One Then Stops Adequate Medical Care That
Was Being Provided To Plaintiff***


201.            Immediately after Defendant City Police Officer Maryna Stanionis referred

to Plaintiff as a "mental case" or a "[California Welfare & Institutions Code Section] 5150

case" (or words to that effect), City Fire Paramedic One said that he "was going to take

care of it, OK?" When Plaintiff asked the City Fire Paramedic One "please do not talk to

me like a five year old", City Fire Paramedic One said "you are not very nice." City Fire

Paramedic Two began to place gauze around Plaintiff's fractured, lacerated, and bleeding

66

right hand ring finger, but was ordered by City Fire Paramedic One to stop, City Fire

Paramedic One telling City Fire Paramedic Two: "Just put a bandage on it."

202.        "Just putting a bandage" on Plaintiff's fractured, lacerated, and bleeding ritght

hand ring finger was the only medical care for Plaintiff Defendants City, City Police, City

Fire, City Fire Paramedic One, City Police Officer Jared Robinet, and City Police Officer

Maryna Stanionis allowed City Fire Paramedic Two to provide, and in  the process, these

Defendants denied Plaintiff adequate medical care.

203.        The proper medical care for Plaintiff's injured finger that needed eight (8)

stitches was not to merely put a bandage on the fractured, lacerated, and bleeding finger.

Plaintiff's injured finger should have been handled in such a way that there would be no

infections as a result of Plaintiff being confined in the City Police car; assaulted and

battered on the concrete floor of her front porch; and being physically grabbed, pulled,

pushed  and person-handled by two unmasked officers of Defendant City's Police

Department. Defendants City and City Fire Paramedic One should have cleaned Plaintiff's

fractured, lacerated, and bleeding finger to prevent the possible infections, then do what it

needed to be done to stop the bleeding, and finally wrap the finger with clean gauze. City

Fire Paramedic Two had begun this process but was ordered to stop by Defendant City

Fire Paramedic One, who was acting in concert with Defendant City Police Officer

Maryna Stanionis to prevent City Fire Paramedic Two from so doing, Defendant City Fire

Paramedic One first hearing Defendant Stanionis describe Plaintiff as a "mental case" or

"5150 case" (or words to that effect), then Defendant City Fire Paramedic One ordering

the gauze-applying City Fire Paramedic Two to instead to "just put a bandage on it" as if

all that needed medical attention was a little scratch  -- not Plaintiff's Robinet-lacerated

finger.

204.          The identities of Defendant City Fire Paramedic One and City Fire Paramedic Two are presently unknown to Plaintiff, so Plaintiff is suing Defendant City Fire Paramedic One as one of the John Doe City Defendants. Plaintiff expects Defendant City to provide information in discovery regarding the identity of Defendant City Fire Paramedic One, and upon receipt of such information, Plaintiff will amend the Complaint. On April 1, 2021, Plaintiff caused to be delivered a CPRA request to Defendant's City Clerk requesting the names, identification numbers, duty statements, and records of any City Fire paramedics or supervising paramedics interacting with Plaintiff or providing services at 1859 45th Street on May 9, 2020.

***Defendant City's Fire Department After Denying Plaintiff Adequate Medical Care Sends A Bill to Plaintiff's Address For May 9, 2020 City Fire Activity That Names A Person Other Than Plaintiff***

205.          To add insult to injury, on some date after May 9, 2020, Defendant City's Fire Department sent a bill to Plaintiff's address purporting to bill for City Fire activity on May 9, 2020, but naming as the natural person addressee of such a bill a name other than Plaintiff's name. This bill was later stolen from Plaintiff's house. along with many other personal items. Plaintiff on March 29, 2021 caused to be personally delivered to Defendant City's City Clerk a CPRA request for a true and correct copy of any bill addressed to 1859 45th Street for any City Fire activity on May 9, 2020 at such address..

*__Defendant City Police Officer Jared Robinet's Attempt To Entrap Plaintiff Into Blaming__*
*__Herself For The Injuries Plaintiff Suffered From Defendant City Police Officer Robinet__*

206.           After Defendant City Fire Paramedic One halted the full and adequate
treatment of Plaintiff's fractured, lacerated, and bleeding right hand ring finger,
Defendant City Police Officer Stanionis and Defendant City Police Officer Robinet
summoned two other City Police officers (a male and female whose identities are
unknown to Plaintiff, and whom Plaintiff is not suing in this action), who came with a
camera and photographed the blood from Plaintiff that the actions of Defendant Robinet
and Defendant Stanionis had caused to spill all over Plaintiff's front porch, front door,
and front yard stairs. The male City Police officer in this team while carrying a camera
spoke with Defendant City Police Officer Jared Robinet. In that conversation, , Officer
Robinet told the male officer with the camera something that Plaintiff could not hear. As
soon as the City Police officer with the camera ended his conversation with Defendant
Robinet, the City Police male officer with the camera approached Plaintiff and said: "I
am going to take a picture of the finger you injured" or words to that effect. Plaintiff
immediately told this City Police officer that the statement he had just made to Plaintiff's
face was a mischaracterization. Plaintiff told the City Police officer with the camera that
this officer (with Plaintiff pointing to Defendant City Police Officer Robinet) had
mischaracterized Plaintiff as the person who injured Plaintiff's finger, effectively saying
"Plaintiff injured her own finger", or words to that effect. Plaintiff told the camera-
carrying City Police officer that this statement by Defendant Robinet that Plaintiff
injured her own finger was therefore a misrepresentation. Defendant City Police Officer

Jared Robinet made no response to Plaintiff's direct refutation of his statement that

Plaintiff had injured her own finger.

207.    The male City Police officer with the camera then said "ok, I am going to take a

picture of the finger that was injured" – to which Plaintiff immediately responded "no, the

finger that was injured by this officer" and Plaintiff pointed one of her un-injured fingers

at Defendant City Police Officer Jared Robinet, who again made no response.


208.    The actions of Defendants City, City Fire Paramedic One, City Police Officer

Robinet, and City Police Officer Stanions were an intentional denial of adequate medical

care to Plaintiff for injuries caused by Defendants City, Robinet, and Stanionis, under the

circumstances where City Fire Paramedic Two had already begun to give Plaintiff

adequate medical care, but was stopped by Defendant City Fire Paramedic One.

209.    The actions of Defendants City, City Fire Paramedic One, City Police Officer

Robinet, and City Police Officer Stanions were recklessly indifferent to Plaintiff's need

for adequate medical care for injuries caused by Defendants City, Robinet, and Stanionis,

under the circumstances where City Fire Paramedic Two had already begun to give

Plaintiff adequate medical care, but was stopped by Defendant City Fire Paramedic One.

210.    The actions of Defendants City, City Fire Paramedic One, City Police Officer

Robinet, and City Police Officer Stanions in denying adequate medical care to Plaintiff for

injuries caused by Defendants City, Robinet, and Stanionis were actions that were

unreasonable under the circumstances where City Fire Paramedic Two had already begun

to give Plaintiff adequate medical care, but was stopped by Defendant City Fire

Paramedic One.

211.     The actions of Defendants City, City Fire Paramedic One, City Police Officer Robinet, and City Police Officer Stanions in denying adequate medical care to Plaintiff for injuries caused by Defendants City, Robinet, and Stanionis were actions that were unreasonable under the circumstances where City Fire Paramedic Two had already begun to give Plaintiff adequate medical care, but was stopped by Defendant City Fire Paramedic One, whose "just put a bandage on it" command was unreasonable and recklessly indifferent under the circumstances, whether or not in furtherance of City Fire policies, procedures, rules, regulations, or custom that is so widespread as to be standard operating procedure, and whether or not: (i) the City Fire Department allows, encourages, or directs City Fire supervisors or supervising paramedics to order subordinate City Fire paramedics not to provide medical care to persons in visible need of care; and/or  (ii) where the City Police Department allows, encourages, or directs City Police officers to disparage, trivialize, denigrate, discourage, or prevent the providing of adequate medical care to persons injured by City Police Department officers.

212.     Plaintiff alleges the existence of a City Fire policy, final decision, or custom so widespread as to be standard operating procedure as described in item (i) in the paragraph directly above, including but not limited to the policy or custom revealed on March 14, 2021 in a *Sacramento Bee* investigation of a hostile work environment at City Fire, including but not limited to City Fire captains telling a City Fire paramedic to "back off" attempting to resuscitate a car fire victim, who subsequently died, the victim died, and the City Fire paramedic who was told to "back off" from any resuscitation felt "their disrespect for me was so great, that they let it affect their decision to [not to] help me resuscitate this young man." *Sacramento Bee*, March 14, 2021, Section A, pages 1 and 16,

page 16, column 4, second and third full paragraphs, story headlined on page 1 as "Fire department focus of racism, hazing probe", authored by Marcus D. Smith.

***Defendant City Through Its' Police Department, Fire Department, Defendant Robinet, Defendant Stanionism Defendant Reason, And/or The John Doe City Defendants Sends False and Defamatory Content About Plaintiff To Healthcare Providers To Interfere With Plaintiff's Attempts To Get Medical Care***

**213.**     Plaintiff shortly after May 9, 2020 went to one or more health care providers in Sacramento to get medical care for her injuries, including but not limited to Elica Health Centers. Plaintiff told the health care providers that she visited, including Mercy General Hospital and Elica Health Centers, that her injuries were caused by "police brutality" from actions of Defendant City's Police Department. '

214.     Plaintiff received initial care from Elica Health Centers and was tiold to return. When Plaintiff returned to Elica Heakth Centers, one or more Elica Health Centers employees told Plaintiff that "law enforcement" sources had given to Elica Health Centers a large number of Plaintiff's medical records from hospitals she had visited prior to Plaintiff's May 9, 2020 injury from Defendants.

215.     Plaintiff told Elica Health Centers that Plaintiff did not understand the relevance of records from long-ago visits to other health care providers to her attempt to get medical care for  injuries she had only recently received. Plaintiff also asked Elica Health Centers employees  why they were suddenly interested in communications about Plaintiff from "law enforcement" agencies. Plaintiff asked

for the names of the law enforcement agencies, and asked to see the information

that the "law enforcement agencies" had communicated to Elica Health Centers.

Elica Health Centers employees refused to answer Plaintiff's questions, and

refused to show or provide the "law enforcement" communications to Plaintiff.

216.     Plaintiff thereafter caused to be delivered to Elica Health Centers a medical

records request letter under the California Health & Safety Code Section 123100

and the federal Health Insurance Portability and Accountability Act. To this day

Elica Heath Centers has not responded and has not provided any records to

Plaintiff of the "law enforcement" communications about Plaintiff Elica Health

Centers told Plaintiff it had received,

217.     Upon information and belief, Plaintiff alleges that these communications

from "law enforcement" to Elica Health Centers and other health care providers

came from Defendant City's Police Department, Fire Department, Defendant City

Police Officer Jared Robinet, Defendant City Police Officer Maryna Stanionis,

Defendant City Police Officer Nathaniel Reason, and/or or one or more of the John

Doe City Defendants. And were sent to Elica Health Centers and other health care

providers in order to: (i) interfere with Plaintiff's efforts to obrain medical care for

her injuries; (ii) retaliate against Plainriff for describing the cause of Plaintiff's

injuries as "police brutality"; (iii) defame Plaintiff; (iv) place Plaintiff in a false

light; (v) induce health care providers (including Elica Health Centers) not to

provide medical care to Plaintiff for injuries that could be directly traced to any or

all of the Defendants.    .

73

218.     Because of the obvious compromising of Plaintiff's health care by Defendant City's Police Department, Plaintiff has been unable to get adequate health care for her great bodily injury caused by Defendant City's Police Department.

219.     Plaintiff sent Defendant City's Police Department sent one or more CPRA requests for records of communications by Defendant City's Police Department to health care providers that were of communications after May 9, 2020 that mentioned Plaintiff. Plaintiff has not received any of the requested records.

220.     The actions, policies, procedures, rules, regulations, final decisions, and/or widespread custom that amounts to standard operating procedure of Defendant City, together with the actions of Defendants City Fire Paramedic One, Robinet, Stanionis, Reason and the John Doe City Defendants violated Plaintiff's rights to adequate medical care under the California Constitution, Article I, Sections 7 and 13; constitute acts of threats, intimidation, and/or coercion in violation of the Tom Bane Civil Rights Act (California Civil Code Section 51.2); and otherwise violate Plaintiff's rights under California law, and render Defendants City, City Fire Paramedic One, Robinet, and Stanionis liable to Plaintiff.

221.     Toward the end of the custodial interrogation of Plaintiff, Defendant City Police Officer City Maryna Stanionis asked Plaintiff "do you need medical help?" or words to that effect. Plaintiff was insulted and suffered more pain and suffering as a result of this question, because it was obvious that Plaintiff's right hand ring finger was fractured, lacerated, and bleeding, and that Plaintiff was injured

74

222.      City Fire Department (City Fire) paramedics were called to 1859 45th Street to give Plaintiff medical attention. When the City Fire paramedics arrived, Defendant City Police Officer Stanionis told one of the City Fire paramedics ( I call him number one and the one who prevented the number two from giving me proper care) that Plaintiff is a "mental 5150 case", Defendant City Police Officer Stanionis referring to California Welfare & Institutions Code Section 5150 that authorizes involuntary confinement of persons found to be "gravely disabled" or a danger to themselves or others.

223.      Immediately after Defendant City Police Officer Maryna Stanionis referred to Plaintiff as a "mental 5150  case" (or words to that effect), one of the City Fire paramedics (who appeared to be in charge, "City Fire Paramedic One", ) that he "was going to take care of it, OK?". When Plaintiff asked the City Fire Paramedic One "please do not talk to me like a five year old", Paramedic One said "you are not very nice." City Fire Paramedic Two began to place gauze around Plaintiff's fractured, lacerated, and bleeding and hanging right hand ring finger and was having hard time to do it due to the fact that much of the finger was separated and hanging down -- but was ordered by City Fire Paramedic One to stop, City Fire Paramedic One telling City Fite Fire Paramedic Two: "Just put a bandage on it."

224.      "Just putting a bandage" on Plaintiff's fractured, lacerated, and bleeding right hand ring finger that part of it was lacerated and hanging was all Defendants City, City Police, City Fire, City Fire Paramedic One, City Police Officer Jared Robinet, and City Police Officer Maryna Stanionis allowed City Fire Paramedic Two to do, and in  the process, these Defendants denied Plaintiff adequate medical care. The proper medical care for Plaintiff's cut that needed eight (8) stitches is not to just put a bandage on it.  The injured finger should have been handled in such a way that there would be no infections as a

75

result of Plaintiff being confined in the City Police car; assaulted and battered on the concrete floor of her front porch; and being physically grabbed and person-handled by two unmasked officers. Defendant City Police should have cleaned Plaintiff's fractured, lacerated, and bleeding finger to prevent the possible infections, then do what it needed to be done to stop the bleeding, and finally wrap the finger with clean gauze. Yet Defendants City, City Fire, City Police, and Defendant City Police Officer Jared Robinet refused to do so, <u>even though City Fire Paramedic Two was beginning this process, but City Fire Paramedic One acting in concert with Defendant City Police Officer Jared Robinet and offier Maryna Stanionis prevented City Fire Paramedic Number Two from so doing, City Fire Paramedic One ordering him instead to "just put a bandage on it"</u> as if all that needed medical attention was a little scratch -- not Plaintiff's Robinet-lacerated finger.

***Defendant City Police Officer Jared Robinet Attempts To Entrap Plaintiff Into Blaming Herself For The Injuries She Suffered At Robinet's Hands***

225.     Defendants City Police Officer Stanionis and Defendant City Police Officer Robinet summoned two other City Police officers (a male and female whose identities are unknown to Plaintiff, and whom Plaintiff is not suing in this action), who came with a camera and photographed the blood from Plaintiff that had been spilled all over Plaintiff's front porch and front yard stairs by Defendants City Police Officers Jared Robinet and Maryna Stanionis.

**226.**     The male City Police officer in this team while carrying a camera spoke with Defendant City Police Officer Jared Robinet, and while under the eye of Defendant City Police Officer Jared Robinet, approached Plaintiff and said: "I am going (or we are

going)to take a picture of the finger you injured" or words to that effect. Plaintiff immediately told this City Police officer that this statement was one that effectively said "Plaintiff  injured her own finger" and therefore was a misrepresentation.  Plaintiff also pointed out to officer Robinett and told that this officer injured my finger.  The male City Police officer then said "ok, I am going to take a picture of the finger that was injured" and Plaintiff immediately responded "no, the finger that was injured by this officer" and pointed at Defendant City Police Officer Jared Robinet, who made no response.

### *Theft of Plaintiff's Personal Property When The House Was Left Unlocked Due To The Actions of Defendant City Police Officers Robinet and Stanionis*

227.      When Defendant City Police Officer Jared Robinet assaulted and battered Plaintiff on her front porch, the front door to Plaintiff's house was unlocked. When Defendant City Police Officer Robinet and Defendant City Police Officer Stanionis handcuffed Plaintiff and dragged her to the City Police car used by Defendant City Police Officer Stanionis, they left the front door to Plaintiff's residence open. The back door to Plaintiff's residence was also open.

228.      Plaintiff begged City Police Officer Stanionis to allow Plaintiff to go back to her residence (accompanied by and in the custody of City Police Officer Stanionis) (plaintiff also wanted to set the security alarm )to close and lock the doors to prevent illegal entries. Defendant City Police Officer Stanionis refused.

229.      On May 9, 2020, a reasonable police officer would have known that it was unreasonable and unconstitutional to deny a request from a person in custodial interrogation to secure that person's unlocked residence against illegal entries, when the residence was  nearby or adjacent and Plaintiff was willing to be accompanied there by Defendant City Police Officer Stanionis or Defendant City Police Officer Robinet.

77

230.     During the period in which Defendants City Police Officers Maryna Stanionis and Jared Robinet handcuffed and detained Plaintiff, and refused her request to return and secure the residence, Plaintiff's residence was illegally entered and valuable items of personal property were removed, including but not limited to a digital back up device containing multiple documents. Plaintiff filed a Police Report/Crime Report with the Defendant City's Police Department shortly after May 9, 2020 that Defendant City's Police Department has not investigated, answered, or responded to.

231.     This Defendant City Police misconduct, and the other Defendant City Police misconduct alleged and described herein, is in furtherance of one or more City Police policies, including but not limited to a policy announced in a March 2016 electronic mail message to City Police staff: "we are not accepting any Police Reports from Parvin Olfati" and to have City Police officers physically remove Plaintiff from the City Police Station at 5770 Freeport Boulevard (Sacramento, California 95822) if she tried to file one. The implementation of these policies by Defendant's City Police Department and its' officers, including but not limited to Defendant City Police Officers Robinet, Stanionis and Reason proximately caused the violation of Plaintiff's rights.

***Plaintiff's Cellphone And Keys Are Taken by Defendant City Police Officer Stanionis To Meetings With Defendant Maviglio and Defendant Andres***

232.     During the period in which Defendants City Police Officers Maryna Stanionis and Jared Robinet handcuffed and detained Plaintiff, Defendant City Police Officer Jared Robinet and/or officer Maryna Stanionis or both took Plaintiff's cellphone and keys to Defendant Maryna Stanionis, who kept them for the entire period of the custodial handcuffed interrogation of Plaintiff. While Defendant City Police Officer Maryna Stanionis returned all keys and the cellphone to Plaintiff when she and Defendant City

78

Police Officer Robinet finally released Plaintiff from custody, during this period Defendant City Police Officer Maryna Stanionis took all of the keys and the cellphone to meetings with Defendant Steven Maviglio and Defendant Barbara Andres, thus exposing the content of the keys to copying and the content of the cellphone to any number of persons, including but not limited to Defendant Maviglio and Defendant Andres.

233.      When Plaintiff's cellphone and keys were finally returned, Plaintiff reviewed the cellphone and noted that specific videos, photos, and other content had been deleted.

***234.***      With respect to her keys, including the house keys, Plaintiff submits that Defendant City Police Officer Robinet, Defendant City Police Officer Stanionis, and anyone who met with either prior to the return of the keys could have copied them.

***Defendant City's Police Targeting Of Plaintiff Prior To May 9, 2020 For Police Calls – And Refusal To Accept Police Reports From Plaintiff***

235.      Between January 4 and August 7 of 2020, there were approximately thirty City Police "CAD reports" targeting 1859 45th Street (Plaintiff's residence), more than one of which said "advised entry."

236.      Prior to May 9, 2020, there was also at least one visit to 1859 45th Street by Defendant City Police Officer Jared Robinet, including visits on the 2020 dates of January 30, March 10, and/or March 11.

237.      On March 11, 2020, in the afternoon, Defendant City Police Officer Jared Robinet knocked on the front door of 1859 45th Street when Plaintiff was not present. Plaintiff's friend who was in the house refused to open the door to Defendant City Police Officer Robinet, who then proceeded to issue a twenty-five dollar ticket to the friend's car.

238.    On multiple dates prior to March of 2016, Plaintiff filed multiple Police Reports in the form of written letters to the City Police Chief that were hand delivered to the City Police station. These Police Reports reported vandalism to Plaintiff's residence.

239.    On a date in March of 2016, Defendant City Police sent an electronic mail message to the City Police staff stating: "we are not accepting any Police Reports from Parvin Olfati", or words to that effect, and further instructing the staff to escort Plaintiff out of the City Police station (5770 Freeport Boulevard, Sacramento, California 95822) should she attempt to file one.

240.    Plaintiff after March 2016 and continuing through and after May 9, 2020 continued to file Police Reports with Defendant City Police, through written detailed letters to the Defendant City's Chief of Police. Prior to the coming of COVID-19 in February or March of 2020, these Police Reports were personally delivered to the City Police Records Department at 5770 Freeport Boulevard (Sacramento, California 95822). After City Police in-person services were closed due to COVID-19, these Police Reports were delivered to Defendant City's Police Department, addressed to the Chief of Police: (i) via electronic mail to CaSacramentoPd@coplogic.com and via U.S. Mail; and (ii) after this electronic mail address stopped receiving Plaintiff's police reports, via personal delivery to the City Clerk Box at the Sacramento City Hall Kiosk and via U.S. Mail, both addressed to the Chief of Police.

241.    Defendant City's Police Department on its' website has a portal for filing online Police Reports, but users of this "service" are limited to two thousand characters (not words). Plaintiff finds this portal to be useless and therefore insists upon using delivery methods that enable the delivery of content that exceeds two thousand characters and thus gives Plaintiff

the opportunity to fully describe the illegal, criminal, or suspicious acts that have occurred and place them in context.

242.     Among the Police Reports that Plaintiff that caused to be personally delivered to Defendant City Police through Defendant City's Chief of Police are two separate November 4, 2019 Police Reports describing the California Penal Code Section 118, subdivision (a) Perjury committed by Defendant Steve Maviglio and Defendant Barbara Andres. These Police Reports from Plaintiff to Defendant City's Chief of Police expressly and specifically charged both Defendant Steve Maviglio and Defendant Barbara Andres with California Penal Code Section 118, subdivision (a) Perjury.

243.     On May 4, 2020 – five days before the false arrest – Plaintiff caused to be sent via electronic mail to Defendant City's  Chief of Police a Police Report describing the *"Criminal Use of High-Beam Headlights With Intent To Injure By Steven Maviglio, Directed and/or Aided and Abetted By 45th Street Residents …"* the latter category including Defendant Barbara Andres.

244.     On May 8, 2020 – the night before the false arrest giving rise to this Complaint – Defendant Steven Maviglio's guest Mr. Joseph Lee Mastalski *, with intent to injure, pointed his vehicle high beam headlights directly at Plaintiff and her eyes in violation of California Vehicle Code Sections 24401, 24407, and 24409 and the Sacramento County COVID-19 Public Health Order. Plaintiff reported this in a Police Report sent via electronic mail to the Defendants City's Chief of Police on May 15, 2020..*

245.     On February 7, 2020, Plaintiff caused to be personally delivered to the Defendant City's Chief of  Police a Police Report describing reckless driving by Defendant Steven Maviglio where Defendant Steven  Maviglio as soon as he saw Plaintiff driving on 45th Street "rushed and got into his [license plate number deleted] truck, backed out of his

driveway, and physically stopped his truck on 45th Street directly in front of [Plaintiff].

Mr. Maviglio's intentional acts using his truck resulted in the blocking of {Plaintiff and

her] car, and forced [Plaintiff] to honk [her] car horn repeatedly", in conduct by Defendant

Maviglio that Plaintiff reported to Defendant City's Chief of Police was reckless or

intended to cause an accident.

246.        On September 12, 2019, Plaintiff caused to be delivered to Defendant City's Chief

of  Police a Police Report describing how Defendant Steven Maviglio threatened to "call

the police" against Plaintiff merely for walking on a public sidewalk.

247.        On May 8, 2020 – the night before the false arrest giving rise to this Complaint –

the husband and 1870 45th Street co-resident of Defendant Barbara Andres, Mr. Cecil

Taylor, ran out into 45th Street to block Plaintiff's driving of her car, and such blocking

was in violation of two California Vehicle Code sections. On May 15, 2020, Plaintiff

caused to be delivered to Defendant City's Chief of Police a Police Report describing this

illegal conduct.

**248.**    On May 11, 2020, Plaintiff caused to be personally delivered to Defendant City's Chief of

Police a Police Report describing the making of false communications to the City Police of

and concerning Plaintiff  by Defendant Barbara Andres and by Defendant Steven Maviglio

that led to the May 9, 2020 false arrest giving rise to this Complaint.


**249.**    On February 10, 2020, Plaintiff caused to be personally delivered to Defendant City's

Chief of Police a Police Report describing the following activity of Steven Maviglio guest Mr.

Joseph Lee Mastalski: **reckless driving on 45th Street in order to stop vehicle in the middle**

**of 45th Street in order to scream  at [Plaintiff]  "hey bitch" at [Plaintiff] as she was**

**standing in the driveway of her house at 1859 45th Street; offensive conduct -- all by**

1

**Joseph Lee Mastalski [street address omitted], Sacramento, California**

2

3

250.    So, both before and after the May 9, 2020 false arrest and excessive force giving rise to

4

this Complaint, Plaintiff was being targeted by Defendant City's  Police Department. Plaintiff

5

6

is informed and believes that this targeting of Plaintiff is based all or in part on  false

7

information from Defendant Steve Maviglio, Defendant Barabara Andres, and/or one or more

8

of the John Doe Conspirator Defendants.

9

10

**FIRST FEDERAL COUNT v. CITY POLICE OFFICER JARED ROBINET (0520):**

11

**UNREASONABLE SEIZURE, SEARCH, AND EXCESSIVE FORCE IN VIOLATION OF**

12

**FOURTH AMENDMENT; DENIAL OF FOURTEENTH AMENDMENT DUE PROCESS;**

13

**RETALIATION FOR FIRST AMENDMENT PROTECTED ACTIVITY   [42 U.S.C. 1983]**

14

15

251.       Plaintiff hereby re-alleges and incorporates by reference the allegations contained

16

in Paragraphs 1—250 as though fully set forth herein.

17

252.       The Fourth Amendment to the United States Constitution protects the right of

18

people including the Plaintiff, to be free from unreasonable searches and seizures. This

19

provision of the United States Constitution states as follows:  "The right of the people to

20

be secure in their persons, houses, papers, and effects, against unreasonable searches and

21

seizures, shall not be violated, and no Warrants shall issue, but upon probable cause,

22

23

supported by Oath or affirmation, and particularly describing the place to be searched, and

24

the persons or things to be seized."

25

26

253.       Defendant City Police Officer Jared Robinet violated Plaintiff's Fourth

27

Amendment rights by:

28

(a) Crossing the curtilage of Plaintiff's residence without a warrant or probable cause and remaining inside the curtilage without a warrant or probable cause, in order to physically seize and restrain Plaintiff.

(b) Physically seizing and restraining Plaintiff without a warrant inside the living room or cartilage of her residence.

(c) Arresting or purporting to arrest Plaintiff without a warrant inside the living room or curtilage of her residence.

(d) Physically seizing and restraining Plaintiff without probable cause inside the living room or curtilage of her residence.

(e) Arresting or purporting to arrest Plaintiff without probable cause inside the living room or curtilage of her residence.

(f) Physically seizing and restraining Plaintiff inside the living room or curtilage of her residence after any probable cause had dissipated.

(g) Arresting or purporting to arrest Plaintiff inside the living room or curtilage of her residence after any probable cause had dissipated.

(h) Physically seizing and restraining Plaintiff without a warrant inside the living room or curtilage of her residence when Plaintiff did not pose any threat to the safety of Defendant Robinet.

(i) Arresting or purporting to arrest Plaintiff without a warrant inside the living room or curtilage of her residence when Plaintiff did not pose any threat to the safety of Defendant Robinet.

(j) Physically seizing and restraining Plaintiff without a warrant inside the living room or curtilage of her residence without asking Plaintiff to communicate.

(k)  Arresting or purporting to arrest Plaintiff without a warrant inside the curtilage of her residence without asking Plaintiff to communicate.

(l)  Applying force to Plaintiff through handcuffs and physical restraint when there was no probable cause or other legitimate reason for any application of force.

(m) Continuing to apply force to Plaintiff through handcuffs and physical restraint when any probable cause had dissipated.

(n)  Refusing to answer Plaintiff's questions as to what she was under arrest for or under investigation for while applying excessive force to Plaintiff and subjecting her to a no-warrant search and seizure.

(o)  Applying excessive force (or any force) to Plaintiff when Plaintiff was visibly not armed and did not announce or pose any threat to Defendant City Police Officer Jared Robinet.

(p)  Applying excessive force (or any force) to Plaintiff when Plaintiff was visibly not resisting the "arrest" Defendant City Police Officer Robinet was making or purporting to make of Plaintiff.

(q)  Applying excessive force (or any force) to Plaintiff in the form of handcuffs when: (i) there was no warrant or probable cause for any seizure of Plaintiff; (ii) Plaintiff was not required (and did not answer) any questions posed to her by Defendant City Police Officer Stanionis during the latter's custodial interrogation of Plaintiff; and (iii) Plaintiff was not physically resisting the actions of Defendant City Police Officer Robinet and Defendant City Police Officer Stanionis.

( r )  Forcing Plaintiff to undergo an intrusive body search (or any body search) when Plaintiff was visibly wearing only leggings and a loose top, and visibly was not carrying any weapon (as Officer Robinet already knew when he grabbed, pulled Plaintiff out of her

house and injured her), and after Defendant Robinet knew this fact from touching, grabbing, and pulling Plaintiff out of her house and injuring her. .

(s) Seizing Plaintiff's cellphone and its' contents without a warrant.

(t) Searching Plaintiff's cellphone and its' contents without a warrant.

(u) Giving Plaintiff's cellphone and its' contents to Defendant City Police Officer Maryna Stanionis.

254.     The Fourteenth Amendment to the United States Constitution provides that no State shall deprive any person of liberty without due process of law.

255.     Plaintiff's constitutionally protected substantive liberty interests under the Fourteenth Amendment Due Process Clause include but are not limited to: (i)  Plaintiff not talking to Defendant City Police Officer Jared Robinet, including not talking without fear of retaliation or restraint; (ii) refusing to "seek counseling" as demanded by Defendant Steven Maviglio; (iii) refusing to talk to Defendant Steven Maviglio; (iv) refusing to talk to Defendant Barbara Andres;  (v) refusing to talk to Defendant City Police Officer Jared Robinet; (vi) freedom from police officer conduct that shocks the conscience through police officer disregard of a known or obvious consequence of his action when police officer deliberation was practical under the circumstances, because Plaintiff was not engaged in any menacing or threatening behavior.

256.     The First Amendment to the United States Constitution protects the expressive activity of Plaintiff from retaliation by or restraint by Defendant City Police Officer Jared Robinet. Plaintiff's constitutionally protected First Amendment interests include but are not limited to: (i) the filing of Police Reports by letter to Defendant City Police Chief Hahn; (ii) the filing of California Public Records Act (CPRA) requests to Defendant City

Police; (iii) refusing to talk to Defendant Barbara Andres; and (iv) refusing to talk to Defendant Steven Maviglio.

257.      Defendant City Police Officer Jared Robinet's actions toward Plaintiff as plead in this Complaint and re-alleged in this Count violate Plaintiff's rights under the First, Fourth,  and Fourteenth Amendments, rendering Defendant City Police Officer Jared Robinet liable to Plaintiff under United States Code, Title 42, Section 1983.

**SECOND FEDERAL COUNT vs STANIONIS (0597): UNREASONABLE SEIZURE, SEARCH, AND EXCESSIVE FORCE IN VIOLATION OF FOURTH AMENDMENT; DENIAL OF FOURTEENTH AMENDMENT DUE PROCESS; RETALIATION FOR FIRST AMENDMENT PROTECTED ACTIVITY   [42 U.S.C. 1983]**

258.      Plaintiff hereby re-alleges and incorporates by reference the allegations contained in Paragraphs 1—257 as though fully set forth herein.

259.      The Fourth Amendment to the United States Constitution protects the right of people including the Plaintiff, to be free from unreasonable searches and seizures. It states as follows: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

260.      Defendant City Police Officer Maryna Stanionis's actions violated Plaintiff's Fourth Amendment rights by actions that include but are not limited to the following:

(a) Crossing the curtilage of Plaintiff's residence and remaining inside the curtilage without a warrant, in order to physically seize and restrain Plaintiff.

(b)  Physically seizing and restraining Plaintiff without a warrant inside the curtilage of her residence.

(c)  Arresting or purporting to arrest Plaintiff without a warrant inside the curtilage of her residence.

(d)  Physically seizing and restraining Plaintiff without probable cause inside the curtilage of her residence.

(e)  Arresting or purporting to arrest Plaintiff without probable cause inside the curtilage of her residence.

(f)  Physically seizing and restraining Plaintiff inside the curtilage of her residence after any probable cause had dissipated.

(g)  Arresting or purporting to arrest Plaintiff inside the curtilage of her residence after any probable cause had dissipated.

(h)  Physically seizing and restraining Plaintiff without a warrant inside the curtilage of her residence when Plaintiff did not pose any threat to the safety of Defendant Robinet.

(i)  Arresting or purporting to arrest Plaintiff without a warrant inside the curtilage of her residence when Plaintiff did not pose any threat to the safety of Defendant Robinet.

(j)  Physically seizing and restraining Plaintiff without a warrant inside the curtilage of her residence without asking Plaintiff to communicate.

(k)  Arresting or purporting to arrest Plaintiff without a warrant inside the curtilage of her residence without asking Plaintiff to communicate.

(l)  Applying force to Plaintiff through handcuffs and physical restraint when there was no probable cause or other legitimate reason for any application of force.

(m) Continuing to apply force to Plaintiff through handcuffs and physical restraint when any probable cause had dissipated.

(n)  Refusing to answer Plaintiff's questions as to what she was under arrest for or under investigation for while applying excessive force to Plaintiff and subjecting her to a no-warrant search and seizure.

(o)  Applying excessive force (or any force) to Plaintiff when Plaintiff was visibly not armed and did not announce or pose any threat to Defendant City Police Officer Jared Robinet.

(p) Applying excessive force (or any force) to Plaintiff when Plaintiff was visibly not resisting the "arrest" Defendant City Police Officer Robinet was making or purporting to make of Plaintiff.

(q) Applying excessive force (or any force) to Plaintiff in the form of handcuffs when: (i) there was no warrant or probable cause for any seizure of Plaintiff; (ii) Plaintiff was not required (and did not answer) any questions posed to her by Defendant City Police Officer Stanionis during the latter's custodial interrogation of Plaintiff; and (iii) Plaintiff was not physically resisting the actions of Defendant City Police Officer Robinet and Defendant City Police Officer Stanionis.

(r) Allowing and assisting in Defendant City Police Officer Robinet's forcing Plaintiff to undergo an intrusive body search (or any body search) when Plaintiff was visibly wearing only leggings and a loose top, and visibly was not carrying any weapon (and after Defendants Stanionis and Robinet knew this fact from touching, grabbing, and pulling Plaintiff out of her house and injuring her. Defendant Stanionis knew or should have known that if Plaintiff had any weapon, Robinet would have taken it when he and Stanionis tackled and handcuffed Plaintiff).

261.    In addition, Defendant City Police Officer Maryna Stanionis knew that Defendant City Police Officer Jared Robinet had seized Plaintiff's cellphone and

keys without a warrant or without probable cause, but nevertheless took the seized

cellphone with her to meetings with Defendant Steve Mavigl8io and Defendant

BarbaraAndres.

262.     At the end of the handcuffed custodial interrogation, Plaintiff expressed to

Defendant Stanionis her fact-based opinion regarding the actions of Defendants

Robinet, Stanionis, and the City Police that Plaintiff had experienced: "you gave

me a first hand lesson and now I understand  why African-Americans are so afraid

of the police, and now I understand the notion behind the Black Lives Matter more.

And the Iranian life matters too."  Defendant City Police Officer  Stanionis

responded "that was very rude" and in so doing subjected Plaintiff to a City Police

threat that Plaintiff's constitutionally protected expression would result in

retaliation.

263.     The Fourteenth Amendment to the United States Constitution provides that

no state shall deprive any person of liberty without due process of law.

264.      Plaintiff's constitutionally protected substantive liberty interests under the

Fourteenth Amendment Due Process Clause include but are not limited to: (i)  Plaintiff

not talking to Defendant City Police Officer Jared Robinet or Defendant City Police

Officer Maryna Stanionis, including not talking without fear of retaliation or restraint; (ii)

refusing to "seek counseling" as demanded by Defendant Steve Maviglio; (iii) refusing to

talk to Defendant Steven Maviglio; (iv) refusing to talk to Defendant Barbara Andres;  (v)

refusing to talk to Defendant City Police Officer Jared Robinet; (vi) freedom from police

officer conduct that shocks the conscience through police officer disregard of a known or

90

obvious consequence of his action when police officer deliberation was practical under the circumstances, because Plaintiff was not engaged in any menacing or threatening behavior.

265.      The First Amendment to the United States Constitution protects the expressive activity of Plaintiff from retaliation by or restraint by Defendant City Police Officer Maryna Stanionis. Plaintiff's constitutionally protected First Amendment interests include but are not limited to: (i) the filing of Police Reports by letter to Defendant City Police Chief Hahn; (ii) the filing of California Public Records Act (CPRA) requests to Defendant City Police; (iii) refusing to talk to Defendant Andres; (iv) refusing to talk to Defendant Maviglio; (v)  making statements to Defendant City Police Officer Maryna Stanionis regarding her conduct, the conduct of Defendant City Police Officer Jared Robinet, and the conduct of the City Police, without receiving retaliation.   .

266.      Defendant City Police Officer Maryna Stationis' actions toward Plaintiff as plead in this Complaint and realleged in this Count violate Plaintiff's rights under the First, Fourth,  and Fourteenth Amendments, rendering Defendant City Police Officer Maryna Stanionis liable to Plaintiff under United States Code, Title 42, Section 1983.


**THIRD FEDERAL COUNT – FAILURE OF STANIONIS (0597) TO INTERVENE TO STOP ROBINET RFROM VIOLATING PLAINTIFF'S  FEDERALLY PROTECTED RIGHTS [42 U.S.C. 1983]**


267.      Plaintiff hereby re-alleges and incorporates by reference the allegations contained in Paragraphs 1—266 as though fully set forth herein.

268.     On May 9, 2020, at about 7:59 a.m., Defendant City Police Officer Maryna Stanionis, driving a City Police car different from the one used by Defendant Jared Robinet, arrived at and parked at the curb of Plaintiff's residence at 1859 45th Street. From this location, Defendant Maryna Stanionis was able to view events taking place on the driveway and front porch of Plaintiff's residence.

269.     On May 9, 2020, when Defendant City Police Officer Maryna Stanionis parked her City Police vehicle at 1859 45th Street, she did not have any warrant for the arrest of Parvin Olfati, for the seizure of Parvin Olfati, for the search of Parvin Olfati, for the seizure or search of any Parvin Olfati cellphone, or for any search of Plaintiff's residence or for 1859 45th Street.

270.     On May 9, 2020, at about or after 7:59 a.m., Defendant City Police Officer Maryna Stanionis could see from her parked City Police vehicle at 1859 45th Street that Defendant City Police Officer Jared Robinet was:

(a) Crossing the curtilage of Plaintiff's residence and remaining inside the curtilage without a warrant, in order to physically seize and restrain Plaintiff.

(b) Physically seizing and restraining Plaintiff without a warrant inside the curtilage of her residence.

(c) Arresting or purporting to arrest Plaintiff without a warrant inside the curtilage of her residence.

(d) Physically seizing and restraining Plaintiff without probable cause inside the curtilage of her residence.

(e) Arresting or purporting to arrest Plaintiff without probable cause inside the curtilage of her residence.

(f) Physically seizing and restraining Plaintiff inside the curtilage of her residence after any probable cause had dissipated.

(g) Arresting or purporting to arrest Plaintiff inside the curtilage of her residence after any probable cause had dissipated.

(h) Physically seizing and restraining Plaintiff without a warrant inside the curtilage of her residence when Plaintiff did not pose any threat to the safety of Defendant Robinet.

(i) Arresting or purporting to arrest Plaintiff without a warrant inside the curtilage of her residence when Plaintiff did not pose any threat to the safety of Defendant Robinet.

(j) Physically seizing and restraining Plaintiff without a warrant inside the curtilage of her residence without asking Plaintiff to communicate.

(k) Arresting or purporting to arrest Plaintiff without a warrant inside the curtilage of her residence without asking Plaintiff to communicate.

(l) Applying force to Plaintiff through handcuffs and physical restraint when there was no probable cause or other legitimate reason for any application of force.

(m) Continuing to apply force to Plaintiff through handcuffs and physical restraint when any probable cause had dissipated.

(n) Refusing to answer Plaintiff's questions as to what she was under arrest for or under investigation for while applying excessive force to Plaintiff and subjecting her to a no-warrant search and seizure.

(o) Applying excessive force (or any force) to Plaintiff when Plaintiff was visibly not armed and did not announce or pose any threat to Defendant City Police Officer Jared Robinet.

(p) Applying excessive force (or any force) to Plaintiff when Plaintiff was visibly not resisting the "arrest" Defendant City Police Officer Robinet was making or purporting to make of Plaintiff.

(q) Applying excessive force (or any force) to Plaintiff in the form of handcuffs when: (i) there was no warrant or probable cause for any seizure of Plaintiff; (ii) Plaintiff was not required (and did not answer) any questions posed to her by Defendant City Police Officer Stanionis during the latter's custodial interrogation of Plaintiff; and (iii) Plaintiff was not physically resisting the actions of Defendant City Police Officer Robinet and Defendant City Police Officer Stanionis.

(r)  Forcing Plaintiff to undergo an intrusive body search when Plaintiff was visibly wearing only leggings and a loose top, and visibly was not carrying any weapon, a fact that Robinet and Defendant Stanionis already knew  from their handcuffing and restraining of Plaintiff after Defendant Robinet touched, grabbed and pulled Plaintiff her out of her house and injured her, and Defendant Stanionis rushed up to the front porch to get in on the action.

271.       In addition, Defendant City Police Officer Maryna Stanionis could see that:

(a) Defendant City Police Officer Jared Robinet had crossed the curtilage of Plaintiff's residence by stepping onto the driveway.

(b) Plaintiff was walking on her driveway to her front porch and her front door.

(c)  Plaintiff was wearing only leggings and a loose top.

(d)  Plaintiff was not brandishing, displaying, or carrying any weapon.

(e)  Plaintiff was not making any threats or threatening Defendant City Police Officer Jared Robinet.

94

(f)   Defendant City Police Officer Jared Robinet had seized the person of Plaintiff Parvin Olfati on the front porch, front door, or living room of the residence of Plaintiff Parvin Olfati.

(g)   Defendant City Police officer Jared Robinet was applying force to Plaintiff Parvin Olfati on the front porch and by her front door of the residence of Plaintiff Parvin Olfati.

(h) Plaintiff Parvin Olfati was not offering physical resistance to the actions of Defendant City Police Officer Jared Robinet.

(i) Defendant City Police Officer Jared Robinet was wearing a City Police uniform and was acting under color of state law.

(j) In addition, Defendant City Police Officer Maryna Stanuionis knew that Defendant City Police Officer Jared Robinet planned to enter the curtilage of the residence of Plaintiff Parvin Olfati, seize the person of Plaintiff Parvin Olfati, and apply force to the person of Plaintiff Parvin Olfati.

272.      Defendant City Police Officer Maryna Stanionis had a duty to intervene to prevent Defendant City Police Officer Jared Robinet from violating Plaintiff's rights secured under federal law: freedom from unreasonable search and seizure, freedom from police officer crossing of the curtilage without a warrant, and freedom from excessive force.

273.      Defendant City Police Officer Maryna Stanionis had a realistic opportunity to intervene to stop Defendant City Police Officer Jared Robinet from violating Plaintiff's rights, as evidenced by her dashing out of her City Police vehicle and running up the front

steps to Plaintiff's residence front porch at the time of or shortly after Defendant City

Police Officer Jared Robinet  applied force to the person of Parvin Olfati.

274.        Instead of carrying out her duty and realistic opportunity to protect Plaintiff's

rights, Defendant City Police Officer Maryna Stanionis breached this duty and shirked this

realistic opportunity by instead joining Defendant City Police Officer  Jared Robinet in a

joint venture between themselves and Defendant City Police to violate Plaintiff's rights,

by:

(a) Crossing the curtilage of Plaintiff's residence and remaining inside the curtilage

without a warrant, in order to physically seize and restrain Plaintiff.

(b) Physically seizing or assisting in the seizing of Plaintiff without a warrant inside the

curtilage of her residence.

(c) Arresting or purporting to arrest or assist in the arresting of Plaintiff without a warrant

inside the curtilage of her residence.

(d) Applying excessive force to Plaintiff through handcuffs and physical restraint.

(e) Refusing to answer Plaintiff's questions as to what Plaintiff was under arrest for or

under investigation for while applying excessive force to Plaintiff and subjecting

Plaintiff to a no-warrant search and seizure.

(f)  Applying excessive force to Plaintiff when Plaintiff was already  being restrained  by

Defendant City Police Officer Jared Robinet; was not armed; and was not resisting the

actions of Defendant City Police Officer Jared Robinet.

(g) Applying excessive force (or any force) to Plaintiff in the form of handcuffs when: (i)

there was no warrant or probable cause for any seizure or restraint of Plaintiff; (ii)

Plaintiff was not required (and did not answer) any questions posed to Plaintiff by

Defendant City Police Officer Stanionis during the latter's custodial interrogation of

96

Plaintiff; and (iii) Plaintiff was not physically resisting the actions of Defendant City

Police Officer Robinet and.or Defendant City Police Officer Stanionis.

(h) Placing Plaintiff in handcuffed custodial interrogation without a warrant.

(i) Placing Plaintiff in handcuffed custodial interrogation without giving her *Miranda v.*

*Arizona* warnings.

(j) Unreasonably denying Plaintiff water during custodial interrogation.

(k) Unreasonably tightening the already-tight handcuffs when Plaintiff complained that

the already-tight handcuffs were causing her pain.

(l) Unreasonably refusing to permit or accompany Plaintiff in returning to her residence

to lock and secure the residence against unauthorized entries.

(m) Threatening Plaintiff with further handcuffed confinement if Plaintiff asked

Defendant City Police Officer Stanionis to answer Plaintiff's question as to what she

had been arrested for.

(n) Subjecting Plaintiff to warrantless arrest, unreasonable search and seizure, and

excessive force that was unreasonable under circumstances where Plaintiff was never

charged with any offense other than "resisting arrest" [California Penal Code Section

148(a)] and that charge was dismissed by the Sacramento County District Attorney.

(o)  Searching Plaintiff's cellphone and its' contents without a warrant.

(p) Taking Plaintiff's cellphone and its' contents to meetings with Defendant Maviglio,

Defendant Andres, and others, and actually or exposing Plaintiff's personal data.

(q) Demanding that Plaintiff "listen" to Defendant City Police Officer Jared Robinet when

Defendant City Police Officer Stanionis knew or should have known that Plaintiff had

never been told anything by Defendant City Police Officer Jared Robinet other than

evasive responses to Plaintiff's questions about why she had been tackled, handcuffed, and restrained on her front porch without a warrant.

(r)  When Plaintiff expressed her fact-based opinion regarding that the actions of Defendants Robinet, Stanionis, and the City Police: "you gave me a first hand lesson and now I understand  why African-Americans are so afraid of the police, and now I understand the notion behind the Black Lives Matter more. And the Iranian life matters too."  Defendant City Police Officer  Stanionis responded "that was very rude" and in so doing subjected Plaintiff to a City Police threat that Plaintiff's constitutionally protected expression would result in retaliation.

275.      The actions of Defendant City Police Officer Maryna Stanionis committed under color of state law violated Plaintiff's rights under the United States Constituition Amendments I (freedom of expression), IV (freedom from unreasonable search and seizure), and XIV (freedom from deprivation of liberty without due process), and render Defendant City Police Officer Maryna Stanionis liable to Plaintiff under United States Code, Title 42, Section 1983.


**FOURTH FEDERAL COUNT – FAILURE OF DEFENDANT NATHANIEL REASON (0507) AND THE JOHN DOE CITY DEFENDANTS TO INTERVENE TO STOP DEFENDANTS ROBINET and STANIONIS FROM VIOLATING PLAINTIFF'S FEDERALLY PROTECTED RIGHTS [42 U.S.C. 1983]**


276.      Plaintiff hereby realleges and incorporates by reference the allegations contained in Paragraphs 1—275 as though fully set forth herein.

277.     Defendant City Police Officer Nathaniel Reason (badge number 0507) is identified in a Defendant City Police response to a Plaintiff CPRA request as the third officer of Defendant City Police who was present at the scene of or who was otherwise involved with the actions of Defendant City Police, Defendant Jared Robinet, and/or Defendant Maryna Stanionis on May 9, 2020. However, Defendant City in its purported CPRA responses has failed to provide any information about what Defendant City Police Officer Nathaniel Reason was doing or not doing on May 9, 2020 at or near 1859 45th Street,

278.     Plaintiff did not encounter or interact with Defendant Nathaniel Reason on May 9, 2020, but upon information and belief, alleges that Defendant City Police Officer Nathaniel Reason was either: (i) sitting in an unmarked white sport utility vehicle parked at the curb of 1901 45th Street (the residence of Defendant Steven Maviglio); (ii) was "riding along" or was otherwise present in the City Police car used by Defendant City Police Officer Jared Robinet during the acts of Defendants City, Robinet, and/or Stanionis alleged in this Complaint; or (iii) was present at some other location on or in the vicinity of 1859 45th Street during the acts alleged in this Complaint.

279.     In addition, Plaintiff upon information and belief alleges that one or more of the John Doe City Defendants (whose identities are presently unknown to Plaintiff) was in radio contact, telecommunications contact, or other contact with Defendant City Police Officer Nathaniel Reason, Defendant City Police Officer Jared Robinet, and/or Defendant City Police Officer Maryna Stanionis during the acts of Defendants City, Robinet, and/or Stanionis alleged in this Complaint.   Upon information and belief, Plaintiff alleges that a white unmarked City Police vehicle containing one or more of the John Doe City Defendants was present at one or more locations on 45th Street during the acts of  City, Robinet, Stanionis, or Reason alleged in this Complaint.

280.     At all times material hereto, Defendant City Police Officer Nathaniel Reason was acting under color of state law.

281.     At all times material hereto, one or more of the John Doe City Defendants was or were acting under color of state law.

282.     Defendant City Police Officer Nathaniel Reason's failure to intervene to stop the violation of Plaintiff's Fourth, and Fourteenth Amendment rights by Defendants City Police, Robinet, and Stanionis violated Plaintiff's rights under the Fourth and Fourteenth Amendments to be free from unreasonable searches and seizures, excessive force, and deprivation of liberty without due process of law.

283.     The failure of one or more of the John Doe City Defendants to intervene to stop the violation of Plaintiff's Fourth, and Fourteenth Amendment rights by Defendants City Police, Robinet, and Stanionis violated Plaintiff's rights under the Fourth and Fourteenth Amendments to be free from unreasonable searches and seizures, excessive force, and deprivation of liberty without due process of law.

284.     On May 9, 2020, beginning at or before 7:59 a.m., Defendant City Police Officer Nathaniel Reason, riding in or otherwise using the City Police car used by Defendant Jared Robinet, arrived first on "S" Street, and then at the place on the east side of 45th Street where the curb of the 1851 house intersects with the driveway of 1859 45th Street. From this location, Defendant City Police Officer Nathaniel Reason was able to view events taking place on the driveway, on the front porch, and in the front yard of Plaintiff's residence.

285.     On May 9, 2020, Defendant City Police Officer Nathaniel Reason knew that neither Defendant City Police Officer Jared Robinet, Defendant City Police Officer Maryna Stanionis, or Defendant City Police Officer Nathaniel Reason had any warrant for

100

the arrest of Parvin Olfati, the seizure of Parvin Olfati, the search of Parvin Olfati, the seizure or search of any Parvin Olfati cellphone, or any search of Plaintiff's residence or 1859 45th Street.

286.     On May 9, 2020, one or more of the John Doe City Defendants knew that neither Defendant City Police Officer Jared Robinet, Defendant City Police Officer Maryna Stanionis, or Defendant City Police Officer Nathaniel Reason had any warrant for the arrest of Parvin Olfati, the seizure of Parvin Olfati, the search of Parvin Olfati, the seizure or search of any Parvin Olfati cellphone, or any search of Plaintiff's residence or 1859 45th Street.

287.     On May 9, 2020, at about or after 7:59 a.m., Defendant City Police Officer Nathaniel Reason could see from the City Police vehicle he was using at 1859 45th Street, that Defendant City Police Officer Jared Robinet:

(a) had crossed the curtilage of Plaintiff's residence by stepping onto the driveway.

(b) Plaintiff was walking on her driveway to her front porch.

(c) Plaintiff was wearing only leggings and a loose top.

(d) Plaintiff was not brandishing, displaying, or carrying any weapon.

(e) Plaintiff was not making any threats or threatening Defendant City Police Officer Jared Robinet.

(f) Defendant City Police Officer Jared Robinet had seized the person of Plaintiff Parvin Olfati on the front porch of the residence of Plaintiff Parvin Olfati.

(g) Defendant City Police officer Jared Robinet was applying force to Plaintiff Parvin Olfati on the front porch of the residence of Defendant Parvin Olfati.

(h) Plaintiff Parvin Olfati was not offering and/or showing any physical resistance to the actions of Defendant City Police Officer Jared Robinet.

(i) Defendant City Police Officer Jared Robinet was wearing a City Police uniform and was acting under color of state law.

(j) In addition, Defendant City Police Officer Nathaniel Reason knew that Defendant City Police Officer Jared Robinet planned to enter the curtilage of the residence of Plaintiff Parvin Olfati, seize the person of Plaintiff Parvin Olfati, and apply force to the person of Plaintiff Parvin Olfati.

288.     In addition, Defendant City Police Officer Nathaniel Reason could see the acts or was otherwise aware of the acts of Defendant City Police Officer Maryna Stanionis at 1859 45th Street, including the following:

(a) Crossing the curtilage of Plaintiff's residence and remaining inside the curtilage without a warrant, in order to physically seize and restrain Plaintiff.

(b) Physically seizing or assisting in the seizing of Plaintiff without a warrant inside the curtilage of her residence.

(c) Arresting or purporting to arrest or assist in the arresting of Plaintiff without a warrant inside the curtilage of her residence.

(d) Physically tackling, restraining, and otherwise handcuffing Plaintiff on the front porch of Plaintiff's residence when Plaintiff was not armed and was not threatening or posing any threat to Defendants City Police Officers Jared Robinet or Maryna Stanionis.

(e) Applying excessive force to Plaintiff through handcuffs and physical restraint.

(f) Continuing to apply force to Plaintiffs through handcuffs and physical restraint after any probable cause (assuming *arguendo* that any ever existed) had dissipated.

102

(g) Keeping Plaintiff handcuffed and restrained while refusing to answer Plaintiff's questions as to what Plaintiff was under arrest for or under investigation for while applying excessive force to Plaintiff and subjecting Plaintiff to a no-warrant search and seizure.

(h)  Applying excessive force to Plaintiff when Plaintiff was already  being restrained  by Defendant City Police Officer Jared Robinet; was not armed; and was not resisting the actions of Defendant City Police Officer Jared Robinet.

(i) Applying intentional excessive force (or any force) to Plaintiff in the form of handcuffs when: (i) there was no warrant or probable cause for any seizure or restraint of Plaintiff; (ii) Plaintiff was not required (and did not answer) any questions posed to Plaintiff by Defendant City Police Officer Stanionis during the latter's custodial interrogation of Plaintiff; and (iii) Plaintiff was not physically resisting the actions of Defendant City Police Officer Robinet and.or Defendant City Police Officer Stanionis.

(j) Placing Plaintiff in handcuffed custodial interrogation without a warrant.

(k) Placing Plaintiff in handcuffed custodial interrogation without giving her *Miranda v. Arizona* warnings.

(l) Unreasonably and intentionally denying Plaintiff water during custodial interrogation.

(m)Unreasonably tightening the already-tight handcuffs when Plaintiff complained that the already-tight handcuffs were causing her pain.

(n) Unreasonably and intentionally refusing to permit or accompany Plaintiff in returning to her residence to lock and secure the residence against unauthorized entries.

(o)  Threatening Plaintiff with further handcuffed confinement if Plaintiff asked Defendant City Police Officer Stanionis to answer Plaintiff's question as to what she had been arrested for.

(p) Subjecting Plaintiff to warrantless arrest, unreasonable search and seizure, and excessive force that was unreasonable under circumstances where Plaintiff was never charged with any offense other than "resisting arrest" [California Penal Code Section 148(a)] and that charge was dismissed by the Sacramento County District Attorney.

(q)  Searching Plaintiff's cellphone and its' contents without a warrant.

(r)  Taking Plaintiff's cellphone and its' contents to meetings with Defendant Steve Maviglio, Defendant Andres, and others, and actually or exposing Plaintiff's personal data.

289.    Demanding that Plaintiff "listen" to Defendant City Police Officer Jared Robinet when Defendant City Police Officer Stanionis knew or should have known that Plaintiff had never been told anything by Defendant City Police Officer Jared Robinet Defendant City Police Officer Nathaniel Reason had a duty to intervene to prevent Defendant City Police Officer Jared Robinet and/or Defendant City OPolice Officer Maryna Stanionis from violating Plaintiff's rights secured under federal law: freedom from unreasonable search and seizure, freedom from police officer crossing of the curtilage without a warrant, and freedom from excessive force.

290.    Defendant City Police Officer Nathaniel Reason had a realistic opportunity to intervene to stop Defendants City Police Officers Jared Robinet and/or Maryna Stanionis from violating Plaintiff's rights secured by the United States Constitution First, Fourth, and Fourteenth Amendments.

291.    Instead of carrying out his duty and realistic opportunity to protect Plaintiff's rights, Defendant City Police Officer Nathaniel Reason breached this duty and shirked this realistic opportunity by failing to take any action to protect Plaintiff.

104

292.     The actions or failure to act by Defendant City Police Officer Nathaniel Reason committed under color of state law violated Plaintiff's rights under the United States Constitution Amendments I (freedom of expression), IV (freedom from unreasonable search and seizure), and XIV (freedom from deprivation of liberty without due process), and render Defendant City Police Officer Nathaniel Reason liable to Plaintiff under United States Code, Title 42, Sections 1983 and 1985.

293.     On May 9, 2020, at about or after 7:59 a.m., one or more of the John Doe City Defendants could see or otherwise knew that:

(a) Defendant City Police Officer Jared Robinet had crossed the curtilage of Plaintiff's residence by stepping onto the driveway.

(b) Plaintiff was walking on her driveway to her front porch.

(c) Plaintiff was wearing only leggings and a loose top.

(d) Plaintiff was not brandishing, displaying, or carrying any weapon.

(e) Plaintiff was not making any threats or threatening Defendant City Police Officer Jared Robinet.

(f) Defendant City Police Officer Jared Robinet had seized the person of Plaintiff Parvin Olfati on the front porch of the residence of Plaintiff Parvin Olfati.

(g)  Defendant City Police officer Jared Robinet was applying force to Plaintiff Parvin Olfati on the front porch of the residence of Defendant Parvin Olfati.

(h) Plaintiff Parvin Olfati was not offering physical resistance to the actions of Defendant City Police Officer Jared Robinet.

(i) Defendant City Police Officer Jared Robinet was wearing a City Police uniform and was acting under color of state law.

(j) In addition, one or more of the John Doe City Defendants knew that Defendant City Police Officer Jared Robinet planned to enter the curtilage of the residence of Plaintiff Parvin Olfati, seize the person of Plaintiff Parvin Olfati, and apply intentional excessive force to the person of Plaintiff Parvin Olfati.

294.    In addition, one or more of the John Doe City Defendants could see or was otherwise aware of the acts of Defendant City Police Officer Maryna Stanionis at 1859 45th Street, including the following:

(i)    Crossing the curtilage of Plaintiff's residence and remaining inside the curtilage  without a warrant, in order to physically seize and restrain Plaintiff.

(ii)    Physically seizing or assisting in the seizing of Plaintiff without a warrant inside the curtilage of her residence.

(iii)    Arresting or purporting to arrest or assist in the arresting of Plaintiff without a warrant inside the curtilage of her residence.

(iv)    Applying intentional excessive force to Plaintiff through handcuffs and physical restraint.

(v)    Refusing to answer Plaintiff's questions as to what Plaintiff was under arrest for or under investigation for while applying intentional excessive force to Plaintiff and subjecting Plaintiff to a no-warrant search and seizure.

(vi)    Applying intentional excessive force to Plaintiff when Plaintiff was already  being restrained  by Defendant City Police Officer Jared Robinet; and was not armed; and was not resisting the actions of Defendant City Police Officer Jared Robinet.

(vii)    Applying intentional excessive force (or any force) to Plaintiff in the form of handcuffs when: (i) there was no warrant or probable cause for any seizure or restraint

of Plaintiff; (ii) Plaintiff was not required (and did not answer) any questions posed to Plaintiff by Defendant City Police Officer Stanionis during the latter's custodial interrogation of Plaintiff; and (iii) Plaintiff was not physically resisting the actions of Defendant City Police Officer Robinet and.or Defendant City Police Officer Stanionis.

(viii)   Placing Plaintiff in handcuffed custodial interrogation without a warrant.

(ix)    Placing Plaintiff in handcuffed custodial interrogation without giving her *Miranda v. Arizona* warnings.

(x)     Unreasonably denying Plaintiff water during custodial interrogation.

(xi)    Unreasonably tightening the already-tight handcuffs when Plaintiff's  finger was lacerated, fractured  and bleeding, and Plaintiff had complained that the already-tight handcuffs were causing her pain.

(xii)   Unreasonably refusing to permit or accompany Plaintiff in returning to her residence to lock and secure the residence against unauthorized entries.

(xiii)   Threatening Plaintiff with further handcuffed confinement if Plaintiff asked Defendant City Police Officer Stanionis to answer Plaintiff's question as to what she had been arrested for.

(xiv)   Subjecting Plaintiff to warrantless arrest, unreasonable search and seizure, and excessive and intentional force that was unreasonable under circumstances where Plaintiff was never charged with any offense other than "resisting arrest" [California Penal Code Section 148(a)] and that charge was dismissed by the Sacramento County District Attorney.

(xv)    Searching Plaintiff's cellphone and its' contents without a warrant.

(xvi)   Taking Plaintiff's cellphone and its' contents to meetings with Defendant Steve Maviglio, Defendant Barbara Andres, and others, and actually or exposing Plaintiff's personal data.

(xvii)   Demanding that Plaintiff "listen" to Defendant City Police Officer Jared Robinet when Defendant City Police Officer Stanionis knew or should have known that Plaintiff had never been told anything by Defendant City Police Officer Jared Robinet while Plaintiff was grabbed from behind, pulled out of her house, and injured by Robinet, resulting in the fracturing and laceration of her finger – all without a warrant.

(xviii)  When Plaintiff expressed her fact-based opinion regarding the actions of Defendants Robinet, Stanionis, and the City Police ("you gave me a first hand lesson and now I understand  why African-Americans are so afraid of the police, and now I understand the notion behind the Black Lives Matter more. And the Iranian life matters too"),  Defendant City Police Officer  Stanionis responded "that was very rude" and in so doing subjected Plaintiff to a City Police threat that Plaintiff's constitutionally protected expression would result in retaliation.

295.   One or more of the John Doe City Defendants had a duty to intervene to prevent Defendant City Police Officer Jared Robinet and/or Defendant City Police Officer Maryna Stanionis from violating Plaintiff's rights secured under federal law: freedom from unreasonable search and seizure, freedom from police officer crossing of the curtilage without a warrant, and freedom from multiple applications of unreasonable or excessive force. .

296.     One or more of the John Doe City Defendants had a realistic opportunity to intervene to stop Defendants City Police Officers Jared Robinet and/or Maryna Stanionis  from violating Plaintiff's rights secured by the United States Constitution First, Fourth, and Fourteenth Amendments.

297.     Instead of carrying out this duty and realistic opportunity to protect Plaintiff's rights, one or more of the John Doe City Defendants breached this duty and shirked this realistic opportunity by failing to take any action to protect Plaintiff.

298.     In addition, one or more of the John Doe City Defendants knew that Defendant Nathaniel Reason was aware of the violation of Plaintiff's constitutional rights by Defendants Robinet and/or Stanionis, had a reasonable opportunity to intervene, and failed to intervene.

299.     The actions or failures to act by one or more of the John Doe City Defendants committed under color of state law violated Plaintiff's rights under the United States Constitution Amendments I (freedom of expression), IV (freedom from unreasonable search and seizure), and XIV (freedom from deprivation of liberty without due process), and render Defendant one or more of the John Doe City Defendants liable to Plaintiff under United States Code, Title 42, Section 1983.

**FIFTH FEDERAL COUNT – vs CITY, CITY FIRE PARAMEDIC ONE, ROBINET, AND STANIONIS FOR DENYING PLAINTIFF ADEQUATE MEDICAL CARE FOR  HER INJURIES CAUSED BY THESE DEFENDANTS [42 U.S.C. 1983]**

300.     Plaintiff hereby re-alleges and incorporates by reference the allegations contained in Paragraphs 1—299 as though fully set forth herein.

301.     Defendants City, City Police Officer Robinet, City Police Officer Stanionis, City Police Officer Reason, and City Fire Paramedic One are required by the United States Constitution Fourteenth Amendment Due Process Clause to provide to persons in City Police Department custody (who are not in jail but who have suffered great bodily injury from the actions of Defendant City's Police Department, Defendant City Police Officer Robinet, Defendant City Police Officer Stanionis, Defendant City Police Officer Reason, and/or the John Doe City Defendants), "the medical care needed" by the person who was injured (including Plaintiff). To be constitutionally adequate, this medical care should have been immediate and given Plaintiff all treatment needed to rapidly and fully heal her fingers, hands, and wrists injured by Defendants' actions, to apply stitches and clean and disinfect the injury so that Plaintiff would not be in danger of infection and would get a full recovery from the injuries to Plaintiff caused by the Defendants.

302.     Defendants City, Robinet, Stanionis, Reason, and City Fire Paramedic One also have an obligation under the United States Constitution Fourth Amendment to provide Plaintiff the medical care Plaintiff required to fully recover from the injuries caused by the Fourth Amendment violations by Defendant City Police, Defendant Robinet, Defendant Stanionis. Defendant Reason, and/or the John Doe City Defendants.

### *Defendants City, Robinet, and Stanionis See They Have Spilled Plaintiff's Blood, But Intentionally Do Not Call For Medical Help Until After They Subject Plaintiff To Handcuffed Custodial Interrogation*

303.     Defendants City, Robinet, and Stanionis knew and saw that Plaintiff's blood had been spilled, Plaintiff's finger had been fractured, and Plaintiff's finger had been lacerated – all through the actions of these Defendants.

304.        The proper medical care for Plaintiff's injured right hand ring finger that needed eight (8) stitches was not to wait for an hour or more and merely put a bandage on the fractured, lacerated, and bleeding finger. Plaintiff's injured finger should have been handled immediately, and in such a way that there would be no infections as a result of Plaintiff being confined in the City Police car; assaulted and battered on the concrete floor of her front porch; and being physically grabbed, pulled, pushed  and person-handled by two unmasked officers of Defendant City's Police Department. Defendants City and City Fire Paramedic One should have cleaned Plaintiff's fractured, lacerated, and bleeding finger to prevent the possible infections, then do what it needed to be done to stop the bleeding, and finally wrap the finger with clean gauze. City Fire Paramedic Two had begun this process but was ordered to stop by Defendant City Fire Paramedic One, who was acting in concert with Defendant City Police Officer Maryna Stanionis to prevent City Fire Paramedic Two from so doing, Defendant City Fire Paramedic One first hearing Defendant Stanionis describe Plaintiff as a "mental case" or "5150 case" (or words to that effect), then Defendant City Fire Paramedic One ordering the gauze-applying City Fire Paramedic Two to instead "just put a bandage on it" as if all that needed medical attention was a little scratch  -- not Plaintiff's Robinet-lacerated finger.

305.        Defendants Robinet and/or Stanionis could have called Defendant City's Fire Department to summon immediate medical assistance to provide Plaintiff with adequate medical care, but intentionally failed to do so, either through individual failures to act, or pursuant to a City policy, final decision, rule, regulation, policy statement, or custom that is so widespread as to be standard operating procedure.

306.     Defendants City, Robinet, and Stanionis continued the denial of adequate medical care, excessive force, handcuffing, dragging, and custodial interrogation of Plaintiff without summoning medical care, even though Plaintiff was visibly injured and had complained to Defendant Stanionis about the pain Plaintiff was suffering from the handcuffs. Defendant Stanionis responded by telling Plaintiff "it is not supposed to be comfortable", tightening the handcuffs again, continuing to deny Plaintiff water, keeping Plaintiff in the back seat of the Stanionis City Police vehicle that was locked and windows-closed most of the time, while subjecting Plaintiff to handcuffed custodial interrogation without *Miranda v. Arizona* warnings using questions Plaintiff upon information and belief alleges were fed to Defendant Stanionis by Defendant Maviglio, Defendant Andres, or one or more of the John Doe Conspirator Defendants.

307.     Upon information and belief, Defendant City Police Officer Reason was present at or near 1859 45th Street when this denial of adequate care occurred; saw or was otherwise aware of the denial; had a realistic opportunity to intervene to prevent the denial; but shirked and breached his duty to intervene.

308.     Defendants City, Robinet, Stanionis, and Reason knew Plaintiff needed medical care that was adequate to fully heal her fractured, lacerated, and bleeding right hand ring finger. Defendant City Police Officer Maryna Stanionis asked Plaintiff at the end of the Stanionis custodial handcuffed interrogation of Plaintiff the following question that had an obvious answer: "do you need medical help?"  Plaintiff was scared to respond because Plaintiff thought if Plaintiff said "yes", then Defendant City Police Officer Stanionis might deny medical care to Plaintiff, since Defendant Stanionis minutes before

had said "to Plaintiff this is not supposed to be comfortable" in response to Plaintiff's complaint about the pain the handcuffs were causing – and then Defendant Staanionis tightened the handcuffs, and refused on multiple occasions to give Plaintiff water.

***Defendant City Police Officer Maryna Stanionis Tells Defendant City Fire Paramedic One That Plaintiff Is A "Mental Case" Or A "5150 Case"***

309.      Defendant City Fire Paramedic One is the City employee who ordered another City Fire employee (City Fire Paramedic Two) to stop applying gauze and other necessary medical treatment to Plaintiff's fractured, lacerated, and bleeding right hand finger. Defendant City Police Officer Stanionis contributed to this denial by describing Plaintiff to City Fire Paramedic One or other City Fire employees as a "mental case" or as a "[Welfare & Institutions Code Section] 5150 case", or words to that effect.

310.      The proper medical care for Plaintiff's injuries required Defendant City Police Officer Stanionis to tell City Fire paramedics that Plaintiff had suffered a serious or great bodily injury and needed immediate attention. Instead, Defendant Stanionis told the City Fire paramedics that Plaintiff was a "mental  case" or a "5150 case", words that were chosen and intentionally spoken by Defendant Stanionis  in order to discourage City Fire paramedics from giving Plaintiff adequate medical care.

311.      Plaintiff suffered great bodily great bodily injury from the actions of Defendant City, Defendant Robinet, Defendant Stanionis, Defendant Reason, and/or the John Doe City Defendants, including but not limited to the fracturing, laceration, and bleeding of Plaintiff's right hand ring finger, which required eight (8) stitches in addition to care for fracture of the finger. In addition, Defendant City Police Officer Stanionis

and/or Defendant City Police Offidcer Robinet continued their denial of water to Plaintiff – neither Defendant Stanionis nor Defendant Robinet said anything to any of the City Fire paramedics about proving water to Plaintiff, even though Plaintiff was visibly dehydrated.

312.              City Fire paramedics were called to 1859 45th Street to give Plaintiff medical attention. When the City Fire paramedics arrived, Defendant City Police Officer Stanionis told one of the City Fire paramedics that Plaintiff was a "mental 5150 case", Defendant City Police Officer Stanionis referring to California Welfare & Institutions Code Section 5150 that authorizes involuntary civil commitment or confinement of persons found to be "gravely disabled" or a danger to themselves or others.

313.              Upon information and belief, Defendant City Police Officer Reason was present at or near 1859 45th Street when this denial of adequate care occurred; saw or was otherwise aware of the denial; had a realistic opportunity to intervene to prevent the denial; but shirked and breached his duty to intervene.

### *Defendant City Fire Paramedic One Then Stops Adequate Medical Care That Was Being Provided To Plaintiff*

314.              Immediately after Defendant City Police Officer Maryna Stanionis referred to Plaintiff as a "mental [California Welfare & Institutions Code Section] 5150  case" (or words to that effect), City Fire Paramedic One said that he "was going to take care of it, OK?" When Plaintiff asked the City Fire Paramedic One "please do not talk to me like a five year old", City Fire Paramedic One said "you are not very nice." City Fire Paramedic Two began to place gauze around Plaintiff's fractured, lacerated, and bleeding finger, but

was ordered by City Fire Paramedic One to stop, City Fire Paramedic One telling City Fire Paramedic Two: "Just put a bandage on it."

315.     "Just putting a bandage" on Plaintiff's fractured, lacerated, and bleeding finger was the only medical care for Plaintiff Defendants City, City Police, City Fire, City Fire Paramedic One, City Police Officer Jared Robinet, and City Police Officer Maryna Stanionis allowed City Fire Paramedic Two to provide, and in  the process, these Defendants denied Plaintiff adequate medical care.

316.     The proper medical care for Plaintiff's injured right hand ring finger that needed eight (8) stitches was not to merely put a bandage on the fractured, lacerated, and bleeding finger. Plaintiff's injured finger should have been handled in such a way that there would be no infections as a result of Plaintiff being confined in the City Police car; assaulted and battered on the concrete floor of her front porch; and being physically grabbed, pulled, pushed  and person-handled by two unmasked officers of Defendant City's Police Department. Defendants City and City Fire Paramedic One should have cleaned Plaintiff's fractured, lacerated, and bleeding finger to prevent the possible infections, then do what it needed to be done to stop the bleeding, and finally wrap the finger with clean gauze. City Fire Paramedic Two had begun this process but was ordered to stop by Defendant City Fire Paramedic One, who was acting in concert with Defendant City Police Officer Maryna Stanionis to prevent City Fire Paramedic Two from so doing, Defendant City Fire Paramedic One first hearing Defendant Stanionis describe Plaintiff as a "mental case" or "5150 case" (or words to that effect), then Defendant City Fire Paramedic One ordering the gauze-applying City Fire Paramedic Two to instead to "just put a bandage on it" as if all that needed medical attention was a little scratch  -- not Plaintiff's Robinet-lacerated finger.

317.     The identities of Defendant City Fire Paramedic One and City Fire Paramedic Two are presently unknown to Plaintiff, so Plaintiff is suing Defendant City Fire Paramedic One as one of the John Doe City Defendants. Plaintiff expects Defendant City to provide information in discovery regarding the identity of Defendant City Fire Paramedic One, and upon receipt of such information, Plaintiff will amend the Complaint.

***Defendant City's Fire Department After Denying Plaintiff Adequate Medical Care Sends A Bill to Plaintiff's Address Fotr May 9, 2020 City Fire Activity That Names A Person Other Than Plaintiff***

318.     To add insult to injury, on some date after May 9, 2020, Defendant City's Fire Department sent a bill to Plaintiff's address purporting to bill for City Fire activity on May 9, 2020, but naming as the natural person addressee of such a bill a name other than Plaintiff's name. This bill was later stolen from Plaintiff's house. along with many other personal items; documents in Plaintiff's computer were also hacked, and more personal information and data were deleted. Plaintiff on March 29, 2021 caused to be personally delivered to Defendant City's City Clerk a CPRA request for a true and correct copy of any bill addressed to 1859 45th Street for any City Fire activity on =May 9, 2020 at such address..

***Defendant City Police Officer Jared Robinet's Attempt To Entrap Plaintiff Into Blaming Herself For The Injuries Plaintiff Suffered From Defendant City Police Officer Robinet***

319.     After Defendant City Fire Paramedic One halted the full and adequate treatment of  Plaintiff's fractured, lacerated, and bleeding right hand ring finger, Defendant City Police Officer Stanionis and Defendant City Police Officer Robinet

summoned two other City Police officers (a male and female whose identities are unknown to Plaintiff, and whom Plaintiff is not suing in this action), who came with a camera and photographed the blood from Plaintiff that the actions of Defendant Robinet and Defendant Stanionis had caused to spill all over Plaintiff's front porch, front door, and front yard stairs. The male City Police officer in this team while carrying a camera spoke with Defendant City Police Officer Jared Robinet. In that conversation, Officer Robinet told the male officer with the camera something that Plaintiff could not hear. As soon as the City Police officer with the camera ended his conversation with Defendant Robinet, the City Police male officer with the camera approached Plaintiff and said: "I am going to take a picture of the finger you injured" or words to that effect. Plaintiff immediately told this City Police officer that the statement he had just made to Plaintiff's face was a mischaracterization. Plaintiff told the City Police officer with the camera that this officer (with Plaintiff pointing to Defendant City Police Officer Robinet) had mischaracterized Plaintiff as the person who injured Plaintiff's finger, effectively saying "Plaintiff injured her own finger", or words to that effect. Plaintiff told the camera-carrying City Police officer that this statement by Defendant Robinet that Plaintiff injured her own finger was therefore a misrepresentation. Defendant City Police Officer Jared Robinet made no response to Plaintiff's direct refutation of his statement that Plaintiff had injured her own finger.

320.    The male City Police officer with the camera then said "ok, I am going to take a picture of the finger that was injured" – to which Plaintiff immediately responded "no, the finger that was injured by this officer" and Plaintiff pointed one of her un-injured fingers at Defendant City Police Officer Jared Robinet, who again made no response.

117

321.     The actions of Defendants City, City Fire Paramedic One, City Police Officer Robinet, and City Police Officer Stanions were an intentional denial of adequate medical care to Plaintiff for injuries caused by Defendants City, Robinet, and Stanionis, under the circumstances where City Fire Paramedic Two had already begun to give Plaintiff adequate medical care, but was stopped by Defendant City Fire Paramedic One.

322.     The actions of Defendants City, City Fire Paramedic One, City Police Officer Robinet, and City Police Officer Stanions were recklessly indifferent to Plaintiff's need for adequate medical care for injuries caused by Defendants City, Robinet, and Stanionis, under the circumstances where City Fire Paramedic Two had already begun to give Plaintiff adequate medical care, but was stopped by Defendant City Fire Paramedic One.

323.     The actions of Defendants City, City Fire Paramedic One, City Police Officer Robinet, and City Police Officer Stanions in denying adequate medical care to Plaintiff for injuries caused by Defendants City, Robinet, and Stanionis were actions that were unreasonable under the circumstances where City Fire Paramedic Two had already begun to give Plaintiff adequate medical care, but was stopped by Defendant City Fire Paramedic One.

324.     The actions of Defendants City, City Fire Paramedic One, City Police Officer Robinet, and City Police Officer Stanions in denying adequate medical care to Plaintiff for injuries caused by Defendants City, Robinet, and Stanionis were actions that were unreasonable under the circumstances where City Fire Paramedic Two had already begun to give Plaintiff adequate medical care, but was stopped by Defendant City Fire Paramedic One, whose "just put a bandage on it" command was unreasonable and recklessly indifferent under the circumstances, whether or not in furtherance of City Fire policies, procedures, rules, regulations, or custom that is so widespread as to be standard

operating procedure, and whether or not: (i) the City Fire Department allows, encourages, or directs City Fire supervisors or supervising paramedics to order subordinate City Fire paramedics not to provide medical care to persons in visible need of care; and/or  (ii) where the City Police Department allows, encourages, or directs City Police officers to disparage, trivialize, denigrate, discourage, or prevent the providing of adequate medical care to persons injured by City Police Department officers.

325.        Plaintiff alleges the existence of a City Fire policy, final decision, or custom so widespread as to be standard operating procedure, including but nolt limited to the policy or custom  alleged in the paragraph directly above, based on information revealed on March 14, 2021 in a *Sacramento Bee* investigation of a hostile work environment at City Fire, including but not limited to City Fire captains telling a City Fire paramedic to "back off" attempting to resuscitate a car fire victim, who subsequently died, the victim died, and the City Fire paramedic who was told to "back off" from any resuscitation felt "their disrespect for me was so great, that they let it affect their decision to [not to] help me resuscitate this young man." *Sacramento Bee*, March 14, 2021, Section A, pages 1 and 16, page 16, column 4, second and third full paragraphs, story headlined on page 1 as "Fire department focus of racism, hazing probe", authored by Marcus D. Smith.

326.        Defendant City Police Officer Nathaniel Reason's failure to intervene to prevent the denial of adequate medical was recklessly indifferent under the circumstances.

327.        Defendant City Police Officer Nathaniel Reason's failure to intervene to prevent the denial of adequate medical care to Plaintiff was unreasonable under the circumstances.

***Defendant City Through Its' Police Department, Fire Department, Defendant Robinet,***

*__Defendant Stanionis,  Defendant Reason, And/or The John Doe City Defendants Sends__*
*__False and Defamatory Content About Plaintiff To Healthcare Providers To Interfere With__*
*__Plaintiff's Attempts To Get Medical Care__*

**328.**      Plaintiff shortly after May 9, 2020 went to one or more health care providers

in Sacramento to get medical care for her injuries, including but not limited to

Elica Health Centers. Plaintiff told the health care providers that she visited,

including Mercy General Hospital and Elica Health Centers, that her injuries were

caused by "police brutality" from actions of Defendant City's Police Department. '

329.      Plaintiff received initial care from Elica Health Centers and was tiold to

return. When Plaintiff returned to Elica Heakth Centers, one or more Elica Health

Centers employees told Plaintiff that "law enforcement" sources had given to Elica

Health Centers a large number of Plaintiff's medical records from hospitals she had

visited prior to Plaintiff's May 9, 2020 injury from Defendants.

330.      Plaintiff told Elica Health Centers that Plaintiff did not understand the

relevance of records from long-ago visits to other health care providers to her

attempt to get medical care for  injuries she had only recently received. Plaintiff

also asked Elica Health Centers employees  why they were suddenly interested in

communications about Plaintiff from "law enforcement" agencies. Plaintiff asked

for the names of the law enforcement agencies, and asked to see the information

that the "law enforcement agencies" had communicated to Elica Health Centers.

Elica Health Centers employees refused to answer Plaintiff's questions, and

refused to show or provide the "law enforcement" communications to Plaintiff.

331.     Plaintiff thereafter caused to be delivered to Elica Health Centers a medical records request letter under the California Health & Safety Code Section 123100 and the federal Health Insurance Portability and Accountability Act. To this day Elica Heath Centers has not responded and has not provided any records to Plaintiff of the "law enforcement" communications about Plaintiff Elica Health Centers told Plaintiff it had received,

332.     Upon information and belief, Plaintiff alleges that these communications from "law enforcement" to Elica Health Centers and other health care providers came from Defendant City's Police Department, Fire Department, Defendant City Police Officer Jared Robinet, Defendant City Police Officer Maryna Stanionis, Defendant City Police Officer Nathaniel Reason, and/or or one or more of the John Doe City Defendants. And were sent to Elica Health Centers and other health care providers in order to: (i) interfere with Plaintiff's efforts to obrain medical care for her injuries; (ii) retaliate against Plainriff for describing the cause of Plaintiff's injuries as "police brutality"; (iii) defame Plaintiff; (iv) place Plaintiff in a false light; (v) induce health care providers (including Elica Health Centers) not to provide medical care to Plaintiff for injuries that could be directly traced to any or all of the Defendants.    .

333.     Because of the obvious compromising of Plaintiff's health care by Defendant City's Police Department, Plaintiff has been unable to get adequate health care for her great bodily injury caused by Defendant City's Police Department.

334.     Plaintiff sent Defendant City's Police Department sent one or more CPRA requests for records of communications by Defendant City's Police Department to health care providers that were of communications after May 9, 2020 that mentioned Plaintiff. Plaintiff has not received any of the requested records.

335.     The actions of Defendants City, City Fire Paramedic One, City Police Officer Robinet, and City Police Officer Stanions were an intentional denial of adequate medical care to Plaintiff for injuries caused by Defendants City, Robinet, and Stanionis.

336.     The actions of Defendants City, City Fire Paramedic One, City Police Officer Robinet, and City Police Officer Stanions were recklessly indifferent to Plaintiff's need for adequate medical care for injuries caused by Defendants City, Robinet, and Stanionis.

337.     The actions of Defendants City, City Fire Paramedic One, City Police Officer Robinet, and City Police Officer Stanions in denying adequate medical care to Plaintiff for injuries caused by Defendants City, Robinet, and Stanionis were actions that were unreasonable under the circumstances where City Fire Paramedic Two had already begun to give Plaintiff adequate medical care, but was stopped by Defendant City Fire Paramedic One.

338.     The actions of Defendants City, City Fire Paramedic One, City Police Officer Robinet, and City Police Officer Stanions in denying adequate medical care to Plaintiff for injuries caused by Defendants City, Robinet, and Stanionis were actions that were unreasonable under the circumstances where City Fire Paramedic Two had already begun to give Plaintiff adequate medical care, but was stopped by Defendant City Fire Paramedic One, and were in furtherance of and implementation of City policies,

procedures, rules, regulations, final decisions, and/or widespread custom standard

operating procedure, where: (i) the City Fire Department allows, encourages, or directs

City Fire supervisors or supervising paramedics to order subordinate City Fire paramedics

not to provide medical care to persons in visible need of care; and (ii) where the City

Police Department allows, encourages, or directs City Police officers to disparage,

trivialize, denigrate, discourage, or prevent the providing of adequate medical care to

persons injured by City Police Department officers.

339.    The actions, policies, procedures, rules, regulations, final decisions, and/or

widespread custom that amounts to standard operating procedure of Defendant City,

together with the actions of Defendants City Fire Paramedic One, Robinet, Stanionis,

Reason and the John Doe City Defendants violated Plaintiff's rights to adequate medical

care under the Fourth and Fourteenth Amendments to the United States Constitution and

render these Defendants liable to Plaintiff under United States Code, Title 42, Section

1983.

**SIXTH FEDERAL COUNT – DEFENDANT CITY OF SACRAMENTO POLICE DEPARTMENT, FIRE DEPARTMENT, AND/OR CITY MANAGER POLICIES, PROCEDURES, AND CUSTOM THAT CAUSED THE VIOLATION OF PLAINTIFF'S FIRST, FOURTH, AND FOURTEENTH AMENDMENT RIGHTS  [42 U.S.C. 1983]**

340.    Plaintiff hereby re-alleges and incorporates by reference the allegations contained

in Paragraphs 1—339 as though fully set forth herein.

341.     Defendant City is responsible for the creation and implementation of policies, procedures, final decisions, rules, regulations and/or widespread custom that amount to standard operating procedure,  that govern the actions of City Police officers and City Fire paramedics, including Defendant City Police Officer  Robinet, Defendant City Police Officer Stanionis, Defendant City Police Officer Reason, Defendant City Fire Paramedic One, and the John Doe City Defendants. Defendant City has an obligation under the First, Fourth, and Fourteenth Amendments to the United States Constitution to insure that City policies do not proximately cause City Police officers and City Fire paramedics to violate Plaintiff's constitutional rights secured by the First, Fourth and/or Fourteenth Amendments to the United States Constitution.  The persons with ultimate authority for the creation and implementation of these policies, procedures, customs, final decisions, rules and/or regulations are Defendant City's Chief of Police, Fire Chief, and City Manager. At this point, Plaintiff is not naming these persons as Defendants, but has instead named as the supervisorial defendants a category referred to as the John Doe City Defendants.  After discovery, Plaintiff will name any supervisorial employees as individual capacity Defendantsd if it reasonably appears that any of them violated Plaintiff's federal constitutional rights.

342.     The facts alleged in this Complaint show that Defendant City Police Officer Robinet and/or Defendant City Police Officer Stanionis:

(a) crossed the curtilage of Plaintiff's residence without a warrant after Defendant Robinet received a hand signal from Defendant Andres

(b) subjected Plaintiff to a warrantless seizure on her own front porch after stalking her on her driveway without announcement or notice;;

(c) Conducted a warrantless arrest and seizure of Plaintiff that was presumptively

unconstitutional under as well-settled body of United States Supreme Court precedent

dating back to 1980, four decades before Defendants' warrantless acts on May 9, 2020.

(d) fractured, lacerated, and caused to bleed Plaintiff's right hand ring finger;

(e) subjected Plaintiff to a public handcuffing and other excessive force when she did not

offer any physical resistance;

(f) handcuffed and used excessive force against Plaintiff refused to tell Plaintiff what she was

under arrest for or "under investigation for", and when they finally let Plaintiff go,

charged her only with California Penal Code Section 148, subdivision (a)(1) "resisting

arrest", a charge which the Sacramento County District Attorney dismissed on its' own

motion for "Insufficient Evidence";

(g) subjected Plaintiff to custodial handcuffed interrogation without *Miranda v. Arizona*

warnings;

(h)  while Plaintiff was in handcuffs and complained to Defendant Maryna Stanionis that the

handcuffs were causing her pain, told Plaintiff "this is not supposed to be comfortable",

and tightened the handcuffs some more;

(i) while Plaintiff was in handcuffs and locked in the rear seat of the Stanionis City Police

car, denied multiple requests from Plaintiff for water;

(j) after depriving Plaintiff of her house keys and dragging her away from her house while

the house was unlocked, denied Plaintiff's request to return to her residence (accompanied

by Officer Stanionis) to secure the residence against unauthorized entry;

(k)  seized Plaintiff's cellphone without a warrant

(l) took Plaintiff's cellphone to meetings with Defendant Maviglio, Defendant Andres, and/or

the John Doe Conspirator Defendants, where all of these Defendants had access to the

contents of Plaintiff's cellphone and likely searched it and/or deleted and/or corrupted its'
content;

(m) through Defendant City Fire Paramedic One, intentionally prevented City Fire Paramedic
Two from applying gauze to and otherwise fully treating Plaintiff's fractured, lacerated,
and bleeding finger;

(n)  used as the excuse for this cornucopia of constitutional violations false statements from
Defendant Andres and Defendant Maviglio, even though City Police Chief Hahn and the
City Police had been informed multiple times from Plaintiff in writing that both
Defendants Andres and Maviglio had perjured themselves against Plaintiff and committed
multiple other criminal acts against Plaintiff; and,

(o) committed other violations of Plaintiff's constitutional rights as alleged elsewhere in this
Complaint.

343.     Defendant City through one or more of the John Doe City Defendants created an
unreasonable risk of violations of Plaintiff's constitutional rights that would be
proximately caused by the actions of Defendant Robinet, Defendant Stanionis, Defendant
Reason, City Fire Paramedic One, and/or the John Doe City Defendants, by one or more
of the following:

(a) Rules

(b) Regulations

(c) Policy statements

(d) Policy decisions

(e) Custom that is a widespread, well-settled practice or standard operating
procedure

126

(f) Training of Defendants Robinet, Stanionis, Reason, City Fire Paramedic One, and/or one or more John Doe City Defendants that is so inadequate as to amount to deliberate indifference of the likelihood that violations of Plaintiff's constitutional rights were a highly predictable consequence of this inadequate training.

344.     One or more of the John Doe City Defendants acting on behalf of Defendant City as supervisors of Defendants Robinet, Stanionis, Reason, and/or City Fire Paramedic One intentionally ordered Defendants Robinet and Stanionis to take the actions alleged in this Complaint that proximately caused the violation of Plaintiff's rights under the First, Fourth, and Fourteenth Amendments to the United States Constitution.

345.     One or more of the John Doe City Defendants acting on behalf of the City as supervisors of Defendants Robinet, Stanionis, Reason and/or City Fire Paramedic One had actual knowledge of and acquiesced in the actions of Defendants Robinet, Stanionis, Reason, and City Fire Patamedic One  alleged in this Complaint that proximately caused the violation of Plaintiff's rights under the First, Fourth, and Fourteenth Amendments to the United States Constitution.

346.     One or more of the John Doe City Defendants acting on behalf of the City as supervisors of Defendants Robinet, Stanionis, Reason and/or City Fire Paramedic One acted with reckless indifference to the constitutional consequences for Plaintiff and established and maintained rules, regulations, final decisions, policies, practices, or customs that were so widespread as to be standard operating procedure, that proximately caused one or more violations of Plaintiff's constitutional rights.

347.     One or more of the Jophn Doe City Defendants acting on behalf of the City as supervisors of Defendants Robinet, Stanionis,  Reason and/or City Fire Paramedic One

127

through one or more final decisions, rules, regulations, policies, practices, or customs that were so widespread as to be standard operating procedure, created unreasonable risks of conduct by Defendants Robinet, Stanionis, Reason, and/or City Fire Paramedic One that proximately caused one or more violations of Plaintiff's constitutional rights.

348.     One or more of the John Doe City Defendants acting on behalf of the City as supervisors of City Fire Paramedic One intentionally ordered Defendant City Fire Paramedic One to take the actions, or not to take action, as alleged in this Complaint, actions or non-actions that proximately caused the violation of Plaintiff's rights under the Fourth and Fourteenth Amendments to the United States Constitution to medical care adequate to make her whole from the great bodily injury she suffered at the hands of Defendants City, Robinet, Stanionis, Reason, and/or the John Doe City Defendants.

349.     One or more of the John Doe City Defendants acting on behalf of Defendant City as supervisors of Defendant City Fire Paramedic One had actual knowledge of and acquiesced in the actions or non-actions of Defendant City Fire Paramedic One alleged in this Complaint that proximately caused the violation of Plaintiff's rights under the Fourth and Fourteenth Amendments to the United States Constitution to medical care adequate to make her whole from the great bodily injury she suffered at the hands of Defendants City, Robinet, Stanionis, Reason, and/or the John Doe City Defendants.

350.     One or more of the John Doe City Defendants acting on behalf of the Defendant City as supervisors of Defendant City Fire Paramedic One acted with reckless indifference to the constitutional consequences for Plaintiff, established and maintained one or more rules, regulations, final decisions, policies, practices, or customs that were so widespread as to  be standard operating procedure and that proximately caused one or more violations

of Plaintiff's constitutional rights under the Fourth and Fourteenth Amendment to adequate medical care for injuries caused by Defendants City, Robinet, Stanionis, Reason, and/or the John Doe City Defendants.

351.    One or more of the John Doe City Defendants acting on behalf of Defendant City as supervisors of Defendant City Fire Paramedic One,  through one or more rules, regulations, final decisions, policies, practices, or customs so widespread to be standard operating procedure, created unreasonable risks of conduct by Defendant City Fire Paramedic One that proximately caused the violation of Plaintiff's constitutional rights under the Fourth and Fourteenth Amendment to adequate medical care to Plaintiff for injuries caused by Defendants City, Robinet, Stanionis, Reason, and/or the John Doe City Defendants.

352.    One or more of the John Doe City Defendants acting under color of state law on behalf of Defendant City as supervisors of Defendant City Fire Paramedic One,  through one or more rules, regulations, final decisions, policies, practices, or customs that are widespread and amount to standard operating procedure, proximately caused the violation of Plaintiff's constitutional rights under the Fourth and Fourteenth Amendment to adequate medical care to Plaintiff for injuries caused by Defendants City, Robinet, Stanionis, Reason, and/or the John Doe City Defendants through one or more of the following:

(i)     intentional acts or failures to act;

(ii)    actual knowledge and/or acquiesence;

(iii)   actions with reckless indifference to the constitutional consequences for Plaintiff;

129

(iv)    actions that created an unreasonable risk of violation of Plaintiff's constitutional rights

These actions or inactions render Defendant City liable to Plaintiff under United States Code, Title 42, Section 1983.

**SEVENTH FEDERAL COUNT – DEFENDANT  CITY'S INTENTIONAL OR RECKLESS FAILURE TO TRAIN, SUPERVISE, AND/OR DISCIPLINE POLICE OFFICER DEFENDANTS ROBINET, STANIONIS, AND REASON, AND CITY FIRE PARAMEDIC ONE, THAT PROXIMATELY CAUSED THE VIOLATION OF PLAINTIFF'S RIGHTS SECURED BY THE UNITED STATES CONSTITUTION FIRST, FOURTH AND FOURTEENTH AMENDMENTS [42 U.S.C. 1983]**

353.    Plaintiff hereby re-alleges and incorporates by reference the allegations contained in Paragraphs 1—352 as though fully set forth herein.

354.    The facts alleged in this complaint show that Defendant City Police Officer Robinet and/or Defendant City Police Officer Stanionis:

(a) crossed the curtilage of Plaintiff's residence without a warrant after Defendant Robinet received a hand signal from Defendant Barbara Andres

(b) subjected Plaintiff to a warrantless seizure on her own front porch after stalking her on her driveway without announcement or notice;

(c) conducted a warrantless arrest and seizure of Plaintiff that was presumptively unconstitutional under as well-settled body of United States Supreme Court precedent dating back to 1980, four decades before Defendants' warrantless acts on May 9, 2020.

(d) fractured, lacerated, and caused to bleed Plaintiff's right hand finger;

130

(e) subjected Plaintiff to a public handcuffing and other excessive force when she did not offer or show any physical resistance;

(f) Grabbed and  pulled Plaintiff out of her house living room handcuffed; used excessive force against Plaintiff; refused to tell Plaintiff what she was under arrest for or "under investigation for", and when they finally let Plaintiff go, charged her only with California Penal Code Section 148, subdivision (a)(1) "resisting arrest", a charge which the Sacramento County District Attorney dismissed on its' own motion for "Insufficient Evidence";

(g) subjected Plaintiff to custodial handcuffed interrogation without *Miranda v. Arizona* warnings;

(h)  while Plaintiff was in handcuffs and complained to Defendant City Police Officer Maryna Stanionis that the handcuffs were causing Plaintiff pain on Plaintiff's hands, wrists, and fractured and lacerated and bleeding  right ring ring finger  told Plaintiff "this is not supposed to be comfortable", and tightened the handcuffs some more;

(i) while Plaintiff was in handcuffs, bleeding  and locked in the rear seat of the Officer Stanionis City Police car, Stanionis denied multiple requests from Plaintiff for water;

(j) after depriving Plaintiff of her house keys and dragging her away from her house while the house was unlocked, Stanionis denied Plaintiff's request to return to her residence (accompanied by Officer Stanionis) to secure the residence against unauthorized entry;

(k)  seized Plaintiff's cellphone without a warrant

(l) took Plaintiff's cellphone to meetings with Defendant Steven Maviglio, Defendant Barbara Andres, and/or the John Doe Conspirator Defendants, where all of these Defendants had access to the contents of Plaintiff's cellphone and likely searched it and/or deleted and/or corrupted its' content;

131

(m) through Defendant City Fire Paramedic One, intentionally prevented City Fire Paramedic Two from applying gauze to and otherwise properly and fully treat Plaintiff's fractured, lacerated, and bleeding right hand ring finger;

(n) used as the excuse for this cornucopia of constitutional violations false statements from Defendant Barbara Andres and Defendant Steven Maviglio, even though Defendant City's Police Department had been informed multiple times from Plaintiff in writing that both Defendants Barbara Andres and Steven Maviglio had perjured themselves against Plaintiff and committed multiple other criminal acts against Plaintiff; and,

(o) committed other violations of Plaintiff's constitutional rights as alleged elsewhere in this Complaint\

355.     Defendant City Police Officer Nathaniel Reason and one or more of the John Doe City Defendants had a duty to intervene and a reasonable opportunity to intervene, but intentionally or recklessly failed to intervene, thus causing Plaintiff's First, Fourth, and Fourteenth Amendment constitutional rights to be violated.

356.     On May 9, 2020, before Defendant City Police Officer Jared Robinet entered the curtilage of Plaintiff's residence, stalked Plaintiff on here driveway and front porch, and as soon as Plaintiff entered her living room,  grabbed Plaintiff from behind, seized the person of, and arrested Plaintiff without a warrant.

357.     A reasonable police officer would have known that the United States Supreme Court had ruled that Defendant City Police Officer Jared Robinet's conduct was illegal and unconstitutional under the Fourth and Fourteenth Amendments, as follows:

(a) *Payton v. New York,* 445 U.S. 57 (1980), the U.S. Supreme Court decision holding that the Fourth and Fourteenth Amendments were violated by a "routine felony arrest" made without a warrant in the defendant's home.

132

(b) *Groh v. Ramirez*, 540 U.S. 551, 564 (2004), where the U.S. Supreme Court held that: "No reasonable officer could claim to be unaware of the basic rule, well established by our cases, that absent consent or exigency, a warrantless search of the home is presumptively unconstitutional."

(c) *Florida v. Jardines* , 569 U.S. 1, 6, 133 S.Ct. 1409, 185 L.Ed2d. 495 (2013), where the Court explained that invading the front porch curtilage of the home violates the First and Fourteenth Amendments because the curtilage is part of the home: "When it comes to the Fourth Amendment, the home is first among equals";  "At the [Fourth] Amendment's 'very core' stands the right of a [wo]man to retret into [her] own home and there be free from unreasonable government intrusion"; and  "to give full practical effect to that right, the Court considers curtilage – the area 'immediately surrounding and  associated with the home' to be 'part of the home itself for Fourth Amendment purposes." Therefore, the Court held that an arrest made based on a front porch no-warrant sniff of marijuana by a police dog was unconstitutional.

(c) *Collins v. Virginia*, 584 U.S __, 138 S. Ct. 1663, 201 L.Ed.2d 9, Case No. 16-1027, decided May 29, 2018, where the U.S. Supreme Court held that a warrantless arrest  made on the driveway of Defendant's home was unconstitutional because the police were crossing the curtilage without a warrant, and where the U.S. Supreme Court also ruled that:

(i) "When a law enforcement official physically intrudes on the curtilage to gather evidence, a search within the meaning of the Fourth Amendment has occurred [citation to *Jardines, supra,* omitted]. Such conduct thus is presumptively unreasonable without a warrant"[*Collins, supra*, at 138 S.Ct. 1670].

(ii) "Just like the *front porch*, side garden, or area 'outside the front window'[citation to

133

*Jardines, supra* omitted] the driveway enclosure where Officer Rhodes searched the motorcycle constitutes 'an area adjacent to the home and 'to which the activity of home life extends,'' and so is properly considered curtilage…'[*Collins, supra,* at 138 S.Ct. 1671].

(iii)  "[t]he Court, though, has long been clear that the curtilage is accorded constitutional protection [citation omitted[. As a result, officers regularly assess whether an area is curtilage before executing a search." [*Collins, supra,* 138 S.Ct. at 1674-1675].

358.      In addition, on May 9, 2020, a reasonable police officer working in the City of Sacramento would have known that the U.S. Court of Appeals for the Ninth Circuit on August 21, 2019 had filed its' published opinion in *Nicholson v. City of Los Angeles*, 935 F.3d 685 (Case No. 17-56648), where the court ruled as follows:

(i)"It is well-established that a person may not be arrested, or must be released from arrest, if previously established probable cause has dissipated", citing *United States v. Ortiz-Hernandez,* 427 F.3d 567, 574 (9th Cir. 2005)(per curiam).

(ii)      "A reasonable officer would have known that participation in an ongoing seizure after any probable cause had dissipated violates the Fourth Amendment."

(iii)      "…continued detention for five hours – well after any probable cause would have dissipated – and the use of handcuffs throughout the duration violated … clearly established Fourth Amendment rights to be free from unlawful arrest and excessive force."

359.     On May 9, 2020, a reasonable police officer would have known that in 2015, the U.S. Court of Appeals for the Ninth Circuit had issued its' opinion in *Velazquez v. City of Long Beach*, 793 F.3d 1010 (9th Cir. 2015), where the court held that the Fourth Amendment was violated when a police officer seized for "detention" a person in front of his home, subjected the person to a "twist lock", the arrestee did not fight back, but was charged with California Penal Code Section 148 "resisting arrest"  and where the court held that:

(a)  "under California law, even an outright refusal to cooperate with police officers cannot create adequate grounds for [police] intrusion, without more. , citing *Mackinney v. Nielsen*, 69 F.3d 1002, 1006-1007 (9th Cit. 1995), and where the court also held:

(b) "Ninth Circuit law … clearly establishes the right verbally to challenge the police', and  'verbal protests [cannot] support an arrest under [California Penal Code Section 148]."

(c) "[California Penal Code] Section 148 does not criminalize a person's failure to respond with alacrity to police orders."

(d) "police [may] not interfere with the freedom of private persons unless it be for specific, legitimate reasons", quoting *Duran v. City of Douglas*, 904 F.2d 1372, 1376-77 (9th Cir. 1990)..

360.     Defendant City's Police Department training, supervision, and/or discipline programs, carried out by one or more of the John Doe City Defendants and/or Defendant Reason, were inadequate to train, supervise, and/or discipline Defendant Officers Robinet, Stanionis, Reason and/or the John Doe City Defendants in a

135

manner to insure that Defendants Robinet, Stanionis, Reason, and/or the John Doe City Defendants would carry out their duties in a manner so as to avoid violation of Plaintiff's constitutional rights under the First, Fourth and Fourteenth Amendments.

361.     Defendant City's Police Department training, supervision, and/or discipline programs, carried out by one or more of the John Doe City Defendants and/or Defendant Reason, amounted to deliberate indifference to the fact that inaction would obviously result in the violation of Plaintiff's constitutional rights under the First, Fourth and Fourteenth Amendments to be free from unreasonable search and seizure, excessive force, and/or police retaliation for exercise of her rights of freedom of expression.

(e) When Defendant City, acting through one or more of the Jhn Doe City Defendants and/or Defendant Reason, transferred Defendant City Police Officer Jared Robinet to the "north side" of the City of Sacramento that included Plaintiff's neighborhood; when they sent officer Robinet out on CAD calls, police calls,  and other activity targeted at Plaintiff or her residence; and when they sent officer Robinet to respond to the CAD call or police call instigated by Defendant Barbara Andres, Defendant Steven  Maviglio, and/or the John Doe Conspirator Defendants that resulted in the false arrest that gave rise to this Complaint, they did so with full knowledge of Defendant officer Robinet having been named in the 2018 Sacramento County District Attorney Officer-Involved Shooting Memorandum as one of the two City Police officers who fired the bullets that killed Stephon Clark, an incident where Defendant Robinet and/or the other officer fired the fatal bullets after mistaking as a gun the cellphone held by Stephon Clark.

1

2      362.      When Defendant City acting through one or more of the John Doe City

3              Defendants and/or Defendant Reason, re-assigned Defendant Officer Jared Robinet

4              to an area including Plaintiff's neighborhood, these Defendants  did so without

5              giving Defendant Officer Robinet adequate training, supervision, and discipline to

6              prevent violations of the constitutional rights of persons to be free from

7              unreasonable search and seizure and/or freedom from excessive force.      .

8

9

10    363.      Defendant City's decision through one or more of the John Doe City Defendants

11            and/or Defendant Reason, to assign Defendant Officer Jared Robinet to matters in which

12            Plaintiff or Plaintiff's residence was named as the target of City Police activity, made with the

13            knowledge of Defendant Officer  Robinet's  being named in the 2018 Sacramento County

14            District Attorney Officer-Involved Shooting Memorandum that named Defendant officer

15            Robinet as one of the two officers who fired the bullets that killed Stephon Clark, an incident

16            where Defendant officer Robinet and/or the other officer fired the fatal bullets after mistaking

17            as a gun the cellphone held by Stephon Clark, and without remedial training, including but

18            training in the law that warrantless arrests inside the curtilage of the home or in the living

19            room of the home are presumptively unconstitutional, amounted to an intentional  decision to

20            send Defendant City Police Officer Jared Robinet to violate Plaintiff's United States

21            Constitution rights to be free from unreasonable search and seizure and/or right to be free

22            from excessive force/

23

24    364.     The act by Defendant City alleged in the paragraph immediately above amounted to

25            deliberate indifference to the likelihood that sending Defendant City Police Officer Jared

26            Robinet to respond to a police call in which Plaintiff and/or Plaintiff's residence was named

27

28

137

would proximately result in the violation of Plaintiff's United States Constitution rights to be free from unreasonable search and seizure and/or right to be free from excessive force.

365.     Defendant City's Fire Department training, supervision, and/or discipline programs, carried out by one or more of the John Doe City Defendants, were inadequate to train Defendant City Fire Paramedic One, officer Robinet, officer Stanionis, officer Reason and/or the John Doe City Defendants to carry out their duties in a manner so as to avoid violation of Plaintiff's constitutional rights under the Fourth and Fourteenth Amendments to receive adequate medical care to make her whole from the great bodily great bodily injury she suffered from the actions of Defendants City, officer Robinet, officer Stanionis, officer Reason, and/or the John Doe City Defendants.

366.     Defendant City's Fire Department training, supervision, and/or discipline programs, carried out by one or more of the John Doe City Defendants, amounted to deliberate indifference to the fact that inaction would obviously result in the violation of  Plaintiff's constitutional rights under the Fourth and Fourteenth Amendments to receive adequate medical care to make her whole from the great bodily great bodily injury she suffered from the actions of Defendants City, officer Robinet, officer  Stanionis, officer Reason, and/or the John Doe City Defendants.

367.  The failure of Defendant City acting through one or more of the John Doe City Defendants to train, supervise, and discipline Defendant City Fire Paramedic One proximately caused the violation of Plaintiff's constitutional

right to adequate medical care to make her whole from the great bodily injury she suffered from the actions of Defendants City, officer Robinet, officer Stanionis, officer Reason, and/or the John Doe City Defendants, and renders Defendant City liable to Plaintiff under United States Code, Title 42, Section 1983.

368.     Defendant City acting through one or more of the John Doe City Defendants acting under color of state law on behalf of the City as supervisors of Defendant City Fire Paramedic One,  through recklessly indifferent failure to train, discipline, and/or supervise, created unreasonable risks of conduct by Defendant City Fire Paramedic One that proximately caused one or more violations of Plaintiff's constitutional rights under the Fourth and Fourteenth Amendments to adequate medical care to Plaintiff for injuries caused by Defendants City, officer Robinet, officer Stanionis, officer Reason, and/or the John Doe City Defendants, and renders Defendant City liable to Plaintiff under United States Code, Title 42, Section 1983.

**EIGHTH FEDERAL COUNT – DEFENDANT CITY'S UNCONSTITUTIONAL TREATMENT OF PLAINTIFF AS A "CLASS OF ONE" IN VIOLATION OF THE EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT [42 U.S.C. 1983]**

369.     Plaintiff hereby re-alleges and incorporates by reference the allegations contained in Paragraphs 1—368 as though fully set forth herein.

370.     The Fourteenth Amendment to the United States Constitution provides that no State shall deny to any person the equal protection of the laws.

139

371.     In *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000), a unanimous United States Supreme Court held that a municipality violated the United States Constitution Fourteenth Amendment Equal Protection Clause when the municipality intentionally treated a municipal resident differently "from others similarly situated but there is no rational basis for such treatment".

372.     In addition, the Fourteenth Amendment Equal Protection Clause is also violated when a municipality intentionally treats a resident differently from others similarly situated when the municipal action or inaction is motivated by a spiteful effort to "get" the person for reasons wholly unrelated to any legitimate governmental objective.

373.     Defendant City of Sacramento unconstitutionally treats Plaintiff as a "class of one": (i) subjected to false arrests, other illegal conduct, and targeting of Plaintiff based on false communications to the Defendant City's Police Department from Defendant Barbara Andres, Defendant Steven Maviglio, and others (including the John Doe City Defendants);

(ii) but where Plaintiff's written police reports or written communications to Defendant City's Police Department (addressed to the Chief of Police) regarding the illegal acts toward Plaintiff by Defendant Steven Maviglio, Defendant Barbara Andres, and others (including the John Doe City Defendants) will result in a combination of one or more of the following: (i) Plaintiff's written Police Reports will not be accepted or given an identifying number; (ii) Plaintiff's written Police Reports will be ignored by the Defendant City's Police Department; (iii) in response, Defendant City's Police Department will send to Plaintiff's residence officers from the City Police Mental Health Unit or the City Police Impact Team (a

140

unit that deals with homeless persons); (iv) Plaintiff will be falsely arrested and subjected to great bodily injury, as occurred in the actions of May 9, 2020 detailed in this Complaint; (v) Defendant City's Police Department will do nothing to prosecute the criminal acts of Defendant Maviglio that Plaintiff suffered on March 7, 2021: Defendant Maviglio  California Penal Code Section 594 malicious mischief vandalism that Plaintiff escaped (and videotaped); (vi) Defendant City through its' Police Department and officers (including Defendant Robinet, Defendant Stanionis, and/or Defendant Reason) will work in concert with Defendant Steven  Maviglio to have City Police officers knock on Plaintiff's door at 5:45 a.m. in the morning and later leave on Plaintiff's front porch a Notice to Appear based entirely on Defendant Steve Maviglio's statement accusing Plaintiff of "willfully violating" Mr. Maviglio's restraining order (that Plaintiff has reported to Defendant City's Police Department that Mr. Maviglio's obtained through his own perjury and the perjury of Defendant Barbara Andres), simply by driving a car from her home on 45th Street toward "T" Street, even though Mr. Maviglio's restraining order expressly does not apply to Plaintiff's driving to or from her home; and (vii) Defendant City's Police Department ignores Mr. Maviglio's videotaped malicious mischief vandalism to the vehicle that Plaintiff was driving, notwithstanding Plaintiff's Police Report to Defendant City's Chief of Police that offers to provide  videotape of the criminal malicious mischief car vandalism by Defendant Maviglio, where Maviglio attempted to open the door of Plaintiff's car as it was *in motion* while Plaintiff was driving the car on 45th Street. in an attempt

141

by Mr. Maviglio to assault, batter, and falsely imprison Plaintiff.  Plaintiff will sue

Mr. Maviglio in a separate California state court action for these injuries, but is

including this incident in this Count in this Complaint as a glaring example of: (i)

Defendant City's intentional unequal treatment of Plaintiff pursuant to acts of its'

employees, policy, or custom that is so widespread as to be standard operating

procedure; Defendant Maviglio's spinning-out-of-control spite, hatred, and ill will

toward Plaintiff that extends to intentionally committing criminal acts. .

374.      Defendant City's unequal treatment of Plaintiff regarding Police Reports

(not accepted) and calls to police targeting Plaintiff (accepted) are motivated solely

by a spiteful effort to "get" Plaintiff rather than any legitimate law enforcement

objective.  Under *Willowbrook*, spite is not an element of the constitutional

violation, but decisions in one more federal Circuit Courts of Appeal (such as the

Seventh Circuit decision that was affirmed in *Willowbrook*), spite is a separate and

independent violation. Plaintiff alleges that spite is a separate and independent

violation of the United States Constitution Fourteenth Amendment Equal

Protection Clause.

**_Defendant City's Targeting Of Plaintiff Prior To May 9, 2020 That Included Activity By_**

**_Defendant City Police Officer Robinet At or In The Vicinity of Plaintiff's Residence_**

375.           Upon information Plaintiff received from a Defendant City CPRA

response, between January 4 and August 7 of 2020, there were approximately thirty City

Police "CAD [Computer Assisted Dispatch] reports" targeting 1859 45th Street (Plaintiff's

residence) for action by City Police officers, more than one of which said "advised entry."

142

376.           Prior to May 9, 2020, there was also at least one visit to 1859 45th Street

by Defendant City Police Officer Jared Robinet, including visits on the 2020 dates of

January 30, March 10, and/or March 11. On March 11, 2020, in the afternoon, Defendant

City Police Officer Jared Robinet knocked on the front door of 1859 45th Street when

Plaintiff was not present. Plaintiff's friend who was in the house refused to open the door

to Defendant City Police Officer Robinet, who then proceeded to issue a twenty-five

dollar ticket to the friend's car parked at the 1859 45th Street curb without a front license

plate (but with a rear plate), even though Defendant City's Police Department has ignored

one or more Police Reports from Plaintiff reporting vehicle lic ense plate irregularities or

deficiencies on one or more of the cars parked at 1871 455th Street, the house between

Plaintiff's house and Defendant Maviglio's house.   .

377.           Upon information and belief, Plaintiff believes that the May 9, 2020

actions of Defendant  City's Police Department, Defendant City Police Officer Jared

Robinet, Defendant City Police Officer Maryna Stanionis, Defendant City Police Officer

Nathaniel Reason, and one or John Doe City Defendants, to accept without reservation or

question one or more false and defamatory statements of and concerning and Plaintiff in a

false light made by Defendant Barbara Andres, Defendant Steven Maviglio, and/or one or

more of the John Doe Conspirator Defendants, in order to retaliate against Plaintiff for her

consistent exercise of her rights under the First, Fourth, Fifth and Fourteenth Amendments

not to talk to Defendant City's Police Department officers, and for filing multiple written

Police Reports regarding Defendant Barbara Andres, Defendant Steven Maviglio, and

other persons (who may turn out to be John Doe Conspirator Defendants).

378.           Upon information and belief, Defendant Barbara Andres, Defendant Steven

Maviglio, and/or one or more of the John Doe Conspirator Defendants made false and

143

defamatory statements of and concerning Plaintiff, and that also placed Plaintiff in a false light. These statements were made to Defendant City's Police Department in retaliation for Plaintiff's multiple written Police Reports to Defendant City's Chief of Police regarding what Plaintiff stated she reasonably believed to be illegal acts by Defendant Barbara Andres, the husband of Defendant Barbara Andres (Mr. Cecil Taylor), Defendant Steven Maviglio, and/or Defendant Steve Maviglio's guest Mr. Joseph Lee Mastalski.

379.            Plaintiff mailed, delivered, or caused these written Police Reports to be delivered to the Defendant City's Police Department on multiple dates prior to May 9, 2020, in written letters addressed to Defendant City's Chief of Police. Upon information and belief, Plaintiff believes that one or more of the City's Police Department employees communicated these reports or their existence to Defendant Barbara Andres, Defendant Steven Maviglio, and/or one or more of the John Doe Conspirator Defendants.

380.            The Police Reports sent by Plaintiff to Defendant City's Police Department included November 4, 2019 (personal delivery date) written reports expressly, separately, and specifically charging both Defendant Steven Maviglio and Defendant Barbara Andres with California Penal Code Section 118, subdivision (a) Perjury, in the November 1, 2019 hearing on Mr. Maviglio's restraining order where the Coutrt Commissioner gave Mr. Maviglio a restrainibng order whose stayaway zone was reduced by 90 percent, from the 100 yards (300 feet) siught by Mr. Maviglio to ten (120) yards or thirty (30) feet.

381.            Upon information and belief, one of the intentions for the actions alleged in this Complaint to have been performed by Defendant Steven Maviglio and/or Defendant Barbara Andres was to use Defendant City's Police Department to use force, coercion, intimidation and violence against Plaintiff to retaliate against Plaintiff for

demanding that Defendant Steven Maviglio and Defendant Barbara Andres in writing retract or provide proof of their false and defamatory statements of and concerning Plaintiff that were both made by Defendant Maviglio and Defendant Andres on November 1, 2019 in support of a California Civil Code Section 527.6 civil harassment restraining order sought by Defendant Maviglio against Plaintiff in August-November of 2019. This Complaint does not seek relief against any Defendant for Defendant Maviglio's and Defendant Andres's acts in obtaining the restraining order (which Plaintiff maintains was procured through fraud), but these acts are set forth herein in order to display the hatred, spite, ill will, malice, knowing falsehood, and reckless disregard of truth or falsity by Defendant Barbara Andres and by Defendant Steven  Maviglio that characterizes their state of mind in their acts regarding Plaintiff plead in this Complaint, and Defendant City's allowing itself to be used by Defendant Barbara Andres, Defendant Steven Maviglio, and the John Doe Conspirator Defendants to unequally treat Plaintiff as a "class of one" through arbitrary denial to Plaintiff of the equal protection of the laws and due process guaranteed by Article I, Section 7 of the California Constitution.

382.	Upon information and belief, Plaintiff additionally alleges that Defendant Barbara Andres and/or Defendant Steven  Maviglio made these false and defamatory statements of and concerning Plaintiff that placed Plaintiff in a false light, to Defendant City's Police Department, Defendant City Police Officer Robinet, Defendant City Police Officer Stanionis, and/or one or more of the John Doe City Defendants, in retaliation for Plaintiff's multiple written police reports regarding what Plaintiff stated she reasonably believed to be illegal acts by Defendant Barbara Andres, the husband of Defendant Barbara Andres (Mr. Cecil Taylor), Defendant Steven Maviglio, and/or Defendant Maviglio's guest Mr. Joseph Lee Mastalski.

145

383.          Plaintiff mailed, delivered, or caused these written Police Reports to be delivered to the Defendant City's Police Department regarding misconduct that occurred on multiple dates prior to May 9, 2020. Upon information and belief, Plaintiff alleges that one or more of the City's Police Department employees communicated the content of these reports or their existence to Defendant Andres, Defendant Maviglio, and/or one or more of the John Doe Conspirator Defendants.

384.          Among the Police Reports that Plaintiff that caused to be personally delivered to Defendant City's Police Department (addressed to Defendant City's Chief of Police) are two separate November 4, 2019 Police Reports describing the California Penal Code Section 118 Perjury committed by Defendant Steve Maviglio and Defendant Barbara Andres. These reports expressly and specifically charge both Defendant Maviglio and Defendant Andres with committing California Penal Code Section 118, subdivision (a) Perjury on November 1, 2019.

385.          On multiple dates in 2015 and 2016 prior to March 31, 2016, Plaintiff filed multiple Police Reports in the form of written letters to the Defendant City's Chief of Police that were hand delivered to the City's main Police Station at 5770 Freeport Boulevard . These Police Reports reported home invasions, thefts and  vandalism to Plaintiff's residence.

386.          On a date in March  of 2016, Defendant City's Police Department sent an electronic mail message to the City Police Department staff stating: "we are not accepting any Police Reports from Parvin Olfati", or words to that effect, and further instructing the staff to escort Plaintiff out of the City Police station (5770 Freeport Boulevard, Sacramento, California 95822) should she attempt to file one. This final

146

decision, policy, or custom amounting to policy announced in writing continues in effect to this day.

387.                     Plaintiff after March 2016 and continuing through and after May 9, 2020 continued to file Police Reports with Defendant City's Police Department, through written detailed letters to the Defendant City's Chief of Police. Prior to the coming of COVID-19 in February and March of 2020, these Police Reports were personally delivered to the City Police Records Department at 5770 Freeport Boulevard (Sacramento, California 95822), and were usually (but not always) file-stamped as received  After City Police in-person services were closed in March 2020 due to COVID-19, these Police Reports were delivered to Defendant City Police and Police Chief Hahn: (i) via electronic mail to CaSacramentoPd@coplogic.com and via U.S. Mail; and (ii) after this electronic mail address stopped receiving Plaintiff's police reports, via personal delivery to the City Clerk Box at the Sacramento City Hall Kiosk and via U.S. Mail, both addressed to the Chief of Police.

388.                     Defendant City's Police Department on its' website has a portal for filing online Police Reports, but users of this "service" are limited to two thousand characters (not words). Plaintiff finds this portal to be useless and therefore insists upon using delivery methods that enable the delivery of content that exceeds two thousand characters.

389.                     Upon information and belief, Defendant City's Police Department website for many years contained language telling crime victims that they could file police reports or crime reports in person at the City Police 5770 Freeport Boulevard station and at one or more other locations. However, this language disappeared from the City of Sacramento Police Department website shortly after Plaintiff sent Defendant City a CPRA request for

147

the policy or analysis underlying the March 2016 statement not to accept Police Reports from Plaintiff.

390.        On September 12, 2019, Plaintiff caused to be delivered to Defendant City's Police Department a Police Report describing how Defendant Steven Maviglio threatened to "call the police" against Plaintiff merely for walking on a public sidewalk.

391.        On February 7, 2020, Plaintiff caused to be personally delivered to the Defendant City's  Police  Department a Police Report describing reckless driving by Defendant Steven Maviglio where Defendant Maviglio as soon as he saw Plaintiff driving on 45th Street "rushed and got into his [license plate number omitted] truck, backed out of his driveway, and physically stopped his truck on 45th Street directly in front of me. Mr. Maviglio's intentional acts using his truck resulted in the blocking of  [Plaintiff] and her car , and forced [Plaintiff] her  to honk [her] car horn repeatedly", in conduct by Defendant Steven Maviglio that Plaintiff reported to Defendant City's Police Department was in fact Defendant Steven Maviglio driving recklessly or intending to cause an accident.

**392.**        On February 10, 2020, Plaintiff caused to be personally delivered to Defendant City's Department (addressed to the Chief of Police) a Police Report describing the following activity of Defendant Steven Maviglio guest Mr. Joseph Lee Mastalski: **"reckless driving on 45th Street in order to stop vehicle in the middle of 45th Street in order to scream "hey bitch" at Ms. Parvin Olfati as she was standing in the driveway of her house at 1859 45th Street; offensive conduct -- all by Joseph Lee Mastalski [address omitted], Sacramento, California/"**

393.        On May 4, 2020 – five days before the false arrest – Plaintiff caused

148

to be sent via electronic mail to Defendant City Police a Police Report describing the "Criminal Use of High-Beam Headlights With Intent To Injure By Steven Maviglio, Directed and/or Aided and Abetted By 45th Street Residents…" the latter category including Defendant Barbara Andres.

394.             On May 8, 2020 – the night before the false arrest giving rise to this Complaint – Defendant Steven Maviglio's guest Mr. Joseph Lee Mastalski, with intent to injure, pointed his vehicle high beam headlights directly at Plaintiff and her eyes in violation of California Vehicle Code Sections 24401, 24407, and 24409 and the Sacramento County COVID-19 Public Health Order. Plaintiff reported this in a Police Report sent n May 15, 2020 via electronic mail to the Defendant City's Police Department, addressed to the Chief of Police.

395.             On May 8, 2020 – the night before the false arrest giving rise to this Complaint – the husband and 1870 45th Street co-resident of Defendant Barbara Andres, Mr. Cecil Taylor, ran out into 45th Street to block Plaintiff's driving of her car, and such blocking was in violation of two California Vehicle Code sections. On May 15, 2020, Plaintiff caused to be delivered to Defendant City's Police Department a Police Report describing this illegal conduct.

396.             On May 11, 2020, Plaintiff caused to be personally delivered to Defendant City's Police Department  a Police Report describing the making of false police reports of and concerning Plaintiff by Defendant Barbara Andres and by Defendant Steven Maviglio communications that resulted in the May 9, 2020 false arrest giving rise to this Complaint.

397.           The conduct of Defendant City Police Officer Jared Robinet on May 9, 2020 resulted in more unconstitutional treatment of Plaintiff as a "class of one." When Defendant Robinet crossed the curtilage of Plaintiff's residence, Defendant City Police Officer Jared Robinet was aware of Defendant Barbara Andres walking on Plaintiff's driveway without Plaintiff's permission, but took no action regarding Defendant Andres walking on Plaintiff's driveway without Plaintiff's permission – even though the Andres conduct in front of Defendant City Police Officer Jared Robinet's own eyes was a California Penal Code Section 602 trespass. In addition, Defendant Robinet's ultimate supervisor, Defendant City's Chief of Police, had in November 2019 received the Police Report letter from Plaintiff (described elsewhere in this Complaint) reporting the California Penal Code Section 118 Perjury toward Plaintiff by Defendant Andres.   .

398.           On May 9, 2020 at about 8:00 a.m. in the morning, at the time Defendant Robinet crossed the curtilage, Plaintiff was walking on her driveway at a normal pace toward her front porch and front door, and at all times was walking within the curtilage of her residence. Plaintiff: (i) was aware that a City Police car and uniformed officer was present on 45th Street near her house; )ii) heard no communication from Defendant Robinet; and (iii) reasonably believed that the City Police officer was going to talk to Defendant Barbara Andres, since Defendant Barbara Andres: (i) had been visibly trespassing on Plaintiff's driveway; and (ii) Defendant Barbara Andres was the subject of one of the two November 4, 2019 police reports to Defendant City's Police Department that expressly, specifically, and with facts, accused Defendant Andres of having committed California Penal Code Section 118 Perjury on November 1, 2019.

399.           Plaintiff is informed and believed that the purpose of the acts by Defendant Robinet, Defendant Stanionis, Defendant City, Defendant Maviglio, Defendant

150

Andres, and the John Doe Conspirator Defendants was to intimidate Plaintiff from the exercise of federally and California law protected rights, by causing Plaintiff to be assaulted, battered, and detained handcuffed by City Police officers – which is exactly what happened on May 9, 2020 at the same time Defendant Andres was trespassing Plaintiff's driveway and, upon information from Defendant City's CPRA response, was communicating with the Defendant City's Police Department about Plaintiff  -- a communication that Plaintiff upon information and belief alleges was both false and a contributing cause to Plaintiff's great bodily injury and other damages.

400.         Defendant City Police Officer Maryna Stanionis joined in the unconstitutional treatment of Plaintiff as a "class of one."  Plaintiff while in handcuffed detention asked Defendant City Police Officer Maryna Stanionis multiple times for water and was refused water multiple times, even though Plaintiff was dehydrated, handcuffed, bleeding, shocked, and in great pain.

401.         Further, Defendant City Police Officer Stanionis even went so far as to refuse Plaintiff's request for Defendant City Police Officer Stanionis to accompany Plaintiff to her house to obtain water, or for Defendant City Police Officer Stanionis to obtain water for Plaintiff from Defendant Barbara Andres or Defendant Steven  Maviglio.

402.         Defendant City Police Officer Maryna Stanionis intentionally denied Plaintiff's request for Officer Stanionis to accompany Plaintiff back to Plaintiff's house, a visit that would have enabled Plaintiff to lock the house doors and prevent any illegal entries, even though during the entire time Defendant Stanionis kept Plaintiff in dehydrated handcuffed bleeding condition, Defendant Stanionis went back and forth to the residence of 1901 45th Street resident Steven Maviglio.

403.                Defendant City Police Officer Maryna Stanionis kept Plaintiff confined and handcuffed in a City Police car on May 9, 2020 where all of the police car windows were closed for most of the detention. The City Police car was locked the entire time. Defendant City Police Officer Stanionis intentionally kept Plaintiff confined and denied water even though Defendant City Police Officer Stanionis knew Plaintiff was bleeding, dehydrated, shocked, and hurting from  pain and the heat in the car.

404.                Defendant City Police Officer Maryna Stanionis kept Plaintiff confined and in handcuffed, bleeding, in pain  custodial interrogation even though Plaintiff had offered no physical resistance to Defendant Stanionis or to Defendant City Police Officer Robinet.

405.                Defendant City Police Officer Maryna Stanionis further intentionally increased the pain suffered by Plaintiff from the City Police handcuffs. Defendant City Police Officer Maryna Stanionis squeezed Plaintiff's wrists; squeezed Plaintiff's bloodied, fractured, and lacerated right hand ring finger; and squeezed Plaintiff's unfractured left hand ring finger to the point that Plaintiff lost feeling on the left hand. Plaintiff after almost passing out explained to Defendant City Police Officer Maryna Stanionis that the handcuffs were causing her pain. Defendant City Police Officer Maryna Stanionis responded: "it is not supposed to be comfortable" or words to that effect, and proceeded to tighten the handcuffs and thereby intentionally increased Plaintiff's injuries, pain, and suffering, even though Plaintiff was already physically handcuffed, was not carrying a weapon,  and had no chance of escaping or harming Defendant City Police Officer Stanionis.

406.          Defendant Stanionis intentionally tightened the handcuffs on Plaintiff's unfractured left fingers and hand after Plaintiff complained of pain to the point that plaintiff could not feel her left hand..

407.          Defendant City Police Officer Maryna Stanionis was given Plaintiff's keys and cellphone by Defendant City Police Officer Robinet, who had seized them from the front porch of Plaintiff's residence.

***Defendant City Through Its' Police Department, Fire Department, Defendant Robinet, Defendant Stanionism Defendant Reason, And/or The John Doe City Defendants Sends False and Defamatory Content About Plaintiff To Healthcare Providers To Interfere With Plaintiff's Attempts To Get Medical Care***

**408.**     Plaintiff shortly after May 9, 2020 went to one or more health care providers in Sacramento to get medical care for her injuries, including but not limited to Elica Health Centers. Plaintiff told the health care providers that she visited, including Mercy General Hospital and Elica Health Centers, that her injuries were caused by "police brutality" from actions of Defendant City's Police Department. '

409.     Plaintiff received initial care from Elica Health Centers and was tiold to return. When Plaintiff returned to Elica Heakth Centers, one or more Elica Health Centers employees told Plaintiff that "law enforcement" sources had given to Elica Health Centers a large number of Plaintiff's medical records from hospitals she had visited prior to Plaintiff's May 9, 2020 injury from Defendants.

153

410.     Plaintiff told Elica Health Centers that Plaintiff did not understand the relevance of records from long-ago visits to other health care providers to her attempt to get medical care for injuries she had only recently received. Plaintiff also asked Elica Health Centers employees why they were suddenly interested in communications about Plaintiff from "law enforcement" agencies. Plaintiff asked for the names of the law enforcement agencies, and asked to see the information that the "law enforcement agencies" had communicated to Elica Health Centers. Elica Health Centers employees refused to answer Plaintiff's questions, and refused to show or provide the "law enforcement" communications to Plaintiff.

411.     Plaintiff thereafter caused to be delivered to Elica Health Centers a medical records request letter under the California Health & Safety Code Section 123100 and the federal Health Insurance Portability and Accountability Act. To this day Elica Heath Centers has not responded and has not provided any records to Plaintiff of the "law enforcement" communications about Plaintiff Elica Health Centers told Plaintiff it had received,

412.     Upon information and belief, Plaintiff alleges that these communications from "law enforcement" to Elica Health Centers and other health care providers came from Defendant City's Police Department, Fire Department, Defendant City Police Officer Jared Robinet, Defendant City Police Officer Maryna Stanionis, Defendant City Police Officer Nathaniel Reason, and/or or one or more of the John Doe City Defendants. And were sent to Elica Health Centers and other health care providers in order to: (i) interfere with Plaintiff's efforts to obrain medical care for her injuries; (ii) retaliate against Plainriff for describing the cause of Plaintiff's injuries as "police brutality"; (iii) defame Plaintiff; (iv) place Plaintiff in a false light; (v) induce health care providers (including Elica Health

Centers) not to provide medical care to Plaintiff for injuries that could be directly traced to any or all of the Defendants.   .

413.     Because of the obvious compromising of Plaintiff's health care by Defendant City's Police Department, Plaintiff has been unable to get adequate health care for her great bodily injury caused by Defendant City's Police Department.

414.     Plaintiff sent Defendant City's Police Department sent one or more CPRA requests for records of communications by Defendant City's Police Department to health care providers that were of communications after May 9, 2020 that mentioned Plaintiff. Plaintiff has not received any of the requested records.

415.      Plaintiff alleges upon information and belief that Defendant City by interfering with Plaintiff's Elica Health Centers has engaged in another unconstitutional act, policy, custom, or final decision that unequally treats Plaintiff as a class of one in violation of the United States Constitution Fourteenth Amendment Equal Protection Clause..

416.          This misconduct by Defendant City's Police Department, and the other misconduct of Defendant City's Police Department alleged and described herein, in addition to being acts for which Defendant City is liable to Plaintiff in *respondeat superior*, is in furtherance of one or more City Police Department or City policies, procedures, rules, regulations, final decisions or customs so widespread as to be standard operating procedure,  including but not limited to a policy announced in a March 2016 electronic mail message to City Police Department staff: "we are not accepting any Police Reports from Parvin Olfati" and to have City Police officers physically remove Plaintiff from the City Police Station at 5770 Freeport Boulevard (Sacramento, California 95822) if she tried to file one.

417.                    Defendant City's Police Department unequal treatment of Plaintiff continues to this day. One of the more spectacular and bizarre instances of this unequal treatment of Plaintiff occurred on March 7, 2021, when Defendant City's Police Department ignored  verbal police reports, written police reports, photographs, and cellphone videotape of Defendant Steven Maviglio spinning out of control -- when Defendant Steven Maviglio managed to have officers from Defendant City's Police Department appear at Plaintiff's front porch at about 5:45 a.m. in the morning. After Plaintiff refused to acknowledge or speak to these officers, at about 6:02 a.m. in the morning two of the officers went to Defendant Maviglio's house; upon information and belief, Plaintiff submits these City Police officers sought and  obtained instructions from Defendant Maviglio. Barely an hour later, at about 7:00 a.m. in the morning on March 7, 2021, Plaintiff was driving a car with the owner's permission on 45th Street toward "T" Street; when Plaintiff's car approached 1914 45th Street, with her own eyes (and as recorded on her cellphone camera), Plaintiff experienced self-styled spin doctor Steven Maviglio spinning out of control: Maviglio ran out of his 1901 45th Street house into the middle of 45th Street, and attempted to open the driver side door of the moving car Plaintiff was driving, in an apparent attempt to assault, batter, carjack, and falsely imprison Plaintiff; when that attempt failed, while Plaintiff and her car were in the middle of 45th Street, self-described spin doctor Steven Maviglio jumped on the car hood, placed himself on the car hood, and videotaped Plaintiff. Self-described spin doctor Steven Maviglio then ripped off the driver-side windshield wiper blade, threw the windshield wiper blade into 45th Street near 1914, and then moved the ripped-off blade to a location near 1856 45th Street, in an apparent attempt (albeit unsuccessful) to hide the evidence of Defendant Maviglio's criminal malicious mischief vandalism. Upon information and

156

belief,  on or about March 18, 2021, Defendant Maviglio signed for a certified mail return receipt requested letter from the car owner requesting payment of the insurance repair estimate, but Mr. Maviglio has yet to pay any amount of the insurance repair estimate for the vehicle that Mr. Maviglio intentionally damaged. This bizarre episode starring Defendant Maviglio is only a part of this federal Complaint[5] in the two Counts alleging unequal treatment of Plaintiff in violation of the federal and state constitutional equal protection guarantees. Plaintiff in this Complaint is not seeking recovery for Mr. Maviglio's attempted assault, battery, carjacking and false imprisonment. This bizarre incident is alleged and described to demonstrate: (i) for all Counts in which Maviglio is named, Defendant Maviglio's out-of-control spite and vengeance toward Plaintiff, to the point of openly committing California Penal Code Section 594 malicious mischief vandalism of the car Maviglio saw Plaintiff was driving; (ii)  for the two "class of one" unequal treatment counts, the close working relationship of Defendant Maviglio with Defendant City's Police Department and its' officers, a relationship that enables Defendant Maviglio to telephonically or electronically summon City Police officers on a nanosecond's notice to take action against Plaintiff, and to have any actions Defendant Maviglio takes against Plaintiff to be ignored; and (iii) for all counts alleging any conspiracy by Defendant Maviglio with Defendant City's Police Department, the close working relationship between Defendant Maviglio and Defendant City's Police Department.

418.        In contrast, Plaintiff alleges that Plaintiff's multiple legitimate written Police Reports to Defendant City's Chief  of Police, as described elsewhere in this Complaint are ignored even though they describe specific California law violations by Defendant

---

[5] However, they reasonably could become part of separate California state court complaints.

Maviglio, Defendant Maviglio's guest Joseph Lee Mastalski, Defendant Barbara Andres, Defendant Andres's husband Cecil Taylor, and other residents of 45th Street who may include one or more John Doe Conspirator Defendants.

419.     Plaintiff alleges that both before and after the May 9, 2020 false arrest and excessive force giving rise to this Complaint, Plaintiff was being targeted by Defendant City's Police Department. Plaintiff is informed and believes that this targeting of Plaintiff through actions that include the City Police acts alleged in this Complaint is based in not insubstantial part on false information communicated from Defendant Steven Maviglio, Defendant Barbara Andres, and/or the John Doe Conspirator Defendants to Defendant City's Police Department.

420.     Defendant City's unconstitutional unequal treatment of Plaintiff as a "class of one" also includes the City's Fire Department, who after being told by Defendant City Police Officer Stanionis on May 9, 2020 that Plaintiff was a "mental case" or a "[Welfare & Institutions Code Section] 5150 case", Defendant City's Fire Department on June 14, 2020 described Plaintiff as a "5150" in a report of a City Fire visit to Plaintiff's residence, where City Fire refused to investigate an alleged natural gas leak because the City Fire lead person said he did not smell anything, and called Pacific Gas & Electric without Plaintiff's permission.

421.     Defendant City's actions or inactions toward Plaintiff as plead in this Count renders Defendant City liable to Plaintiff under United States Code, Title 42, Section 1983 for violating Plaintiff's Fourteenth Amendment right to equal protection of the laws.

**NINTH FEDERAL COUNT – CONSPIRACY BY DEFENDANT BARBARA ANDRES, DEFENDANT STEVEN MAVIGLIO, AND THE JOHN DOE CONSPIRATOR DEFENDANTS WITH DEFENDANTS CITY POLICE, ROBINET, STANIONIS, AND REASON TO VIOLATE PLAINTIFF's FEDERALLY PROTECTED RIGHTS [42 U.S.C. 1985]**

422.    Plaintiff hereby re-alleges and incorporates by reference the allegations contained in Paragraphs 1—421 as though fully set forth herein.

423.    Defendant Barbara Andres and Defendant Steven Maviglio conspired with Defendant City's Police Department and one or more City Police officers or employees, including but not limited to Defendant City Police Officer Jared Robinet, Defendant City Police Officer Maryna Stanionis, Defendant City Police Officer Nathaniel Reason, and/or one or more John Doe City Defendants, to violate Plaintiff's federally protected rights (under the First, Fourth, and Fourteenth Amendments)  to be free from unreasonable search and seizure, excessive force, interference with protected liberty, and retaliation for exercise of First Amendment rights of freedom of expression regarding police misconduct and to petition the government for redress of grievances.

424.    Defendant Andres and Defendant Maviglio (each or both), and/or one or more of the John Doe Conspirator Defendants,  made one or more communications to Defendant City's Police Department with the common objective to have Plaintiff arrested; seized; subjected to assault, battery, and excessive force; to be detained with handcuffs; and to be subjected to questioning using content fed to the City

Police by Defendant Steve Maviglio, Defendant Barbara Andres, and/or one or more of the John Doe Conspirator Defendants.

425.    Defendant Barbara Andres, Defendant Steven  Maviglio, and/or one or more of the John Doe Conspirator  Defendants, each engaged in one or more acts in furtherance of this conspiracy with Defendant City's Police Department , Defendant City Police Officer Robinet, Defendant City Police Officer Maryna Stanionis, Defendant City Police Officer Nathaniel Reason, and one or more of the John Doe City Defendants, a conspiracy that had as its' common objective the violation of Plaintiff's First, Fourth, and Fourteenth Amendment rights by having Plaintiff arrested; seized; subjected to assault, battery, and excessive force; followed with intentional more excessive force, to be detained with handcuffs; and to be subjected to questioning using content fed to Defendant City's Police Department by Defendant Steven Maviglio, Defendant Barbara Andres, and/or one or more of the John Doe Conspirator Defendants, and to have Defendant City's Police Department give to Defendant BarbaraAndres, Defendant Steve  Maviglio, and/or the John Doe Conspirator Defendants  information or content regarding Plaintiff, including but not limited to content obtained through the no-warrant seizure of Plaintiff's cellphone.

426.    On May 9, 2020, at approximately 7:00 a.m., Defendant Barbara Andres loudly threatened "we're going to call the police" even though Plaintiff never ventured beyond the confines of her residence curtilage while she was telling

Defendant Andres to stop bothering Plaintiff and that Plaintiff would not speak
with Defendant Barbara Andres.

427.     On November 1, 2019, at the end of the Sacramento County Superior Court
hearing on the restraining order application of Defendant Steve Maviglio,
Defendant Barbara Andres said to a friend of Plaintiff who was at the hearing, "this
is not over."

428.     Based upon information and belief from Plaintiff's own eyes and ears, on
one or more occasions prior to May 9, 2020, Defendant Barbara Andres could be
seen meeting with Defendant City's Police Department officers in the front yard of
her residence. Upon information and belief, Plaintiff alleges that these
communications were intended to, and had the effect of, getting Defendant City's
Police Department to target Plaintiff.

429.     Based upon information from a CPRA response by Defendant City, on
approximately thirty (30) occasions between  the 2020 dates of January 4 and
August 7, there were "CAD calls" to Defendant City's Police Department
referencing Plaintiff's residence (1859 45th Street) as a target for City Police
activity, including but not limited to one or more notations of "advised entry" or
"entry advised." Upon information and belief, Plaintiff submits that this activity by
Defendant City's Police Department was instigated by communications from
Defendant Barbara Andres, Defendant Steven Maviglio, and/or one or more of the
John Doe Conspirator Defendants.

161

430.     Based on information Plaintiff obtained from her own eyes and ears, on a date in 2010 near the midnight hour, when Plaintiff was alone in her residence, one or more officers from Defendant City's Police Department knocked on Plaintiff's residence door (1859 45th Street), and after Plaintiff opened the door, the City Police officer asked that Plaintiff accompany the officer to a meeting at the 1901 45th Street house of Defendant Steven Maviglio in order to "investigate a robbery", or "investigate a burglary" that had allegedly occurred at Mr. Maviglio's house. Plaintiff refused to go out into the midnight unaccompanied by anyone other than a City Police officer, and expressly told the officer to leave. Plaintiff subsequently sent a CPRA request to Defendant City's Police Department asking for records of any 2010 burglary or robbery at Mr. Maviglio's house, and the City Police response that came back said there were no records to be disclosed.

431.     On May 9, 2020, at approximately 7:00 a.m., Defendant Steven Maviglio yelled at Plaintiff "seek counseling" and also threatened to file for a new restraining order against Plaintiff,  even though Plaintiff never ventured beyond the confines of her residence curtilage while she was telling Defendant Steven Maviglio to stop bothering Plaintiff and that Plaintiff would not speak with Defendant Steven Maviglio.

432.     Based on information from a Defendant City CPRA response, on May 9, 2020, at some time at or before 8:00 a.m., Defendant Barbara Andres communicated with Defendant City's Police Department and stated that Plaintiff was involved in a "battery" or an "altercation" that required immediate City Police

intervention. Based upon Plaintiff's knowledge of Defendant City's refusal to release the entire contents of any communication from Defendant Barbara Andres, Plaintiff is informed and believed that Defendant Barbara Andres communicated other content to Defendant City's Police Department that was of and concerning Plaintiff; was false; and was defamatory of Plaintiff.

433.    Based on information from Plaintiff's home security system video, at approximately 7:55 a.m. on May 9, 2020, a Defendant City Police car drove by Plaintiff's 1859 45th Street residence (on the east side of 45th Street) to a location around the corner on "S" Street that was outside the view from Plaintiff's front door and front windows. Upon information and belief, this City Police car was driven or otherwise used by Defendant City Police Officer Jared Robinet.

434.    Based upon information from Plaintiff's home security system video, when the City Police car drove by Plaintiff's residence at about 7:55 a.m,, it could be seen that Plaintiff was not alone because the white Ford Fusion Hybrid car driven by Plaintiff's friend  was parked at the 1859 45th Street curb. Defendant City Police Officer Jared Robinet or another City Police officer in a previous visit to 1859 45th Street was aware of this car because officer Robinet or another officer had reported, logged or otherwise noted this car as a "suspicious vehicle."   Plaintiff alleges that the officer or officers in the City Police vehicle (including Defendant officer Robinet) who drove by Plaintiff's residence to "S" Street on May 9, 2020, and the officer or officers (including Defendant officer Robinet) did so to hide out

and await a signal from Defendant Barbara Andres that Plaintiff was alone and therefore could be easily seized.

435.    Based on information from Plaintiff's home security system video, within minutes of the departure of the white 2018 Ford Fusion Hybrid car from 45th Street, Defendant Andres crossed 45th Street, and went first to the sidewalk in front of 1859 45th Street, and then crossed the curtilage of 1859 45th Street to the driveway. From both locations, Defendant Barbara Andres yelled at Plaintiff as Plaintiff was walking up the driveway toward the north side front steps of Plaintiff's residence.

436.    Based on information from Plaintiff's home security system video, Defendant Barbara Andres from the driveway, where Defendant Barbara Andres was inside the curtilage of Plaintiff's residence without Plaintiff's permission, made a hand signal wave in the direction of "S" Street.

437.    Based on information from Plaintiff's home security system video, within seconds of the hand signal wave by Defendant Barbara Andres trespassing on Plaintiff's driveway, the City Police car driven or used by Defendant City Police Officer Jared Robinet emerged from its' "S" Street hiding spot and drove to the point on 45th Street where the southern edge of 1851 45th Street touches the northern curtilage of Plaintiff's residence (1859 45th Street).

438.    Based on information from Plaintiff's home security system video, Defendant City Police Officer Jared Robinet then jumped out of his City Police car, crossed the curtilage of Plaintiff's residence, and committed the acts of unconstitutional seizure of Plaintiff without a warrant, assault, battery, false arrest,

164

false imprisonment, excessive force, and related violations of Plaintiff's Fourth and Fourteenth Amendment rights plead elsewhere in this Complaint and incorporated herein by re-allegation and reference.

439.    Based on information from Plaintiff's home security system video, Plaintiff alleges that as soon as Defendant City Police Officer Jared Robinet crossed the curtilage of Plaintiff's residence and began stalking Plaintiff from being Plaintiff's back as Plaintiff walked on the driveway toward Plaintiff's front porch, Defendant Barbara Andres walked away from 1859 45th Street with a self-satisfied expression on her face. These actions were begun at about 8:05 as./m./ when Defendant Maviglio hand signaled Defendant Andres to come over to 1859 45th Street and harass Plaintiff through yelling.

440.    Based on information Plaintiff obtained from her own eyes while handcuffed in the City Police car driven and used by Defendant City Police Officer Maryna Stanionis, Plaintiff alleges that the first thing Stanionis did after completing the placing of Plaintiff in the rear seat of the Stanionis City Police car, was to go immediately to the house of  Defendant Steve Maviglio that is two houses south of Plaintiff's residence. Defendant City Police Officer Maryna Stanionis took with her to this meeting Plaintiff's cellphone that had been seized without a warrant by Defendant City Police Officer Jared Robinet.

441.    Upon information Plaintiff obtained from her own eyes while handcuffed in the City Police car driven and used by Defendant City Police Officer Maryna Stanionis, Plaintiff alleges that Defendant City Police Officer Maryna Stanionis

also met with Defendant Barbara Andres, who walked over to Defendant Steve Maviglio's house and joined in the conversations between Defendant Steve Maviglio and Defendant City Police Officer Maryna Stanionis.

442.     Upon information Plaintiff obtained from her own eyes and own ears while handcuffed and bleeding in the City Police car used by Defendant City Police Officer Maryna Stanionis for the handcuffed detention and no-*Miranda* warning custodial interrogation of Plaintiff, Plaintiff alleges that Defendant City Police Officer Maryna Stanionis kept going back and forth multiple times to and from the locations of Defendant Steve Maviglio and Defendant Barbara Andres.

443.     Upon information  Plaintiff obtained from her own eyes and own ears while handcuffed and bleeding in the City Police car used by Defendant City Police Officer Maryna Stanionis for the handcuffed detention and no-*Miranda* warning custodial interrogation of Plaintiff, Plaintiff alleges that the questions that Defendant City Police Officer Maryna Stanionis demanded that Plaintiff answer were based on content fed to Defendant City Police Officer Maryna Stanionis by Defendant Barbara Andres, Defendant Steven Maviglio, and/or one or more of the John Doe Conspirator Defendants.

444.     Upon information Plaintiff obtained from her own eyes and ears while handcuffed and bleeding in the City Police car used by Defendant City Police Officer Maryna Stanionis for the handcuffed detention and no-*Miranda* warning custodial interrogation of Plaintiff, Plaintiff alleges that none of the questions Defendant City Police Officer Maryna Stanionis demanded that Plaintiff answer

ever mentioned the words "battery" or "altercation." Instead, Defendant City Police Officer Maryna Stanionis kept asking Plaintiff about "Steve", to which Plaintiff responded, "go ask Steve Maviglio."

445.    Upon information   Plaintiff obtained from her own eyes and ears while handcuffed and bleeding in the City Police car used by Defendant City Police Officer Maryna Stanionis for the handcuffed detention and no-*Miranda* warning custodial interrogation of Plaintiff, and upon Plaintiff's reasonable belief, Plaintiff alleges that one of the multiple purposes of the  handcuffed detention and no-*Miranda* warning custodial interrogation of Plaintiff, was to conduct a "fishing expedition" for information about Plaintiff that was wholly unrelated to any legitimate City Police Department law enforcement objective, but that was highly related to the ongoing conspiracy by Defendant Steven Maviglio, Defendant Barbara Andres, and the John Doe Conspirator Defendants against Plaintiff to deprive her of her constitutional, legal, and human rights.

446.                Upon information   Plaintiff obtained from her own eyes and ears while handcuffed and bleeding in the City Police car used by Defendant City Police Officer Maryna Stanionis for the handcuffed detention and no-*Miranda* warning custodial interrogation of Plaintiff, and upon Plaintiff's reasonable belief, Plaintiff alleges that one of the multiple purposes of the  handcuffed detention and no-*Miranda* warning custodial interrogation of Plaintiff was to subject Plaintiff to a body seizure, body search, excessive force, handcuffed detention, handcuffed custodial interrogation, denial of water, dual tightening of handcuffs, and great

bodily injury, in order to intimidate and/or coerce Plaintiff into not exercising her constitutional, legal, civil and human rights.

447.    Upon information Plaintiff obtained from her own eyes and ears while handcuffed and bleeding in the City Police car used by Defendant City Police Officer Maryna Stanionis for the handcuffed detention and no-*Miranda* warning custodial interrogation of Plaintiff, Defendant City Police Officer Maryna Stanionis and Defendant City Police Officer Jared Robinet communicated with one or more persons present on 45th Street (1800 and 1900 blocks) other than Defendant Barbara Andres and Defendant Steve Maviglio. Plaintiff is informed and believes that these communications were with one or more John Doe Conspirator Defendants; related to the actions of Defendant City Police, Defendant City Police Officer Jared Robinet, Defendant City Police Officer Maryna Stanionis; Defendant City Police Officer Nathaniel Reason; and/or one or more of the John Doe City Defendants, plead in this Complaint; and were in furtherance of a conspiracy between Defendant City's Police Department, Defendant Barbara Andres, Defendant Steven Maviglio, and/or the John Doe Conspirator Defendants to violate Plaintiff's rights secured by the United States Constitution First, Fourth, and Fourteenth Amendments.

448.    Defendant Barbara Andres and Defendant Steven Maviglio, and the John Doe Conspirator Defendants, are liable to Plaintiff under United States Code, Title 42, Section 1983, because:

(a) There was a meeting of the minds between Defendant Barbara Andres and Defendant Steven Maviglio with a common objective to use Defendant City's Police Department and its' officers violate Plaintiff's federally protected constitutional rights.

(b) Defendant Barbara Andres and Defendant Steven Maviglio, separately or jointly, willfully participated in joint action with Defendant City, Defendant City Police Officer Jared Robinet, Defendant City Police Officer Maryna Stanionis, Defendant City Police Officer Nathaniel Reason, and/or the John Doe City Defendants, to violate Plaintiff's rights secured by the United States Constitution First, Fourth and Fourteenth Amendments.

(c) There was a meeting of the minds between Defendant City's Police Department, its' officers, and/or Defendant BarbaraAndres, Defendant Steven Maviglio, and/or one or more of the John Doe Conspirator Defendants, with a common objective to violate Plaintiff's federally protected constitutional rights.

(d) Defendant Barbara Andres performed at least one overt act in furtherance of the conspiracy, including but not limited to: (i) Defendant Andres's communications to Defendant City's Police Department prior to the Defendant City Police Officer Jared Robinet arrival on 45th Street on May 9, 2020; (ii) Defendant Barbara Andres's hand wave signal to a hiding Defendant City Police Officer Jared Robinet to "come and get" Plaintiff; (iii) Defendant Barbara Andres's communications with Defendant City Police Officers Maryna Stanionis, Jared Robinet, and/or Nathaniel Reason during and after the Defendant City Police Officer Jared Robinet seizure of

Plaintiff; and (iv) Defendant Barbara Andres's regular (daily or near-daily) meetings with Defendant Steven Maviglio before, on, and after May 9, 2020, that Plaintiff reasonably believes are in continuation of the meeting of the minds and overt acts of the conspiracy to violate Plaintiff's rights; and,.

(e) Defendant Steven Maviglio performed at least one overt act in furtherance of the conspiracy, including but not limited to: (i) Defendant Steven  Maviglio's May 9, 2020 8:05 a.m. hand signal to Defendant Andres that within five minutes later was followed by a Defendant Andres hand signal to Defendant City Police Officer Robinet and the subsequent living room seizure of Plaintiff; (ii) Defendant Steven Maviglio's communications to Defendant City's Police Department prior to the Defendant City Police Officer Jared Robinet arrival on 45th Street on May 9, 2020; (iii) Defendant Steven Maviglio's communications with Defendant City Police Officers Maryna Stanionis, Jared Robinet, and/or Nathaniel Reason during and after the Defendant City Police Officer Jared Robinet seizure of Plaintiff; and (iv) Defendant Steven Maviglio's regular (daily or near-daily) meetings with Defendant Barbara Andres, before, on, and after May 9, 2020, that Plaintiff reasonably believes and alleges are in continuation of the meeting of the minds and overt acts of the Maviglio-Andres-City conspiracy to violate Plaintiff's rights.

449.    Upon information and belief, one or more of the John Doe Conspirator Defendants performed at least one overt act in furtherance of the conspiracy, including but not limited to: (i) such Defendants' communications to Defendant City's Police Department prior to the Defendant City Police Officer Jared Robinet arrival on 45th

170

Street on May 9, 2020; (ii) such Defendants' communications with Defendant City Police Officers Maryna Stanionis, Jared Robinet, and/or Nathaniel Reason during and after the Defendant City Police Officer Jared Robinet seizure of Plaintiff; and (iii) one or more of such Defendants' regular meetings with Defendant Barbara Andres, before, on, and after May 9, 2020, that Plaintiff reasonably believes are in continuation of the meeting of the minds and overt acts of the conspiracy to violate Plaintiff's rights.

450.    Defendant City's Police Department, Defendant City Police Officer Jared Robinet, Defendant City Police Officer Nathaniel Reason, and/or one or more of the John Doe City Defendants, failed to exercise independent judgment in carrying out the acts against Plaintiff alleged in this Complaint; rather, the no-warrant seizure, unannounced driveway stalking, grabbing and pulling the plaintiff out of her living room using excessive force, and related violations of Plaintiff's federally secured constitutional rights, in that:

(a) Plaintiff's person was seized without a warrant inside the curtilage and living room of her own residence, which is presumptively unconstitutional under a body of U.S. Supreme Court precedent dating back to 1980.

(b)  These acts were done in conspiracy with Defendant Andres, Defendant Steven Maviglio, and/or the John Doe Conspirator Defendants; and,

(c) These acts were done to create the presence of two officers from Defendant City's Police Department (Defendants officer Robinet and officer Stanionis) who had reached an understanding with Defendant Barbara Andres, Defendant Steve Maviglio, and/or the John

Doe Conspirator Defendants, that Plaintiff was to be seized, subjected to excessive force, followed with more intentional excessive force, and otherwise have her federally secured constitutional rights violated.

451.    Defendant City's Police Department, Defendant City Police Officer Jared Robinet, Defendant City Police Officer Maryna Stanionis, Defendant City Police Officer Nathaniel Reason, and/or one or more of the John Doe City Defendants failed to exercise independent judgment because they treated communications from Defendant Steven Maviglio as communications from an "influencer" whose statements of and concerning Plaintiff, no matter how defamatory and/or false, were not subject to questioning and must be taken at face value. Upon information from Defendant Steven Maviglio's Forza Communications website, Defendant Steven Maviglio describes himself as: one who is "at the nexus of politics, policy, & communications strategy in California's capital"; as one of "Capitol Weekly's Top 100"; "as one of the most influential campaign strategists in California"; as the person who "directed communications for the U.S. Department of Justice's COPS program"; "he [Steve Maviglio]'s all about picking a fight"; and as "the most recognizable … spin doctor in Sacramento".

452.    Upon information and belief from her own eyes and ears, Plaintiff submits that Defendant Steven Maviglio before, during, and after May 9, 2020, made one or more communications to Defendant City's Police Department that referenced and defamed Plaintiff, placed Plaintiff in a false light, and that were intended to create a presence of Defendant City's Police Department in the vicinity of Plaintiff

in order to entrap Plaintiff in an encounter with Defendant City's Police Department.

453.       On March 7, 2021, such a Steven Maviglio-staged encounter occurred, when Defendant Steven Maviglio managed to have officers from Defendant City's Police Department appear at Plaintiff's front porch at about 5:45 a.m. in the morning, and after Plaintiff refused to acknowledge or speak to them, at about 6:02 a.m. in the morning, two of the officers went to Defendant Steven Maviglio's house; upon information and belief, Plaintiff alleges these officers sought and obtained instructions from Mr. Steven Maviglio. Barely an hour later, at about 7:00 a.m. in the morning on March 7, 2021, Plaintiff was driving a car with the owner's permission on 45th Street toward "T" Street; when Plaintiff's car approached 1914 45th Street, with her own eyes (and as recorded on her cellphone camera), Plaintiff experienced self-styled spin doctor Steven Maviglio spinning out of control: Steven Maviglio ran out of his 1901 45th Street house into the middle of 45th Street, and attempted to open the driver side door of the car Plaintiff was driving, *while the car was* moving, in an apparent attempt to carjack, assault, batter, and falsely imprison Plaintiff; when that attempt failed, while Plaintiff and her car were in the middle of 45th Street, self-described spin doctor Steven Maviglio jumped on the car hood, placed himself on the car hood, and videotaped Plaintiff. Self-described spin doctor Steven Maviglio then ripped off the driver-side windshield wiper blade, threw the blade into 45th Street near 1914, and then moved the ripped-off blade to a location near 1856 45th Street , in an apparent attempt (albeit unsuccessful) to hide the

evidence. The car owner on March 16, 2021 sent Defendant Maviglio a certified mail return receipt requested letter that Mr. Steve Maviglio signed for on March 18, 2021, but Mr. Steve Maviglio has yet to pay any amount of the insurance repair estimate for the vehicle that Mr. Steven  Maviglio intentionally damaged. The damage Plaintiff suffered in this bizarre episode starring Defendant Steven Maviglio is not a part of this federal Complaint[6], but these facts are alleged only to demonstrate: (i) Defendant Steven Maviglio's out-of-control spite and vengeance toward Plaintiff, to the point of openly committing California Penal Code Section 594 malicious mischief vandalism of the car he saw Plaintiff driving; and (ii)  the close working relationship of Defendant Steven  Maviglio with Defendant City's Police Department and its' officers, a relationship that enables Defendant Steven Maviglio to telephonically or electronically summon City Police officers on a nanosecond's notice to take action against Plaintiff, and to have any actions Defendant Steven  Maviglio takes against Plaintiff to be ignored. In contrast, Plaintiff's multiple written Police Reports to Defendant City's Chief of Police, as described elsewhere in this Complaint, are ignored even though they describe specific California law violations by Defendant  Steven Maviglio, Defendant Steven Maviglio's guest Joeseph Lee Mastalski, and Steven Maviglio co-conspirators on 45th Street: Defendant Barbara Andres, and one or more other persons who may be among the John Doe Conspirator Defendants.

---

[6] However, they reasonably could become part of separate California state court complaints.

454.     Defendant City's Police Department, Defendant City Police Officer Jared Robinet, Defendant City Police Officer Maryna Stanionis, Defendant City Police Officer Nathaniel Reason, and/or one or more of the John Doe City Defendants failed to exercise independent judgment because they treated communications from Defendant Barbara Andres as communications from a friend and across-the-street neighbor of "influencer" Defendant Steven Maviglio, and as someone from whom Defendant City's Police Department had previously received multiple communications complaining about Plaintiff. Therefore, Defendant City's Police Department treated any statement from Defendant Barbara Andres (and her husband Cecil Taylor) that was of and concerning Plaintiff, no matter how defamatory, false, or placing in a false light, as a statement that is not subject to questioning and must be taken at face value.

455.     Defendant Barbara Andres is therefore liable to Plaintiff under United States Code, Title 42, Section 1983 as a conspirator with Defendant City of Sacramento, Defendant City of Sacramento Police Officer Jared Robinet, Defendant City Police Officer Maryna Stanionis, Defendant City Police Officer Nathaniel Reason, and/or one or more of the John Doe City Defendants.

456.     Defendant Steven Maviglio is therefore liable to Plaintiff under United States Code, Title 42, Section 1983 as a conspirator with Defendant City of Sacramento, Defendant City of Sacramento Police Officer Jared Robinet, Defendant City Police Officer Maryna Stanionis, Defendant City Police Officer Nathaniel Reason, and/or one or more of the John Doe City Defendants.

457.    One or more of the John Doe Conspirator Defendants is or are therefore liable to Plaintiff under United States Code, Title 42, Section 1983 as a conspirator with Defendant City of Sacramento, Defendant City of Sacramento Police Officer Jared Robinet, Defendant City Police Officer Maryna Stanionis, Defendant City Police Officer Nathaniel Reason, and/or one or more of the John Doe City Defendants.

**FIRST CALIFORNIA COUNT – TRESPASS, ASSAULT, BATTERY, FALSE ARREST,  FALSE IMPRISONMENT, and EXCESSIVE FORCE versus DEFENDANT CITY POLICE OFFICER JARED ROBINET [Cal. Const., Article I, Sections 7 and 13; Cal. Civil Code Section 43; Cal.Penal Code Sections 236-240-242]**

458.    Plaintiff hereby re-alleges and incorporates by reference the allegations contained in Paragraphs 1—457 as though fully set forth herein.

459.    Article I, Section 13 of the California Constitution states as follows: "The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures may not be violated; and a warrant may not issue except on probable cause, supported by oath or affirmation, particularly describing the place to be searched and the persons and things to be seized."

460.    Article I, Section 7, subdivision (a) of the California Constitution states as follows: "A person may not be deprived of life, liberty, or property without the due process of law or denied equal protection of the laws;"

176

461.     California Civil Code Section 43 states as follows: "...every person has, subject to the qualifications and restrictions provided by law, the right of protection from bodily restraint or harm, from personal insult, from defamation, and from injury to [her] personal relations."

462.     California Penal Code Section 240 states as follows: "An assault is an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another."

463.     California Penal Code Section 242 states as follows: "A battery is any willful and unlawful use of force or violence upon the person of another."

464.     California Penal Code Section 236 states as follows: "False imprisonment is the unlawful violation of the personal liberty of another."

***The Trespass By Defendant Robinet That Began The Assault, Battery, False Arrest, and False Imprisonment Of Plaintiff***

465.     Plaintiff resides at 1859 45th Street and controls access to this property, including the driveway, front porch steps, front porch, front door, and all area within the curtilage of the residence.

466.     On May 9, 2020, at about 7:59 a.m., Defendant City Police Officer Jared Robinet intentionally entered the curtilage, driveway, north side front steps, and front porch of Plaintiff's residence, and pulled Plaintiff out of the opened front door and living room of Plaintiff's residence.

467.     When Defendant City Police Officer Robinet entered Plaintiff's curtilage, driveway, north side front steps, and front porch, and when Defendant City Police

Officer Robinet pulled Plaintiff out of her opened front door and the residence living room, Defendant City Police Officer Robinet intended to be in each of these locations.

468.      Defendant City Police Officer Robinet intentionally entered the curtilage, driveway, north side front steps, front porch, front door, and living room of Plaintiff's residence.

469.      Defendant City Police Officer Robinet recklessly entered the curtilage, driveway, north side front steps, front porch, front door, and living room of Plaintiff's residence.

470.      Defendant City Police Officer Robinet negligently entered the curtilage, driveway, north side front steps, front porch, front door, and living room  of Plaintiff's residence.

471.      Plaintiff did not give permission for Defendant City Police Officer Robinet's entry to Plaintiff's residence, the driveway of the residence, the north side front steps of Plaintiff's residence, the front porch of Plaintiff's residence, the front door of Plaintiff's residence, the living room of Plaintiff's residence, or any location within the curtilage of Plaintiff's residence.

472.      Plaintiff was actually harmed by Defendant City Police Officer Robinet's trespass and unauthorized entry to Plaintiff's residence, the driveway of the residence, the north side front steps of Plaintiff's residence, the front porch of Plaintiff's residence, the front door of Plaintiff's residence, the living room of

Plaintiff's residence, and/or any location within the curtilage of Plaintiff's residence.

473.     The trespass by Defendant City Police Officer Robinet of Plaintiff's residence and curtilage thereof  was a substantial factor in causing harm to Plaintiff.

474.     Therefore, Defendant City Police Officer Jared Robinet is liable to Plaintiff for trespass damages under California law.

### ***The Assault on Plaintiff by Defendant City Police Officer Jared Robinet***

475.     Defendant City Police Officer Jared Robinet acted with intent to cause harmful or offensive contact to  Plaintiff.

476.     Defendant City Police Officer Jared Robinet followed Plaintiff on the driveway, up the north side front porch steps, on the front porch, and in to the living room, all locations within the curtilage  of Plaintiff's residence, with intent to touch Plaintiff in a harmful or offensive manner.

477.     Defendant City Police Officer Jared Robinet followed Plaintiff inside the curtilage of Plaintiff's residence with the apparent ability to touch Plaintiff in a harmful or offensive manner.

478.     After Defendant City Police Officer Jared Robinet and Defendant City Police Officer Maryna Stanionis completed their handcuffing of Plaintiff, both Defendant Robinet and Defendant Stanionis dragged Plaintiff from the front porch of Plaintiff's residence to the Stanionis City Police car at the curb of 1859 45th Street. After this dragging of Plaintiff in full view of the 45th Street spectators, Defendant Robinet

before Plaintiff was thrown into Stanionis police car rear seat, Defendant Robinet announced in the presence of Defendant Stanionis and to Plaintiff's face "I have to body search you for weapons", or words to that effect.

479.   Defendant City Police Officer Robinet when he made this announcement had the apparent ability to conduct a body search of or otherwise touch Plaintiff in a harmful manner.

480.   When Defendant City Police Officer Jared Robinet made this announcement, and when he conducted the intrusive body search, Defendant Robinet knew or should have known that he had no reason to conduct a body search of Plaintiff for weapons, because: (i) Robinet knew Plaintiff was only wearing leggings and a loose top; (ii) Robinet had followed Plaintiff into Plaintiff's living room, and from this following could see that Plaintiff was not carrying a weapon; (iii) Robinet had already battered, injured, tackled, and handcuffed Plaintiff, and through his observation of Plaintiff during this conduct knew or should have known that Plaintiff did not have any weapon.

481.   After Defendant City Police Officer Jared Robinet announced that he would conduct a body search of Plaintiff, Defendant City Police Officer Jared Robinet battered Plaintiff's body and used unreasonable or excessive force on Plaintiff's body, and did so intentionally, recklessly, or negligently in full public view of one or more persons spectating on 45th Street, including but not limited to Defendant Andres, Defendant Maviglio, and/or one or more of the John Doe Conspirator Defendants.

482.    Plaintiff did not consent to Defendant City Police Officer Jared Robinet's conduct, contact, or touching, either on Plaintiff's front porch, in Plaintiff's front door, in Plaibntiff's living room, while being dragged on Plaintiff's front yard, or during the Robinet body search.

483.    Plaintiff was harmed by Defendant City Police Officer Jared Robinet's conduct, contact, and/or touching.

484.    Defendant City Police Officer Jared Robinet's conduct was a substantial factor in causing harm to Plaintiff.

485.    Therefore, Defendant Jared City Police Officer Jared Robinet is liable to Plaintiff for assault damages under California law.

### ***The Two Batteries of Plaintiff  by Defendant City Police Officer Jared Robinet***

486.    Beginning at about 8:10 a.m. in the morning on May 9, 2020, Defendant City Police Officer Jared Robinet began the trespassing, assault, battery, false arrest, false imprisonment, and use of excessive force against Plaintiff, that culminated in Defendant Robinet pulling Plaintiff out of Plaintiff's living room, after tackling Plaintiff on her front porch, and in the process  fracturing, lacerating and causing to bleed Plaintiff's right hand ring finger.

487.    The fracturing, lacerating, and bleeding of Plaintiff's right hand ring finger was proximately caused by Defendant City Police Officer Jared Robinet  pulling Plaintiff out of Plaintiff's residence living room and closing the front door while Plaintiff's entire body was inside the front door and living room. This conduct by Defendant City Police Officer Jared Robinet resulted in Defendant City Police

Officer Jared Robinet injuring Plaintiff's right hand ring finger and right hand.
Defendant Robinet pulled Plaintiff out of Plaintiff's residence living room and
closed the front door while Plaintiff's entire body was inside the front door and
living room, resulting in Defendant City Police Officer Robinet injuring Plaintiff's
right hand ring finger and right hand through fracturing, lacerating, and bleeding.

488.    Defendant City Police Officer Jared Robinet touched Plaintiff with intent to harm
or offend Plaintiff.

489.    Plaintiff did not consent to the touching by Defendant City Police Officer Jared
Robinet.

490.    Plaintiff was not attempting to escape Defendant City Police Officer Jared Robinet.

491.    Defendant City Police Officer Jared Robinet while on the driveway of Plaintiff's
residence spoke to Defendant Barbara Andres, who had seconds before trespassed on
Plaintiff's driveway and hand-signaled Defendant Robinet to enter Plaintiff's driveway
and seize Plaintiff.

492.    Defendant City Police Officer Jared Robinet did not make any sound audible to
Plaintiff before Defendant Robinet touched Plaintiff.

493.    A reasonable police officer would have audibly communicated to Plaintiff before
attempting any touching of Plaintiff.

494.    Plaintiff did not reasonably appear to be posing any threat to Defendant City Police
Officer Jared Robinet or any other person before or during the touching of Plaintiff by
Defendant Robinet.

495.   Plaintiff did not reasonably appear to be offering any resistance to Defendant Robinet.

496.   After Defendant City Police Officer Jared Robinet and Defendant City Police Officer Maryna Stanionis completed their handcuffing of Plaintiff, both Defendant Robinet and Defendant Stanionis dragged Plaintiff from the front porch of Plaintiff's residence to the Stanionis City Police car at the curb of 1859 45th Street. After this dragging of Plaintiff in full view of the 45th Street spectators, Defendant Robinet before Plaintiff was thrown into Stanionis police car rear seat, Defendant Robinet announced in the presence of Defendant Stanionis and to Plaintiff's face "I have to body search you for weapons", or words to that effect.

497.   Defendant City Police Officer Robinet when he made this announcement had the apparent ability to conduct a body search of or otherwise touch Plaintiff in a harmful manner.

498.   When Defendant City Police Officer Jared Robinet made this announcement, and when he conducted the intrusive body search, Defendant Robinet knew or should have known that he had no reason to conduct a body search of Plaintiff for weapons, because: (i) Robinet knew Plaintiff was only wearing leggings and a loose top; (ii) Robinet had followed Plaintiff into Plaintiff's living room, and from this following could see that Plaintiff was not carrying a weapon; (iii) Robinet had already battered, injured, tackled, and handcuffed Plaintiff, and through his observation of Plaintiff during this conduct knew or should have known that Plaintiff did not have any weapon.

499.   After Defendant City Police Officer Jared Robinet announced that he would conduct a body search of Plaintiff, Defendant City Police Officer Jared Robinet battered Plaintiff's body and used unreasonable or excessive force on Plaintiff's body, and did so intentionally, recklessly, or negligently in full public view of one or more persons spectating on 45th Street, including but not limited to Defendant Andres, Defendant Maviglio, and/or one or more of the John Doe Conspirator Defendants.

500.   Plaintiff did not consent to Defendant City Police Officer Jared Robinet's conduct, contact, or touching, either on Plaintiff's front porch, in Plaintiff's front door, in Plaibntiff's living room, while being dragged on Plaintiff's front yard, or during the Robinet body search.

501.   There was no reason for Defendant Robinet to apply any force to Plaintiff.

502.   Defendant Robinet used unreasonable force in touching and subsequent physical restraint of Plaintiff.

503.   Plaintiff was harmed by Defendant City Police Officer Jared Robinet's conduct.

504.   Defendant Robinet's use of unreasonable force in touching Plaintiff was a substantial factor in causing harm to Plaintiff.

505.   Defendant City Police Officer Jared Robinet acted with willful disregard of Plaintiff's rights.

506.   Plaintiff did not consent to the use of force by Defendant Robinet, even though Plaintiff did not offer any resistance, attempt to offer any resistance, or demonstrate any resistance.

507.    Therefore, Defendant City Police Officer Jared Robinet is liable to Plaintiff for battery damages under California law.

### *False Arrest by Defendant City Police Officer Jared Robinet*

507. Defendant City Police Officer Jared Robinet arrested or purported to arrest Plaintiff without a warrant or probable cause.

508.  Defendant City Police Offivcer Jared Robinet did not see Plaintiff commit a felony or misdemeanor.

509. Plaintiff was actually harmed by Defendant Robinet's conduct.

510. Defendant Robinet intentionally deprived Plaintiff of freedom of movement by grabbing Plaintiff, restraining Plaintiff, grabbing Plaintiff out of her own front door as Plaintiff entered the residence living room, throwing Plaintiff on the concrete front porch, tackling Plaintiff, and handcuffing Plaintiff.

511. Defendant City Police Officer Jared Robinet's conduct was a substantial factor in causing Plaintiff's harm.

512. Therefore, Defendant City Police Officer Jared Robinet is liable to Plaintiff for false arrest damages under California law.

### *False Imprisonment by Defendant City Police Officer Jared Robinet*

513.   Defendant City Police Officer Jared Robinet arrested Plaintiff without a warrant or probable cause.

514. Defendant City Police Officer Jared Robinet Robinet did not see Plaintiff commit a felony or misdemeanor.

515.  Defendant City Police Officer Jared Robinet intentionally deprived Plaintiff of freedom of

185

movement by grabbing Plaintiff, taking Plaintiff from Plaintiff's residence living room, tackling Plaintiff, throwing Plaintiff on the concrete front porch floor,  restraining Plaintiff, and handcuffing Plaintiff.

516.  Plaintiff was actually harmed by Plaintiff's conduct.

517. Defendant City Police Officer Jared Robinet's conduct was a substantial factor in causing Plaintiff's harm.

518.   Therefore, Defendant City Police Officer Jared Robinet is liable to Plaintiff for false imprisonment damages under California law.


### ***Defendant City Police Officer Jared Robinet's Use of Excessive Force***

519. Defendant City Police Officer Jared Robinet used force to detain Plaintiff

520. The amount of force used by Defendant Robinet was unreasonable and/or excessive.

521.  Plaintiff was harmed by Defendant's use of unreasonable and/or excessive force.

522.   Defendant's use of unreasonable force and/or excessive force was a substantial factor in the harm suffered by Plaintiff.

523.  After Defendant City Police Officer Jared Robinet and Defendant City Police Officer Maryna Stanionis completed their handcuffing of Plaintiff, both Defendant Robinet and Defendant Stanionis dragged Plaintiff from the front porch of Plaintiff's residence to the Stanionis City Police car at the curb of 1859 45th Street. After this dragging of Plaintiff in full view of the 45th Street spectators, Defendant Robinet before Plaintiff was thrown into Stanionis police car rear seat, Defendant Robinet announced in the presence of Defendant Stanionis and to Plaintiff's face "I have to body search you for weapons", or words to that effect.

524.  Defendant City Police Officer Robinet when he made this announcement had the apparent ability to conduct a body search of or otherwise touch Plaintiff in a harmful manner.

525.     When Defendant City Police Officer Jared Robinet made this announcement, and when he conducted the intrusive body search, Defendant Robinet knew or should have known that he had no reason to conduct a body search of Plaintiff for weapons, because: (i) Robinet knew Plaintiff was only wearing leggings and a loose top; (ii) Robinet had followed Plaintiff into Plaintiff's living room, and from this following could see that Plaintiff was not carrying a weapon; (iii) Robinet had already battered, injured, tackled, and handcuffed Plaintiff, and through his observation of Plaintiff during this conduct knew or should have known that Plaintiff did not have any weapon.

526.   After Defendant City Police Officer Jared Robinet announced that he would conduct a body search of Plaintiff, Defendant City Police Officer Jared Robinet battered Plaintiff's body and used unreasonable or excessive force on Plaintiff's body, and did so intentionally, recklessly, or negligently in full public view of one or more persons spectating on 45th Street, including but not limited to Defendant Andres, Defendant Maviglio, and/or one or more of the John Doe Conspirator Defendants.

527.   Plaintiff did not consent to Defendant City Police Officer Jared Robinet's conduct, contact, or touching, either on Plaintiff's front porch, in Plaintiff's front door, in Plaintiff's living room, while being dragged on Plaintiff's front yard, or during the Robinet body search.

528. Plaintiff was not armed or visibly armed, and therefore did not reasonably appear to be a threat to the safety of Defendant City Police Officer Jared Robinet.

529.   Plaintiff did not make any threats or pose any threat to the safety of Defendant Robinet or anyone else.

530.   Plaintiff did not make, offer, or demonstrate any physical resistance to the actions of Defendant City Police Officer Jared Robinet.

531.   Plaintiff was not attempting to avoid arrest by flight.

532.   Plaintiff when touched by Defendant Robinet was opening the front door of Plaintiff's residence and walking into the living room of Plaintiff's residence.

533.   Defendant Robinet did not announce himself, call out to Plaintiff, or otherwise communicate with Plaintiff prior to applying force to Plaintiff or restraining Plaintiff.

534.   Therefore, Defendant City Police Officer Jared Robinet is liable to Plaintiff for use of excessive force damages under California law.

**SECOND CALIFORNIA COUNT – TRESPASS, ASSAULT, BATTERY, FALSE ARREST, FALSE IMPRISONMENT, EXCESSIVE FORCE  versus DEFENDANT CITY POLICE OFFICER MARYNA STANIONIS [Cal. Const., Article I, Sections 7 and 13; Cal. Civil Code Section 43; Cal. Penal Code Sections 236-240-242]**

535.      Plaintiff hereby realleges and incorporates by reference the allegations contained in Paragraphs 1—534 as though fully set forth herein.

536.      Article I, Section 13 of the California Constitution states as follows: "The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures may not be violated; and a warrant may not issue except on probable cause, supported by oath or affirmation, particularly describing the place to be searched and the persons and things to be seized."

537.      Article I, Section 7, subdivision (a) of the California Constitution states as follows: "A person may not be deprived of life, liberty, or property without the due process of law or denied equal protection of the laws;"

188

538.     California Civil Code Section 43 states as follows: "…every person has, subject to the qualifications and restrictions provided by law, the right of protection from bodily restraint or harm, from personal insult, from defamation, and from injury to [her] personal relations."

539.     California Penal Code Section 240 states as follows: "An assault is an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another."

540.     California Penal Code Section 242 states as follows: "A battery is any willful and unlawful use of force or violence upon the person of another."

541.     California Penal Code Section 236 states as follows: "False imprisonment is the unlawful violation of the personal liberty of another."

***The Defendant City Police Officer Maryna Stanionis Trespass That Intentionally Escalated The Assault, Battery, False Arrest, False Imprisonment, And Use of Excessive Force Against Plaintiff***

542.     Plaintiff resides at 1859 45th Street and controls access to this property, including the driveway, front porch steps, front porch, front door, living room, and all area within the curtilage of the residence.

543.     Beginning at about 8:10 a.m. in the morning on May 9, 2020, as plead elsewhere in this Complaint, Defendant City Police Officer Jared Robinet began the trespassing, assault, battery, false arrest, false imprisonment, and use of excessive force against Plaintiff, that culminated in Defendant Robinet pulling

189

Plaintiff out of Plaintiff's living room, tackling Plaintiff on Plaintiff's front porch, and fracturing, lacerating and causing to bleed Plaintiff's right hand ring finger in the process.

544.    The fracturing, lacerating, and bleeding of Plaintiff's right hand ring finger was proximately caused by Defendant City Police Officer Jared Robinet pulling Plaintiff out of Plaintiff's residence living room and closing the front door while Plaintiff's entire body was inside the front door and living room. This conduct by Defendant City Police Officer Jared Robinet resulted in Defendant City Police Officer Jared Robinet injuring Plaintiff's right hand ring finger and right hand.

545.    Before, at, and after approximately 8:00 a.m. in the morning on May 9, 2020, Defendant City Police Officer Maryna Stanionis knew that Plaintiff was already restrained by Robinet and did not appear to be resisting, yet Defendant Stanionis joined Defendant Robinet in handcuffing and applying excessive and unreasonable force to Plaintiff.

546.    When Defendant City Police Officer Stanionis entered Plaintiff's curtilage, front yard, front yard steps, front porch steps, and front porch, Defendant City Police Officer Stanionis intended to be in each of these locations.

547.    Defendant City Police Officer Stanionis intentionallu entered the curtilage, front yard, front yard steps, front porch steps, and front porch of Plaintiff's residence.

548.     Defendant City Police Officer Stanionis recklessly entered the curtilage, front yard, front yard steps, front porch steps, and front porch of Plaintiff's residence.

549.     Defendant City Police Officer Stanionis negligently entered the curtilage, front yard, front yard steps, front porch steps, and front porch of Plaintiff's residence.

550.     Plaintiff did not give permission for Defendant Stanionis's entry to Plaintiff's residence, the front yard of the residence, the front yard steps, front porch steps, or front porch of Plaintiff's residence, or anything within the curtilage of Plaintiff's residence.

551.     Plaintiff was actually harmed by Defendant Stanionis's trespass.

552.     The trespass of Defendant Stanionis was a substantial factor in causing harm to Plaintiff.  But for the Stanionis Trespass, Defendant Stanionis would not have been in a position to apply a second intentional use of excessive force on Plaintiff, when when: (i) Defendant Stanionis  tightened the handcuff on Plaintiff after Plaintiff told Defendant Stanionis that the Defendant Stanionis tightening of the handcuff was very painful to Plaintiff, whereupon Defendant Stanionis responded: "it is not supposed to be comfortable" (or words to that effect); and (ii) tightened the handcuff more, to the point that Plaintiff  lost feeling in Plaintiff's wrists.

553.     Therefore, Defendant Maryna Stanionis is liable to Plaintiff for trespass damages under California law.

### *Assault on Plaintiff  by Defendant City Police Officer Maryna Stanionis*

554.     Defendant City Police Officer Maryna Stanionis acted with intent to cause harmful or offensive contact to Plaintiff.

555.     Defendant Stanionis entered into and moved within the curtilage of Plaintiff's residence with intent to touch Plaintiff in a harmful or offensive manner.

556.     Defendant Stanionis entered the curtilage of Plaintiff's residence with the apparent ability to touch Plaintiff in a harmful or offensive manner.

557.     Plaintiff did not consent to Defendant Stanionis's conduct, contact, or touching.

558.     Plaintiff was harmed by Defendant Stanionis's conduct, contact, and/or touching.

559.     Defendant Stanionis's conduct was a substantial factor in causing harm to Plaintiff.

560.     Therefore, Defendant Maryna Stanionis is liable to Plaintiff for assault damages under California law.


### *Battery on Plaintiff by Defendant City Police Officer Maryna Stanionis*

561.     Defendant Stanionis touched Plaintiff with intent to harm or offend Plaintiff.

562.     Plaintiff did not consent to the touching by Defendant Stanionis.

563.     Plaintiff was not attempting to escape Defendant Stanionis.

564.     Plaintiff was already restrained through the conduct of Defendant Robinet when Defendant Stanionis began her touching of Plaintiff.

192

565.     Plaintiff was visibly not offering, showing, demonstrating, or attempting any resistance to Defendant Robinet or Defendant Stanionis when Defendant Stanionis touched Plaintiff.

566.     Plaintiff did not reasonably appear to be posing any threat to Defendant Stanionis or any other person before or during the touching of Plaintiff by Defendant Stanionis.

*567.*     Therefore, Defendant City Police Officer Maryna Stanionis is liable to Plaintiff for battery damages under California law.

### *False Arrest of Plaintiff by Defendant City Police Officer Maryna Stanionis*

568.     Defendant Stanionis assisted in the arresting of Plaintiff without a warrant or probable cause.

569.     Defendant Stanionis detained Plaintiff handcuffed in the rear seat of a City of Sacramento Police Department car driven and/or used by Defendant City Police Officer Stanionis.

570.     Plaintiff was actually harmed by Defendant Stanionis's conduct.

571.     Defendant Stanionis intentionally deprived Plaintiff of freedom of movement.

572.     Defendant Stanionis's conduct was a substantial factor in causing Plaintiff's harm.

573.     Therefore, Defendant Maryna Stanionis is liable to Plaintiff for false arrest damages under California law.

### *False Imprisonment of Plaintiff by Defendant City Police Officer Maryna Stanionis*

574.     Defendant Stanionis assisted in the arresting of Plaint iff without a warrant or

probable cause.

575.        Defendant Stanionis did not see Plaintiff commit a felony or misdemeanor.

576.        Defendant Stanionis intentionally deprived Plaintiff of freedom of movement by handcuffing Plaintiff and detaining Plaintiff.

577.        Plaintiff was actually harmed by Defendant Stanionis's conduct.

578.        Defendant Stanionis's conduct was a substantial factor in causing Plaintiff's harm.

579.        Therefore, Defendant Maryna Stanionis is liable to Plaintiff for false imprisonment damages under California law.

### *Defendant City Police Officer Stanionis's Use of Unreasonable or Excessive Force Against Plaintiff*

580.        Defendant City Police Officer Maryna Stanionis used force to detain Plaintiff

581.        The amount of force used by Defendant Stanionis was unreasonable and/or excessive.

582.        Plaintiff was harmed by Defendant Stanionis's use of unreasonable force or excessive force.

583.        Defendant Stanionis's use of unreasonable force and/or excessive force was a substantial factor in the harm suffered by Plaintiff.

584.        Plaintiff was not armed or visibly armed, and therefore did not reasonably appear to be a threat to the safety of Defendant City Police Officer Maryna Stanionis or anyone else.

585.        Plaintiff did not make any threats or pose any threat to the safety of Defendant Stanionis or anyone else.

586.        Plaintiff offered no physical resistance to the actions of Defendant City Police Officer Maryna Stanionis.

587.        Plaintiff was not attempting to avoid arrest by flight.

588.        When Plaintiff was in pain from the handcuffs, Plaintiff told Defendant City Police Officer Stanionis that the handcuffs were causing pain to Plaintiff, includibng but not limited to pain in Plaintiff's wrists, Defendant Stanionis said "it is not supposed to be comfortable" (or words to that effect), and tightened the handcuffs some more on Plaintiff, to the point that Plaintiff lost feeling in Plaintiff's wrists.

589.        Defendant Stanionis acted with willful disregard of Plaintiff's rights.

590.        Plaintiff did not consent to the use of force by Defendant Stanionis, even though Plaintiff did not offer, show, demonstrate or attempt any resistance.

591.        Therefore, Defendant City Police Officer Maryna Stanionis is liable to Plaintiff for use of unreasonable or excessive force damages under California law.

**THIRD CALIFORNIA COUNT – FAILURE TO INTERVENE versus DEFENDANT CITY POLICE OFFICER MARYNA STANIONIS [Cal. Const., Article I, Sections 7 and 13; Cal. Civil Code Section 43; Cal.Penal Code Sections 236-240-242].**

592.   Plaintiff hereby re-alleges and incorporates by reference the allegations contained in Paragraphs 1—591 as though fully set forth herein.

593        From the City Police car parked at the curb of 1859 45th Street, Defendant City Police Officer Maryna Stanionis could see the following acts or conduct by Defendant City Police Officer Jared Robinet taking place at 1859 45th Street on May 9, 2020 beginning at about 8:00 a.m.:

195

(a) Defendant City Police Officer Jared Robinet had crossed the curtilage of Plaintiff's residence by stepping onto the driveway.

(b) Plaintiff was walking on her driveway to her front porch.

(c) Plaintiff was wearing only leggings and a loose top.

(d) Plaintiff was not brandishing, displaying, or carrying any weapon.

(e) Plaintiff was not making any threats or threatening Defendant City Police Officer Jared Robinet.

(f)   Defendant City Police Officer Jared Robinet had seized the person of Plaintiff Parvin Olfati on the front porch of the residence of Plaintiff Parvin Olfati.

(g)   Defendant City Police officer Jared Robinet was applying force to Plaintiff Parvin Olfati on the front porch of the residence of Defendant Parvin Olfati.

(h) Plaintiff Parvin Olfati was not offering physical resistance to the actions of Defendant City Police Officer Jared Robinet.


594.      In addition, Defendant City Police Officer Maryna Stanuionis knew that Defendant City Police Officer Jared Robinet planned to enter the curtilage of the residence of Plaintiff Parvin Olfati, enter the residence of Parvin Olfati, seize the person of Plaintiff Parvin Olfati, and apply force to the person of Plaintiff Parvin Olfati.

595.      When Defendant City Police Officer Jared Robinet announced his intention to body search Plaintiff, and when Robinet body searched Plaintiff, Defendant City Police Officer Maryna Stanionis was standing at the side of Robinet, and knew or should have known that Plaintiff was: (i) wearing only leggings and a

196

loose top, and thus could not carry any weapon;  (ii) was not carrying any weapon; (iii) had minutes before been battered, tackled, injured, and otherwise touched by Defendant Robinet, who did not find any weapon on Plaintiff; and/or (iv) has never been reported as carrying any weapon.

596.     Under California law, Defendant City Police Officer Maryna Stanionis had a duty to intervene to stop the unlawful acts of Defendant Jared Robinet, both: (i) on the front porch, in the front door, and/or in the living room of Plaintiff's residence; and/or (ii) when Defendant Robinet announced his intention to conduct a body search of Plaintiff.

597.     Defendant City Police Officer Maryna Stanionis had a realistic opportunity to intervene to stop the unlawful acts of Defendant Robinet both: (i) on the front porch, in the front door, and/or in the living room of Plaintiff's residence; and/or (ii) when Defendant Robinet announced his intention to conduct a body search of Plaintiff.

598.     Instead of intervening to stop Defendant Robinet from seizing Plaintiff without a warrant from Plaintiff's living room, Defendant Stanionis first ran up to the front porch of Plaintiff's front porch to assist Robinet in his unlawful conduct, and to commit one or more unlawful acts on Stanionis's own, by:

(a) Applying force to Plaintiff through handcuffs and physical restraint when there was no probable cause or other legitimate reason for any application of force.

(b)  Continuing to apply force to Plaintiff through handcuffs and physical restraint when any probable cause had dissipated.

(c)   Refusing to answer Plaintiff's questions as to what she was under arrest for or under investigation for while applying excessive force to Plaintiff and subjecting her to a no-warrant search and seizure.

(d)   Applying excessive force (or any force) to Plaintiff when Plaintiff was visibly not armed and did not announce or pose any threat to Defendant City Police Officer Jared Robinet or Defendant City Police Officer Stanionis.

(e)  Applying excessive force (or any force) to Plaintiff when Plaintiff was visibly not resisting the "arrest" Defendant City Police Officer Robinet was making or purporting to make of Plaintiff.

(f)  Applying excessive force (or any force) to Plaintiff in the form of handcuffs when: (i) there was no warrant or probable cause for any seizure of Plaintiff; (ii) Plaintiff was not required (and did not answer) any questions posed to her by Defendant City Police Officer Stanionis during the latter's custodial interrogation of Plaintiff; and (iii) Plaintiff was not physically resisting the actions of Defendant City Police Officer Robinet and Defendant City Police Officer Stanionis.

(g)  Tightening the handcuffs some more when Plaintiff complained, and telling Plaintiff that handcuffing: "it is not supposed to be comfortable", or words to that effect

599.        In addition, Defendant Stanionis took no action to stop Defendant Robinet from forcing Plaintiff to undergo an intrusive body search (or any body search) when Plaintiff was visibly wearing only leggings and a loose top, and visibly was not carrying any weapon, and both:  (i) wearing only leggings and a loose top, and thus could not carry any weapon;  (ii) was not carrying any weapon; (iii) had minutes before been

198

battered, tackled, injured, and otherwise touched by Defendant Robinet, who did not find any weapon on Plaintiff; and/or (iv) has never been reported as carrying any weapon.

600. Defendant City Police Officer Maryna Stanionis had a duty to intervene to prevent Defendant City Police Officer Jared Robinet from violating Plaintiff's rights secured under California law: freedom from unreasonable search and seizure, freedom from police officer crossing of the curtilage without a warrant, freedom from police officer entry into the residence of Plaintiff without a warrant, and freedom from excessive force.

601. Defendant City Police Officer Maryna Stanionis had a realistic opportunity to intervene to stop Defendant City Police Officer Jared Robinet from violating Plaintiff's rights, as evidenced by Defendant City Police Officer Maryna Stanionis dashing out of her City Police vehicle and running up the front steps to Plaintiff's residence front porch at the time of or shortly after Defendant City Police Officer Jared Robinet began applying force to the person of Parvin Olfati.

602. Instead of carrying out her duty and realistic opportunity to protect Plaintiff's rights, Defendant City Police Officer Maryna Stanionis breached this duty and shirked this realistic opportunity by instead joining Defendant City Police Officer  Jared Robinet in a joint venture between themselves and Defendant City Police to violate Plaintiff's rights, by:

(a) Crossing the curtilage of Plaintiff's residence and remaining inside the curtilage without a warrant, in order to physically seize, arrest and restrain Plaintiff.

(b) Physically seizing or assisting in the seizing or arresting of Plaintiff without a warrant both inside the curtilage of her residence and in the living room of Plaintiff's residence.

(c) Arresting or purporting to arrest or assist in the arresting and seizing of Plaintiff without a warrant inside the curtilage of her residence and inside the living room of her residence.

(d) Applying excessive force to Plaintiff through handcuffs and physical restraint

(e) Applying more excessive force after Plaintiff complained that the handcuffs were causing her pain, to the tune of Defendant City Police Officer Maryna Stanionis saying: "it is not supposed to be comfortable."

(f) Refusing to answer Plaintiff's questions as to what Plaintiff was under arrest for or under investigation for while applying excessive force to Plaintiff and subjecting Plaintiff to a no-warrant search and seizure.

(g)  Applying excessive force to Plaintiff when Plaintiff was already  being restrained  by Defendant City Police Officer Jared Robinet; was not armed; and was not resisting the actions of Defendant City Police Officer Jared Robinet.

(h) After Defendant City Police Officer Maryna Stanionis saw that Plaintiff's right hand ring finger was lacerated, fractured, and was bleeding, and that blood from the lacerated and fractured finger was all over Plaintiff's front porch, was by Plaintiff's front door, and was on Plaintiff's clothes, Defendant City Police Officer Maryna Stanionis did not stop tightening the handcuffs -- rather, Defendant City Police Officer Maryna Stanionis   continued tightening the handcuffs  and using more intentional excessive force.

(i) Applying excessive force (or any force) to Plaintiff in the form of handcuffs when: (i) there was no warrant or probable cause for any seizure or restraint of Plaintiff; (ii) Plaintiff was not required (and did not answer) any questions posed to Plaintiff by Defendant City Police Officer Stanionis during the latter's custodial interrogation of Plaintiff; and (iii) Plaintiff was not physically resisting the actions of Defendant City Police Officer Robinet and/or Defendant City Police Officer Stanionis.

(j) Placing Plaintiff in handcuffed custodial interrogation without a warrant while Plaintiff was bleeding.

(k) Placing Plaintiff in handcuffed custodial interrogation without giving Plaintiff *Miranda v. Arizona* warnings.

(l) Unreasonably denying Plaintiff water during custodial interrogation.

(m) Unreasonably tightening the already-tight handcuffs when Plaintiff complained that the already-tight handcuffs were causing her pain, and when both Defendant City Police Officer  Maryna Stanionis and Defendant City Police Officer Jared Robinet could each see that Plaintiff was bleeding

(n) Unreasonably refusing to permit or accompany Plaintiff in returning to Plaintiff's residence (the curb of which where Defendant City Police Officer Maryna Stanionis placed her City police car where Plaintiff was detained) to lock and secure Plaintiff's residence against unauthorized entries.

(o)  Threatening Plaintiff with further handcuffed confinement if Plaintiff asked Defendant City Police Officer Stanionis to answer Plaintiff's question as to what Plaintiff had been arrested for.

(p) Subjecting Plaintiff to warrantless arrest, unreasonable search and seizure, and excessive force that was unreasonable under circumstances where Plaintiff was never

201

1    charged with any offense other than "resisting arrest" [California Penal Code Section

2    148, subdivision (a)(1)] and that one charge ended up being dismissed by the

3    Sacramento County District Attorney before any arraignment of Plaintiff.

4    (q)  Searching Plaintiff's cellphone and its' contents without a warrant.

5

6    (r)  Taking Plaintiff's cellphone and its' contents to meetings with Defendant Steve

7    Maviglio, Defendant Barbara Andres, and/or other persons not authorized to use

8    Plaintiff's cellphone, and actually or exposing to these persons Plaintiff's personal and

9    private information, pictures, videos and data.

10   (s)  Demanding that Plaintiff "listen" to Defendant City Police Officer Jared Robinet when

11   Defendant City Police Officer Stanionis knew or should have known that Plaintiff had

12   never: (i) received any command from Robinet; (ii) was never asked any questions by

13   Robinet while Robinet was applying force to Plaintiff; and (iii) where Defendant

14   Robinet never said anything to Plaintiff other than to give evasive responses or non-

15   responses to Plaintiff's questions about why Plaintiff had been tackled, handcuffed,

16   and restrained on Plaintiff's front porch without a warrant – even though Defendant

17   Robinet had jumped on Plaintiff from the rear, and Plaintiff had been handcuffed by

18   Defendants Robinet and Stanionis without either officer telling the Plaintiff anything;

19   then Defendant Stanionis claimed to Plaintiff's face that Officer Robinet had told

20   Plaintiff some unspecified cobntent, and that Plaintiff must listen ("you listen", or

21   words to that effect). Plaintiff alleges that this was a pure fabrication invented by

22   Defendant City Police Officer Stanionis after Stanionis and Robinet had injured the

23   Plaintiff.

24

25

26   (t)  When Plaintiff expressed her fact-based opinion that the actions of Defendants

27   Robinet, Stanionis, and the City Police  "made me [Plaintiff] understand why so

28

many African American are so afraid of the police " and  the notion behind the Black Lives Matter movement "Iranian life matters too", Defendant City Police Officer  Stanionis responded "that was very rude" and in so doing subjected Plaintiff to a City Police threat conveyed by Stanionis to Plaintiff's face that Plaintiff's constitutionally protected expression would result in retaliation, beginning with Plaintiff not being released from custody.

603.    The actions of Defendant City Police Officer Maryna Stanionis violated Plaintiff's rights under the California Tom Bane Civil Rights Act (California Civil Code Section 52.1), California Constitution Article I, Sections 7 and 13, and the California Civil Code, and render Defendant City Police Officer Maryna Stanionis liable to Plaintiff.


**FOURTH CALIFORNIA COUNT – FAILURE TO INTERVENE versus DEFENDANT CITY POLICE OFFICER NATHANIEL REASON and/or  the JOHN DOE CITY DEFENDANTS [Cal. Const., Article I, Sections 7 and 13; Cal. Civil Code Section 43; Cal.Penal Code Sections 236-240-242]**


604.    Plaintiff hereby re-alleges and incorporates by reference the allegations contained in Paragraphs 1—603 as though fully set forth herein.

605.    Defendant City Police Officer Nathaniel Reason (badge number 0507) is identified in a Defendant City Police response to a Plaintiff CPRA request as the third officer of Defendant City Police who was present at the scene of or who was otherwise involved with the actions of Defendant City Police, Defendant Jared Robinet, and/or Defendant

203

Maryna Stanionis on May 9, 2020. However, Defendant City in its purported CPRA responses has failed to provide any information about what Defendant City Police Officer Nathaniel Reason was doing or not doing on May 9, 2020 at or near 1859 45th Street.

606.     Plaintiff did not encounter or interact with Defendant Nathaniel Reason on May 9, 2020, but upon information and belief, alleges that Defendant City Police Officer Nathaniel Reason was either: (i) sitting in an unmarked white sport utility vehicle parked at the curb of 1901 45th Street (the residence of Defendant Steven Maviglio); (ii) was "riding along" or was otherwise present in the City Police car used by Defendant City Police Officer Jared Robinet during the acts of Defendants City, Robinet, and/or Stanionis alleged in this Complaint; or (iii) was present at some other location on or within the vicinity of 1859 45th Street during the acts alleged in this Complaint.

607.     Plaintiff further alleges on information and belief that Defendant City Police Officer Nathaniel Reason was in radio or telecommunications contact with Defendant City Police Officer Jared Robinet and/or Defendant City Police Officer Maryna Stanionis during or near the time of the acts of Defendants City, Robinet, and/or Stanionis alleged in this Complaint.

608.   Plaintiff further alleges on information and belief that Defendant City Police Officer Nathaniel Reason was engaged in communications, interaction, or contact with Defendant Maviglio, Defendant Andres, or other residents of 45th Street (including but not limited to one or more of the John Doe Conspirator Defendants) on May 9, 2020, during or near the time of the acts alleged in this Complaint.

609.   Plaintiff further alleges on information and belief that Defendant City Police Officer Nathaniel Reason   was engaged in communications, interaction, or contact with Defendant Maviglio, Defendant Andres, or other residents of 45th Street (including but

204

not limited to one or more of the John Doe Conspirator Defendants) prior to May 9, 2020, regarding one or more of acts alleged in this Complaint.

610.     In addition, Plaintiff upon information and belief alleges that one or more of the John Doe City Defendants (whose identities are presently unknown to Plaintiff) were in radio contact, telecommunications contact, or other contact with Defendant City Police Officer Nathaniel Reason, Defendant City Police Officer Jared Robinet, and/or Defendant City Police Officer Maryna Stanionis during the acts of Defendants City, Robinet, and/or Stanionis alleged in this Complaint.   Upon information and belief, Plaintiff alleges that the white unmarked City Police sport utility vehicle containing one or more of the John Doe City Defendants was present at one or more locations on 45th Street (including but not limited to the 1901 45th Street residence of Defendant Maviglio)   during the acts of Defendants City, Robinet, Stanionis, or Reason alleged in this Complaint.

611.     At all times material hereto, Defendant City Police Officer Nathaniel Reason was acting under color of state law.

612.     At all times material hereto, one or more of the John Doe City Defendants was or were acting under color of state law.

613.     Defendant City Police Officer Nathaniel Reason's failure to intervene to stop the violation of Plaintiff's California law rights by Defendants City Police, Robinet, and Stanionis violated Plaintiff's rights under the California Tom Bane Civil Rights Act (California Civil Code Section 51.2); California Constitution, Article I, Sections 7 and 13; and the California Civil Code and California Penal Code to be free from unreasonable searches and seizures, excessive force, and deprivation of liberty without due process of law (collectively, "Plaintiff's California law rights').

205

614.     The failure of one or more of the John Doe City Defendants to intervene to stop the violation of Plaintiff's California law rights by Defendant City's Police Department, Robinet, and Stanionis violated Plaintiff's rights under California law to be free from unreasonable searches and seizures, excessive force, and deprivation of liberty without due process of law.

615.     On May 9, 2020, beginning at or before 7:59 a.m., and from a City Police vehicle located near 1859 45th Street, Defendant City Police Officer Nathaniel Reason was able to view events taking place on the driveway, on the front porch, and in the front yard of Plaintiff's residence.

616.     On May 9, 2020, Defendant City Police Officer Nathaniel Reason knew that neither Defendant City Police Officer Jared Robinet, Defendant City Police Officer Maryna Stanionis, or Defendant City Police Officer Nathaniel Reason had any warrant for the arrest of Parvin Olfati, the seizure of Parvin Olfati, the search of Parvin Olfati, the seizure or search of any Parvin Olfati cellphone, or any search of Plaintiff's residence or 1859 45th Street.

617.     On May 9, 2020, one or more of the John Doe City Defendants knew that neither Defendant City Police Officer Jared Robinet, Defendant City Police Officer Maryna Stanionis, or Defendant City Police Officer Nathaniel Reason had any warrant for the arrest of Parvin Olfati, the seizure of Parvin Olfati, the search of Parvin Olfati, the seizure or search of any Parvin Olfati cellphone, any search of Plaintiff's residence or person, or any touching or taking from Plaintiff's residence (by any person) of any of Plaintiff's personal property, including but not limited to any  computer, hard drives, multiple flash drives,  and/or multiple digital backup documents.

206

618.     On May 9, 2020, at about or after 7:59 a.m., Defendant City Police Officer Nathaniel Reason could see that Defendant City Police Officer Jared Robinet:

(a) had crossed the curtilage of Plaintiff's residence by stepping onto the driveway.

(b) Plaintiff was walking on Plaintiff's driveway to Plaintiff's front porch.

(c) Plaintiff was wearing only leggings and a loose top.

(d) Plaintiff was not brandishing, displaying, or carrying any weapon.

(e) Plaintiff was not making any threats or threatening Defendant City Police Officer Jared Robinet.

(f) Defendant City Police Officer Jared Robinet had seized the person of Plaintiff Parvin Olfati on the front porch of the residence of Plaintiff Parvin Olfati.

(g) Defendant City Police officer Jared Robinet was applying force to Plaintiff Parvin Olfati by pulling Plaintiff out from Plaintiff's house and was closing the house front door before Plaintiff's entire body was out of the front door and was thrown onto the front porch of the residence of Plaintiff Parvin Olfati.

(h) Plaintiff Parvin Olfati was not offering physical resistance to the actions of Defendant City Police Officer Jared Robinet.

(i) Defendant City Police Officer Jared Robinet was wearing a City Police uniform and was acting under color of state law.

(j) In addition, Defendant City Police Officer Nathaniel Reason knew that Defendant City Police Officer Jared Robinet planned to enter the curtilage of the residence of Plaintiff Parvin Olfati, planned to enter the residence of Plaintiff Parvin Olfati, seize the person of Plaintiff Parvin Olfati, and/or planned to apply force to the person of Plaintiff Parvin Olfati.

619.        In addition, Defendant City Police Officer Nathaniel Reason could see the

acts or was otherwise aware of the acts of Defendant City Police Officer Maryna

Stanionis at 1859 45th Street, including the following:

(a) crossing the curtilage of Plaintiff's residence and remaining inside the curtilage

without a warrant, in order to physically seize and restrain Plaintiff.

(b) physically seizing or assisting in the seizing of Plaintiff without a warrant inside

the curtilage of her residence and the living room of her residence -- by pulling

Plaintiff  out of Plaintiff's house and closing the front door on Plaintiff while

Plaintiff's entire body was pulled out of Plaintiff's house.

(c) arresting or purporting to arrest or assist in the arresting of Plaintiff without a warrant

inside the cartilage, front porch, and living room  of Plaintiff's residence.

(d) physically tackling, restraining, and otherwise handcuffing Plaintiff on the front porch

of Plaintiff's residence when Plaintiff was not armed and was not threatening or

posing any threat to Defendants City Police Officers Jared Robinet or Maryna

Stanionis, and after Defendant Robinet had pulled Plaintiff from Plaintiff's house

living room.

(e) applying excessive force to Plaintiff through handcuffs and physical restraint, while

Plaintiff was visibly bleeding; blood was all over the front door, front porch and

Plaintiff's clothes; and there was a visibly lacerated and fractured finger on Plaintiff's

right hand.

(f) continuing to apply force to Plaintiff through handcuffs and physical restraint after any

probable cause (assuming *arguendo* that any ever existed) had dissipated.

(g) keeping Plaintiff handcuffed and restrained while refusing to answer Plaintiff's questions as to what Plaintiff was under arrest for or under investigation for while applying excessive force to Plaintiff and subjecting Plaintiff to a no-warrant search and seizure.

(h) applying excessive force to Plaintiff when Plaintiff was already being restrained (and had been injured) by Defendant City Police Officer Jared Robinet; was not armed; and was not resisting the actions of Defendant City Police Officer Jared Robinet.

(i) applying excessive force (or any force) to Plaintiff in the form of handcuffs (while Plaintiff was visibly bleeding) when: (i) there was no warrant or probable cause for any seizure or restraint of Plaintiff; (ii) Plaintiff was not required (and did not answer) any questions posed to Plaintiff by Defendant City Police Officer Stanionis during the latter's custodial interrogation of Plaintiff; and (iii) Plaintiff was not physically resisting the actions of Defendant City Police Officer Robinet and.or Defendant City Police Officer Stanionis.

(j) placing Plaintiff in handcuffed custodial interrogation without a warrant.

(k) placing Plaintiff in handcuffed custodial interrogation without giving Plaintiff *Miranda v. Arizona* warnings.

(l) unreasonably denying Plaintiff water during custodial interrogation.

(m) unreasonably tightening the already-tight handcuffs when Plaintiff complained that the already-tight handcuffs were causing her pain.

(n) unreasonably refusing to permit or accompany Plaintiff in return to Plaintiff's residence adjacent to the Defendant Stanionis City Police car, to permit Plaintiff lock and secure Plaintiff's residence against unauthorized entries.

(o)  threatening Plaintiff with further handcuffed confinement if Plaintiff asked Defendant

City Police Officer Stanionis to answer Plaintiff's question as to what Plaintiff had

been arrested for.

(p) ignoring (or approving) of the fact that Plaintiff was injured and was bleeding

(q) subjecting Plaintiff to warrantless arrest, unreasonable search and seizure, and

excessive force that was unreasonable under circumstances where Plaintiff was never

charged with any offense other than "resisting arrest" [California Penal Code Section

148, subdivision (a)(1)] and that one charge was dismissed by the Sacramento County

District Attorney prior to any arraignment of Plaintiff

(r)   searching Plaintiff's cellphone and its' contents without a warrant.

(s) taking Plaintiff's cellphone and its' contents to meetings with Defendant Maviglio,

Defendant Andres, and others not authorized to use Plaintiff's cellphone; actually or

exposing Plaintiff's personal data to invasion by unauthorized persons; and/or sharing

the contents of Plaintiff's cellphone with Defendant Maviglio, Defendant Andres,

and/or other unauthorized persons (including but not limited to one or more John Doe

Conspirator Defendants, and/or one or more persons present on May 9, 2020 at the

1901 45th Street house of Defendant Maviglio).

(t) demanding that Plaintiff "listen" to Defendant City Police Officer Jared Robinet when

Defendant City Police Officer Stanionis knew or should have known that Plaintiff: (i)

had never been give any command by Defendant City Police Officer Jared Robinet;

(ii) Robinet had snuck up on Plaintiff before Robinet physically grabbed, assaulted,

and battered the Plaintiff, pulled Plaintiff out of Plaintiff's house, front door, and

living room; closed Plaintiff's front door and injured  Plaintiff, causing Plaintiff to

bleed from a lacerated and fractured finger -- bleeding that continued while Defendant

210

Stanionis was demanding that Plaintiff "listen" to Robinet, after Plaintiff was already injured and had received no content from Robinet other than evasive responses to Plaintiff's questions about why Plaintiff had been tackled, handcuffed, and restrained on Plaintiff's front porch without a warrant.

(u) Plaintiff expressed her fact-based opinion that the actions of Defendants Robinet, Stanionis, and the City Police gave the Stanionis conduct, the conduct of Defendant Officer Robinet, and the conduct of Defendant City Police: "you gave me a first hand lesson and now I understand  why African-Americans are so afraid of the police, and now I understand the notion behind the Black Lives Matter more. And the Iranian life matters too." Defendant City Police Officer  Stanionis responded "that was very rude" and in so doing subjected Plaintiff to a City Police threat that Plaintiff's constitutionally protected expression would result in retaliation.

620.     Defendant City Police Officer Nathaniel Reason had a duty to intervene to prevent Defendant City Police Officer Jared Robinet and/or Defendant City Police Officer Maryna Stanionis from violating Plaintiff's rights secured under California law: freedom from unreasonable search and seizure, freedom from police officer crossing of the curtilage without a warrant, and freedom from excessive force.

621. Defendant City Police Officer Nathaniel Reason had a realistic opportunity to intervene to stop Defendants City Police Officers Jared Robinet and/or Maryna Stanionis  from violating Plaintiff's rights secured by the California Constitution, Article I, Sections 2, 3, 7 and 13; the Tom Bane Civil Rights Act (California Civil Code Section 51.2); and the California Civil Code and California Penal Code.

622. Instead of carrying out his duty and realistic opportunity to protect Plaintiff's rights, Defendant City Police Officer Nathaniel Reason breached this duty and shirked this realistic opportunity by failing to take any action to protect Plaintiff.

623. The actions or failure to act by Defendant City Police Officer Nathaniel Reason committed under color of state law violated Plaintiff's rights under the California Constitution Article I, Sections 2 (freedom of speech), 3 (right to petition), 7 (freedom from deprivation of liberty without due process), and 13 (freedom from unreasonable search and seizure); the California Tom Bane Civil Rights Act (California Civil Code Section 51.2); and the California Civil Code and California Penal Code, and render Defendant City Police Officer Nathaniel Reason liable to Plaintiff under California law.

624. On May 9, 2020, at about or after 8:05 a.m. in the morning, one or more of the John Doe City Defendants could see or otherwise knew that:

(a) Defendant City Police Officer Jared Robinet had crossed the curtilage of Plaintiff's residence by stepping onto the driveway.

(b) Plaintiff was walking on her driveway to Plaintiff's front porch.

(c) Plaintiff was wearing only leggings and a loose top.

(d) Plaintiff was not brandishing, displaying, or carrying any weapon.

(e) Plaintiff was not making any threats or threatening Defendant City Police Officer Jared Robinet.

(f) Defendant City Police Officer Jared Robinet had seized the person of Plaintiff Parvin Olfati on the front porch of the residence of Plaintiff Parvin Olfati.

(g)  Defendant City Police officer Jared Robinet was applying excessive force to Plaintiff Parvin Olfati and that as a result Plaintiff was injured and was bleeding  on the front porch of the residence of Defendant Parvin Olfati.

212

(h) Plaintiff Parvin Olfati was not offering physical resistance to the actions of Defendant City Police Officer Jared Robinet.

(i) Defendant City Police Officer Jared Robinet was wearing a City Police uniform and was acting under color of state law.

In addition, one or more of the John Doe City Defendants knew that Defendant City Police Officer Jared Robinet planned to enter the curtilage of the residence of Plaintiff Parvin Olfati, seize the person of Plaintiff Parvin Olfati, and apply force to the person of Plaintiff Parvin Olfati.

625.     In addition, one or more of the John Doe City Defendants could see or was otherwise aware of the acts of Defendant City Police Officer Maryna Stanionis at 1859 45th Street, including the following:

(a) Crossing the curtilage of Plaintiff's residence and remaining inside the curtilage without a warrant, in order to physically seize and restrain Plaintiff.

(b) Physically seizing or assisting in the seizing of Plaintiff without a warrant inside the curtilage of and on the front porch of Plaintiff's residence.

(c) Arresting or purporting to arrest or assist in the arresting of Plaintiff without a warrant inside the curtilage of Plaintiff's residence.

(d) Applying excessive force to Plaintiff through handcuffs after Plaintiff was injured, was bleeding, and had already been physical restrained.

(e) Refusing to answer Plaintiff's questions as to what Plaintiff was under arrest for or under investigation for while applying excessive force to Plaintiff and subjecting Plaintiff to a no-warrant search and seizure.

(f) Applying excessive force to Plaintiff when Plaintiff was already being physically restrained; was injured; and was bleeding after excessive force applied by Defendant City

Police Officer Jared Robinet; when Plaintiff was not armed; and when Plaintiff was not resisting the actions of Defendant City Police Officer Jared Robinet.

(g) Applying excessive force (or any force) to Plaintiff in the form of handcuffs when: (i) there was no warrant or probable cause for any seizure or restraint of Plaintiff; (ii) Plaintiff was not required (and did not answer) any questions posed to Plaintiff by Defendant City Police Officer Stanionis during the latter's custodial interrogation of Plaintiff; (iii) Plaintiff  was visibly injured and was bleeding; and (iv) Plaintiff was not physically resisting the actions of Defendant City Police Officer Robinet and.or Defendant City Police Officer Stanionis.

(h) Placing Plaintiff in handcuffed custodial interrogation without a warrant.

(i) Placing Plaintiff in handcuffed custodial interrogation without giving Plaintiff *Miranda v. Arizona* warnings.

(j) Unreasonably denying Plaintiff water during custodial interrogation.

(k) Unreasonably tightening the already-tight handcuffs when Plaintiff complained that the already-tight handcuffs were causing her pain, when Plaintiff was visibly injured and was bleeding

(l) Unreasonably refusing to permit or accompany Plaintiff in returning to Plaintiff's residence (at the location of the Staniois City Police car) to lock and secure the residence against unauthorized entries.

(m) Threatening Plaintiff with further handcuffed confinement if Plaintiff asked Defendant City Police Officer Stanionis to answer Plaintiff's question as to what Plaintiff had been arrested for.

(n) Subjecting Plaintiff to warrantless arrest, unreasonable search and seizure, and excessive force (even after Plaintiff was injured and was bleeding), force that was unreasonable and

214

excessive under circumstances where Plaintiff was never charged with any offense other than "resisting arrest" [California Penal Code Section 148, subdivision (a)(1)] and that one charge was dismissed by the Sacramento County District Attorney before any arraignment of Plaintiff.

(o)  Searching Plaintiff's cellphone and its' contents without a warrant, and/or sharing Plaintiff's private and personal information, pictures, videos and data with Defendant Maviglio, Defendant Andres, and/or one or more persons not authorized to use Plaintiff's cellphone (including 45th Street residents and/or persons in the house of Defendant Maviglio,, including one or more John Doe Conspirator Defendants).

(p) Taking Plaintiff's cellphone and its' contents to meetings with Defendant Maviglio, Defendant Andres, and other persons not authorized to use Plaintiff's cellphone,  and actually invading Plaintiff's privacy and or exposing Plaintiff's personal data.

(q) Demanding that Plaintiff "listen" to Defendant City Police Officer Jared Robinet when Defendant City Police Officer Stanionis knew or should have known that Plaintiff had never been told anything by Defendant City Police Officer Jared Robinet after Robinet jumped on and grabbed Plaintiff from her rear as she was entering Plaintiff's living room and pulled Plaintiff our of Plaintiff's house and closed the  house front door while Plaintiff's entire body was not out the front door, and caused Plaintiff to suffer great bodily her injury, after the only content Plaintiff received from Defendant  Robinet other than evasive responses to Plaintiff's questions about why Plaintiff had been tackled, handcuffed, and restrained on Plaintiff's front porch without a warrant.

(r)  When Plaintiff expressed her fact-based opinion that the actions of Defendants Robinet, Stanionis, and Defendant City's Police Department "made me [Plaintiff] understand the Black Lives Matter movement and why so many African-Americans are afraid of the

215

police" and "Iranian life matters too", Defendant City Police Officer  Stanionis responded "that was very rude" and in so doing subjected Plaintiff to a City Police threat that Plaintiff's constitutionally protected expression would result in retaliation including continued detention of Plaintiff.

626.     One or more of the John Doe City Defendants had a duty to intervene to prevent Defendant City Police Officer Jared Robinet and/or Defendant City Police Officer Maryna Stanionis from violating Plaintiff's rights secured under California law: freedom from unreasonable search and seizure, freedom from police officer crossing of the curtilage without a warrant, and freedom from excessive force.

627.     One or more of the John Doe City Defendants had a realistic opportunity to intervene to stop Defendants City Police Officers Jared Robinet and/or Maryna Stanionis  from violating Plaintiff's rights secured by California law.

628.      Instead of carrying out this duty and realistic opportunity to protect Plaintiff's rights, one or more of the John Doe City Defendants breached this duty and shirked this realistic opportunity by failing to take any action to protect Plaintiff.

629.      In addition, one or more of the John Doe City Defendants knew that Defendant Nathaniel Reason was aware of the violation of Plaintiff's constitutional rights by Defendants Robinet and/or Stanionis, had a reasonable opportunity to intervene, and had failed to intervene.

630.      The actions or failures to act by one or more of the John Doe City Defendants committed under color of state law violated Plaintiff's rights under the California Constitution Article I, Sections 2 (freedom of speech), 3 (right to petition), 7 (freedom from deprivation of liberty without due process), and 13 (freedom from unreasonable

search and seizure); the California Tom Bane Civil Rights Act (California Civil Code

Section 51.2); and the California Civil Code and California Penal Code, and render

Defendant City Police Officer Nathaniel Reason liable to Plaintiff under California law.

**FIFTH CALIFORNIA COUNT – DENIAL OF ADEQUATE MEDICAL CARE versus DEFENDANT CITY, DEFENDANT CITY FIRE PARAMEDIC ONE, DEFENDANT CITY POLICE OFFICER JARED ROBINET, DEFENDANT CITY POLICE OFFICER MARYNA STANIONIS, AND DEFENDANT CITY POLICE OFFICER NATHANIEL REASON [Cal. Const., Article I, Sections 7 and 13; Cal. Civil Code Section 43; Cal.Penal Code Sections 236-240-242]**

631.     Plaintiff hereby re-alleges and incorporates by reference the allegations

contained in Paragraphs 1—630 as though fully set forth herein.

632.     Defendants City, City Police Officer Robinet, City Police Officer Stanionis,

City Police Officer Reason, and City Fire Paramedic One are required by the

California Constitution Article I, Section 7 to provide to persons in City Police

Department custody (who are not in jail but who have suffered great bodily injury

from the actions of Defendant City's Police Department, Defendant City Police

Officer Robinet, Defendant City Police Officer Stanionis, Defendant City Police

Officer Reason, and/or the John Doe City Defendants), the medical care needed by

the person who was injured (including Plaintiff), medical care that will reasonably

result in full recovery from the injuries to Plaintiff caused by the Defendants.

217

633.     Defendants City, Robinet, Stanionis, Reason, and City Fire Paramedic One also have an obligation under the California Constitution Article I, Section 13 to provide Plaintiff the medical care Plaintiff required to fully recover from the injuries caused by the unreasonable search and seizure, excessive force, and related Article I, Section 13 violations by Defendant City Police, Defendant Robinet, Defendant Stanionis. Defendant Reason, and/or the John Doe City Defendants.

*Defendants City, Robinet, and Stanionis See They Have Spilled Plaintiff's Blood, But Intentionally Do Not Call For Medical Help Until After They Subject Plaintiff To Handcuffed Custodial Interrogation*

634.     Defendants City, Robinet, and Stanionis knew and saw that Plaintiff's blood had been spilled, Plaintiff's finger had been fractured, and Plaintiff's finger had been lacerated – all through the actions of these Defendants.

635.     The proper medical care for Plaintiff's injured right hand ring finger that needed eight (8) stitches was not to wait for an hour or more and merely put a bandage on the fractured, lacerated, and bleeding right hand ring finger. Plaintiff's injured finger should have been handled immediately, and in such a way that there would be no infections as a result of Plaintiff being confined in the City Police car; assaulted and battered on the concrete floor of her front porch; and being physically grabbed, pulled, pushed  and person-handled by two unmasked officers of Defendant City's Police Department. Defendants City and City Fire Paramedic One should have cleaned Plaintiff's fractured, lacerated, and bleeding finger to prevent the possible infections, then do what it needed to be done to stop the bleeding, and finally wrap the finger with clean gauze. City Fire Paramedic Two had begun this process but was ordered to stop by Defendant City Fire

218

Paramedic One, who was acting in concert with Defendant City Police Officer Maryna Stanionis to prevent City Fire Paramedic Two from so doing, Defendant City Fire Paramedic One first hearing Defendant Stanionis describe Plaintiff as a "mental case" or "5150 case" (or words to that effect), then Defendant City Fire Paramedic One ordering the gauze-applying City Fire Paramedic Two to instead to "just put a bandage on it" as if all that needed medical attention was a little scratch  -- not Plaintiff's Robinet-lacerated finger.

636.     Defendants Robinet and/or Stanionis could have called Defendant City's Fire Department to summon immediate medical assistance to provide Plaintiff with adequate medical care, but intentionally failed to do so, either through individual failures to act, or pursuant to a City policy, final decision, rule, regulation, policy statement, or custom that is so widespread as to be standard operating procedure.

637.     Defendants City, Robinet, and Stanionis continued the denial of adequate medical care, excessive force, handcuffing, dragging, and custodial interrogation of Plaintiff without summoning medical care, even though Plaintiff was visibly injured and had complained to Defendant Stanionis about the pain Plaintiff was suffering from the handcuffs. Defendant Stanionis responded by telling Plaintiff "it is not supposed to be comfortable", tightening the handcuffs again, continuing to deny Plaintiff water, keeping Plaintiff in the back seat of the Stanionis City Police vehicle that was locked and windows-closed most of the time, while subjecting Plaintiff to handcuffed custodial interrogation without *Miranda v.*

*Arizona* warnings using questions Plaintiff upon information and belief alleges were fed to Defendant Stanionis by Defendant Maviglio, Defendant Andres, or one or more of the John Doe Conspirator Defendants.

638.    Upon information and belief, Defendant City Police Officer Reason was present at or near 1859 45th Street when this denial of adequate care occurred; saw or was otherwise aware of the denial; had a realistic opportunity to intervene to prevent the denial; but shirked and breached his duty to intervene.

639.    Defendants City, Robinet, Stanionis, and Reason knew Plaintiff needed medical care that was adequate to fully heal her fractured, lacerated, and bleeding right hand ring finger. Defendant City Police Officer Maryna Stanionis asked Plaintiff at the end of the Stanionis custodial handcuffed interrogation of Plaintiff the following question that had an obvious answer: "do you need medical help?"  Plaintiff was scared to respond because Plaintiff thought if Plaintiff said "yes", then Defendant City Police Officer Stanionis might deny medical care to Plaintiff, since Defendant Stanionis minutes before had said "to Plaintiff this is not supposed to be comfortable" in response to Plaintiff's complaint about the pain the handcuffs were causing – and then Defendant Staanionis tightened the handcuffs, and refused on multiple occasions to give Plaintiff water.

### *Defendant City Police Officer Maryna Stanionis Tells Defendant City Fire Paramedic One That Plaintiff Is A "Mental Case" Or A "5150 Case"*

640.    Defendant City Fire Paramedic One is the City employee who ordered another City Fire employee (City Fire Paramedic Two) to stop applying gauze and other necessary medical treatment to Plaintiff's fractured, lacerated, and bleeding right hand

ring finger. Defendant City Police Officer Stanionis contributed to this denial by describing Plaintiff to City Fire Paramedic One or other City Fire employees as a "mental case" or as a "[Welfare & Institutions Code Section] 5150 case", or words to that effect.

641.     The proper medical care for Plaintiff's injuries required Defendant City Police Officer Stanionis to tell City Fire paramedics that Plaintiff had suffered a serious or great bodily injury and needed immediate attention. Instead, Defendant Stanionis told the City Fire paramedics that Plaintiff was a "mental  case" or a "5150 case", words that were chosen and intentionally spoken by Defendant Stanionis  in order to discourage City Fire paramedics from giving Plaintiff adequate medical care.

642.     Plaintiff suffered great bodily great bodily injury from the actions of Defendant City, Defendant Robinet, Defendant Stanionis, Defendant Reason, and/or the John Doe City Defendants, including but not limited to the fracturing, laceration, and bleeding of her right hand ring finger, which required eight (8) stitches in addition to care for fracture on the finger. In addition, Defendant City Police Officer Stanionis and/or Defendant City Police Offidcer Robinet continued their denial of water to Plaintiff – neither Defendant Stanionis nor Defendant Robinet said anything to any of the City Fire paramedics about proving water to Plaintiff, even though Plaintiff was visibly dehydrated.

643.     City Fire paramedics were called to 1859 45th Street to give Plaintiff medical attention. When the City Fire paramedics arrived, Defendant City Police Officer Stanionis told one of the City Fire paramedics that Plaintiff was a "mental 5150 case", Defendant City Police Officer Stanionis referring to California Welfare & Institutions Code Section 5150 that authorizes involuntary civil commitment or confinement of persons found to be "gravely disabled" or a danger to themselves or others.

644.        Upon information and belief, Defendant City Police Officer Reason was present at or near 1859 45th Street when this denial of adequate care occurred; saw or was otherwise aware of the denial; had a realistic opportunity to intervene to prevent the denial; but shirked and breached his duty to intervene.

***Defendant City Fire Paramedic One Then Stops Adequate Medical Care That Was Being Provided To Plaintiff***

645.        Immediately after Defendant City Police Officer Maryna Stanionis referred to Plaintiff as a "mental [California Welfare & Institutions Code Section] 5150  case" (or words to that effect), City Fire Paramedic One said that he "was going to take care of it, OK?" When Plaintiff asked the City Fire Paramedic One "please do not talk to me like a five year old", City Fire Paramedic One said "you are not very nice." City Fire Paramedic Two began to place gauze around Plaintiff's fractured, lacerated, and bleeding finger, but was ordered by City Fire Paramedic One to stop, City Fire Paramedic One telling City Fire Paramedic Two: "Just put a bandage on it."

646.        "Just putting a bandage" on Plaintiff's fractured, lacerated, and bleeding right hand ring finger was the only medical care for Plaintiff Defendants City, City Police, City Fire, City Fire Paramedic One, City Police Officer Jared Robinet, and City Police Officer Maryna Stanionis allowed City Fire Paramedic Two to provide, and in  the process, these Defendants denied Plaintiff adequate medical care.

647.        The proper medical care for Plaintiff's injured right hand ring finger that needed eight (8) stitches was not to merely put a bandage on the fractured, lacerated, and bleeding finger. Plaintiff's injured finger should have been handled in such a way that

222

there would be no infections as a result of Plaintiff being confined in the City Police car; assaulted and battered on the concrete floor of her front porch; and being physically grabbed, pulled, pushed and person-handled by two unmasked officers of Defendant City's Police Department. Defendants City and City Fire Paramedic One should have cleaned Plaintiff's fractured, lacerated, and bleeding right hand ring finger to prevent the possible infections, then do what it needed to be done to stop the bleeding, and finally wrap the finger with clean gauze. City Fire Paramedic Two had begun this process but was ordered to stop by Defendant City Fire Paramedic One, who was acting in concert with Defendant City Police Officer Maryna Stanionis to prevent City Fire Paramedic Two from so doing, Defendant City Fire Paramedic One first hearing Defendant Stanionis describe Plaintiff as a "mental case" or "5150 case" (or words to that effect), then Defendant City Fire Paramedic One ordering the gauze-applying City Fire Paramedic Two to instead to "just put a bandage on it" as if all that needed medical attention was a little scratch -- not Plaintiff's Robinet-lacerated finger.

648.     The identities of Defendant City Fire Paramedic One and City Fire Paramedic Two are presently unknown to Plaintiff, so Plaintiff is suing Defendant City Fire Paramedic One as one of the John Doe City Defendants. Plaintiff expects Defendant City to provide information in discovery regarding the identity of Defendant City Fire Paramedic One, and upon receipt of such information, Plaintiff will amend the Complaint.

***Defendant City's Fire Department After Denying Plaintiff Adequate Medical Care Sends A Bill to Plaintiff's Address Fotr May 9, 2020 City Fire Activity That Names A Person Other Than Plaintiff***

649.     To add insult to injury, on some date after May 9, 2020, Defendant City's Fire Department sent a bill to Plaintiff's address purporting to bill for City Fire activity on

223

May 9, 2020, but naming as the natural person addressee of such a bill a name other than Plaintiff's name. This bill was later stolen from Plaintiff's house. along with many other personal items; documents in Plaintiff's computer were also hacked, andmore personal information and data were deleted. Plaintiff on March 29, 2021 caused to be personally delivered to Defendant City's City Clerk a CPRA request for a true and correct copy of any bill addressed to 1859 45th Street for any City Fire activity on =May 9, 2020 at such address..

***Defendant City Police Officer Jared Robinet's Attempt To Entrap Plaintiff Into Blaming Herself For The Injuries Plaintiff Suffered From Defendant City Police Officer Robinet***

650.        After Defendant City Fire Paramedic One halted the full and adequate treatment of  Plaintiff's fractured, lacerated, and bleeding right hand ring finger, Defendant City Police Officer Stanionis and Defendant City Police Officer Robinet  summoned two other City Police officers (a male and female whose identities are unknown to Plaintiff, and whom Plaintiff is not suing in this action), who came with a camera and photographed the blood from Plaintiff that the actions of Defendant Robinet and Defendant Stanionis had caused to spill all over Plaintiff's front porch, front door, and front yard stairs. The male City Police officer in this team while carrying a camera spoke with Defendant City Police Officer Jared Robinet. In that conversation, , Officer Robinet told the male officer with the camera something that Plaintiff could not hear. As soon as the City Police officer with the camera ended his conversation with Defendant Robinet, the City Police male officer with the camera approached Plaintiff and said: "I am going to take a picture of the finger you injured" or words to that effect. Plaintiff immediately told this City

Police officer that the statement he had just made to Plaintiff's face was a mischaracterization. Plaintiff told the City Police officer with the camera that this officer (with Plaintiff pointing to Defendant City Police Officer Robinet) had mischaracterized Plaintiff as the person who injured Plaintiff's finger, effectively saying "Plaintiff injured her own finger", or words to that effect. Plaintiff told the camera-carrying City Police officer that this statement by Defendant Robinet that Plaintiff injured her own finger was therefore a misrepresentation. Defendant City Police Officer Jared Robinet made no response to Plaintiff's direct refutation of his statement that Plaintiff had injured her own finger.

651.  The male City Police officer with the camera then said "ok, I am going to take a picture of the finger that was injured" – to which Plaintiff immediately responded "no, the finger that was injured by this officer" and Plaintiff pointed one of her un-injured fingers at Defendant City Police Officer Jared Robinet, who again made no response.


652. The actions of Defendants City, City Fire Paramedic One, City Police Officer Robinet, and City Police Officer Stanions were an intentional denial of adequate medical care to Plaintiff for injuries caused by Defendants City, Robinet, and Stanionis, under the circumstances where City Fire Paramedic Two had already begun to give Plaintiff adequate medical care, but was stopped by Defendant City Fire Paramedic One.

653.  The actions of Defendants City, City Fire Paramedic One, City Police Officer Robinet, and City Police Officer Stanions were recklessly indifferent to Plaintiff's need for adequate medical care for injuries caused by Defendants City, Robinet, and Stanionis, under the circumstances where City Fire Paramedic Two had already begun to give Plaintiff adequate medical care, but was stopped by Defendant City Fire Paramedic One.

225

654. The actions of Defendants City, City Fire Paramedic One, City Police Officer Robinet, and City Police Officer Stanions in denying adequate medical care to Plaintiff for injuries caused by Defendants City, Robinet, and Stanionis were actions that were unreasonable under the circumstances where City Fire Paramedic Two had already begun to give Plaintiff adequate medical care, but was stopped by Defendant City Fire Paramedic One.

655. The actions of Defendants City, City Fire Paramedic One, City Police Officer Robinet, and City Police Officer Stanions in denying adequate medical care to Plaintiff for injuries caused by Defendants City, Robinet, and Stanionis were actions that were unreasonable under the circumstances where City Fire Paramedic Two had already begun to give Plaintiff adequate medical care, but was stopped by Defendant City Fire Paramedic One, whose "just put a bandage on it" command was unreasonable and recklessly indifferent under the circumstances, whether or not in furtherance of City Fire policies, procedures, rules, regulations, or custom that is so widespread as to be standard operating procedure, and whether or not: (i) the City Fire Department allows, encourages, or directs City Fire supervisors or supervising paramedics to order subordinate City Fire paramedics not to provide medical care to persons in visible need of care; and/or  (ii) where the City Police Department allows, encourages, or directs City Police officers to disparage, trivialize, denigrate, discourage, or prevent the providing of adequate medical care to persons injured by City Police Department officers.

656. Plaintiff alleges the existence of a City Fire policy, final decision, or custom so widespread as to be standard operating procedure as described in item (i) in the paragraph directly above, based on information revealed on March 14, 2021 in a *Sacramento Bee* investigation of a hostile work environment at City Fire, including but not limited to City Fire captains telling a City Fire paramedic to "back off" attempting to resuscitate a car

226

fire victim, who subsequently died, the victim died, and the City Fire paramedic who was told to "back off" from any resuscitation felt "their disrespect for me was so great, that they let it affect their decision to [not to] help me resuscitate this young man."

*Sacramento Bee*, March 14, 2021, Section A, pages 1 and 16, page 16, column 4, second and third full paragraphs, story headlined on page 1 as "Fire department focus of racism, hazing probe", authored by Marcus D. Smith.

657. Defendant City Police Officer Nathaniel Reason's failure to intervene to prevent the denial of adequate medical was recklessly indifferent under the circumstances.

658. Defendant City Police Officer Nathaniel Reason's failure to intervene to prevent the denial of adequate medical care to Plaintiff was unreasonable under the circumstances.

***Defendant City Through Its' Police Department, Fire Department, Defendant Robinet, Defendant Stanionism Defendant Reason, And/or The John Doe City Defendants Sends False and Defamatory Content About Plaintiff To Healthcare Providers To Interfere With Plaintiff's Attempts To Get Medical Care***

659.    Plaintiff shortly after May 9, 2020 went to one or more health care providers in Sacramento to get medical care for her injuries, including but not limited to Elica Health Centers. Plaintiff told the health care providers that she visited, including Mercy General Hospital and Elica Health Centers, that her injuries were caused by "police brutality" from actions of Defendant City's Police Department. '

660.    Plaintiff received initial care from Elica Health Centers and was tiold to return. When Plaintiff returned to Elica Heakth Centers, one or more Elica Health

Centers employees told Plaintiff that "law enforcement" sources had given to Elica Health Centers a large number of Plaintiff's medical records from hospitals she had visited prior to Plaintiff's May 9, 2020 injury from Defendants.

661.     Plaintiff told Elica Health Centers that Plaintiff did not understand the relevance of records from long-ago visits to other health care providers to her attempt to get medical care for  injuries she had only recently received. Plaintiff also asked Elica Health Centers employees  why they were suddenly interested in communications about Plaintiff from "law enforcement" agencies. Plaintiff asked for the names of the law enforcement agencies, and asked to see the information that the "law enforcement agencies" had communicated to Elica Health Centers. Elica Health Centers employees refused to answer Plaintiff's questions, and refused to show or provide the "law enforcement" communications to Plaintiff.

662.     Plaintiff thereafter caused to be delivered to Elica Health Centers a medical records request letter under the California Health & Safety Code Section 123100 and the federal Health Insurance Portability and Accountability Act. To this day Elica Heath Centers has not responded and has not provided any records to Plaintiff of the "law enforcement" communications about Plaintiff Elica Health Centers told Plaintiff it had received,

663.     Upon information and belief, Plaintiff alleges that these communications from "law enforcement" to Elica Health Centers and other health care providers came from Defendant City's Police Department, Fire Department, Defendant City Police Officer Jared Robinet, Defendant City Police Officer Maryna Stanionis,

228

Defendant City Police Officer Nathaniel Reason, and/or or one or more of the John Doe City Defendants. And were sent to Elica Health Centers and other health care providers in order to: (i) interfere with Plaintiff's efforts to obrain medical care for her injuries; (ii) retaliate against Plainriff for describing the cause of Plaintiff's injuries as "police brutality"; (iii) defame Plaintiff; (iv) place Plaintiff in a false light; (v) induce health care providers (including Elica Health Centers) not to provide medical care to Plaintiff for injuries that could be directly traced to any or all of the Defendants.   .

664.     Because of the obvious compromising of Plaintiff's health care by Defendant City's Police Department, Plaintiff has been unable to get adequate health care for her great bodily injury caused by Defendant City's Police Department.

665.     Plaintiff sent Defendant City's Police Department sent one or more CPRA requests for records of communications by Defendant City's Police Department to health care providers that were of communications after May 9, 2020 that mentioned Plaintiff. Plaintiff has not received any of the requested records.

666. The actions, policies, procedures, rules, regulations, final decisions, and/or widespread custom that amounts to standard operating procedure of Defendant City, together with the actions of Defendants City Fire Paramedic One, Robinet, Stanionis, Reason and the John Doe City Defendants violated Plaintiff's rights to adequate medical care under the California Constitution, Article I, Sections 7 and 13; constitute acts of threats, intimidation, and/or coercion in violation of the Tom Bane Civil Rights Act (California

Civil Code Section 51.2); and otherwise violate Plaintiff's rights under California law, and render Defendants City, City Fire Paramedic One, Robinet, and Stanionis liable to Plaintiff.

**SIXTH CALIFORNIA COUNT – RESPONDEAT SUPERIOR versus DEFENDANT CITY OF SACRAMENTO FOR THE ACTIONS OF DEFENDANT CITY POLICE OFFICERS ROBINET, STANIONIS, and REASON; DEFENDANT CITY FIRE PARAMEDIC ONE; AND THE JOHN DOE CITY DEFENDANTS**

667.     Plaintiff hereby realleges and incorporates by reference the allegations contained in Paragraphs 1—666 as though fully set forth herein.

668.     Defendant City as a California municipal corporation is vicariously liable for violations of the illegal, unconstitutional, or tortuous acts attempted or committed by City's employees acting within the scope of their employment, including Defendant City Police Officer Robinet, Defendant City Police Officer Stanionis, Defendant City Police Officer Reason, and/or the John Doe City Defendants (including but not limited to City Fire Paramedic One).

669.     When he committed the acts alleged in the Complaint, Defendant City Police Officer Jared Robinet was an employee of Defendant City and/or Defendant City's Police Department.

670.     When she committed the acts alleged in the Complaint, and/or when she failed to act as alleged in the Complaint, Defendant City Police Officer Maryna

230

Stanionis was an employee of Defendant City and/or Defendant City's Police Department.

671.    When he committed the acts alleged in the Complaint, or when he failed to act, Defendant City Police Officer Nathaniel Reason was an employee of Defendant City and/or Defendant City's Police Department.

672.    When one or more of the John Doe City Defendants committed the acts alleged in the Complaint, or when one or more of the John Doe City Defendants failed to act as alleged in the Complaint, one or more of the John Doe City Defendants were employees of Defendant City, Defendant City's Police Department, or Defendant City's Fire Department. The latter category includes Defendant City Fire Paramedic One.

673.    When he committed the acts alleged in the Complaint, Defendant City Police Officer Jared Robinet was acting within the scope of his employment with Defendant City and/or Defendant City's Police Department.

674.    When she committed the acts alleged in the Complaint, or when she failed to act as alleged in the Complaint,  Defendant City Police Officer Maryna Stanionis was acting within the scope of his or her employment with Defendant City and/or Defendant City's Police Department.

675.    When he committed the acts alleged in the Complaint, or when he failed to act (as also alleged in the Complaint), Defendant City Police Officer Nathaniel Reason was acting within the scope of his employment with Defendant City and/or Defendant City's Police Department.

676.     When one or more of the John Doe City Defendants committed the acts alleged in the Complaint, or when one or more of the John Doe City Defendants failed to act as alleged in the Complaint, one or more of the John Doe City Defendants was or were acting within the scope of his or her employment with Defendant City and/or Defendant City's Police Department.

677.     When Defendant City Fire Paramedic One committed the acts alleged in the Complaint,  Defendant City Fire Paramedic One was an employee of Defendant City or Defendant City's Fire Department.

678.     When Defendant City Fire Paramedic One committed the acts alleged in the Complaint, Defendant City Fire Paramedic One was acting within the scope of his employment with Defendant City and/or Defendant City's Fire Department.

679.     Therefore, Defendant City is liable to Plaintiff under California law in *respondeat superior* for the injuries to Plaintiff and violations of Plaintiff's rights secured by California and federal law that were committed by Defendant City's employees as alleged in this Complaint. This liability also includes liability for City or City employee violations of the California Tom Bane Civil Rights Act (Civil Code Section 51.2); violations of Plaintiff's rights under the United States Constitution; violations of Plaintiff's rights under the California Constitution, the California Civil Code, and the California Penal Code; and for City policies, procedures, rules, regulations, final decisions, and/or custom so

widespread as to be standard operating procedure that caused the violation of

Plaintiff's rights and/or caused Plaintiff to be injured.

**SEVENTH CALIFORNIA COUNT – VIOLATION OF TOM BANE CIVIL RIGHTS ACT  versus DEFENDANT CITY POLICE OFFICERS ROBINET, STANIONIS, AND REASON; CITY (POLICE and FIRE), CITY FIRE PARAMEDIC ONE; JOHN DOE CITY DEFENDANTS [Cal. Civil Code Sections 52.1 and 52]**

680.      Plaintiff hereby re-alleges and incorporates by reference the allegations

contained in Paragraphs 1—679 as though fully set forth herein.

681.      The California Tom Bane Civil Rights Act ("Bane Act") states as follows,

in California Civil Code Section 52.1, subdivisions (b) and (c):

> (b) "If a person or persons, whether or not acting under color of law, interferes by threats, intimidation or coercion, or attempts to interfere by threats, intimidation or coercion, with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state …   (c) "Any individual whose exercise or enjoyment of rights secured by the Constitution or laws of the United States, or of rights secured by the Constitution or laws of this state, has been interfered with, or attempted to be interfered with, as described in subdivision (a),  may institute or prosecute in his or her own name and on his her own behalf a civil action for damages, including, but not limited to, damages under Section 52, injunctive relief, and other appropriate equitable relief to protect the peaceable enjoyment of the right or rights secured".

The Bane Act in California Civil Code Section 52.1, subdivision (c) incorporates California

Civil Code, Section 52, subdivision (a), which provides a minimum of four thousand dollars

actual damages for each Bane Act violation, with such actual damages trebled, and attorneys

fees; and incorporates California Civil Code Section 52, subdivision (b) provides for

exemplary damages.

682.   Defendant City as a California municipal corporation is a "person" as such term is

used in the Bane Act, and is therefore directly and/or vicariously liable for violations

of the Bane Act attempted or committed  by City's employees, including Defendant

City Police Officer Robinet, Defendant City Police Officer Stanionis, Defendant City

Police Officer Reason, and/or the John Doe City Defendants (including but not limited

to City Fire Paramedic One).

683.   Defendant City Police Officer Robinet, Defendant City Police Officer

Stanionis, Defendant City Police Officer Reason, and/or the John Doe City

Defendants (including but not limited to City Fire Paramedic One) are each

"persons" as such term is used in the  Bane Act, and each are  therefore liable for

violations of the Bane Act they attempt, commit, aid, or abet.

684.   Defendant City through its' City Police Department, City Fire Department,

Defendant City Police Officer Jared Robinet, Defendant City Police Officer

Maryna Stanionis, Defendant City Police Officer Nathaniel Reason, and/or one or

more of the John Doe City Defendants (including but not limited to City Fire

Paramedic One) through threats, intimidation, and/or coercion, or attempted

threats, attempted intimidation, or attempted coercion, as alleged in this Complaint

and incorporated in this Count by reference and re-allegation, have violated or

attempted to violate Plaintiff's rights secured by:

(a) The United States Constitution First, Fourth, and Fourteenth Amendments;

(b) California Constitution Article I, Sections 2, 3, 7, and 13;

(c) California Civil Code Sections 43 (freedom from bodily injury) and California

    Penal Code sections 236 (false imprisonment), 240 (assault), 242 (battery),and

    602 (trespass).

685.       Defendant City through its' City Police Department, City Fire Department,

Defendant City Police Officer Jared Robinet, Defendant City Police Officer

Maryna Stanionis, Defendant City Police Officer Nathaniel Reason, and/or one or

more of the John Doe City Defendants, each committed, attempted, aided, or

abetted in the committing of the acts alleged in this Complaint with intent to:

(a) Violate Plaintiff's right to be free from unreasonable searches and seizures;

(b) Violate Plaintiff's right to be free from searches and seizures made without a

    warrant inside the curtilage of Plaintiff's residence;

(c) Violate Plaintiff's right to be free from trespasses of her residence;

(d) Violate Plaintiff's right to be free from false arrests;

(e) Violate Plaintiff's right to be free from excessive force;

(f) Violate Plaintiff's right to be free from trespass;

(g) Violate Plaintiff's right to be free from  bodily injury;

(h) Violate Plaintiff's right to be free from assault;

(i)  Violate Plaintiff's right to be free from battery;

(j)  Violate Plaintiff's right to be free from false imprisonment;

(k) Violate Plaintiff's right to be free from  retaliation of the exercise of freedom of speaking and writing on all subjects;

(l)  Violate Plaintiff's right to be free from retaliation for exercising her California Constitution Article I, Section 3 rights to file California Public Records Act (CPRA) requests and to petition the City through sending of written Police Reports to Defendant City addressed to the Chief of Police.

(m)    Violate Plaintiff's rights under the United States Constitution First and Fourteenth Amendments, and California law, to medical care that is adequate to make her whole from the great bodily injury Plaintiff suffered at the hands of Defendant City's Police Department.

686.    Defendant City through its' City Police Department, Defendant City Police Officer Jared Robinet, Defendant City Police Officer Maryna Stanionis, Defendant City Police Officer Nathaniel Reason, and one or more of the John Doe City Defendants, each acted with intent to harm Plaintiff in the exercise of rights secured by federal or California law, by committing, attempting, aiding or abetting the acts of threats, intimidation or coercion alleged in this Complaint.

687.    Plaintiff suffered harm from the acts or conduct of each of the Defendants who violated Plaintiff's rights secured from threat, intimidation, or coercion by the Bane Act.

688.     Each of Defendants' acts of threats, intimidation and/or coercion was a substantial factor in causing the harm suffered by Plaintiff.

689.     One or more of Defendants' acts of threats, intimidation and/or coercion was committed to further the intentions of Defendant Andres, Defendant Maviglio, and/or one or more of the John Doe Conspirator Defendants in causing harm to Plaintiff and/or violating Plaintiff's rights secured by the Bane Act.

690.     Therefore, each of the Defendants named in this Count are liable to Plaintiff under the California Tom Bane Civil Rights Act for statutory damages of a minimum of a trebled four thousand dollars per violation (twelve thousand dollars per violation); compensatory damages; and attorney's fees. In addition, Defendants City Police Officers Robinet, Stanionis, Reason, and/or  the John Doe City Defendants in their individual capacities are liable to Plaintiff for exemplary damages under California Civil Code Section 3294.

**EIGHTH CALIFORNIA COUNT – versus DEFENDANT CITY TREATING PLAINTIFF AS A "CLASS OF ONE" IN VIOLATION OF THE EQUAL PROTECTION AND DUE PROCESS GUARANTEES OF ARTICLE I, SECTION 7 OF THE CALIFORNIA CONSTITUTION [Cal. Const., Article I, Section 7]**

691.     Plaintiff hereby re-alleges and incorporates by reference the allegations contained in Paragraphs 1—690 as though fully set forth herein.

692.     California Constitution, Article I, Section 7, subdivision (a) states as follows: "A person may not be deprived of life, liberty, or property without die process of law or be denied equal protection of the laws;…"

693.      In *Village of Willowbrook v. Olech*, 528 U.S. 562,(2000), a unanimous United States Supreme Court held that a municipality violated the United States Constitution Fourteenth Amendment Equal Protection Clause when the municipality intentionally treated a municipal resident differently "from others similarly situated but there is no rational basis for such treatment". Plaintiff alleges that the conduct by Defendant City alleged in this Count also violates Article I, Section 7 of the California Constitution.

694.     In addition, California Constitution Article I, Section 7 is also violated when a municipality intentionally treats a resident differently from others similarly situated when the municipal action or inaction is motivated by a spiteful effort to "get" the person for reasons wholly unrelated to any legitimate governmental objective.

695.     Defendant City of Sacramento unconstitutionally treats Plaintiff as a "class of one": (i) subjected to false arrests, other illegal conduct, and  targeting of Plaintiff based on false communications to the Defendant City's Police

238

Department from Defendant  Barbara Andres, Defendant Steven Maviglio, and others (including the John Doe City Defendants);

(ii) but where Plaintiff's written police reports or written communications to Defendant City's Police Department (addressed to the Chief of Police) regarding the illegal acts toward Plaintiff by Defendant Steven Maviglio, Defendant Barbara Andres, and others (including the John Doe City Defendants) will result in a combination of one or more of the following: (i) Plaintiff's written Police Reports will not be accepted or given an identifying number; (ii) Plaintiff's written Police Reports will be ignored by the Defendant City's Police Department; (iii) in response, Defendant City's Police Department will send to Plaintiff's residence officers from the City Police Mental Health Unit or the City Police Impact Team (a unit that deals with homeless persons); (iv) Plaintiff will be falsely arrested and subjected to great bodily injury, as occurred in the actions of May 9, 2020 detailed in this Complaint; (v) Defendant City's Police Department will do nothing to prosecute the criminal acts of Defendant Maviglio that Plaintiff suffered on March 7, 2021: Defendant Maviglio  California Penal Code Section 594 malicious mischief vandalism that Plaintiff escaped (and videotaped); (vi) Defendant City through its' Police Department and officers (including Defendant Robinet, Defendant Stanionis, and/or Defendant Reason) will work in concert with Defendant Stevejn  Maviglio to have City Police officers knock on Plaintiff's door at 5:45 a.m. in the morning and later leave on Plaintiff's front porch a Notice to Appear based entirely on Defendant Steve Maviglio's statement accusing Plaintiff

of "willfully violating" Mr. Maviglio's restraining order (that Plaintiff has reported

to Defendant City's Police Department that Mr. Maviglio's obtained through his

own perjury and the perjury of Defendant Barbara Andres), simply by driving a car

from her home on 45th Street toward "T" Street, even though Mr. Maviglio's

restraining order expressly does not apply to Plaintiff's driving to or from her

home; and (vii) Defendant City's Police Department ignores Mr. Maviglio's

videotaped malicious mischief vandalism to the vehicle that Plaintiff was driving,

notwithstanding Plaintiff's Police Report to Defendant City's Chief of Police that

offers to provide  videotape of the criminal malicious mischief car vandalism by

Defendant Maviglio, where Maviglio attempted to open the door of Plaintiff's car

as it was *in motion* while Plaintiff was driving the car on 45th Street. in an attempt

by Mr. Maviglio to assault, batter, and falsely imprison Plaintiff.  Plaintiff will sue

Mr. Maviglio in a separate California state court action for these injuries, but is

including this incident in this Count in this Complaint as a glaring example of: (i)

Defendant City's intentional unequal treatment of Plaintiff pursuant to acts of its'

employees, policy, or custom that is so widespread as to be standard operating

procedure; Defendant Maviglio's spinning-out-of-control spite, hatred, and ill will

toward Plaintiff that extends to intentionally committing criminal acts. .

696.     Defendant City's unequal treatment of Plaintiff regarding Police Reports

(not accepted) and calls to police targeting Plaintiff (accepted) are motivated

solely by a spiteful effort to "get" Plaintiff rather than any legitimate law

enforcement objective.  Under *Willowbrook*, spite is not an element of the

240

constitutional violation, but decisions in one more federal Circuit Courts of Appeal (such as the Seventh Circuit decision that was affirmed in *Willowbrook*), spite is a separate and independent violation. Plaintiff alleges that spite is a separate and independent violation of Article I, Section 7 of the California Constitution.

### ***Defendant City's Targeting Of Plaintiff Prior To May 9, 2020 That Included Activity By Defendant City Police Officer Robinet At or In The Vicinity of Plaintiff's Residence***

697.     Upon information Plaintiff received from a Defendant City CPRA response, between January 4 and August 7 of 2020, there were approximately thirty City Police "CAD [Computer Assisted Dispatch] reports" targeting 1859 45th Street (Plaintiff's residence) for action by City Police officers, more than one of which said "advised entry."

698.     Prior to May 9, 2020, there was also at least one visit to 1859 45th Street by Defendant City Police Officer Jared Robinet, including visits on the 2020 dates of January 30, March 10, and/or March 11. On March 11, 2020, in the afternoon, Defendant City Police Officer Jared Robinet knocked on the front door of 1859 45th Street when Plaintiff was not present. Plaintiff's friend who was in the house refused to open the door to Defendant City Police Officer Robinet, who then proceeded to issue a twenty-five dollar ticket to the friend's car parked at the 1859 45th Street curb without a front license plate (but with a rear plate), even though Defendant City's Police Department has ignored one or more Police Reports from Plaintiff reporting vehicle lic ense plate irregularities or deficiencies on one or more of the cars parked at 1871 455th Street, the house between Plaintiff's house and Defendant Maviglio's house.   .

699.     Upon information and belief, Plaintiff believes that the May 9, 2020 actions of Defendant  City's Police Department, Defendant City Police Officer Jared Robinet,

Defendant City Police Officer Maryna Stanionis, Defendant City Police Officer Nathaniel Reason, and one or John Doe City Defendants, to accept without reservation or question one or more false and defamatory statements of and concerning and Plaintiff in a false light made by Defendant Barbara Andres, Defendant Steven Maviglio, and/or one or more of the John Doe Conspirator Defendants, in order to retaliate against Plaintiff for her consistent exercise of her rights under the First, Fourth, Fifth and Fourteenth Amendments not to talk to Defendant City's Police Department officers, and for filing multiple written Police Reports regarding Defendant Barbara Andres, Defendant Steven Maviglio, and other persons (who may turn out to be John Doe Conspirator Defendants).

700.    Upon information and belief, Defendant Barbara Andres, Defendant Steven Maviglio, and/or one or more of the John Doe Conspirator Defendants made false and defamatory statements of and concerning Plaintiff, and that also placed Plaintiff in a false light. These statements were made  to Defendant City's Police Department in retaliation for Plaintiff's multiple written Police Reports to Defendant City's Chief of Police regarding what Plaintiff stated she reasonably believed to be illegal acts by Defendant Barbara Andres, the husband of Defendant Barbara Andres (Mr. Cecil Taylor), Defendant Steven Maviglio, and/or Defendant Steve Maviglio's guest Mr. Joseph Lee Mastalski.

701.    Plaintiff mailed, delivered, or caused these written Police Reports to be delivered to the Defendant City's Police Department on multiple dates prior to May 9, 2020, in written letters addressed to Defendant City's Chief of Police. Upon information and belief, Plaintiff believes that one or more of the City's Police Department employees communicated these reports or their existence to Defendant Barbara Andres, Defendant Steven Maviglio, and/or one or more of the John Doe Conspirator Defendants.

702.         The Police Reports sent by Plaintiff to Defendant City's Police Department included November 4, 2019 (personal delivery date) written reports expressly, separately, and specifically charging both Defendant Steven Maviglio and Defendant Barbara Andres with California Penal Code Section 118, subdivision (a) Perjury, in the November 1, 2019 hearing on Mr. Maviglio'ws restrainibng order where the Coutrt Commissioner gave Mr. Maviglio a restrainibng order whose stayaway zone was reduced by 90 percent, from the 100 yards (300 feet) siught by Mr. Maviglio to ten (120) yards or thirty (30) feet. .

703.         Upon information and belief, one of the intentions for the actions alleged in this Complaint to have been performed by Defendant Steven  Maviglio and/or Defendant Barbara Andres was to use Defendant City's Police Department to use force, coercion, intimidation and violence against Plaintiff to retaliate against Plaintiff for demanding that Defendant Steven Maviglio and Defendant Barbara Andres in writing retract or provide proof of their false and defamatory statements of and concerning Plaintiff that were both made by Defendant Maviglio and Defendant Andres on November 1, 2019 in support of a California Civil Code Section 527.6 civil harassment restraining order sought by Defendant Maviglio against Plaintiff in August-November of 2019. This Complaint does not seek relief against any Defendant for Defendant Maviglio's and Defendant Andres's acts in obtaining the restraining order (which Plaintiff maintains was procured through fraud), but these acts are set forth herein in order to display the hatred, spite, ill will, malice, knowing falsehood, and reckless disregard of truth or falsity by Defendant Barbara Andres and by Defendant Steven  Maviglio that characterizes their state of mind in their acts regarding Plaintiff plead in this Complaint, and Defendant City's allowing itself to be used by Defendant Barbara Andres, Defendant Steven Maviglio, and the John Doe Conspirator Defendants to unequally treat Plaintiff as a "class of one" through

243

arbitrary denial to Plaintiff of the equal protection of the laws and due process guaranteed by Article I, Section 7 of the California Constitution.

704.     Upon information and belief, Plaintiff additionally alleges that Defendant Barbara Andres and/or Defendant Steven Maviglio made these false and defamatory statements of and concerning Plaintiff that placed Plaintiff in a false light, to Defendant City's Police Department, Defendant City Police Officer Robinet, Defendant City Police Officer Stanionis, and/or one or more of the John Doe City Defendants, in retaliation for Plaintiff's multiple written police reports regarding what Plaintiff stated she reasonably believed to be illegal acts by Defendant Barbara Andres, the husband of Defendant Barbara Andres (Mr. Cecil Taylor), Defendant Steven Maviglio, and/or Defendant Maviglio's guest Mr. Joseph Lee Mastalski.

705.     Plaintiff mailed, delivered, or caused these written Police Reports to be delivered to the Defendant City's Police Department regarding misconduct that occurred on multiple dates prior to May 9, 2020. Upon information and belief, Plaintiff alleges that one or more of the City's Police Department employees communicated the content of these reports or their existence to Defendant Andres, Defendant Maviglio, and/or one or more of the John Doe Conspirator Defendants.

706.     Among the Police Reports that Plaintiff that caused to be personally delivered to Defendant City's Police Department (addressed to Defendant City's Chief of Police) are two separate November 4, 2019 Police Reports describing the California Penal Code Section 118 Perjury committed by Defendant Steve Maviglio and Defendant Barbara Andres. These reports expressly and specifically charge both Defendant Maviglio and Defendant Andres with committing California Penal Code Section 118, subdivision (a) Perjury on November 1, 2019.

244

707.        On multiple dates in 2015 and 2016 prior to March 31, 2016, Plaintiff filed multiple Police Reports in the form of written letters to the Defendant City's Chief of Police that were hand delivered to the City's main Police Station at 5770 Freeport Boulevard . These Police Reports reported home invasions, thefts and vandalism to Plaintiff's residence.

708.        On a date in March of 2016, Defendant City's Police Department sent an electronic mail message to the City Police Department staff stating: "we are not accepting any Police Reports from Parvin Olfati", or words to that effect, and further instructing the staff to escort Plaintiff out of the City Police station (5770 Freeport Boulevard, Sacramento, California 95822) should she attempt to file one. This final decision, policy, or custom amounting to policy announced in writing continues in effect to this day.

709.        Plaintiff after March 2016 and continuing through and after May 9, 2020 continued to file Police Reports with Defendant City's Police Department, through written detailed letters to the Defendant City's Chief of Police. Prior to the coming of COVID-19 in February and March of 2020, these Police Reports were personally delivered to the City Police Records Department at 5770 Freeport Boulevard (Sacramento, California 95822)., and were usually (but not always) file-stamped as received  After City Police in-person services were closed in March 2020 due to COVID-19, these Police Reports were delivered to Defendant City Police and Police Chief Hahn: (i) via electronic mail to CaSacramentoPd@coplogic.com and via U.S. Mail; and (ii) after this electronic mail address stopped receiving Plaintiff's police reports, via personal delivery to the City Clerk Box at the Sacramento City Hall Kiosk and via U.S. Mail, both addressed to  the Chief of Police.

710.     Defendant City's Police Department on its' website has a portal for filing online Police Reports, but users of this "service" are limited to two thousand characters (not words). Plaintiff finds this portal to be useless and therefore insists upon using delivery methods that enable the delivery of content that exceeds two thousand characters.

711.     Upon information and belief, Defendant City's Police Department website for many years contained language telling crime victims that they could file police reports or crime reports in person at the City Police 5770 Freeport Boulevard station and at one or more other locations. However, this language disappeared from the City of Sacramento Police Department website shortly after Plaintiff sent Defendant City a CPRA request for the policy or analysis underlying the March 2016 statement not to accept Police Reports from Plaintiff.

712.     On September 12, 2019, Plaintiff caused to be delivered to Defendant City's Police Department a Police Report describing how Defendant Steven Maviglio threatened to "call the police" against Plaintiff merely for walking on a public sidewalk.

713.     On February 7, 2020, Plaintiff caused to be personally delivered to the Defendant City's  Police  Department a Police Report describing reckless driving by Defendant Steven Maviglio where Defendant Maviglio as soon as he saw Plaintiff driving on 45th Street "rushed and got into his [license plate number omitted] truck, backed out of his driveway, and physically stopped his truck on 45th Street directly in front of me. Mr. Maviglio's intentional acts using his truck resulted in the blocking of  [Plaintiff] and her car , and forced [Plaintiff] her  to honk [her] car horn repeatedly", in conduct by Defendant Steven Maviglio that Plaintiff reported to Defendant City's Police Department was in fact Defendant Steven Maviglio driving recklessly or intending to cause an accident.

**714.**     On February 10, 2020, Plaintiff caused to be personally delivered to Defendant City's Department (addressed to the Chief of Police) a Police Report describing the following

246

activity of Defendant Steven Maviglio guest Mr. Joseph Lee Mastalski: **"reckless driving on 45th Street in order to stop vehicle in the middle of 45th Street in order to scream "hey bitch" at Ms. Parvin Olfati as she was standing in the driveway of her house at 1859 45th Street; offensive conduct -- all by Joseph Lee Mastalski [address omitted], Sacramento, California/"**

715.        On May 4, 2020 – five days before the false arrest – Plaintiff caused to be sent via electronic mail to Defendant City Police a Police Report describing the *"*Criminal Use of High-Beam Headlights With Intent To Injure By Steven Maviglio, Directed and/or Aided and Abetted By 45th Street Residents…" the latter category including Defendant Barbara Andres.

716.        On May 8, 2020 – the night before the false arrest giving rise to this Complaint – Defendant Steven Maviglio's guest Mr. Joseph Lee Mastalski **,** with intent to injure, pointed his vehicle high beam headlights directly at Plaintiff and her eyes in violation of California Vehicle Code Sections 24401, 24407, and 24409 and the Sacramento County COVID-19 Public Health Order. Plaintiff reported this in a Police Report sent n May 15, 2020 via electronic mail to the Defendant City's Police Department, addressed to the Chief of Police.

717.        On May 8, 2020 – the night before the false arrest giving rise to this Complaint – the husband and 1870 45th Street co-resident of Defendant Barbara Andres, Mr. Cecil Taylor, ran out into 45th Street to block Plaintiff's driving of her car, and such blocking was in violation of two California Vehicle Code sections. On May 15, 2020, Plaintiff caused to be delivered to Defendant City's Police Department a Police Report

describing this illegal conduct.

718.　　　　　On May 11, 2020, Plaintiff caused to be personally delivered to Defendant City's Police Department  a Police Report describing the making of false police reports of and concerning Plaintiff by Defendant Barbara Andres and by Defendant Steven Maviglio communications that resulted in the May 9, 2020 false arrest giving rise to this Complaint.

719.　　　　The conduct of Defendant City Police Officer Jared Robinet on May 9, 2020 resulted in more unconstitutional treatment of Plaintiff as a "class of one." When Defendant Robinet crossed the curtilage of Plaintiff's residence, Defendant City Police Officer Jared Robinet was aware of Defendant Barbara Andres walking on Plaintiff's driveway without Plaintiff's permission, but took no action regarding Defendant Andres walking on Plaintiff's driveway without Plaintiff's permission – even though the Andres conduct in front of Defendant City Police Officer Jared Robinet's own eyes was a California Penal Code Section 602 trespass. In addition, Defendant Robinet's ultimate supervisor, Defendant City's Chief of Police, had in November 2019 received the Police Report letter from Plaintiff (described elsewhere in this Complaint) reporting the California Penal Code Section 118 Perjury toward Plaintiff by Defendant Andres.   .

720.　　　　On May 9, 2020 at about 8:00 a.m. in the morning, at the time Defendant Robinet crossed the curtilage, Plaintiff was walking on her driveway at a normal pace toward her front porch and front door, and at all times was walking within the curtilage of her residence. Plaintiff: (i) was aware that a City Police car and uniformed officer was present on 45th Street near her house; )ii) heard no communication from Defendant Robinet; and (iii) reasonably believed that the City Police officer was going to talk to Defendant Barbara Andres, since Defendant Barbara Andres: (i) had been visibly trespassing on Plaintiff's driveway; and (ii) Defendant Barbara Andres was the subject of

248

one of the two November 4, 2019 police reports to Defendant City's Police Department that expressly, specifically, and with facts, accused Defendant Andres of having committed California Penal Code Section 118 Perjury on November 1, 2019.

721.    Plaintiff is informed and believed that the purpose of the acts by Defendant Robinet, Defendant Stanionis, Defendant City, Defendant Maviglio, Defendant Andres, and the John Doe Conspirator Defendants was to intimidate Plaintiff from the exercise of federally and California law protected rights, by causing Plaintiff to be assaulted, battered, and detained handcuffed by City Police officers – which is exactly what happened on May 9, 2020 at the same time Defendant Andres was trespassing Plaintiff's driveway and, upon information from Defendant City's CPRA response, was communicating with the Defendant City's Police Department about Plaintiff -- a communication that Plaintiff upon information and belief alleges was both false and a contributing cause to Plaintiff's great bodily injury and other damages.

722.    Defendant City Police Officer Maryna Stanionis joined in the unconstitutional treatment of Plaintiff as a "class of one."  Plaintiff while in handcuffed detention asked Defendant City Police Officer Maryna Stanionis multiple times for water and was refused water multiple times, even though Plaintiff was dehydrated, handcuffed, bleeding, shocked, and in great pain.

723.    Further, Defendant City Police Officer Stanionis even went so far as to refuse Plaintiff's request for Defendant City Police Officer Stanionis to accompany Plaintiff to her house to obtain water, or for Defendant City Police Officer Stanionis to obtain water for Plaintiff from Defendant Barbara Andres or Defendant Steven  Maviglio.

724.    Defendant City Police Officer Maryna Stanionis intentionally denied Plaintiff's request for Officer Stanionis to accompany Plaintiff back to Plaintiff's house, a

249

visit that would have enabled Plaintiff to lock the house doors and prevent any illegal

entries, even though during the entire time Defendant Stanionis kept Plaintiff in

dehydrated handcuffed bleeding condition, Defendant Stanionis went back and forth to

the residence of 1901 45th Street resident Steven Maviglio.

725.        Defendant City Police Officer Maryna Stanionis kept Plaintiff confined and

handcuffed in a City Police car on May 9, 2020 where all of the police car windows were

closed for most of the detention. The City Police car was locked the entire time.

Defendant City Police Officer Stanionis intentionally kept Plaintiff confined and denied

water even though Defendant City Police Officer Stanionis knew Plaintiff was bleeding,

dehydrated, shocked, and hurting from  pain and the heat in the car.

726.        Defendant City Police Officer Maryna Stanionis kept Plaintiff confined and

in handcuffed, bleeding, in pain  custodial interrogation even though Plaintiff had offered

no physical resistance to Defendant Stanionis or to Defendant City Police Officer

Robinet.

727.        Defendant City Police Officer Maryna Stanionis further intentionally

increased the pain suffered by Plaintiff from the City Police handcuffs. Defendant City

Police Officer Maryna Stanionis squeezed Plaintiff's wrists; squeezed Plaintiff's

bloodied, fractured, and lacerated right hand ring finger; and squeezed Plaintiff's

unfractured left hand finger to the point that Plaintiff lost feeling on the left hand.

Plaintiff after almost passing out explained to Defendant City Police Officer Maryna

Stanionis that the handcuffs were causing her pain. Defendant City Police Officer Maryna

Stanionis responded: "it is not supposed to be comfortable" or words to that effect, and

proceeded to tighten the handcuffs and thereby intentionally increased Plaintiff's injuries,

pain, and  suffering, even though Plaintiff was already physically handcuffed, was not

250

carrying a weapon,  and had no chance of escaping or harming Defendant City Police

Officer Stanionis.

728.        Defendant Stanionis intentionally tightened the handcuffs on Plaintiff's

unfractured left fingers and hand after Plaintiff complained of pain to the point that

plaintiff could not feel her left hand..

729.        Defendant City Police Officer Maryna Stanionis was given Plaintiff's keys and

cellphone by Defendant City Police Officer Robinet, who had seized them from the front

porch of Plaintiff's residence.

730.         This misconduct by Defendant City's Police Department, and the other

misconduct of Defendant City's Police Department alleged and described herein, in

addition to being acts for which Defendant City is liable to Plaintiff in *respondeat*

*superior*, is in furtherance of one or more City Police Department or City policies,

procedures, rules, regulations, final decisions or customs so widespread as to be standard

operating procedure,  including but not limited to a policy announced in a March 2016

electronic mail message to City Police Department staff: "we are not accepting any Police

Reports from Parvin Olfati" and to have City Police officers physically remove Plaintiff

from the City Police Station at 5770 Freeport Boulevard (Sacramento, California 95822)

if she tried to file one.

731.          Defendant City's Police Department unequal treatment of Plaintiff continues

to this day. One of the more spectacular and bizarre instances of this unequal treatment of

Plaintiff occurred on March 7, 2021, when Defendant City's Police Department ignored

verbal police reports, written police reports, photographs, and cellphone videotape of

Defendant Steven Maviglio spinning out of control -- when Defendant Steven Maviglio

managed to have officers from Defendant City's Police Department appear at Plaintiff's

251

front porch at about 5:45 a.m. in the morning. After Plaintiff refused to acknowledge or speak to these officers, at about 6:02 a.m. in the morning two of the officers went to Defendant Maviglio's house; upon information and belief, Plaintiff submits these City Police officers sought and obtained instructions from Defendant Maviglio. Barely an hour later, at about 7:00 a.m. in the morning on March 7, 2021, Plaintiff was driving a car with the owner's permission on 45th Street toward "T" Street; when Plaintiff's car approached 1914 45th Street, with her own eyes (and as recorded on her cellphone camera), Plaintiff experienced self-styled spin doctor Steven Maviglio spinning out of control: Maviglio ran out of his 1901 45th Street house into the middle of 45th Street, and attempted to open the driver side door of the moving car Plaintiff was driving, in an apparent attempt to assault, batter, carjack, and falsely imprison Plaintiff; when that attempt failed, while Plaintiff and her car were in the middle of 45th Street, self-described spin doctor Steven Maviglio jumped on the car hood, placed himself on the car hood, and videotaped Plaintiff. Self-described spin doctor Steven Maviglio then ripped off the driver-side windshield wiper blade, threw the windshield wiper blade into 45th Street near 1914, and then moved the ripped-off blade to a location near 1856 45th Street, in an apparent attempt (albeit unsuccessful) to hide the evidence of Defendant Maviglio's criminal malicious mischief vandalism. Upon information and belief, on or about March 18, 2021, Defendant Maviglio signed for a certified mail return receipt requested letter from the car owner requesting payment of the insurance repair estimate, but Mr. Maviglio has yet to pay any amount of the insurance repair estimate for the vehicle that Mr. Maviglio intentionally damaged. This bizarre episode starring Defendant Maviglio is only a part of this federal Complaint[7] in the two Counts alleging unequal treatment of Plaintiff in violation of the

---

[7] However, they reasonably could become part of separate California state court complaints.

federal and state constitutional equal protection guarantees. Plaintiff in this Complaint is not seeking recovery for Mr. Maviglio's attempted assault, battery, carjacking and false imprisonment. This bizarre incident is alleged and described to demonstrate: (i) for all Counts in which Maviglio is named, Defendant Maviglio's out-of-control spite and vengeance toward Plaintiff, to the point of openly committing California Penal Code Section 594 malicious mischief vandalism of the car Maviglio saw Plaintiff was driving; (ii) for the two "class of one" unequal treatment counts, the close working relationship of Defendant Maviglio with Defendant City's Police Department and its' officers, a relationship that enables Defendant Maviglio to telephonically or electronically summon City Police officers on a nanosecond's notice to take action against Plaintiff, and to have any actions Defendant Maviglio takes against Plaintiff to be ignored; and (iii) for all counts alleging any conspiracy by Defendant Maviglio with Defendant City's Police Department, the close working relationship between Defendant Maviglio and Defendant City's Police Department.

732. In contrast, Plaintiff alleges that Plaintiff's multiple legitimate written Police Reports to Defendant City's Chief of Police, as described elsewhere in this Complaint are ignored even though they describe specific California law violations by Defendant Maviglio, Defendant Maviglio's guest Joseph Lee Mastalski, Defendant Barbara Andres, Defendant Andres's husband Cecil Taylor, and other residents of 45th Street who may include one or more John Doe Conspirator Defendants.

733. Plaintiff alleges that both before and after the May 9, 2020 false arrest and excessive force giving rise to this Complaint, Plaintiff was being targeted by Defendant City's Police Department. Plaintiff is informed and believes that this targeting of Plaintiff through actions that include the City Police acts alleged in this Complaint is based in not insubstantial part on

253

false information communicated from Defendant Steven Maviglio, Defendant Barbara Andres, and/or the John Doe Conspirator Defendants to Defendant City's Police Department.

734.     Defendant City's unconstitutional unequal treatment of Plaintiff as a "class of one" also includes the City's Fire Department, who after being told by Defendant City Police Officer Stanionis on May 9, 2020 that Plaintiff was a "mental case" or a "[Welfare & Institutions Code Section] 5150 case", Defendant City's Fire Department on June 14, 2020 described Plaintiff as a "5150" in a report of a City Fire visit to Plaintiff's residence, where City Fire refused to investigate an alleged natural gas leak because the City Fire lead person said he did not smell anything, and called Pacific Gas & Electric without Plaintiff's permission.

735.     One or more of Defendants' acts of threats, intimidation and/or coercion was committed to further the intentions of Defendant Andres, Defendant Maviglio, and/or one or more of the John Doe Conspirator Defendants in causing harm to Plaintiff and/or violating Plaintiff's rights secured by California law and/or federal law.

736.Defendant City's actions or inactions toward Plaintiff as plead in this Count renders Defendant City liable to Plaintiff under the California Constitution, Article I, Section 7, and in *respomdeat superior* for the illegal and unconstitutional acts alleged in this Complaint that were committed by employees of Defendant City who were acting within the scope of their employment, for these employees violating Plaintiff's Article I, Section 7 rights to equal protection and due process.

1

2

3

### NINTH CALIFORNIA COUNT – TOM BANE CIVIL RIGHTS ACT VIOLATIONS

### versus DEFENDANT ANDRES, DEFENDANT MAVIGLIO, AND/OR THE JOHN DOE

### CONSPIRATOR DEFENDANTS

737.    Plaintiff hereby re-alleges and incorporates by reference the allegations contained

in Paragraphs 1—736 as though fully set forth herein.

738.    The California Tom Bane Civil Rights Act ("Bane Act") states as follows, in

California Civil Code Section 52.1, subdivisions (b) and (c): (b)

> "If a person or persons, whether or not acting under color of law, interferes by
> threats, intimidation or coercion, or attempts to interfere by threats, intimidation or
> coercion, with the exercise or enjoyment by any individual or individuals of rights
> secured by the Constitution or laws of the United States, or of the rights secured by
> the Constitution or laws of this state … (c): "Any individual whose exercise or
> enjoyment of rights secured by the Constitution or laws of the United States, or of
> rights secured by the Constitution or laws of this state, has been interfered with, or
> attempted to be interfered with, as described in subdivision (a), may institute or
> prosecute in his or her own name and on his her own behalf a civil action for
> damages, including, but not limited to, damages under Section 52, injunctive relief,
> and other appropriate equitable relief to protect the peaceable enjoyment of the
> right or rights secured".

The Tom Bane Act in California Civil Code Section 52.1, subdivision ( c ) incorporates

California Civil Code, Section 52, subdivision (a), which provides a minimum of a trebled four

thousand dollars actual damages for each Bane Act violation (twelve thousand dollars per

violation); compensatory damages; attorneys fees; and California Civil Code Section 52,

subdivision (b) exemplary damages.

255

739.     Defendants Barbara Andres, Steven Maviglio, and/or the John Doe

Conspirator Defendants are each "persons" as this term is used in the Bane Act,

and each are  therefore liable for violations of the Bane Act they attempt, commit,

aid, abet, or conspire to have committed.

740.     Defendant Barbara Andres committed the acts alleged of her in this

Complaint  with intent to harm Plaintiff in the exercise of rights secured by federal

or California law, by:

(a) committing acts of threats, intimidation, or coercion;

(b) attempting acts of threats, intimidation, or coercion;

(c) committing or attempting to commit acts intended to make Plaintiff fear that

Plaintiff would suffer acts of intimidation or coercion from Defendant City's

Police Department and its officers;

(d) aiding, abetting, or conspiring to have other Defendants commit the acts of

threats, intimidation or coercion alleged in this Complaint.

741.     Defendant Barbara Andres through acts of threats, intimidation, and/or

coercion  and/or through acts of aiding, abetting, and/or conspiring with Defendant

Steve Maviglio; Defendant City's Police Department; Defendants City Police

Officers Robinet, Stanionis, and/or Reason; one or more of the John Doe City

Defendants; and/or one or more of the John Doe Conspirator Defendants, has

violated or attempted to violate Plaintiff's rights secured by:

(a) The United States Constitution First, Fourth, and Fourteenth Amendments;

(b) California Constitution Article I, Sections 2, 3, 7, and 13;

256

(c) California Civil Code Sections 43 (freedom from bodily injury),44-45-46

(freedom from defamation), 47(b)(5)(no privilege for false reports to law

enforcement agencies); and California Penal Code sections 236 (false

imprisonment), 240 (assault), 242 (battery), 602 (trespass); and the California

tort of malicious prosecution.

742.      Defendant Barbara Andres acted with intent to:

(a) Violate Plaintiff's right to be free from unreasonable searches and seizures;

(b) Violate Plaintiff's right to be free from searches and seizures made without a

warrant inside the curtilage of Plaintiff's residence;

(c) Violate Plaintiff's right to be free from trespasses of Plaintiff's residence;

(d) Violate Plaintiff's right to be free from false arrests;

(e) Violate Plaintiff's right to be free from excessive force;

(f) Violate Plaintiff's right to be free from  bodily injury;

(g) Violate Plaintiff's right to be from assault;

(h) Violate Plaintiff's right to be free from battery;

(i)  Violate Plaintiff's right to be free from false imprisonment;

(j)  Violate Plaintiff's right to be free from malicious prosecution;

(k) Violate Plaintiff's right to be free from  retaliation of the exercise of freedom of

speaking and writing on all subjects;

(l) Violate Plaintiff's right to be free from retaliation for exercising her California

Constitution Article I, Section 3 rights to file California Public Records Act

(CPRA) requests and to petition the City through sending of written Police Reports to Defendant City addressed to Defendant City's Chief of Police;

(m)    Violate Plaintiff's rights to equal protection of the law under the United States Constitution Fourteenth Amendment and both equal protection and due process under California Constitution Article I, Section 7; and/or

(n) Violate Plaintiff's rights under the United States Constitution First and Fourteenth Amendments, and California law, to medical care that is adequate to make her whole from the great bodily injury Plaintiff suffered at the hands of Defendant City's Police Department.

743.    Plaintiff was harmed from the conduct of Defendant Barbara Andres in committing the acts or conspiring, aiding, or abetting in the commission of the acts of threats, intimidation, and/or coercion to interfere with Plaintiff's rights secured from threat, intimidation, or coercion by the Bane Act.

744.    Defendant Barbara Andres's conduct was a substantial factor in causing the harm suffered by Plaintiff.

745.    The acts or conduct of Defendant Barbara Andres that violated the Bane Act include but are not limited to:

(a) Trespassing on Plaintiff's driveway to hand-signal Defendant City Police Officer Jared Robinet to come and seize Plaintiff while Plaintiff was walking on her driveway and was alone at the time;

(b) Speaking or otherwise communicating with Defendant Robinet while Robinet was trespassing Plaintiff's driveway and stalking Plaintiff from the rear into the front door abd living room of Plaintiff's residence, where Robinet without a warrant or probable cause seized Plaintiff and pulled Plaintiff out of her own living room;

(c) Threatening to call Defendant City's Police Department on Plaintiff for no reason other than Defendant Andres hatred, spite, or ill will;

(d) Conspiring with Defendant Steven Maviglio for Defendant Steven Maviglio to threaten Plaintiff with the filing of "another restraining order" against Plaintiff;

(e) Falsely stating to Defendant City's Police Department that Plaintiff was committing or had committed a "battery";

(f) Falsely stating to Defendant City's Police Department that Plaintiff was involved in an "altercation";

(g) Falsely stating to Defendant City's Police Department that Plaintiff was committing acts requiring the intervention of Defendant City's Police Department;

(h) As part of a plot, plan or scheme with Defendant City's Police Department and/or Defendant City Police Officer Jared Robinet, to hand-signal a police officer of Defendant City's Police Department to come and seize Plaintiff when Plaintiff was alone and was walking on Plaintiff's driveway;

(i) As part of a plot, plan, scheme with Defendant City's Police Department and/or Defendant City Police Officer Jared Robinet, to trespass on Plaintiff's driveway

259

to hand-signal a police officer of Defendant City's Police Department  (who was Defendqant Robinet) to come and seize Plaintiff when Plaintiff was alone and was walking on Plaintiff's driveway;

(j)  Making or attempting to make knowingly or recklessly false statements of and concerning Plaintiff to Defendant's City Police Department, Defendant City Police Officer Robinet, Defendant City Police Officer Stanionis, Defendant City Police Officer Reason, and/or one or more of the John Doe City Defendants  with the intent to have Defendant City's Police Department and its' Defendant City Police Officers Robinet, Stanionis, and/or Reason subject Plaintiff to threats, intimidation, and/or coercion, including but not limited to the following acts alleged in this Complaint:

(i)      Seizure of Plaintiff's person;

(ii)     Seizure of Plaintiff's person in an attempt to have Plaintiff removed from Plaintiff's residence for a period of time (in effect, a kidnapping of Plaintiff).

(iii)    Assault and/or battery of Plaintiff's person;

(iv)    False arrest;

(v)     False imprisonment;

(vi)    Body search;

(vii)   Handcuffing;

(viii)  Custodial interrogation while handcuffed;

(ix)    Custodial interrogation to obtain information or statements from Plaintiff for use by or that were in the personal interest of Defendant Barbara Andres and/or Defendant Steven Maviglio;

(x)    The filing of one or more criminal charge against Plaintiff, including but not limited to California Penal Code Section 148, subdivision (a)(1), "resisting arrest" or "interfering with a police officer";

(xi)    The filing against Plaintiff of criminal charges other than California Penal Code Section 148, subdivision (a)(1), including but not limited to Penal Code Section 242 battery;

(xii)    Forcing Plaintiff to attend court proceedings on criminal charges;

(xiii)    Public humiliation through a daytime open seizure, handcuffing, and custodial interrogation of Plaintiff in full view of Defendant Andres, Defendant Maviglio, one or more of the John Doe Copnspirator Defendants, and/or residents of the 1800-1900 blocks of 45th Street.

746.    Defendant Andres intentionally committed the acts alleged in this Count (including the acts alleged through incorporation by reference or re-allegation) as part of an agreement or meeting of the minds between Defendant Andres and Defendant Maviglio to take one or more of the acts alleged in this Count, with a common objective to cause Plaintiff to suffer one or more violations of Plaintiff's rights secured by federal and California law by Defendants City, Robinet, Stanionis and/or Reason.

747.　　Defendant Andres became a member of the conspiracy with Defendant Steven Maviglio to violate or cause Defendants City, Robinet, Stanionis and/or Reason to violate Plaintiff's rights, with Defendant Andres knowing of at least one object of the conspiracy and intending to help accomplish such object.

748.　　Defendant Barbara Andres willfully participated in a plan or scheme with Defendant Steven Maviglio to commit one or more overt acts to violate Plaintiff's rights secured by federal and California law.

749.　　Defendant Steven Maviglio acted with intent to harm Plaintiff in the exercise of rights secured by federal or California law, by:

(e) committing acts of threats, intimidation, or coercion; and/or

(f) aiding, abetting, or conspiring to have other Defendants commit the acts of threats, intimidation or coercion alleged in this Complaint.

750.　　Defendant Steven Maviglio through threats, intimidation, and/or coercion alleged in this Complaint and incorporated in this Count by reference and re-allegation, and/or by acts of aiding, abetting, and/or conspiring with Defendant Andres, Defendant City's Police Department and Defendants City Police Officers Robinet, Stanionis, and Reason; and the John Doe City Defendants, in these Defendants' commission acts of threats, intimidation, and/or coercion alleged in this Complaint, has violated or attempted to violate Plaintiff's rights secured by:

(a) The United States Constitution First, Fourth, and Fourteenth Amendments;

(b) California Constitution Article I, Sections 2, 3, 7, and 13;

(c) California Civil Code Sections 43 (freedom from bodily injury),44-45-46
(freedom from defamation), 47(b)(5)(no privilege for false reports to law
enforcement agencies); and California Penal Code sections 236 (false
imprisonment), 240 (assault), 242 (battery), 602 (trespass); and the California
tort of malicious prosecution.

751.     Defendant Steven Maviglio acted with intent to To effectively have Plaintiff
kidnapped where Plaintiff would be so burdened by the effect of these violasrions
of her rights that she could not engage in constitutionally and legally protected acts
opposed by Defendant Steven Maviglio.

752.     Defendant Steven Maviglio acted with intent to:

(a) Violate Plaintiff's right to be free from unreasonable searches and seizures;

(b) Violate Plaintiff's right to be free from searches and seizures made without a
warrant inside the curtilage of her residence;

(c) Violate Plaintiff's right to be free from trespasses of her residence;

(d) Violate Plaintiff's right to be free from false arrests;

(e) Violate Plaintiff's right to be free from excessive force;

(f)  Violate Plaintiff's right to be free from  bodily injury;

(g) Violate Plaintiff's right to be from assault;

(h) Violate Plaintiff's right to be free from battery;

(i)  Violate Plaintiff's right to be free from false imprisonment;

(j)  Violate Plaintiff's right to be free from malicious prosecution.

263

(k) Violate Plaintiff's right to be free from  retaliation of the exercise of freedom of speaking and writing on all subjects;

(l) Violate Plaintiff's right to be free from retaliation for exercising her California Constitution Article I, Section 3 rights to file California Public Records Act (CPRA) requests and to petition the City through sending of written Police Reports to Defendant City addressed to Defendant City Police Chief Daniel Hahn;

(m)    Violate Plaintiff's rights to equal protection of the law under the United States Constitution Fourteenth Amendment and both equal protection and due process under California Constitution Article I, Section 7; and/or

(n) Violate Plaintiff's rights under the United States Constitution First and Fourteenth Amendments, and California law, to medical care that is adequate to make her whole from the great bodily injury Plaintiff suffered at the hands of Defendant City's Police Department.

753.    The acts or conduct of Defendant Steven Maviglio that violated the Bane Act include but are not limited to:

(a) Conspiring with Defendant Barbara Andres for Andres to trespass on Plaintiff's driveway ans hand-signal Defendant City Police Officer Jared Robinet to come and seize Plaintiff while Plaintiff was walking on Plaintiff's  driveway and was alone at the time;

(b) Conspiring with Defendant Barbara Andres for Barbara Andres to threaten to call Defendant City's Police Department on Plaintiff;

(c) Threatening to file for "another restraining order" against Plaintiff;

(d) Falsely stating to Defendant City's Police Department that Plaintiff was committing or had committed a "battery";

(e) Falsely stating to Defendant City's Police Department that Plaintiff was involved in an "altercation";

(f) Falsely stating to Defendant City's Police Department that Plaintiff was committing acts requiring the intervention of Defendant City's Police Department;

(g) As part of a plan or scheme with Defendant City's Police Department and/or Defendant City Police Officer Jared Robinet, to have Defendant Andres hand-signal a police officer of Defendant City's Police Department  to come and seize Plaintiff when Plaintiff was alone and was walking on Plaintiff's driveway;

(h) As part of a plot, plan, or scheme with Defendant City's Police Department and/or Defendant City Police Officer Jared Robinet, to have Defendant Barbara Andres trespass on Plaintiff's driveway to hand-signal a police officer of Defendant City's Police Department  to come and seize Plaintiff when Plaintiff was alone and was walking on Plaintiff's driveway;

(i) Making or attempting to make knowingly or recklessly false statements of and concerning Plaintiff to Defendant's City Police Department, Defendant City

Police Officer Robinet, Defendant City Police Officer Stanionis, Defendant City Police Officer Reason, and/or one or more of the John Doe City Defendants  with the intent to have Defendant City's Police Department and its' Defendant City Police Officers Robinet, Stanionis, and/or Reason subject Plaintiff to threats, intimidation, and/or coercion, including but not limited to the following acts alleged in this Complaint:

(i)  Seizure of Plaintiff's person;

(ii)    Assault and/or battery of Plaintiff's person;

(iii)    False arrest;

(iv)    False imprisonment;

(v)     Body search;

(vi)    Handcuffing;

(vii)   Custodial interrogation while handcuffed;

(viii)  Custodial interrogation to obtain information or statements from Plaintiff for use by or that were in the personal interest of Defendant Barbara Andres and/or Defendant Steven Maviglio;

(ix)    The filing of one or more criminal charge against Plaintiff, including but not limited to California Penal Code Section 148, subdivision (a)(1), "resisting arrest" or "interfering with a police officer";

(x) The filing against Plaintiff of  criminal charges other than California Penal Code Section 148, subdivision (a)(1), including but not limited to Penal Code Section 242 battery;

(xi)    Forcing Plaintiff to attend court proceedings on criminal charges;

(xii)    Public humiliation through a daytime open seizure, handcuffing, and custodial interrogation of Plaintiff in full view of Defendant Andres, Defendant Steven Maviglio, one or more of the John Doe Conspirator Defendants, and/or residents of the 1800-1900 blocks of 45th Street.

754.    Defendant Steven Maviglio acted with intent to harm Plaintiff in the exercise of rights secured by federal or California law, by committing or conspiring to have other Defendants commit the acts of threats, intimidation or coercion alleged in this Complaint.

755.    Defendant Steven Maviglio intentionally committed the acts alleged in this Count (including the acts alleged through incorporation by reference or re-allegation) as part of an agreement or meeting of the minds between Defendant Steven Maviglio and Defendant Barbara Andres to take one or more of the acts alleged in this Count, with a common objective to cause Plaintiff to suffer one or more violations of Plaintiff's rights secured by federal and California law, acts that were committed by Defendants City, Robinet, Stanionis and/or Reason.

756.    Defendant Steven Maviglio became a member of the conspiracy with Defendant Barbara Andres to violate or cause Defendants City, Robinet, Stanionis and/or Reason to violate Plaintiff's rights, with Defendant Steve

Maviglio knowing of at least one object of the conspiracy and intending to help accomplish such object.

757.    Defendant Steven Maviglio willfully participated in a plot, plan or scheme with Defendant Barbara Andres to commit one or more overt acts to violate Plaintiff's rights secured by federal and California law.

758.    Plaintiff was harmed from the conduct of Defendant Steven Maviglio in committing the acts or conspiring to have committed the acts of threats, intimidation, and/or coercion to interfere with Plaintiff's rights secured from threat, intimidation, or coercion by the Bane Act.

759.    Defendant Steven Maviglio's conduct was a substantial factor in causing the harm suffered by Plaintiff.

760.    One or more of the John Doe Conspirator Defendants acted with intent to harm Plaintiff in the exercise of rights secured by federal or California law, by:

(a) committing acts of threats, intimidation, or coercion;

(b) aiding, abetting, or conspiring to have other Defendants commit the acts of threats, intimidation or coercion alleged in this Complaint.

761.    One or more of the John Doe Conspirator Defendants through threats, intimidation, and/or coercion alleged in this Complaint and incorporated in this Count by reference and re-allegation, and/or by acts of aiding, abetting, and/or conspiring with Defendant Andres, Defendant Maviglio, Defendant City's Police Department and Defendants City Police Officers Robinet, Stanionis, and Reason;

268

and the John Doe City Defendants, in these Defendants' commission acts of threats, intimidation, and/or coercion alleged in this Complaint, has violated or attempted to violate Plaintiff's rights secured by:

(a) The United States Constitution First, Fourth, and Fourteenth Amendments;

(b) California Constitution Article I, Sections 2, 3, 7, and 13;

(c) California Civil Code Sections 43 (freedom from bodily injury),44-45-46 (freedom from defamation), 47(b)(5)(no privilege for false reports to law enforcement agencies); and California Penal Code sections 236 (false imprisonment), 240 (assault), 242 (battery), 602 (trespass); and the California tort of malicious prosecution.

762.     One or more of the John Doe Conspirator Defendants acted with intent to:

(a) Violate Plaintiff's right to be free from unreasonable searches and seizures;

(b) Violate Plaintiff's right to be free from searches and seizures made without a warrant inside the curtilage of her residence;

(c) Violate Plaintiff's right to be free from trespasses of her residence;

(d) Violate Plaintiff's right to be free from false arrests;

(e) Violate Plaintiff's right to be free from excessive force;

(f)  Violate Plaintiff's right to be free from  bodily injury;

(g) Violate Plaintiff's right to be from assault;

(h) Violate Plaintiff's right to be free from battery;

(i)  Violate Plaintiff's right to be free from false imprisonment;

(j)  Violate Plaintiff's right to be free from malicious prosecution.

(k) Violate Plaintiff's right to be free from  retaliation of the exercise of freedom of speaking and writing on all subjects;

(l) Violate Plaintiff's right to be free from retaliation for exercising her California Constitution Article I, Section 3 rights to file California Public Records Act (CPRA) requests and to petition the City through sending of written Police Reports to Defendant City addressed to Defendant City Police Chief Daniel Hahn;

(m)     Violate Plaintiff's rights to equal protection of the law under the United States Constitution Fourteenth Amendment and both equal protection and due process under California Constitution Article I, Section 7; and/or

(n) Violate Plaintiff's rights under the United States Constitution First and Fourteenth Amendments, and California law, to medical care that is adequate to make her whole from the great bodily injury Plaintiff suffered at the hands of Defendant City's Police Department.

763.     The acts or conduct of one or more of the John Doe Conspirator Defendants that violated the Bane Act include but are not limited to:

(a) Conspiring with Defendant Barbara Andres and/or Defendant Steven Maviglio for Barbara Andres to trespass on Plaintiff's driveway to hand-signal Defendant City Police Officer Jared Robinet to come and seize Plaintiff while Plaintiff was walking on her driveway and was alone at the time;

270

(b) Conspiring with Defendant Barbara Andres and/or Defendant Steven Maviglio for Barbara Andres to threaten to call Defendant City's Police Department on Plaintiff;

(c) Conspiring with Defendant Maviglio for Maviglio to threaten to file for "another restraining order" against Plaintiff;  Another fraudulent R/O ?

(d)  Falsely stating to Defendant City's Police Department that Plaintiff was committing or had committed a "battery";

(e) Falsely stating to Defendant City's Police Department that Plaintiff was involved in an "altercation";

(f) Falsely stating to Defendant City's Police Department that Plaintiff was committing acts requiring the intervention of Defendant City's Police Department;

(g)  As part of a plot, plan or scheme with Defendant City's Police Department and/or Defendant City Police Officer Jared Robinet, to have Defendant Barbara Andres hand-signal a police officer of Defendant City's Police Department  to come and seize Plaintiff when Plaintiff was alone and was walking on Plaintiff's driveway;

(h) As part of a plot, plan or scheme with Defendant City's Police Department and/or Defendant City Police Officer Jared Robinet, to have Defendant Barbara Andres trespass on Plaintiff's driveway to hand-signal a police officer of Defendant City's Police Department  to come and seize Plaintiff when Plaintiff was alone and was walking on Plaintiff's driveway;

271

(i) Making or attempting to make knowingly or recklessly false statements of and concerning Plaintiff to Defendant's City Police Department, Defendant City Police Officer Robinet, Defendant City Police Officer Stanionis, Defendant City Police Officer Reason, and/or one or more of the John Doe City Defendants with the intent to have Defendant City's Police Department and its' Defendant City Police Officers Robinet, Stanionis, and/or Reason subject Plaintiff to threats, intimidation, and/or coercion, including but not limited to the following acts alleged in this Complaint:

(i)    Seizure of Plaintiff's person;

(ii)    Assault and/or battery of Plaintiff's person;

(iii)    False arrest;

(iv)    False imprisonment;

(v)    Body search;

(vi)    Handcuffing;

(vii)    Custodial interrogation while handcuffed;

(viii)    Custodial interrogation to obtain information or statements from Plaintiff for use by or that were in the personal interest of Defendant Barbara Andres, Defendant Steven Maviglio, and/or one or more of the John Doe Conspirator Defendants;

(ix)    The filing of one or more criminal charge against Plaintiff, including but not limited to California Penal Code Section 148, subdivision (a)(1), "resisting arrest" or "interfering with a police officer";

(x)   The filing against Plaintiff of  criminal charges other than California Penal Code Section 148, subdivision (a)(1), including but not limited to Penal Code Section 242 battery;

(xi)   Forcing Plaintiff to attend court proceedings on criminal charges;

(xii)   Public humiliation through a daytime open seizure, handcuffing, and custodial interrogation of Plaintiff in full view of Defendant Barbara Andres, Defendant Steve Maviglio, one or  more of the John Doe Conspirator Defendants, and/or residents of the 1800-1900 blocks of 45th Street.

764.   One or more of the John Doe Conspirator Defendants acted with intent to harm Plaintiff in the exercise of rights secured by federal or California law, by committing or conspiring to have other Defendants commit the acts of threats, intimidation or coercion alleged in this Complaint.

765.   One or more of the John Doe Conspirator Defendants intentionally committed the acts alleged in this Count (including the acts alleged through incorporation by reference or re-allegation) as part of an agreement or meeting of the minds between one or more of the John Doe Conspirator Defendants, Defendant Andres and/or Defendant Maviglio to take one or more of the acts alleged in this Count, with a common objective to cause Plaintiff to suffer one or

more violations of Plaintiff's rights secured by federal and California law, acts that were committed by Defendants City, Robinet, Stanionis and/or Reason.

766.    One or more of the John Doe Conspirator Defendants became a member or members of the conspiracy with Defendant Steven Maviglio and/or Defendant Barbara Andres to violate or cause Defendants City, Robinet, Stanionis and/or Reason to violate Plaintiff's rights, with one or more of the John Doe Conspirator Defendants knowing of at least one object of the conspiracy and intending to help accomplish such object.

767.    One or more of the John Doe Conspirator Defendants willfully participated in a plan or scheme with Defendant Maviglio and/or Defendant Andres to commit one or more overt acts to violate Plaintiff's rights secured by federal and California law.

768.    Plaintiff was harmed from the conduct of one or more of the John Doe Conspirator Defendants in committing the acts or conspiring to have committed the acts of threats, intimidation, and/or coercion to interfere with Plaintiff's rights secured from threat, intimidation, or coercion by the Bane Act.

769.     The conduct of one or more of the John Doe Conspirator Defendants was a substantial factor in causing the harm suffered by Plaintiff.

**TENTH CALIFORNIA COUNT -- TRESPASS versus ANDRES and CONSPIRACY TO COMMIT TRESPASS versus MAVIGLIO and/or the JOHN DOE CONSPIRATOR DEFENDANTS**

770.    Plaintiff hereby re-alleges and incorporates by reference the allegations contained in Paragraphs 1—769 as though fully set forth herein.

771.    Plaintiff resides at 1859 45th Street and controlled access to this property, including all area within the curtilage of the residence..

772.    Defendant Barbara Andres intentionally entered the driveway of Plaintiff's residence.

773.    When Defendant Barbara Andres entered Plaintiff's driveway, Defendant Barbara Andres intended to be in that location.

774.    Defendant Barbara Andres recklessly entered the driveway of Plaintiff's residence.

775.    Defendant Barbara Andres negligently entered the driveway of Plaintiff's residence.

776.    Plaintiff did not give permission for Defendant Barbara Andres's entry to Plaintiff's residence, the driveway of the residence, or any location within he curtilage of Plaintiff's residence. In factm Plaintiff told Defendant Andres to her face to leave and that Plaintiff would not speak with Defendant Andres.

777.    Plaintiff was actually harmed by Defendant  Barbara Andres's trespass.

778.    The conduct of Defendant Barbara Andres was a substantial factor in causing harm to Plaintiff in addition to the harm of the trespass itself, because but

for the Defendant Barbara Andres trespass, Defendants Robinet and Stanionis would have been given the hand signaled path to violate Plaintiff's federal and California law rights and cause Plaintiff to suffer the great bodily injury plead throughout this Complaint and incorporated and re-alleged by reference in this Count. The following sequence of events would not have occurred but for the Defendant Barbara Andres trespass:

(a) Defendant City Police Officer Jared Robinet would not have been signaled to come and seize Plaintiff inside the curtilage of Plaintiff's residence, violate her federal and California law rights, and cause Plaintiff great bodily injury and other harm;

(b) Defendant Maryna Stanionis would not have seen Defendant Jared Robinet applying force to Plaintiff, and would not have crossed the curtilage of Plaintiff's residence to assist Defendant Robinet in his violations of Plaintiff's federal and California law rights and the resulting great bodily injury and other harm to Plaintiff;

(c) Defendant Maryna Staninis and Defendant Jared Robinet would not have handcuffed Plaintiff and dragged Plaintiff in public view to the Stanionis City Police car;

(d) Defendant Maryna Stanionios would not have subjected Plaintiff to handcuffed custodial interrogation in the back of a locked City Police car, denied water, and denied *Miranda v. Arizona* warnings;

276

(e) Defendant Maryna Stanionis would not have been able to subject Plaintiff to custodial interrogation using content fed to Stanionis by Defendant Andres and/or Defendant Maviglio;

(f) Defendant Jared Robinet would not have been able to give Plaintiff the Notice to Appear for a California Penal Code Section 148, subdivision (a)(1) "resisting arrest" charge; and,

(g) Defendant City Fire Paramedic One would not have ordered City Fire Paramedic Two to stop giving Plaintiff medical care.

779.    Defendant Barbara Andres when she committed her trespass of Plaintiff's driveway intended for one or more of the acts by Defendant City, Defendant Robinet, and/or Defendant Stanionis that violated Plaintiff's rights secured by federal and California law, and that caused Plaintiff to suffer great bodily injury.

780.    In committing her act or acts of trespass of Plaintiff's driveway, Defendant Barbara Andres was in a conspiracy with Defendant Steven Maviglio, and Defendant Steven Maviglio was in conspiracy with Defendant Barbara Andres, in that the two of them had coordinated and concocted a scheme to subject Plaintiff to a false arrest where the Barbara Andres trespass would be used to hand signal Defendant Robinet.

781.    In committing her act or acts of trespass of Plaintiff's driveway, Defendant Barbara Andres was in conspiracy with Defendant City Police Officer Robinet, and/or Defendant Stanionis, in that the trespass committed by Defendant Barbara Andres was part of Defendant City's response to the Defendant Barbara Andres

communications to Defendant City's Police Department falsely accusing Plaintiff of committing a "battery", "altercation", or other acts requiring City Police intervention.

782.     Defendant Barbara Andres intentionally committed the acts alleged in this Count (including the acts alleged through incorporation by reference or re-allegation) as part of an agreement or meeting of the minds between Defendant Andres and Defendant Steven Maviglio to take one or more of the acts alleged in this Count, with a common objective to cause Plaintiff to suffer one or more violations of Plaintiff's rights secured by federal and California law by Defendants City, Robinet, Stanionis and/or Reason.

783.     Defendant Barbara Andres became a member of the conspiracy with Defendant Steven Maviglio to violate or cause Defendants City, Robinet, Stanionis and/or Reason to violate Plaintiff's rights, with Defendant Barbara Andres knowing of at least one object of the conspiracy and intending to help accomplish such object.

784.     One of the overt acts of the Maviglio conspiracy to trespass occurred at about 8:05 a.m. on May 9, 2020, when Defendant Maviglio hand-signaled Defendant Andres to come across the street to 1859 45th Street and begin harassing Plaintiff. Defendant Andres did so immediately and within seconds was trespassing on Plaintiff's driveway; within five minutes Defendant Andres was hand signaling Defendant Robinet to come seize Plaintiff inside her residence curti lage.

785.     Defendant Barbara Andres willfully participated in a plot, plan or scheme with Defendant Steve Maviglio to commit one or more overt acts to violate Plaintiff's rights secured by federal and California law.

786.     In committing her act or acts of trespass, Defendant Barbara Andres intended to place Plaintiff in a false light by using the trespass to signal Defendant City's Police Department officer Robinet to come and seize Plaintiff on her driveway and criminally charge Plaintiff under one or more California Penal Code provisions, enabling Defendant Barbara Andres to tell one or more persons on or after May 9, 2020 that anything Plaintiff said about Defendant Steven  Maviglio should not be believed because Plaintiff "has problems with the police."

787.     Therefore, Defendant Barbara Andres is liable to Plaintiff under California for both Defendant's act of trespass as well as all consequential damages to Plaintiff flowing or intended by Defendant Barbara Andres to flow from the act of trespass.

788.     As a conspirator in Defendant Barbara Andres's trespass of Plaintiff's driveway, Defendant Steven  Maviglio is also liable to Plaintiff under California law for both Defendant's act of trespass as well as all consequential damages to Plaintiff flowing or intended by Defendant Barbara Andres to flow from the act of trespass.

**ELEVENTH CALIFORNIA COUNT – MALICIOUS PROSECUTION versus ANDRES, MAVIGLIO, and the JOHN DOE CONSPIRATOR DEFENDANTS**

789.     Plaintiff hereby re-alleges and incorporates by reference the allegations contained in Paragraphs 1—788 as though fully set forth herein.

790.     Defendant Barbara Andres and Defendant Steven Maviglio were each actively involved in causing Plaintiff to be arrested and prosecuted.

791.     Defendant Barbara Andres and Defendant Steven Maviglio each singly or jointly sought out the Defendant City's Police Department and its' officers (including but not limited to Robinet, Stanionis, and/or Reason) and falsely reported purported facts to Defendant City's Police Department indicating or purporting to indicate that Plaintiff had committed a crime.

792.     Because of the acts of Defendant Barbara Andres and Defendant Steven Maviglio, Plaintiff was subjected to the no-warrant  false arrest on Plaintiff's front porch, front door, and living room; other violations of Plaintiff's federal and California law rights] and great bodily injury plead in this Complaint and incorporated herein by reference and re-allegation, as well as the California Penal Code Section 148, subdivision (a)(1) criminal complaint styled *People v. Parvin Olfati*, Sacramento County Superior Court Case Number 20 MI 010143.

793.     On October 15, 2020, the criminal proceeding 20 MI 010143 ended in Plaintiff's favor when the Sacramento County District Attorney on its' own motion dismissed its' own criminal complaint for Insufficient Evidence.

794.     No reasonable person in the circumstances of Defendant Barbara Andres or the circumstances of Defendant Steven Maviglio would have believed that there were grounds for causing Plaintiff to be arrested and prosecuted.

795.     Defendant Barbara Andres and Defendant Steven Maviglio acted for a purpose other than to bring Plaintiff to justice.

796.     Defendant Barbara Andres intentionally committed the acts alleged in this Count (including the acts alleged through incorporation by reference or re-allegation) as part of an agreement or meeting of the minds between Defendant Barbara Andres and Defendant Steven  Maviglio to take one or more of the acts alleged in this Count, with a common objective to cause Plaintiff to be maliciously prosecuted by Defendants City and/or Robinet.

797.     Defendant Barbara Andres became a member of the conspiracy with Defendant Stevem  Maviglio to cause Plaintiff to be maliciously prosecuted, with Defendant Barbara Andres knowing of at least one object of the conspiracy and intending to help accomplish such object, which was to have Plaintiff maliciously prosecuted by Defendants City and/or Robinet.

798.     Defendant Barbara Andres willfully participated in a plot, plan or scheme with Defendant Steven Maviglio to commit one or more overt acts to cause Plaintiff to be maliciously prosecuted by Defendants City and/or Robinet.

799.     Defendant Steven Maviglio intentionally committed the acts alleged in this Count (including the acts alleged through incorporation by reference or re-allegation) as part of an agreement or meeting of the minds between Defendant

281

Steven Maviglio and Defendant Barbara Andres to cause Plaintiff to be maliciously prosecuted by Defendants City and/or Robinet.

800.    Defendant Steven Maviglio became a member of the conspiracy with Defendant Barbara Andres to violate or cause Defendants City, Robinet, Stanionis and/or Reason to cause Plaintiff to be maliciously prosecuted, with Defendant Steven Maviglio knowing of at least one object of the conspiracy and intending to help accomplish such object or objects.

801.    The hatred, spite, or ill will by Defendant Barbara Andres toward Plaintiff in the making of the statements complained of accusing Plaintiff of a crime or of acts requiring City Police intervention, includes but is not limited to the following act by Defendant Barbara Andres that Plaintiff is aware of from her own eyes and ears as well as from information and belief. Defendant Andres during the late afternoon or pre-sunset early evening of September 15, 2020, and during the street picketing of the 1901 45th Street house of Defendant Steve Maviglio by persons representing the Aids Healthcare Foundation and the Yes on Proposition 21 campaign, told one or more of the picketers  that anything Plaintiff says about Defendant Maviglio should not be believed. Defendant Andres made this statement after Defendant Andres disrupted a conversation that one of the picketers begun with the Plaintiff after the picketer approached the Plaintiff. The picketer told Plaintiff that the picketer (a woman) had "heard that  Maviglio had committed perjury" (or words to that effect). Defendant Barbara Andres immediately began to yell incoherently, and Defendant Andres's husband Cecil Taylor immediately placed himself

between the picketer and Plaintiff, whereupon Plaintiff said of Cecil Taylor: " I do

not talk to felons", and to which Cecil Taylor responded, "you're a felon too."

This intervention by Defendant Andres and the husband of Defendant Barbara

Andres (the latter at the direction of Defendant Barbara Andres) disrupted

Plaintiff's ability to discuss Defendant Maviglio's restraining order perjury with

the picketers (including but not limited to a picketer who carried a sign saying

"Maviglio puts the 'con' in con-sultant'). Plaintiff is informed and alleges that

Defendant Andres later at this event told one or more of the picketers not to use

any information provided by Plaintiff because: "[Plaintiff] has problems with the

police", an obvious Defendant Andres reference to the May 9, 2020 false arrest set

up by Defendant Andres's through trespassing Plaintiff's driveway to hand-signal

a hiding City Police Officer Jared Robinet.

802.     Plaintiff was harmed by the conduct of Defendant Barbara Andres.

803.     Plaintiff was harmed by the conduct of Defendant Steven  Maviglio.

804.     The conduct of Defendant Andres was a substantial factor in causing harm

to Plaintiff.

805.      The conduct of Defendant Steven Maviglio was a substantial factor in

causing harm to Plaintiff.

806.     Defendant Barbara Andres is therefore liable to Plaintiff under California

law for malicious prosecution damages.

807.     Defendant Steven Maviglio is therefore liable to Plaintiff under California

law for malicious prosecution damages.

808.     As conspirators to have Plaintiff maliciously prosecuted, Defendant Barbara

Andres and Defendant Steven Maviglio are each liable for any and all acts of

malicious prosecution committed by the other.

**TWELFTH CALIFORNIA COUNT – DEFAMATION versus ANDRES, MAVIGLIO, and/or the JOHN DOE CONSPIRATOR DEFENDANTS**

809.     Plaintiff hereby re-alleges and incorporates by reference the allegations

contained in Paragraphs 1—808 as though fully set forth herein.

810.     California Civil Code, Section 43, states as follows: "…every person has,

subject to qualifications and restrictions provided by law, the right of protection

from bodily restraint or harm, from personal insult, from defamation, and from

injury to his personal relations."

811.     California Civil Code, Section 44 states: "Defamation is effected by either

of the following:  (a) Libel. (b) Slander."

812.     California Civil Code Section 45 defines libel as follows: "a false and

unprivileged publication by writing, printing, picture, effigy or other fixed

representation to the eye, which exposes any person to hatred, contempt, ridicule,

or obloquy, or which causes [her] to be shunned or avoided . . ."

813.     California Civil Code Section 45a states in pertinent part as follows: "A

libel which is defamatory of the plaintiff without the necessity of explanatory

matter, such as an inducement, innuendo or other extrinsic fact, is said to be a libel on its' face" that does not require proof of special damages.

814.      California Civil Code Section 46 defines slander as follows: "Slander is a false and unprivileged publication, orally uttered, and also communications by radio or any mechanical or other means which: 1. Charges any person  with crime…"

815.      California Civil Code, Section 47, subdivision (b)(5) states as follows:

> "This subdivision does not make privileged any communication between a person and a law enforcement agency in which the person makes a false report that another person has committed, or is in the act of committing, a criminal act or is engaged in an activity requiring law enforcement intervention, knowing that the report is false, or with reckless disregard of the truth or falsity of the report."

816.      Defendant Barbara Andres made one or more statements (by spoken or written words) to Defendant City's Police Department or its' officers, statements that were of and concerning Plaintiff and either accused Plaintiff of committing a crime; committing or being involved in a battery; committing or being involved in an altercation; or of committing acts requiring the intervention by Defendant City's Police Department.

817.      Plaintiff upon information and belief alleges that the statements made by Defendant Barbara Andres to Defendant City's Police Department or its' officers were intended to be understood as either conveying a fact, or were implying that a false statement of fact was true.

818.     Defendant City's Police Department and/or its' officers reasonably understood these statements by Defendant Andres to mean that Plaintiff had committed or was committing a crime, battery, or altercation; or accused Plaintiff of committing acts requiring the intervention by Defendant City's Police Department.

819.     Defendant Barbara Andres failed to use reasonable care in making the statements complained of herein.

820.     Defendant Barbara Andres knew the statements complained of herein were false when Defendant Barbara Andres made them.

821.     When Defendant Barbara Andres made the statements complained of herein, Defendant Barbara Andres knew the statements she had made were false, or made them with reckless disregard of their truth or falsity.

822.     The statements by Defendant Barbara Andres complained of herein were a substantial factor in causing harm to Plaintiff.

823.     In making the statements complained of, Defendant Barbara Andres acted with hatred, spite, or ill will toward Plaintiff, showing Defendant Barbara Andres's willingness to vex, annoy, or injure Plaintiff.

824.     The hatred, spite, or ill will by Defendant Barbara Andres toward Plaintiff in the making of the statements complained of accusing Plaintiff of a crime or of acts requiring City Police intervention, includes but is not limited to the following act by Barbara Andres that Plaintiff is aware of from her own eyes and ears as well as from information and belief. Defendant Andres during the late afternoon or pre-

286

sunset early evening of September 15, 2020, during the street picketing of the

1901 45th Street house of Defendant Steven Maviglio by persons representing the

Aids Healthcare Foundation and the Yes on Proposition 21 campaign, told one or

more of the picketers  that anything Plaintiff says about Defendant Maviglio

should not be believed. Defendant Andres made this statement after Defendant

Andres disrupted a conversation that one of the picketers begun after the picketer

approached Plaintiff. The picketer told Plaintiff that the picketer (a woman) had

"heard that  Mr. Maviglio had committed perjury" (or words to that effect).

Defendant Barbara Andres immediately began to yell incoherently, and Defendant

Andres's husband Cecil Taylor immediately placed himself between the picketer

and Plaintiff, whereupon Plaintiff said of Cecil Taylor: " I  do not talk to felons",

and to which Cecil Taylor responded, "you're a felon too." This intervention by

Defendant Barbara Andres and the husband of Defendant Barbara Andres (the

latter at the direction of Defendant Barbara Andres) disrupted Plaintiff's ability to

discuss Defendant Maviglio's restraining order perjury with the picketers

(including but not limited to a picketer who carried a sign saying "Maviglio puts

the 'con' in con-sultant'). Plaintiff is informed and alleges that Defendant Andres

later at this event told one or more of the picketers not to use any information

provided by Plaintiff because: "[Plaintiff] has problems with the police", an

obvious Defendant Andres reference to the May 9, 2020 false arrest set up by

Defendant Andres's through trespassing Plaintiff's driveway to hand-signal a

hiding City Police Officer Jared Robinet.

287

825.    In making any or all the statements complained of in this Count, Defendant Barbara Andres had no reasonable ground for believing the truth of the statements.

826.    Defendant Barbara Andres intentionally committed the acts alleged in this Count (including the acts alleged through incorporation by reference or re-allegation) as part of an agreement or meeting of the minds between Defendant Barbara Andres and Defendant Steven Maviglio to take one or more of the acts alleged in this Count, with a common objective to cause Plaintiff to be subjected to no-warrant seizure, unlawful search, excessive force, and other violations of Plaintiff's federal and California law rights by Defendants City, Robinet, Stanionis and/or Reason.

827.    Defendant Barbara Andres became a member of the conspiracy with Defendant Steven Maviglio to cause Plaintiff to be to be subjected to no-warrant seizure, unlawful search, excessive force, and other violations of Plaintiff's federal and California law rights by Defendants City, Robinet, Stanionis and/or Reason, with Defendant Andres knowing of at least one object of the conspiracy and intending to help accomplish such object, which was to have Plaintiff to be subjected to no-warrant seizure, unlawful search, excessive force, and other violations of Plaintiff's federal and California law rights by Defendants City, Robinet, Stanionis and/or Reason.

828.    Defendant Barbara Andres willfully participated in a plan or scheme with Defendant Maviglio to commit one or more overt acts to cause Plaintiff to be subjected to no-warrant seizure, unlawful search, excessive force, and other

288

violations of Plaintiff's federal and California law rights by Defendants City, Robinet, Stanionis and/or Reason.

829.    Defendant Steven Maviglio made one or more statements (by spoken or written words) to Defendant City's Police Department or its' officers, statements that were of and concerning Plaintiff and either accused Plaintiff of committing a crime, committing or being involved in a battery, committing or being involved in an altercation, or of committing acts requiring the intervention by Defendant City's Police Department.

830.    Plaintiff upon information and belief alleges that the statements made by Defendant Steven Maviglio to Defendant City's Police Department or its' officers were intended to be understood as either conveying a fact, or were implying that a false statement of fact was true.

831.    Defendant City's Police Department and/or its' officers reasonably understood these statements by Defendant Steven  Maviglio to mean that Plaintiff had committed or was committing a crime, battery, altercation, or accused Plaintiff of committing acts requiring the intervention by Defendant City's Police Department.

832.    Defendant Steven Maviglio failed to use reasonable care in making the statements complained of herein.

833.     Defendant Steven Maviglio knew the statements complained of herein were false when Defendant Steven Maviglio made them.

834.     When Defendant Steven  Maviglio made the statements complained of herein, Defendant Steven Maviglio knew the statements he had made were false, or made them with reckless disregard of their truth or falsity.

835.     The statements complained of herein made by Defendant Steven Maviglio, were a substantial factor in causing harm to Plaintiff.

836.     In making the statements complained of, Defendant Steven Maviglio acted with hatred, spite, or ill will toward Plaintiff, showing Defendant Steven Maviglio's willingness to vex, annoy, or injure Plaintiff.

837.     In making the statements complained of, Defendant Steven  Maviglio had no reasonable ground for believing the truth of the statements.

838.     Defendant Steven Maviglio intentionally committed the acts alleged in this Count (including the acts alleged through incorporation by reference or re-allegation) as part of an agreement or meeting of the minds between Defendant Steven Maviglio and Defendant Barbara Andres to take one or more of the acts alleged in this Count, with a common objective to cause Plaintiff to be subjected to no-warrant seizure, unlawful search, excessive force, and other violations of Plaintiff's federal and California law rights by Defendants City, Robinet, Stanionis and/or Reason..

839.     Defendant Steven Maviglio became a member of the conspiracy with Defendant Barbara Andres to cause Plaintiff to be to be subjected to no-warrant

seizure, unlawful search, excessive force, and other violations of Plaintiff's federal and California law rights by Defendants City, Robinet, Stanionis and/or Reason, with Defendant Steven Maviglio knowing of at least one object of the conspiracy and intending to help accomplish such object, which was to have Plaintiff to be subjected to no-warrant seizure, unlawful search, excessive force, and other violations of Plaintiff's federal and California law rights by Defendants City, Robinet, Stanionis and/or Reason..

840.    Defendant Steven  Maviglio willfully participated in a plot, plan or scheme with Defendant Barbara Andres to commit one or more overt acts to cause Plaintiff to be to be subjected to no-warrant seizure, unlawful search, excessive force, and other violations of Plaintiff's federal and California law rights by Defendants City, Robinet, Stanionis and/or Reason.

841.    Defendant Steven Maviglio intentionally committed the acts alleged in this Count (including the acts alleged through incorporation by reference or re-allegation) as part of an agreement or meeting of the minds between Defendant Steven Maviglio and Defendant Andres to take one or more of the acts alleged in this Count, with a common objective to cause Plaintiff to be subjected to no-warrant seizure, unlawful search, excessive force, and other violations of Plaintiff's federal and California law rights by Defendants City, Robinet, Stanionis and/or Reason..

842.    Defendant Steven Maviglio became a member of the conspiracy with Defendant Andres to cause Plaintiff to be to be subjected to no-warrant seizure,

unlawful search, excessive force, and other violations of Plaintiff's federal and California law rights by Defendants City, Robinet, Stanionis and/or Reason, with Defendant Steven Maviglio knowing of at least one object of the conspiracy and intending to help accomplish such object, which was to have Plaintiff to be subjected to no-warrant seizure, unlawful search, excessive force, and other violations of Plaintiff's federal and California law rights by Defendants City, Robinet, Stanionis and/or Reason..

843.     Defendant Steven Maviglio willfully participated in a plot, plan or scheme with Defendant Andres to commit one or more overt acts to cause Plaintiff to be to be subjected to no-warrant seizure, unlawful search, excessive force, and other violations of Plaintiff's federal and California law rights by Defendants City, Robinet, Stanionis and/or Reason.

844.     Upon information and belief, one or more of the John Doe Conspirator Defendants, either individually or as part of a conspiracy with Defendant Barbara Andres, Defendant Steven Maviglio, and/or Defendant City's Police Department, made one or more statements (by spoken or written words) to Defendant City's Police Department and/or its' officers, statements that were of and concerning Plaintiff and either accused Plaintiff of committing a crime, being involved in a battery, being involved in an altercation, or accused Plaintiff of committing acts requiring the intervention by Defendant City's Police Department.

845.     Plaintiff upon information and belief alleges that the statements made by one or  more of the John Doe Conspirator Defendants to Defendant City's Police

292

Department or its' officers were intended to be understood as either conveying a fact, or were implying that a false statement of fact was true.

846.    Defendant City's Police Department or its' officers reasonably understood these statements by one or more the John Doe Conspirator Defendants to mean that had committed or was committing a crime, battery, altercation, or accused Plaintiff of committing acts requiring the intervention by the City Police.

847.    One or more of the John Doe Conspirator Defendants failed to use reasonable care in making the statements complained of herein.

848.    One or more of the John Doe Conspirator Defendants knew the statements complained of herein were false when one or more of the John Doe Conspirator Defendants made them.

849.    When one or more of the John Doe Conspirator Defendants made the statements complained of herein, one or more of the John Doe Conspirator Defendants knew the statements she had made were false, or made them with reckless disregard of their truth or falsity.

850.    The statements by one or more of the John Doe Conspirator Defendants complained of herein were a substantial factor in causing harm to Plaintiff.

851.    In making the statements complained of, one or more of the John Doe Conspirator Defendants acted with hatred, spite, or ill will toward Plaintiff, showing  the willingness to vex, annoy, or injure Plaintiff on the part of one or more of the John Doe Conspirator Defendants

852.     In making any or all the statements complained of in this Count, one or more of the John Doe Conspirator Defendants had no reasonable ground for believing the truth of the statements.

853.     One or more of the John Doe Conspirator Defendants intentionally committed the acts alleged in this Count (including the acts alleged through incorporation by reference or re-allegation) as part of an agreement or meeting of the minds between one or the John Doe Conspirator Defendants, Defendant Barbara Andres, and/or Defendant Steven  Maviglio, and/or between two or more of the John Doe Conspirator Defendants,  to take one or more of the acts alleged in this Count, with a common objective to cause Plaintiff to be subjected to no-warrant seizure, unlawful search, excessive force, handcuffed custodial interrogation, other violations of Plaintiff's federal and California law rights, and/or prosecution on one or more criminal  charges, by Defendants City, Robinet, Stanionis and/or Reason.

854.     One or more of the John Doe Conspirator Defendants became a member of the conspiracy with Defendant Steven Maviglio, Defendant Barbara Andres, and/or two or more of the John Doe Conspirator Defendants,  to cause Plaintiff to be to be subjected to no-warrant seizure, unlawful search, excessive force, handcuffed custodial interrogation, other violations of Plaintiff's federal and California law rights, and/or prosecution on one or more criminal charges, by Defendants City, Robinet, Stanionis and/or Reason, with one or more of the John Doe Conspirator Defendants knowing of at least one object of the conspiracy and

intending to help accomplish such object, which was to have Plaintiff to be subjected to no-warrant seizure, unlawful search, excessive force, handcuffed custodial interrogation,  other violations of Plaintiff's federal and California law rights, and/or prosecution on one or more criminal charges, by Defendants City, Robinet, Stanionis and/or Reason.

855.     One or more of the John Doe Conspirator Defendants willfully participated in a plot, plan or scheme with Defendant Steven Maviglio, Defendant Barbara Andres, or two or more of the John Doe Conspirator Defendants,  to commit one or more overt acts to cause Plaintiff to be subjected to no-warrant seizure, unlawful search, excessive force, handcuffed custodial interrogation, other violations of Plaintiff's federal and California law rights, and/or prosecution on one or more criminal charges, by Defendants City, Robinet, Stanionis and/or Reason.

856.     Defendant Steven  Maviglio is therefore liable to Plaintiff under California Civil Code Sections 43, 44, 45, 45a, 46, and 47(b)(5), and/or for conspiring with Defendant Andres and/or one or more of the John Doe Conspirator Defendants to violate Plaintiff's rights secured by these provisions. As a conspirator, Defendant Steven Maviglio is liable for both his acts and the acts of Andres and/or any of the John Doe Conspirator Defendants.

857.      Defendant Barbara Andres is therefore liable to Plaintiff under California Civil Code Sections 43, 44, 45, 45a, 46, and 47(b)(5), and/or for conspiring with

Defendant Steven Maviglio and/or one or more of the John Doe Conspirator Defendants, to violate Plaintiff's rights secured by these provisions. As a conspirator, Defendant Barbara Andres is liable for both her acts and the acts of Defendant Steven Maviglio and/or any of the John Doe Conspirator Defendants.

858.     Plaintiff will name as defendants one or more of the John Doe Conspirator Defendants should discovery or other information reveal their commission of any acts or conspiring to commit any acts alleged in this Count, or to otherwise  violate Plaintiff's rights plead in this Count. If so and with proof, one or more of the John Doe Conspirator Defendants are therefore liable to Plaintiff under California Civil Code Sections 43, 44, 45, 45a, 46, and 47(b)(5), directly and/or for conspiring with Defendant Barbara Andres or Defendant Steven Maviglio to violate Plaintiff's rights secured by these provisions. As conspirators, one or more of the John Doe Conspirator Defendants are liable for their own acts as well as the acts of the other conspirators.

**THIRTEENTH CALIFORNIA COUNT -- FALSE LIGHT IJNVASION OF PRIVACY versus DEFENDANTS ANDRES, MAVIGLIO, and the JOHN DOE CONSPIRATOR DEFENDANTS**

859.    Plaintiff hereby re-alleges and incorporates by reference the allegations contained in Paragraphs 1—858 as though fully set forth herein.

860.    California Civil Code, Section 43, states as follows: "…every person has, subject to qualifications and restrictions provided by law, the right of protection from bodily restraint or harm, from personal insult, from defamation, and from injury to his personal relations."

861.    Article I, Section 1 of the California Constitution states as follows: "All people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and privacy."

862.    California law protects Plaintiff's privacy from being invaded by publications that place Plaintiff in a false light.  *Gill v. Curtis Publishing Company*, 32 Cal.2d 273 (1952).

863.    California Civil Code, Section 47, subdivision (b)(5) states as follows:

"This subdivision does not make privileged any communication between a person and a law enforcement agency in which the person makes a false report that another person has committed, or is in the act of committing, a criminal act or is engaged in an activity requiring law enforcement intervention, knowing that the report is false, or with reckless disregard of the truth or falsity of the report."

297

864.     Defendant Barbara Andres made one or more statements (by spoken or written words) to Defendant City's Police Department or its' officers, statements that were of and concerning Plaintiff and accused Plaintiff of committing a crime, committing or being involved in a battery, committing or being involved in an altercation, or of committing acts requiring the intervention by Defendant City's Police Department.

865.     Plaintiff upon information and belief alleges that the statements made by Defendant Barbara Andres to Defendant City's Police Department or its' officers were intended to be understood as either conveying a fact, or were implying that a false statement of fact was true.

866.     Defendant City's Police Department and/or its' officers reasonably understood these statements by Defendant Barbara Andres to mean that Plaintiff had been accused of committing a crime, committing or being involved in a battery, committing or being involved in an altercation, or of committing acts requiring the intervention by Defendant City's Police Department.

867.     The false light created by the disclosure by Defendant Barbara Andres to Defendant City's Police Department and/or its' officers would be highly offensive to a reasonable person in Plaintiff's position.

868.     Defendant Barbara Andres knew the disclosure to Defendant City's Police Department and/or its' officers would create a false impression about Plaintiff.

869.     Defendant Barbara Andres acted with reckless disregard for the truth.

870.     Defendant Barbara Andres was negligent in determining the truth of the information or whether a false impression would be created by its' disclosure.

871.     Plaintiff was harmed by Defendant Barbara Andres's disclosure.

872.     Defendant Andres's disclosure was a substantial factor in causing Plaintiff's harm.

873.     The hatred, spite, or ill will by Defendant Barbara Andres toward Plaintiff in the making of the statements complained of accusing Plaintiff of a crime or of acts requiring City Police intervention, includes but is not limited to the following act by Defendant Barbara Andres that Plaintiff is aware of from her own eyes and ears as well as from information and belief. Defendant Andres during the later afternoon or pre-sunset early evening of September 15, 2020, during street picketing of the 1901 45th Street house of Defendant Steven Maviglio by persons representing the Aids Healthcare Foundation and the Yes on Proposition 21 campaign, told one or more of the picketers  that anything Plaintiff says about Defendant Maviglio should not be believed. Defendant Andres made this statement after Defendant Andres disrupted a conversation that one of the picketers begun after the picketer approached Plaintiff. The picketer told Plaintiff that the picketer (a woman) had "heard that  Maviglio had committed perjury" (or words to that effect). Defendant Barbara Andres immediately began to yell incoherently, and Defendant Andres's husband Cecil Taylor immediately placed himself between the picketer and Plaintiff, whereupon Plaintiff said of Cecil Taylor: " I  do not talk to felons", and to which Cecil Taylor responded, "you're a

felon too." This intervention by Defendant Andres and the husband of Defendant

Barbara Andres (the latter at the direction of Defendant Barbara Andres) disrupted

Plaintiff's ability to discuss Defendant Maviglio's restraining order perjury with

the picketers (including but not limited to a picketer who carried a sign saying

"Maviglio puts the 'con' in con-sultant'). Plaintiff is informed and alleges that

Defendant Andres later at this event told one or more of the picketers not to use

any information provided by Plaintiff because: "[Plaintiff] has problems with the

police", an obvious Defendant Andres reference to the May 9, 2020 false arrest set

up by Defendant Andres's through trespassing so Defendant Andres could hand-

signal to a hiding Defendant City Police Officer Robinet to come and seize

Plaintiff.

874.    Defendant Barbara Andres intentionally committed the acts alleged in this

Count (including the acts alleged through incorporation by reference or re-

allegation) as part of an agreement or meeting of the minds between Defendant

Andres and Defendant Steven Maviglio to take one or more of the acts alleged in

this Count, with a common objective to cause Plaintiff to be subjected to no-

warrant seizure, unlawful search, excessive force, followed with more intentional

excessive force, handcuffed custodial interrogation, other violations of Plaintiff's

federal and California law rights, and/or prosecution on one or more criminal

charges, by Defendants City, Robinet, Stanionis and/or Reason.

875.    Defendant Barbara Andres became a member of the conspiracy with

Defendant Steve Maviglio to cause Plaintiff to be subjected to no-warrant seizure,

unlawful search, excessive force, two applications of excessive force,  handcuffed

custodial interrogation, other violations of Plaintiff's federal and California law

rights, and/or prosecution on one or more criminal charges by Defendants City,

Robinet, Stanionis and/or Reason, with Defendant Andres knowing of at least one

object of the conspiracy and intending to help accomplish such object, which was

to have Plaintiff to be subjected to no-warrant seizure, unlawful search, excessive

force, handcuffed custodial interrogation,  other violations of Plaintiff's federal

and California law rights, and/or prosecution on one or more criminal charges, by

Defendants City, Robinet, Stanionis and/or Reason.

876.     Defendant Barbara Andres willfully participated in a plot, plan or scheme

with Defendant Steve Maviglio to commit one or more overt acts to cause Plaintiff

to be to be subjected to no-warrant seizure, unlawful search, excessive force,

handcuffed custodial interrogation, other violations of Plaintiff's federal and

California law rights, and/or prosecution on one or more criminal charges, by

Defendants City, Robinet, Stanionis and/or Reason.


877.     Defendant Steven Maviglio intentionally and willfully made one or more

statements (by spoken or written words) to Defendant City's Police Department or

its' officers, statements that were of and concerning Plaintiff and accused Plaintiff

of committing a crime, committing or being involved in a battery, committing or

being involved in an altercation, or of committing acts requiring the intervention

by Defendant City's Police Department.

878.     Plaintiff upon information and belief alleges that the statements made by Defendant Maviglio to Defendant City's Police Department or its' officers were intended to be understood as either conveying a fact, or were implying that a false statement of fact was true.

879.     Defendant City's Police Department and/or its' officers reasonably understood these statements by Defendant Steven  Maviglio to mean that Plaintiff had been accused of committing a crime, committing or being involved in a battery, committing or being involved in an altercation, or of committing acts requiring the intervention by Defendant City's Police Department.

880.     The false light created by the disclosure by Defendant Steven Maviglio to Defendant City's Police Department and/or its' officers would be highly offensive to a reasonable person in Plaintiff's position.

881.     Defendant Steven Maviglio knew the disclosure to Defendant City's Police Department and/or its' officers would create a false impression about Plaintiff.

882.     Defendant Steven Maviglio knew the statements he made were false, or acted with reckless disregard for the truth.

883.     Defendant Steven Maviglio was negligent in determining the truth of the information or whether a false impression would be created by its' disclosure.

884.     Plaintiff was harmed by Defendant Steven Maviglio's disclosure.

885.     Defendant Steven Maviglio's disclosure was a substantial factor in causing Plaintiff's harm.

886.     Defendant Steven Maviglio intentionally committed the acts alleged in this Count (including the acts alleged through incorporation by reference or re-allegation) as part of an agreement or meeting of the minds between Defendant Steven Maviglio and Defendant Barbara Andres to take one or more of the acts alleged in this Count, with a common objective to cause Plaintiff to be subjected to no-warrant seizure, unlawful search, two sequential uses of excessive force, handcuffed custodial interrogation, other violations of Plaintiff's federal and California law rights, and/or prosecution on one or more criminal charges, by Defendants City, Robinet, Stanionis and/or Reason.

887.     Defendant Steven Maviglio became a member of the conspiracy with Defendant Andres to cause Plaintiff to be to be subjected to no-warrant seizure, unlawful search, excessive force, handcuffed custodial interrogation, other violations of Plaintiff's federal and California law rights, and/or prosecution on one or more criminal charges by Defendants City, Robinet, Stanionis and/or Reason, with Defendant Steven  Maviglio knowing of at least one object of the conspiracy and intending to help accomplish such object, which was to have Plaintiff to be subjected to no-warrant seizure, unlawful search, two sequential uses of excessive force, handcuffed custodial interrogation,  other violations of Plaintiff's federal and California law rights, and/or prosecution on one or more criminal charges, by Defendants City, Robinet, Stanionis and/or Reason.

888.     Defendant Steven Maviglio willfully participated in a plan or scheme with Defendant Andres to commit one or more overt acts to cause Plaintiff to be to be

subjected to no-warrant seizure, unlawful search, two sequential uses of excessive force, handcuffed custodial interrogation, other violations of Plaintiff's federal and California law rights, and/or prosecution on one or more criminal charges, by Defendants City, Robinet, Stanionis and/or Reason.

889.     One or more of the John Doe Conspirator Defendants intentionally made one or more statements (by spoken or written words) to Defendant City's Police Department or its' officers, statements that were of and concerning Plaintiff and accused Plaintiff of committing a crime, committing or being involved in a battery, committing or being involved in an altercation, or of committing acts requiring the intervention by Defendant City's Police Department.

890.     Plaintiff upon information and belief alleges that the statements made by one or more of the John Doe Conspirator Defendants to Defendant City's Police Department or its' officers were intended to be understood as either conveying a fact, or were implying that a false statement of fact was true.

891.     Defendant City's Police Department and/or its' officers reasonably understood these statements by one or more of the John Doe Conspirator Defendants to mean that Plaintiff had been accused of committing a crime, committing or being involved in a battery, committing or being involved in an altercation, or of committing acts requiring the intervention by Defendant City's Police Department.

892.     The false light created by the disclosure by one or more of the John Doe Conspirator Defendants to Defendant City's Police Department and/or its' officers would be highly offensive to a reasonable person in Plaintiff's position.

893.     One or more of the John Doe Conspirator Defendants knew the disclosure to Defendant City's Police Department and/or its' officers would create a false impression about Plaintiff.

894.     One or more of the John Doe Conspirator Defendants knew the statements they made were false, or they acted with reckless disregard for the truth.

895.     One or more of the John Doe Conspirator Defendants was negligent in determining the truth of the information or whether a false impression would be created by its' disclosure.

896.     Plaintiff was harmed by the disclosures made by one or more of the John Doe Conspirator Defendants.

897.     The disclosures by one or more of the John Doe Conspirator Defendants were a substantial factor in causing Plaintiff's harm.

898.     One or more of the John Doe Conspirator Defendants  intentionally committed the acts alleged in this Count (including the acts alleged through incorporation by reference or re-allegation) as part of an agreement or meeting of the minds between one or more of the John Doe Defendants, Defendant Barbara Andres, Defendant Steve  Maviglio, and/or two or more of the John Doe Conspirator Defendants, to take one or more of the acts alleged in this Count, with a common objective to cause Plaintiff to be subjected to no-warrant seizure,

unlawful search, excessive force, handcuffed custodial interrogation, other violations of Plaintiff's federal and California law rights, and/or prosecution on one or more criminal charges, by Defendants City, Robinet, Stanionis and/or Reason.

899.     One or more of the John Doe Conspirator Defendants became a member of the conspiracy with Defendant Andres and/or Defendant Steve Maviglio to cause Plaintiff to be to be subjected to no-warrant seizure, unlawful search, excessive force, handcuffed custodial interrogation, other violations of Plaintiff's federal and California law rights, and/or prosecution on one or more criminal charges by Defendants City, Robinet, Stanionis and/or Reason, with one or more of the John Doe Conspirator Defendants knowing of at least one object of the conspiracy and intending to help accomplish such object, which was to have Plaintiff to be subjected to no-warrant seizure, unlawful search, excessive force, handcuffed custodial interrogation,  other violations of Plaintiff's federal and California law rights, and/or prosecution on one or more criminal charges, by Defendants City, Robinet, Stanionis and/or Reason.

900.     One or more of the John Doe Conspirator Defendants willfully participated in a plot, plan or scheme with Defendant Barbara Andres, Defendant Steve Maviglio, and/or one or more of the John Doe Conspirator Defendants  to commit one or more overt acts to cause Plaintiff to be to be subjected to no-warrant seizure, unlawful search, two sequential uses of excessive force, handcuffed custodial interrogation, other violations of Plaintiff's federal and California law

rights, and/or prosecution on one or more criminal charges, by Defendants City, Robinet, Stanionis and/or Reason.

901.     Defendant Steven Maviglio is therefore liable to Plaintiff under California law protecting Plaintiff from false light invasion of privacy, and/or for conspiring with Defendant Andres and/or one or more of the John Doe Conspirator Defendants to violate Plaintiff's rights secured by these provisions. As a conspirator, Defendant Steven Maviglio is liable for both his acts and the acts of Andres and/or any of the John Doe Conspirator Defendants.

902.      Defendant Barbara Andres is therefore liable to Plaintiff under California law protecting Plaintiff from false light invasion of privacy, and/or for conspiring with Defendant Steven Maviglio and/or one or more of the John Doe Conspirator Defendants to violate Plaintiff's rights secured by these provisions. As a conspirator, Defendant Barbara Andres is liable for both his acts and the acts of Andres and/or any of the John Doe Conspirator Defendants.

903.     Plaintiff will name as defendants one or more of the John Doe Conspirator Defendants should discovery or other information reveal their commission of any acts or conspiring to commit any acts alleged in this Count, or to otherwise  violate Plaintiff's rights plead in this Count. If so and with proof, one or more of the John Doe Conspirator Defendants are therefore liable to Plaintiff under California law protecting Plaintiff from false light invasion of privacy, directly and/or for conspiring with Defendant Barbara  Andres or Defendant Steven  Maviglio to violate Plaintiff's rights secured by these provisions. As conspirators, one or more

of the John Doe Conspirator Defendants are liable for their own acts as well as the acts of the other conspirators.

## FOURTEENTH CALIFORNIA COUNT -- INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS versus CITY, ROBINET, STANIONIS, REASON, CITY FIRE PARAMEDIC ONE, and the JOHN DOE CITY DEFENDANTS

904.    Plaintiff hereby re-alleges and incorporates by reference the allegations contained in Paragraphs 1—903 as though fully set forth herein.

905.    The conduct of Defendants City, Robinet, Stanionis, Reason, and/or City Fire Paramedic One was outrageous.

906.    Defendant City intended to cause Plaintiff to suffer severe emotional distress.

907.    Defendant Robinet intended to cause Plaintiff to suffer severe emotional distress.

908.    Defendant Stanionis intended to cause Plaintiff to suffer severe emotional distress.

909.    Defendant Reason intended to cause Plaintiff to suffer severe emotion distress.

910.    Defendant City Fire Paramedic One intended to cause Plaintiff to suffer severe emotional distress.

911.    Defendants City, Robinet, Stanionis, Reason, and/or City Fire Paramedic One each acted with reckless disregard of the probability that Plaintiff would suffer severe emotional distress, knowing that Plaintiff was present when the conduct occurred.

912.    Defendants City, Robinet, Stanionis, Reason, and/or City Fire Paramedic One knew that Plaintiff would probably suffer emotional distress resulting from the outrageous conduct of one or more of these Defendants.

913.    Defendants City, Robinet, Stanionis, Reason, and/or City Fire Paramedic One intended or knew that Plaintiff would suffer anguish, fright, horror, nervousness, grief, anxiety, worry, shock, humiliation, shame, and/or other suffering, and that such suffering would be substantial, long-lasting, and that no reasonable person in a civilized society should be required to bear it.

914.    Defendants City, Robinet, Stanionis, Reason and/or City Fire Paramedic One gave little or no thought to the probable effect of their conduct on Plaintiff.

915.    Plaintiff suffered severe emotional distress.

916.    The conduct of Defendants City, Robinet, Stanionis, Reason, and/or City Fire Paramedic One was a substantial factor in causing Plaintiff's severe emotional distress.

917.    Defendants City, Robinet, Stanionis, Reason and/or City Fire Paramedic One abused a position of authority that gave one or more of these Defendants real or apparent power to affect Plaintiff's interests.

309

918.     Defendants City, Robinet, Stanionis,  Reason, and/or City Fire Paramedic
One knew that Plaintiff was particularly vulnerable to emotional distress, and
delighted in triggering emotional distress in Plaintiff.

919.     Defendants City, Robinet, Stanionis, Reason and/or City Fire Paramedic
One knew that the conduct of one or more of these Defendants would likely result
in Plaintiff suffering harm due to mental distress.

920.     The conduct of Defendants City, Robinet, Stanionis, Reason and/or City
Fire Paramedic One would be regarded by a reasonable person as intolerable in a
civilized community.

921.     The conduct of Defendants City, Robinet, Stanionis,  Reason and/or City
Fire Paramedic One was so extreme as to be beyond all possible bounds of
decency.

922.     Each of Defendants City, Robinet, Stanionis, Reason and/or City Fire
Paramedic One are therefore liable to Plaintiff under California law protecting
Plaintiff from intentional infliction of emotional distress, or for conspiring with
one or more of these Defendants, one or more of the John Doe City Defendants,
Defendant Steve Maviglio, Defendant Barbara Andres, and/or one or more of the
John Doe Conspirator Defendants to commit one or  more of the acts alleged in
this Count.

923.     Plaintiff will name as defendants one or more of the John Doe City
Defendants should discovery or other information reveal their commission of any
acts or conspiring to commit any acts alleged in this Count, or to otherwise  violate

Plaintiff's rights plead in this Count. If so and with proof, one or more of the John Doe City Defendants are therefore liable to Plaintiff under California law protecting Plaintiff from intentional infliction of emotional distress, directly and/or for conspiring to violate Plaintiff's rights secured by these provisions. As conspirators, one or more of the John Doe City Defendants are liable for their own acts as well as the acts of the other conspirators.

**FIFTEENTH CALIFORNIA COUNT – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS versus ANDRES, MAVIGLIO, and the JOHN DOE CONSPIRATOR DEFENDANTS**

924.     Plaintiff hereby re-alleges and incorporates by reference the allegations contained in Paragraphs 1—923 as though fully set forth herein.

925.     When Defendant Barbara Andres was yelling at Plaintiff on May 9, 2020 in the period before or about 8:00 a.m., one of the "yellings" by Defendant Barbara Andres was a yelled statement to Plaintiff: "you're dying anyway."

926.     The conduct of Defendant Barbara Andres was outrageous.

927.     The conduct of Defendant Steven Maviglio was outrageous.

928.     Defendant Steven Maviglio intended to cause Plaintiff to suffer severe emotional distress.

929.     Defendant Barbara Andres intended to cause Plaintiff to suffer severe emotional distress.

930.     Defendant Steven Maviglio acted with reckless disregard of the probability that Plaintiff would suffer severe emotional distress, knowing that Plaintiff was present when the conduct occurred.

931.     Defendant Barbara Andres acted with reckless disregard of the probability that Plaintiff would suffer severe emotional distress, knowing that Plaintiff was present when the conduct occurred.

932.     Defendant Steven Maviglio knew that Plaintiff would probably suffer emotional distress resulting from the outrageous conduct of Defendant Steven Maviglio.

933.     Defendant Barbara Andres knew that Plaintiff would probably suffer emotional distress resulting from the outrageous conduct of Defendant Barbara Andres.

934.     Defendant Steven Maviglio intended or knew that Plaintiff would suffer anguish, fright, horror, nervousness, grief, anxiety, worry, shock, humiliation, shame, and/or other suffering, and that such suffering would be substantial, long-lasting, and that no reasonable person in a civilized society should be required to bear it.

935.     Defendant Barbara Andres intended or knew that Plaintiff would suffer anguish, fright, horror, nervousness, grief, anxiety, worry, shock, humiliation, shame, and/or other suffering, and that such suffering would be substantial, long-

lasting, and that no reasonable person in a civilized society should be required to bear it.

936.   Defendant Steven Maviglio gave little or no thought to the probable effect of his conduct on Plaintiff.

937.   Defendant Barbara Andres gave little or no thought to the probable effect of her conduct on Plaintiff.

938.   Plaintiff suffered severe emotional distress.

939.   The conduct of Defendant Steven Maviglio was a substantial factor in causing Plaintiff's severe emotional distress.

940.   The conduct of Defendant Barbara Andres was a substantial factor in causing Plaintiff's severe emotional distress.

941.   Defendant Steven Maviglio abused a position of authority that gave Defendant Steven Maviglio real or apparent power to affect Plaintiff's interests.

942.   Defendant Barbara Andres abused a position of authority that gave Defendant Barbara Andres real or apparent power to affect Plaintiff's interests.

943.   Defendant Steven Maviglio knew that Plaintiff was particularly vulnerable to emotional distress, and delighted in triggering emotional distress in Plaintiff.

944.   Defendant Barbara Andres knew that Plaintiff was particularly vulnerable to emotional distress, and delighted in triggering emotional distress in Plaintiff.

945.   Defendant Steven Maviglio knew that the conduct of Defendant Steven Maviglio, Defendant Barbara Andres, Defendant City, Defendant Robinet,

Defendant Stanionis, and/or Defendant Reason would likely result in Plaintiff suffering harm due to mental distress.

946.     Defendant Barbara Andres knew that the conduct of Defendant Steven Maviglio, Defendant Barbara Andres, Defendant City, Defendant Robinet, Defendant Stanionis, and/or Defendant Reason would likely result in Plaintiff suffering harm due to emotional and/or mental distress.

947.     The conduct of Defendant Steven Maviglio would be regarded by a reasonable person as intolerable and abusive  in a civilized community.

948.     The conduct of Defendant Barbara Andres would be regarded by as reasonable person as intolerable and abusive in a civilized community.

949.     The conduct of Defendant Steven Maviglio was so extreme as to be beyond all possible bounds of decency.

950.     The conduct of Defendant Barbara Andres was so extreme as to be beyond all possible bounds of decency.

951.     Each of Defendants Steven Maviglio and/or Barbara Andres are therefore liable to Plaintiff under California law protecting Plaintiff from intentional infliction of emotional distress, or for conspiring with one or more of these Defendants, one or more of the John Doe City Defendants, and/or one or more of the John Doe Conspirator Defendants to commit one or  more of the acts alleged in this Count.

952.     Plaintiff will name as defendants one or more of the John Doe Conspirator Defendants should discovery or other information reveal their commission of any

acts or conspiring to commit any acts alleged in this Count, or to otherwise violate

Plaintiff's rights plead in this Count. If so and with proof, one or more of the John

Doe Conspirator Defendants are therefore liable to Plaintiff under California law

protecting Plaintiff from intentional infliction of emotional distress, directly and/or

for conspiring to violate Plaintiff's rights secured by these provisions. As

conspirators, one or more of the John Doe Conspirator Defendants are liable for

their own acts as well as the acts of the other conspirators.

**JURY DEMAND**

953.     Plaintiff hereby demands trial by jury.

**DAMAGES**

954.        As a direct and proximate result of the acts of one or more of the Defendants,

Plaintiff suffered the following injuries and damages as detailed below.

955.     Violation of Plaintiff's rights protected by the United States Constitution

Fourth Amendment and California Constitution Article I, Section 13 to be free

from unreasonable seizures, unreasonable searches, and/or excessive force, and to

receive medical care adequate to make her whole from the injuries to her person

she suffered as a result of Defendants' violations of her rights.

956.     Violation of her right to liberty protected by the United States Constitution

Fourteenth Amendment and California Constiotution, Articcle I, Section 7.

957.     Violation of her right to equal protection of the laws protected by the United States Constitution Fourteenth Amendment and the California Constitution Article I, Section 7.

958.     Violation of her right to freedom of speech and right to petition protected by the United States Constitution First Amendment and California Constitution Article I, Sections 2 and 3.

959.      Violation of her rights protected by the California Constitution Article I Section 13 to be free from unreasonable seizures, unreasonable searches, and/or excessive force, and to receive medical care adequate to make her whole from the injuries to her person she suffered as a result of Defendants' violations of her rights..

960.     Violation of her rights protected by the California Constitution Article I, Section 7 to liberty.

961.     Violation of her rights protected by the California Constitution, Article I, Section 7, to equal protection of the laws.

962.     Violation of her rights under the California Tom Bane Civil Rights Act to be free from threats, intimidation, or coercion to that interfere with her rights protected by state or federal law;

963.     Violation of her rights under the California Civil Code and California Penal Code to be free from trespass, assault, battery, false arrest and/or false imprisonment.

964.     Violation of her rights under the California Civil Code to be free from defamation, libel and/or slander.

965.     Violation of her rights under California law to be free from false light invasion of privacy.

966.     Violation of her rights under California law to be free from intentional infliction of emotional distress.

967. Physical pain and suffering.

968. Great bodily injury

969. Pain and suffering from a false arrest made without probable cause, without a warrant, and without any announcement or explanation by Officer Robinet

970. Pain and suffering from the false arrest assisted by Officer Stanionis, made without probable cause, without a warrant, and without any announcement or explanation by Officer Stanionis

971. Pain and suffering from trespass, assault, and battery by Officer Robinet

972. Pain and suffering from trespass, assault, and battery by Officer Stanionis

973. Pain and suffering from intentional injury inflicted by Officer Stanionis when she tightened the handcuffs after I complained

974. Pain and suffering from the defamation of Plaintiff through a false arrest staged for the entertainment of Defendfant Steven Maviglio, Defendant Barbara Andres, and other residents of 45th Street

975. Pain and suffering from the defamation of me in intentionally false communications to the City Police by Defendant Barbara Andres, Defendant Steven Maviglio and others that were used by the City Police to set me up for a false arrest

976. Officer Stanionis intentionally depriving Plaintiff of water.

977. Officer Stanionis intentionally handcuffing and detaining Plaintiff without probable cause and without a warrant

978. Officer Stanionis intentionally tightening the handcuffs to increase Plaintiff's pain after Plaibntiff complained

979. Taking, searching, and displaying of Plaintiff's cellphone by Officer Robinet and/or Officer Stanionis.

980.     Property damage to Plaintiff's cellphone through the unauthorized access to cellphone content and operating mechanisms by Defendants Officer Stanionis, Officer Robinet, Steven Maviglio, and Barbara Andres

981. Property damage in the form of a burglary to Plaintiff's house that occurred while Officer Stanionis detained me in her City Police car, after Officer Robinet caused the front door

to be open (when he physically assaulted and battered me out of my own front door), and after Officer Stanionis refused my request for her to accompany me to my house where I could both get some water and lock the doors (Officer Stanionis also took my keys). This includes the theft of a digital back up device with tens of thousands of photographs, video, and writings.

982. Invasion of Plaintiff's privacy through unauthorized access to my cellphone content and operating mechanisms by Officer Stanionis, Officer Robinet, Barbara Andres, Steven Mviglio and others

983. Invasion of Plaintiff's privacy and taking of Plaintiff's property by Officers Robinet and/or Stanionis taking my cellphone and having access to it. Officers Robinet and/or Stanionis had no probable cause and no warrant to take my cellphone.

984.     Emotional trauma and suffering, including but not limited to fear, embarrassment, humiliation, emotional distress, frustration, extreme inconvenience, and anxiety – all of which will scar Plaintiff as long as Plaintiff lives.

985.     As Plaintiff told Defendant City in her claim that Defendant City rejected as "without merit":

- Officer Robinet's hands around my thighs and body made me extremely uncomfortable and violated (to say the least) – but when I later discovered that he was one of the two City Police officers who fired the bullets that killed  Stephen

319

Clark, it made me sick to my core.  I was nauseated, I vomited, and I cried unstoppably.  Since then, I have been having a ngithmares, this unforgivable and devastating trama has ingrated in my body and sole and I know that it will never leave mea and I will suffer from this inhuman trama that was inflicted on  me for the rest of my life.

- The fact that I had been battered and assaulted by a uniformed armed person who was one of two City Police officers who fired the bullets that killed another human being was more that I could handle.  I remember I took a shower and I kept scrubbing  and scrubbing (to the point of bleeding) my legs, my thighs  and every part of my body that had been touched by Officer Robinet, and I wanted to cut my thighs off of my body. I still feel his hands around my thighs and have frequent nightmares about it.

- I cannot stop crying.  I absolutely hate my body and particularly my thighs and my legs.  I cannot get over the fact that I was touched by the same hands that were involved in killing of an innocent human.

WHEREFORE, Plaintiff demands judgment against the Defendants, jointly and severally, or individually, as follows:

A. In favor of Plaintiff for amounts to be determined by a jury for each of the Counts in Plaintiff's Complaint;

B. Awarding Plaintiff punitive damages against Defendants other than Defendant City of Sacramento in an amount to be determined by a jury;

C. Awarding Plaintiff treble the damages determined by a jury under the California Tom Bane

Act, or treble the amount of four thousand dollars per violation, whichever is greater;

D. Awarding Plaintiff reasonable attorney's fees, costs, and disbursements of this action;

E. Such other and further relief as this Court deems just and proper.

DATED: April 2, 2021

/s/ Steven Mark Kamp, California State Bar Number 116817

Attorney for Plaintiff

Steven Kamp Law Office, 22 Petrilli Circle, Sacramento, California 95822

Electronic mail address:  steve.kamp@comcast.net

Telephone: (916) 501-1791 (cellular, voice/text)