UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PARVIN OLFATI, | No. 2:21-cv-00606 CKD |
| Plaintiff, | |
| v. | ORDER |
| CITY OF SACRAMENTO, et al., | |
| Defendants. | |

Plaintiff Parvin Olfati filed this civil rights action under 42 U.S.C. § 1983. This matter is before the undersigned for all purposes including trial and entry of judgment pursuant to the parties' consent and the court's order of January 12, 2024. (ECF No. 208.) Plaintiff's motion for summary judgment is before the court. (ECF No. 154.) This matter is suitable for decision without oral argument and was taken under submission without oral argument on April 25, 2023. (ECF No. 166.) For the reasons set forth below, plaintiff's motion is granted in part, against defendants Robinet and Stanionis for unreasonable search of plaintiff's residence curtilage and unreasonable seizure of plaintiff's person in violation of the Fourth Amendment. In all other respects, the motion is denied.

**RELEVANT PROCEDURAL BACKGROUND**

Plaintiff initiated this action with a civil complaint filed on April 2, 2021, claiming violations of her rights under the Fourth Amendment in connection with an incident involving

plaintiff, her neighbors, and the police. (ECF No. 1.) On March 1, 2022, the court dismissed plaintiff's federal claims against her neighbors, defendants Barbara Andres and Steven Maviglio, for failure to state a claim. (ECF No. 87.) The court declined supplemental jurisdiction over the remaining state law claims against defendants Andres and Maviglio. (Id.)

Plaintiff proceeds on the fifth amended complaint filed on March 21, 2022, against defendants Robinet, Stanionis, Reason, Mayer, and City of Sacramento. (ECF No. 88.) The fifth amended complaint asserts causes of action under 42 U.S.C. § 1983 against all defendants for alleged violations of plaintiff's First and Fourth Amendment rights, causes of action under California Civil Code § 52.1 against all defendants, causes of action under California Government Code § 820(a) against all defendants, and a cause of action under California Government Code § 815.2(a) against City of Sacramento. (Id.)

Plaintiff filed two previous motions seeking partial summary judgment (ECF Nos. 107, 121) which were denied without prejudice for reasons stated on the record at a hearing held on February 21, 2023. (ECF No. 148.) The court struck plaintiff's moving papers for the two prior partial summary judgment motions along with the opposition papers filed by the defendants. (ECF No. 152.) The court admonished the parties as follows:

> In contravention of [the Local] rules, plaintiff previously provided more than one fact in many paragraphs of the undisputed facts, and defendant did not cite to the record in support of the facts to which they contended there was a dispute. Therefore, the court directs the parties to review and comply with Local Rule 260 subdivisions (a) and (b).

(Id. at 2.)

On April 10, 2023, plaintiff filed the motion for summary judgment presently before the court. (ECF No. 154.) The motion is fully briefed with defendants' opposition and plaintiff's reply. (ECF Nos. 165, 174.)

Plaintiff's motion seeks summary judgment as follows: (1) against Robinet, Stanionis, and Reason for unreasonable search of plaintiff's residence curtilage and against Robinet and Stanionis for unreasonable seizure of plaintiff's person, California common law trespass, battery, and false imprisonment; (2) against Robinet and Stanionis for unreasonable seizure and retention

2

of plaintiff's cellphone and California common law conversion; (3) against Robinet and Stanionis for excessive force and battery; (4) against Robinet, Stanionis, and Mayer for denial of medical care; (5) against Robinet, Stanionis, and Reason for malicious prosecution and retaliation; (6) against defendant City of Sacramento under California Civil Code Section 52.1 (Tom Bane Civil Rights Act) as a direct participant; (7) against defendant City of Sacramento under California Government Code Section 815.2(a) in respondeat superior; and (8) against defendant City of Sacramento under 42 U.S.C. § 1983. (ECF No 154 at 2-4.)

**LEGAL STANDARDS FOR SUMMARY JUDGMENT**

Summary judgment is appropriate when the moving party shows there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In order to obtain summary judgment, "[t]he moving party initially bears the burden of proving the absence of a genuine issue of material fact." In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admission, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B).

"Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." Oracle Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325); see also Fed. R. Civ. P. 56(c)(1)(B). Summary judgment should be entered "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323.

////

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Fed. R. Civ. P. 56(c)(1); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact "that might affect the outcome of the suit under the governing law," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," Anderson, 447 U.S. at 248.

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "'the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" T.W. Elec. Serv., 809 F.2d at 630 (quoting First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968)). Thus, the "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Matsushita, 475 U.S. at 587 (citation and internal quotation marks omitted).

"In evaluating the evidence to determine whether there is a genuine issue of fact, [the court] draw[s] all inferences supported by the evidence in favor of the non-moving party." Walls v. Central Contra Costa Transit Auth., 653 F.3d 963, 966 (9th Cir. 2011) (citation omitted). It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. Richards v. Nielsen Freight Lines, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586 (citations omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Id. at 587 (quoting First Nat'l Bank, 391

U.S. at 289).

**UNDISPUTED FACTS[1]**

On May 9, 2020, at various times between 8:10 a.m. and 9:26 a.m., City Fire Captain Stephen Mayer and City of Sacramento Police Officers Jared Robinet, Maryna Stanionis, and Nathaniel Reason were dispatched to and arrived at plaintiff's residence. (ECF No. 174-1, Undisputed Fact ("UF") 1.) Defendants Robinet, Stanionis, and Reason were equipped with Body Worn Cameras. (Id.) There is also a recording from an In-Car Camera ("ICC"). (Id.) The police officer defendants did not have a warrant. (UF 2.)

Defendants Robinet and Stanionis were dispatched in separate cars to plaintiff's residence under call for service 20-139307 at 8:02 a.m. (UF 5.) Robinet and Stanionis had been dispatched to plaintiff's residence multiple times previously and knew plaintiff had refused to speak with police officers. (UF 54.) Defendant Reason, an Acting Sergeant on that date, was in communications with defendants Robinet and Stanionis and arrived later. (UF 6.)

Defendants Robinet and Stanionis were aware they had been dispatched based on two 911 calls as follows: (a) caller Barbara Andres gave the name Parvin Olfati, a description, an address, and stated "she's starting up again"; "she's yelling at Steve Maviglio"; and "no weapons"; and (b) caller Amy Salazar described a woman "just hysterical" and "yelling at neighbors"; in addition, a voice in the background said "no" when the operator asked whether there was any "pushing or shoving". (UF 48.) The dispatch was originally a "Priority Five" dispatch for "[California Penal Code Section 415] disturbance." (UF 49.) While defendants were en route, the call for service was "upgraded" to a Priority Two California Penal Code Section 273.5 "domestic violence in progress" based on a report from an unnamed "neighbor" that a woman was "[California Penal Code Section] 242-ing" a male person. (UF 50.)

---

[1] In contravention of the Local Rules and the court's prior admonishment, plaintiff proposed many undisputed facts consisting of long paragraphs with multiple compound facts. The court declines plaintiff's request to address whether each of plaintiff's 366 facts is a material fact not in dispute. See Fed. R. Civ. P. 56(g). The court's citation to an undisputed fact for a matter set forth herein does not indicate the court finds the entire fact to be undisputed in the manner set forth by plaintiff. In addition, in contravention of the Local Rules and the court's prior admonishment, defendants' opposition papers fail to cite the record in support of any facts.

While en route, defendant Stanionis sent the following computer message which defendant Robinet received: "hopefully, she is still outside because I know her MO and if she's still outside we can detain her and talk to her and grab her." (UF 10.)

When defendant Robinet arrived, he recognized plaintiff standing on her upper driveway speaking to her neighbor, Barbara Andres. (UF 12-13.) Robinet saw no other people present. (UF 125.) Plaintiff turned her back and stated, "I am not going to talk to you Officer," and began to walk up the porch steps of her residence. (UF 15, 126.) Defendant Robinet attempted unsuccessfully to converse with plaintiff, asking "why are you out here yelling and screaming[.]" (UF 17-19, 126.)

Other than his interpretation of the content of the 911 calls and dispatch information, Robinet was not aware of any content that appeared to connect plaintiff with any acts constituting California Penal Code Section 242 battery or any conduct subject to Penal Code Sections 242, 243(e)-(i) or 273.5. (UF 75.)

Plaintiff had turned the front doorknob to open her front door when Robinet said "Wait" and grabbed plaintiff's left arm. (UF 20.) Robinet saw plaintiff's legs stepping inside the front door. (UF 28.) Robinet used his right arm to grab plaintiff's left arm at the elbow and used his left hand to grab plaintiff's left wrist on order to remove plaintiff from her residence so he could question her. (UF 26, 28.) Robinet did not see plaintiff resist using her hands, feet, or fists, or try to flee. (UF 113-117.) Robinet pulled plaintiff outside, brought her to the front porch, and said "sit down" while forcibly sitting plaintiff down and standing over her. (UF 32-34.)

Plaintiff stated repeatedly, "look at what you did" while pointing to the ring finger of her right hand. (UF 37.) Robinet observed an injury to plaintiff's fingernail which was bleeding. (UF 37.) Plaintiff's finger was fractured. (UF 37.) Defendant Robinet said "we've got a band aid" and plaintiff responded, "[t]his is not a band aid case. Please I need a doctor." (UF 103.)

Defendant Stanionis arrived and observed Robinet on the front porch with plaintiff sitting on the ground and screaming at Robinet. (UF 56.) Plaintiff displayed her bleeding finger to Stanionis, stating "this is what he did." (UF 58, 87.) Robinet told plaintiff he was not responsible for the injury. (UF 59.) Robinet stated, "I had you by your left arm" and "how did I do that when

I was grabbin' you by the left arm." (UF 128.)

Stanionis applied pressure to plaintiff's upper back and shoulder area while handcuffing plaintiff, who did not resist the application of handcuffs. (UF 44-45, 61, 86, 88.) Plaintiff asked why she was being arrested and Robinet stated she was being detained on suspicion of battery and that trying to run inside was obstructing. (UF 74, 105.)

Robinet and Stanionis picked plaintiff up and forcibly walked her to the police car driven by Stanionis where plaintiff was detained for approximately one hour and seven minutes. (UF 47, 132-135; see also UF 136 & 138 (timestamps).) Plaintiff was searched for weapons. (UF 47, 122.)

Plaintiff's cell phone and keys had become dislodged from her person and were initially left on the front porch. (UF 98.) Robinet returned to the porch, retrieved the cell phone and keys, and brought them to the hood of the police car in which plaintiff was detained. (UF 98.) Plaintiff was separated from her property until she retrieved the items upon her release. (UF 98.)

Stanionis called paramedics after plaintiff was handcuffed and confined in the car. (UF 104, 206.) Defendant Stephen Mayer directed the actions of non-party City Fire paramedics Alex Ibrahim and Emil Reitmayer II regarding plaintiff. (UF 7.) While Ibrahim was applying gauze to plaintiff's right hand ring finger, Reitmayer asked Mayer and Stanionis "do we need to offer to go to the hospital." (UF 216.) Mayer responded with a skeptic head nod and/or statement. (UF 216.) Stanionis stated, "she'll get medical attention in jail." (UF 217.) Defendant Mayer stated "bandage it up[.]" (UF 218.) After Mayer's statement, the gauzing was not completed and plaintiff was not taken to the hospital. (UF 225.) After the paramedics left, plaintiff did not go to jail and did not receive further medical attention from any City Fire or City Police employees. (UF 221.)

Defendant Robinet questioned plaintiff without giving Miranda v. Arizona warnings. (UF 139, 143.) Robinet asked questions that were not about any battery or domestic violence but instead were about Robinet's acts toward plaintiff and the source of plaintiff's injuries. (UF 144, 178.) Robinet told plaintiff she was being cited and released for obstructing and resisting a police officer. (UF 166.) Stanionis stated plaintiff should be cited for "a 148" because "you're in full uniform and you tell her no, you're not going inside you're being detained." (UF 235.)

While plaintiff was detained in the car, the windows were rolled up with no air conditioning. (UF 179, 348, 349.) While detained in the car, plaintiff requested water, stating "I need water," "I feel dehydrated," and "just get water from that felon across the street," referring to Barbara Andres. (UF 151, 163, 164, 322, 330, 332-340, 342.) Stanionis stated "I'm not gonna' get you any water if you don't answer my question." (UF 339.) Neither Robinet nor Stanionis gave plaintiff water. (UF 151, 163, 322-24.)

While detained in the car, plaintiff heard Robinet state in a radio or cell phone transmission to defendant Reason "this Parvin Olfati… this sounds like a horrible name[.]" (UF 155.) Plaintiff heard Reason respond, "no wonder they're upset." (UF 155.) Defendants Robinet and Reason laughed while discussing plaintiff while she was confined in the car. (UF 162.) Plaintiff also heard Robinet state, "she is very '5149'." (UF 156.) Plaintiff heard Robinet refer to her as "crazy bitch" and "crazy lady[.]" (UF 157.)

When defendant Reason arrived, he did not release plaintiff from confinement. (UF 247.) Plaintiff requested water which Reason did not provide. (UF 251.) Reason instructed Robinet to prosecute plaintiff only for a violation of Penal Code 148 with instruction to "be super detailed in your report describing… why you grabbed her and why you pulled her back." (UF 160.) Reason stated, "just based on that house because they're so like anti police and everything" and referred to plaintiff's residence as "this stupid house." (UF 159, 161.)

Upon inquiry, defendant Stanionis learned the jail would not accept persons charged solely with violations of California Penal Code section 148. (UF 224, 226.) Robinet and Stanionis indicated their preference would have been to take plaintiff to jail to be cited and booked. (UF 184, 186, 231.)

Plaintiff was released at [timestamp] 16:20:30 Z. (UF 138.) Stanionis handed plaintiff a Notice to Appear signed by Robinet for alleged violation of California Penal Code section 148. (UF 182-183, 245.) Plaintiff subsequently obtained medical care on her own for her fractured finger, which she was told had a high risk of infection. (UF 223.)

Plaintiff was charged with a single violation of California Penal Code section 148(a)(1), "resisting/ obstructing police," for allegedly resisting defendant Robinet. (UF 124, 259.) The

1  charge was dismissed by the Sacramento County District Attorney on October 15, 2020, for
2  insufficient evidence. (UF 259.) An Internal Affairs investigation determined plaintiff's
3  accusations of false arrest and excessive force were unfounded. (UF 263; see also UF 260-275.)

4  Robinet was not aware of any exigent circumstances presenting a need to enter the
5  residence or any possible destruction of evidence prior to seizing plaintiff. (UF 62, 63, 72.) Prior
6  to beginning his seizure of plaintiff, Robinet did not observe plaintiff display or use any weapon
7  or commit any acts that would have constituted a public offense. (UF 25.) Neither Robinet nor
8  Stanionis saw or heard plaintiff commit any public offense, make any threatening gestures, or
9  verbally threaten imminent violence. (UF 66, 67, 78, 83, 99, 101.) Neither Robinet nor Stanionis
10 saw or communicated with any male person claiming to have been battered or pushed or shoved
11 by plaintiff, nor did they receive reports of such conduct from each other or from defendant
12 Reason. (UF 70.) Neither spoke to any person claiming to have been offensively touched or
13 battered by plaintiff. (UF 230.)

14 Robinet and Stanionis detained plaintiff in the police car on suspicion of battery under
15 California Penal Code sections 242 and 243(e)(1). (UF 85.) Defendant Robinet did not have
16 probable cause to arrest plaintiff for battery when he detained her. (UF 76.) Defendant Stanionis
17 did not have probable cause to arrest plaintiff when she handcuffed her. (UF 77.)

18 Robinet did not give plaintiff a warning prior to using force. (UF 41.) Stanionis did not
19 give plaintiff a warning prior to using force to handcuff plaintiff. (UF 81.)

20 Plaintiff did not consent to any use of force. (UF 146.) Plaintiff did not consent to any
21 defendant's entry to her front porch, front yard, or residence curtilage. (UF 146-148.)

22 Defendant Robinet's report of the events in CAD document 2020-139307 does not contain
23 any allegations of physical resistance by plaintiff. (UF 35.) Stanionis' supplemental report also
24 does not mention any physical resistance. (UF 109.) The City defendants' CAD document states
25 plaintiff resisted the grabbing of her person by Robinet with her hands, fists, and/or feet. (UF
26 110.)
27 ////
28 ////

## DISCUSSION

### I. Fourth Amendment Search and Seizure

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures...." U.S. Const. amend. IV. "At [its] very core stands the right of a [person] to retreat into his own home and there be free from unreasonable governmental intrusion." Silverman v. United States, 365 U.S. 505, 511 (1961). "[S]earches and seizures inside a home without a warrant are," therefore, "presumptively unreasonable." Payton v. New York, 445 U.S. 573, 586 (1980). Moreover, the area "immediately surrounding and associated with the home"—the "curtilage"—is treated as "part of [the] home itself for Fourth Amendment purposes." United States v. Lundin, 817 F.3d 1151, 1158 (9th Cir. 2016).

With no citation to the record, defendants argue they had reasonable suspicion that plaintiff had disturbed the peace in violation of California Penal Code section 415. (ECF No. 165 at 3.) They also argue with no citation to the record that they made a reasonable investigatory detention of plaintiff based on reasonable suspicion of battery or domestic violence. (Id. at 5.) Defendants argue some cases cited by plaintiff are inapplicable or "likely distinguishable" because those cases involved law enforcement entry into a residence or motions to suppress evidence. (Id. at 5.)

Even if the defendants had reasonable suspicion to detain plaintiff, the Constitution did not permit Robinet to grab plaintiff at her doorway and pull her outside to detain or arrest her. This was not a situation where plaintiff had opened the door and voluntarily stepped outside, thereby giving some form of limited consent. Neither was this a situation where defendants Robinet and Stanionis were conducting themselves according to the "knock and talk" exception to the warrant requirement, because any attempt to initiate a consensual encounter with plaintiff had already clearly failed based on her retreat into her home and statement that she would not talk. See United States v. Perea-Rey, 680 F.3d 1179, 1188-89 (9th Cir. 2012).

Plaintiff's legs were stepping inside her home when Robinet pulled her outside. (UF 20, 28.) Plaintiff was protected by the warrant requirement. See Payton, 445 U.S. at 587; Perea-Rey,

10

680 F.3d at 1188 ("the Terry [v. Ohio, 392 U.S. 1 (1968)] exception to the warrant requirement [for an investigative detention based on reasonable suspicion] does not apply to in-home searches and seizures"); United States v. Johnson, 626 F.2d 753, 757 (9th Cir. 1980) ("the Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant."), aff'd, 457 U.S. 537 (1982); Lundin, 817 F.3d at 1158 (curtilage is part of the home for Fourth Amendment purposes).

There is no evidence to support any exception to the warrant requirement. Accordingly, the court grants plaintiff's motion for summary judgment against defendant Robinet for unreasonable seizure of plaintiff's person in violation of the Fourth Amendment. See United States v. Mendenhall, 446 U.S. 544, 553 (1980) ("a person is seized… when, by means of physical force or a show of authority, [her] freedom of movement is restrained"). The court also grants plaintiff's motion for summary judgment for unreasonable seizure of plaintiff's person against defendant Stanionis, who directly participated in the seizure, including by handcuffing plaintiff. The court also grants plaintiff's motion for summary judgment against defendants Robinet and Stanionis for unreasonable search of plaintiff's residence curtilage in violation of the Fourth Amendment. See Lundin, 817 F.3d at 1160 (a government agent conducts a "search" within the meaning of the Fourth Amendment when the agent… "physically occupie[s] private property [including a residence porch] for the purpose of obtaining information"); Perea-Rey, 680 F.3d at 1188 ("once an attempt to initiate a consensual encounter with the occupants of a home fails, 'the officers should end the knock and talk and change their strategy by retreating cautiously, seeking a search warrant, or conducting further surveillance'").

Plaintiff does not carry the burden to show defendant Reason unreasonably searched plaintiff's residence curtilage. Plaintiff also does not carry the burden of demonstrating her constitutional deprivations were the result of a custom or practice of the City of Sacramento or that the custom or practice was the "moving force" behind his constitutional deprivation. See Dougherty v. City of Covina, 654 F.3d 892, 900-01 (9th Cir. 2011).

Plaintiff does not carry the burden to show defendants Robinet and Stanionis unreasonably seized her cell phone in violation of the Fourth Amendment. A seizure of property

11

occurs when there is some meaningful interference with an individual's possessory interests in that property. Soldal v. Cook County, Ill., 506 U.S. 56, 61 (1992). Here, plaintiff's cell phone became dislodged from her person. Robinet placed the cell phone on the hood of the police car in which plaintiff was detained until plaintiff retrieved it upon her release. Whether any defendant seized plaintiff's cell phone is a question of fact for the jury. Plaintiff fails to show a distinct violation of the Fourth Amendment based on an unreasonable seizure of the cell phone. In addition, the failure to read Miranda warnings did not violate plaintiff's constitutional rights and is not grounds for a separate claim under 42 U.S.C. § 1983. See Chavez v. Martinez, 538 U.S. 760, 772 (2003) (absent the use of a coerced statement in a criminal case, the "failure to read Miranda warnings ... d[oes] not violate [a person's] constitutional rights and cannot be grounds for a § 1983 action.")

## II.     Fourth Amendment Use of Force

The "objective reasonableness" of law enforcement officers' use of force in a particular case is determined "in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." Graham v. Connor, 490 U.S. 386, 396-97 (1989). Under Graham, a court first considers the nature and quality of the alleged intrusion, and then considers the governmental interests at stake by looking at (1) how severe the crime at issue is, (2) whether the suspect posed an immediate threat to the safety of the officers or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight. Deorle v. Rutherford, 272 F.3d 1272, 1279-80 (9th Cir. 2001). The Graham factors are not exclusive: a court examines the totality of the circumstances and considers "whatever specific factors may be appropriate in a particular case, whether or not listed in Graham.'" Bryan v. MacPherson, 630 F.3d 805, 826 (9th Cir. 2010) (quoting Franklin v. Foxworth, 31 F.3d 873, 876 (9th Cir. 1994)).

Plaintiff argues there was no need for force, and thus that the force used was unreasonable as a matter of law. (ECF No. 154-1 at 42-43.) Where governmental interests do not support a need for force, "any force used is constitutionally unreasonable." Green v. City & Cnty. of San Francisco, 751 F.3d 1039, 1049 (9th Cir. 2014) (quoting Lolli v. County of Orange, 351 F.3d 410, 417 (9th Cir. 2003)). Similarly, when the governmental interest is insubstantial, the application of

even minimal force may be unreasonable. Nelson v. City of Davis, 685 F.3d 867, 878 (9th Cir. 2012).

Plaintiff has a strong argument for the lack of a substantial government interest supporting any need for force because the facts that gave rise to her unlawful detention factor into the determination whether the force used was excessive. See Velazquez v. City of Long Beach, 793 F.3d 1010, 1024 (9th Cir. 2015); Thomas v. Dillard, 818 F.3d 864, 890 (9th Cir. 2016), as amended (May 5, 2016). However, the two inquiries are separate and distinct. See id. Force used to effectuate an arrest, for example, can still be reasonable even where the officer lacked probable cause. See Velazquez, 793 F.3d at 1024 (citing Arpin v. Santa Clara Valley Transp. Agency, 261 F.3d 912, 921-22 (9th Cir. 2001)). A finding of excessive force cannot be predicated only on the fact of plaintiff's unlawful detention. See Velazquez, 793 F.3d at 1024 n. 13 (citing collected cases); Mattos v. Agarano, 661 F.3d 433, 443 n. 4 (9th Cir. 2011) (rejecting argument that any amount of force was excessive if the officers did not have probable cause to arrest).

Applying Graham to consider the nature and quality of the alleged intrusion, the force used by defendants Robinet and Stanionis involved grabbing plaintiff's left arm and left wrist, pulling her outside, forcibly sitting her down, applying and tightening handcuffs, applying pressure to her upper back and shoulder area, and forcing her to stand and walk to the police car. (UF 20, 26, 28, 32-34, 44, 61, 88.) Plaintiff sustained a fracture to the ring finger of her right hand when Robinet pulled her outside. The undisputed facts do not establish how that injury occurred.

Turning to the governmental interests at stake, "[a]ny form of domestic violence is serious, but the allegation in this case was not particularly severe." Thomas, 818 F.3d at 890. As set forth, plaintiff was unreasonably seized. There is no indication she posed an immediate threat to the safety of the officers or others.

Even though some of the Graham factors weigh heavily in favor of plaintiff, whether and to what extent any governmental interests supported a need for force, and, if so, whether either defendant used more force than was necessary, are questions for a jury. See Green v. City and County of San Francisco, 751 F.3d 1039, 1049 (2014) (an excessive force determination under the Fourth Amendment should only be taken from the jury in rare cases). This is not one of the

13

rare instances in which summary judgment is appropriate on the excessive force claim.

### III. Fourth Amendment Denial of Medical Care

The Fourth Amendment requires police officers to seek medical attention for a detainee who has been injured during detention. Tatum v. City & Cty. of San Francisco, 441 F.3d 1090, 1098-99 (9th Cir. 2006) (explaining that although the Supreme Court analyzed such claims under the Due Process Clause in the past, the Fourth Amendment objective reasonableness is the proper standard after Graham). To prevail on a claim under this standard, a plaintiff must show that the defendant officer failed to respond to a medical need posing a substantial risk of serious harm, even though "a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious[.]" Sandoval v. Cnty. of San Diego, 985 F.3d 657, 669 (9th Cir. 2021) (applying objective reasonableness test to pre-trial detainee's medical care claim).

It is undisputed that medical care was summoned for plaintiff, even though plaintiff argues defendant Mayer expressly turned down the option of taking her to the hospital and caused paramedics to stop gauzing her fractured finger. The court does not use hindsight to determine what medical care would have been most appropriate. Tatum, 441 F.3d at 1098 ("the Fourth Amendment does not require… an officer to provide what hindsight reveals to be the most effective medical care for an arrested suspect"). A reasonable jury could determine the defendants fulfilled their Fourth Amendment obligations based on what they knew or should have known by promptly summoning the necessary medical assistance. See id. at 1099 ("a police officer who promptly summons the necessary medical assistance… has acted reasonably for purposes of the Fourth Amendment"). Plaintiff is not entitled to summary judgment on the Fourth Amendment denial of medical care claim.

### IV. Malicious Prosecution / Retaliation

#### 1. Malicious Prosecution

To state a claim for malicious prosecution under California law, "a plaintiff must demonstrate that the prior action (1) was initiated by or at the direction of the defendant and legally terminated in the plaintiff's favor, (2) was brought without probable cause, and (3) was

initiated with malice." Siebel v. Mittlesteadt, 41 Cal. 4th 735, 740 (2007). To maintain a § 1983 claim for malicious prosecution, a plaintiff must allege "the defendants prosecuted her with malice and without probable cause, and that they did so for the purpose of denying her equal protection or another specific constitutional right." Lacey v. Maricopa County, 693 F.3d 896, 919 (9th Cir. 2012) (quoting Freeman v. City of Santa Ana, 68 F.3d 1180, 1189 (9th Cir. 1995)); see also Mills v. City of Covina, 921 F.3d 1161, 1169 (9th Cir. 2019) (noting federal courts rely on state common law for the general elements of malicious prosecution).

"Ordinarily, the decision to file a criminal complaint is presumed to result from an independent determination on the part of the prosecutor, and thus, precludes liability for [police officers] who participated in the investigation or filed a report that resulted in the initiation of proceedings." Awabdy v. City of Adelanto, 368 F.3d 1062, 1067 (9th Cir. 2004). If, however, a plaintiff can show an officer applied improper pressure, or knowingly provided misinformation, or concealed exculpatory information, or otherwise engaged in wrongful conduct, then the presumption of prosecutorial independence may be rebutted. See McSherry v. City of Long Beach, 584 F.3d 1129, 1136 (9th Cir. 2009); Awabdy, 368 F.3d at 1067-68.

Viewing the undisputed facts in a light favorable to the defendants, the court cannot find as a matter of law that any defendant acted with the necessary malice and intent to deny plaintiff's constitutional rights. Plaintiff is not entitled to summary judgment on her malicious prosecution claims under federal or state law.

    **2.  Retaliation**

Similarly, the court cannot find as a matter of law that any defendant retaliated against plaintiff in regard to the prosecution. A plaintiff alleging a retaliatory prosecution must show the absence of probable cause for the underlying criminal charge. Lozman v. City of Riviera Beach, Fla., 585 U.S. 87, 97 (2018). If the plaintiff proves the absence of probable cause, then the plaintiff must show that the retaliation was a substantial or motivating factor behind the prosecution. Id. If that showing is made, then the plaintiff prevails unless the defendant shows the prosecution would have been initiated without respect to retaliation. Id.

////

The causal connection between the defendant's alleged animus and the prosecutor's decision to prosecute is weakened by the presumption of regularity accorded to prosecutorial decision making. Lozman, 585 U.S. at 99. The issue of causation should be determined by a trier of fact. See Ford v. City of Yakima, 706 F.3d 1188, 1194 (9th Cir. 2013) (discussing retaliatory arrest claims), abrogated on other grounds by Nieves v. Bartlett, 139 S. Ct. 1715 (2019). Plaintiff is not entitled to summary judgment on her retaliation claims.

### V. State Law Claims

#### 1. Bane Act

California's Bane Act was enacted to address hate crimes and provides for a claim against anyone who interferes with an individual's rights secured by federal or state law "where the interference is carried out 'by threats, intimidation or coercion.'" Reese v. County of Sacramento, 888 F.3d 1030, 1039 (9th Cir. 2018) (citing Cal. Civ. Code § 52.1). "[T]he Bane Act imposes an additional requirement beyond a finding of a constitutional violation." Reese, 888 F.3d at 1043 (citing Cornell v. City and County of San Francisco, 17 Cal.App.5th 766 (2017)). Specifically, the Bane Act's "threat, intimidation, and coercion" language requires "a specific intent to violate" the right at issue, which may take the form of a "reckless disregard for a person's constitutional rights[.]" Id. at 1045

"The specific intent inquiry for a Bane Act claim is focused on two questions: First, '[i]s the right at issue clearly delineated and plainly applicable under the circumstances of the case,' and second, '[d]id the defendant commit the act in question with the particular purpose of depriving the citizen victim of his enjoyment of the interests protected by that right?'" Sandoval v. Cnty. of Sonoma, 912 F.3d 509, 520 (9th Cir. 2018) (quoting Cornell, 17 Cal. App. 5th at 803). If those requirements are met, specific intent can be shown if the defendant acted in "reckless disregard" of the constitutional right. Id.

Plaintiff argues defendants are liable under the Bane Act for violations of plaintiff's federal Constitutional rights and state law rights. (ECF No. 154-1 at 47-48.) Plaintiff's cursory argument on the Bane Act fails to establish any violations of plaintiff's rights under California law. Moreover, although the court grants summary judgment on plaintiff's Fourth Amendment

claim for unreasonable search of plaintiff's residence curtilage and unreasonable seizure of plaintiff's person by defendants Robinet and Stanionis, plaintiff fails to establish either defendant recklessly disregarded her rights. See generally Hughes v. Rodriguez, 31 F.4th 1211, 1224 (9th Cir. 2022) (holding that whether the defendant had a specific intent to violate the plaintiff's constitutional rights was a question properly reserved for the trier of fact). Plaintiff is not entitled to summary judgment on any Bane Act claims.

### 2. Government Code Sections 815.2(a), 820(a)

Plaintiff argues the defendants' acts "constitute California common law trespass, false imprisonment, negligence, and intentional infliction of emotional distress." (ECF No. 154-1 at 40.) Plaintiff argues the City is "liable under California Government Code Section 815.2(a)" while the individual defendants are "liable under California Government Code Section 820(a) and there is no qualified immunity." (Id. at 48.) And further, defendants' "acts of trespass, false imprisonment, battery, conversion and California common law malicious prosecution are [ ] actionable under California Government Code Sections 815.2(a)(City) and 820(a) (employees)." (Id.)

Plaintiff's cursory, undeveloped arguments on her state law claims and the undisputed facts fail to establish she is entitled to summary judgment on any state law claim. The court separately addresses only plaintiff's trespass claim brought under California Government Code § 820(a) against the individual defendants and under § 815.2(a) against the City.

Trespass is an unauthorized entry onto another's property, "regardless of the actor's motivation." Miller v. National Broadcasting Co., 187 Cal.App.3d 1463, 1480 (2nd Dist. 1986). "The intent required as a basis for liability as a trespasser is simply an intent to be at the place on the land where the trespass allegedly occurred .... The defendant is liable for an intentional entry although he has acted in good faith, under the mistaken belief, however reasonable, that he is committing no wrong." Id. at 1480-81. Here, defendants Robinet and Stanionis made an unauthorized entry onto plaintiff's property.

Defendants argue they are immune from suit under California Government Code § 820.4 on all of plaintiff's state law claims. (ECF No. 165 at 8.) That section provides as follows:

> A public employee is not liable for his act or omission, exercising due care, in the execution or enforcement of any law. Nothing in this section exonerates a public employee from liability for false arrest or false imprisonment.

Cal. Gov. Code § 820.4.

Plaintiff responds to this argument stating only that defendants did not plead the asserted immunity in their answer. (ECF No. 174 at 26.) Plaintiff does not otherwise dispute defendant's assertion that Government Code § 820.4 provides immunity for claims other than false arrest or false imprisonment.

Neither party has addressed whether defendants forfeited or waived any immunity under Government Code § 820.4 by not pleading it in the answer, and, if so, whether the court should allow a belated assertion. The California Supreme Court has rejected the conclusion previously reached by state appellate courts that statutory immunities in the Government Claims Act cannot be waived or forfeited. Quigley v. Garden Valley Fire Prot. Dist., 7 Cal. 5th 798, 815 (2019). The court has discretion to allow a belated assertion of the defense, even if it has been forfeited. See, e.g., Bagdasaryan v. Los Angeles, No. 2:15-CV-01008-JLS-KES, 2020 WL 5044192, at *2 (C.D. Cal. Jan. 19, 2020) (discussing § 820.4); see also Federal Rule of Civil Procedure 15(a)(2) (permitting parties to amend their pleadings with the court's leave when justice so requires). Moreover, in the absence of a showing of prejudice, an affirmative defense may be raised for the first time at summary judgment. Camarillo v. McCarthy, 998 F.2d 638, 639 (9th Cir. 1993); Rivera v. Anaya, 726 F.2d 564, 566 (9th Cir. 1984). Plaintiff has not claimed prejudice, nor is any suggested by the record. Therefore, the court finds the defense is not waived. See Camarillo, 998 F.2d at 639.

Plaintiff does not dispute defendant's assertion that Government Code § 820.4 provides immunity to a state law trespass claim if not waived. For all the reasons set forth, the court denies plaintiff's motion for summary judgment as it is directed to her state law claims.

**CONCLUSION AND ORDER**

In accordance with the above, IT IS ORDERED that plaintiff's motion for summary judgment (ECF No. 154) is granted in part, as against defendants Robinet and Stanionis for

18

unreasonable search of plaintiff's residence curtilage and unreasonable seizure of plaintiff's person in violation of the Fourth Amendment on the issue of liability, with damages to be determined; in all other respects the motion is denied.

Dated: March 26, 2024

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

8
olfa21cv0606.msj